Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Beth W. Petronio, *pro hac vice pending*
beth.petronio@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Facsimile: (214) 939-5849

Attorneys for Defendant
Tyler Technologies, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – CENTRAL DIVISION**

| | |
|---|---|
| LENORE ALBERT, CHAD PRATT, THERESA MARASCO, LARRY TRAN, RYAN MCMAHON, JAMES OCON,; AND LESLIE WESTMORELAND<br><br>Plaintiffs,<br><br>v.<br><br>TYLER TECHNOLOGIES, INC., STATE BAR OF CALIFORNIA; BRANDON STALLINGS, LEAH WILSON, GEORGE CARDONA, DONNA HERSHKOWITZ, SUZANNE GRANT, CINDY CHAN, BENSON HOM, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 8:25-cv-00647-JLS-DFM<br><br>[Referred to the Hon. Douglas F. McCormick for preliminary matters and to conduct hearings [DE 4]]<br><br>Removed from Orange County Superior Court at Case No. 30-2025-01462434-CU-AT-CXC<br><br>**TYLER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Complaint Filed: February 20, 2025<br><br>Hearing Date:   May 6, 2025<br>Time:           10:30 a.m.<br>Courtroom:    6B |

DEFENDANT TYLER TECHNOLOGIES INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 6, 2025, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 6B of the above-captioned Court, located at Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA 92701, Defendant Tyler Technologies, Inc. ("Tyler") will and hereby does move to dismiss Plaintiffs' First Amended Complaint (the "FAC"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

This Motion is made on the grounds that the Plaintiffs have failed to state any claim against Tyler upon which relief can be granted. Because no facts exist that can be added to an amended Complaint in order to properly state a claim, dismissal should be with prejudice.

This motion is made following the conferences of *pro se* Plaintiffs, counsel for Tyler, and counsel for the State Bar of California ("State Bar") pursuant to Local Rule 7-3, which took place on March 28, 2025 and again on March 31, 2025. (Petronio Decl., ¶¶2-3.) Tyler, by and through its counsel, explained the basis for this Motion, including the grounds upon which relief is sought, but Plaintiffs would not agree to dismiss Tyler with prejudice. Accordingly, the Parties have reached an impasse, requiring Tyler to bring the instant Motion. Tyler is informed and believes that Plaintiffs intend to oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities and supporting declaration of Beth W. Petronio, the FAC, any Reply brief that Tyler may file, argument and evidence that may be presented to the Court prior to or at the hearing on this Motion, the complete files and records in this action, and such other and further matters as the Court may deem just and proper to consider this Motion.

DEFENDANT TYLER TECHNOLOGIES INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

## **K&L GATES LLP**

2

3   Dated:  April 4, 2025          By:    */s/ Zachary T. Timm*

4                                         Beth W. Petronio (admitted *pro hac vice*)
                                          Zachary T. Timm
5

6                                         Attorneys for Defendant
                                          TYLER TECHNOLOGIES, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TYLER TECHNOLOGIES INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**I.    INTRODUCTION** ...................................................................................... **1**

**II.    FACTUAL BACKGROUND** ................................................................... **2**

**III.    JUDICIAL STANDARD** ......................................................................... **7**

**IV.    ARGUMENT** ............................................................................................ **7**

    **A.    Data Breach Negligence Claim** ................................................. **7**

    **B.    Deceit** .......................................................................................... **10**

    **C.    Unfair Competition** ................................................................. **16**

**V.    CONCLUSION** ...................................................................................... **18**

TABLES OF CONTENTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson,*
  355 F.3d 1179 (9th Cir. 2004) ......................................................................... 7

*American Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974) ....................................................................................... 8

*Apple Computer, Inc. v. Superior Ct.,*
  126 Cal.App.4th 1253 (2005) ........................................................................ 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................................... 7

*Bardin v. Daimlerchrysler Corp.,*
  39 Cal.Rptr.3d 634 (2006) ........................................................................... 18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................... 6

*Biovill Co. v. Oh,*
  No. 2:23-CV-07920-SVW-JC, 2024 WL 3001472 (C.D. Cal. Apr. 25, 2024)......... 11

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,*
  162 Cal.App.4th 858 (2008) ................................................................... 14, 15

*Blue Chip Stamps v. Manor Drug Stores,*
  421 U.S. 723 (1975) ..................................................................................... 18

*Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.,*
  20 Cal.4th 163 (1999) .................................................................................. 17

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir.1997) ........................................................................ 11

*Corales v. Bennet,*
  567 F.3d 554 (9th Cir. 2009) ......................................................................... 7

*Corona v. Sony Pictures Entertainment, Inc.,*
  No. 14-CV-09600-RGK, 2015 WL 3916744 (C.D. Cal., June 15, 2015)................. 9

*Crown, Cork & Seal Co., Inc. v. Parker,*
  462 U.S. 345 (1983) ....................................................................................... 8

*Davis v. HSBC Bank Nevada, N.A.,*
  691 F.3d 1152 (9th Cir. 2012) ..................................................................... 18

*E–Fab, Inc. v. Accountants, Inc. Services,*
  153 Cal.App.4th 1308 (2007) ........................................................................ 8

*Estate of Sanders,*
  40 Cal.3d 607 (1985) ................................................................................... 11

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ................................................................7

*Fields v. Napa Milling Co.*,
   164 Cal.App.2d 442 (1958) ...................................................................9

*Holly v. Alta Newport Hosp., Inc.*,
   No. 2:19-cv-07496-ODW (MRWx), 2020 WL 1853308
   (C.D. Cal. Apr. 10, 2020) ......................................................................9

*Hudson v. Foster*,
   68 Cal.App.5th 640 (2021) ...................................................................11

*Huy Fong Foods, Inc. v. Underwood Ranches, LP*,
   66 Cal.App.5th 1112 (2021) .................................................................11

*Jackson v. Ocwen Loan Servicing, LLC*,
   No. 2:10-cv-00711-MCE-GGH, 2010 WL 3294397 (E.D. Cal. Aug. 20, 2010) ......17

*Jordache Enters., Inc. v. Brobeck, Pheger & Harrison*,
   18 Cal.4th 739 (1998) ............................................................................9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................16

*Khoury v. Maly's of Cal., Inc.*,
   14 Cal. App. 4th 612 (1993) .................................................................17

*Krouse v. BAC Home Loans Servicing, LP*,
   No. 2:10-CV-03309-MCE-EF, 2011 WL 2367093 (E.D. Cal. June 9, 2011) ...........18

*Ligaya Ronduen et al. The Geo Grp., Inc.*,
   No. EDCV 23-481 JGB (SHKX), 2023 WL 5506001 (C.D. Cal. July 6, 2023) ......11

*LiMandri v. Judkins*,
   52 Cal.App.4th 326 (1997) .............................................................13, 14

*Manzareck v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ...............................................................7

*Martinez v. Citimortgage, Inc.*,
   No. CV15-9737 PSG (MRWX), 2016 WL 7469867 (C.D. Cal. May 19, 2016) ........8

*McGarry v. Sax*,
   158 Cal.App.4th 983 (2008) ...................................................................7

*Moe v. Transamerica Title Ins. Co.*,
   21 Cal.App.3d 289 (1971) ....................................................................11

*People v. McKale*,
   25 Cal.3d 626, (1979) ...........................................................................17

*Saunders v. Superior Court*,
   27 Cal.App.4th 832 (1994) ...................................................................17

iii
TABLES OF CONTENTS AND AUTHORITIES

*Shroyer v. New Cingular Wireless Servs., Inc.,*
  622 F.3d 1035 (9th Cir. 2010) ....................................................................16

*Shum v. Intel Corp.,*
  633 F.3d 1067 (Fed. Cir. 2010) ..................................................................11

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
  983 F. Supp. 1303 (N.D. Cal. 1997) ...........................................................17

*Sipe v. Countrywide Bank,*
  690 F. Supp. 2d 1141 (E.D. Cal. 2010) ......................................................16

*Stearns v. Select Comfort Retail Corp.,*
  No. 08-2746 JF (PVT), 2010 WL 2898284 (N.D. Cal. July 21, 2010),....................17

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) .................................................... 11, 13, 16

*W. Mining Council v. Watt,*
  643 F.2d 618 (9th Cir. 1981) ........................................................................7

*Warner Const. Corp. v. Los Angeles,*
  2 Cal.3d 285 (1970) ......................................................................................11

*Zelig v. Cnty. Of Los Angeles,*
  27 Cal.4th 1112 (2002) ......................................................................... 12, 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...........................................................16

Cal. Civ. Code § 1710 ............................................................................11

Cal. Code Civ. Proc. §§ 335.1, 339 ........................................................8

## I.    <u>INTRODUCTION</u>

This case is one in a decade-long series of disciplinary proceedings and lawsuits pitting Ms. Lenore Albert and various plaintiffs affiliated with her against the State Bar and its employees.  Here, Ms. Albert and her affiliated plaintiffs tell a rambling and, at times, incoherent tale of over a decade of supposed "retaliation" and "harassment" by the State Bar and its employees that culminated in Ms. Albert's disbarment.  And, without alleging a single fact connecting Tyler to her disbarment, Plaintiffs assert that Tyler acted in concert with the State Bar to disbar Ms. Albert.  Supposedly this was all done to gain an advantage in connection with litigation pending against the State Bar and Tyler in state court regarding an alleged data breach.  Certain nonpublic case information regarding State Bar disciplinary proceedings—including case number, filing date, case type, case status, and respondent and complaining witness names (the "Case Data")—was improperly "harvested" from a software portal licensed to the State Bar by Tyler and posted on a third-party website (the "Alleged Data Breach").

The Alleged Data Breach was originally the subject of a putative class action in state court with Ms. Albert choosing to represent the class instead of asserting her own claims in that case.  Following her disbarment, the state court gave the class almost a full year to find new counsel, but they were unable to do so.  As a result, the class allegations were stricken and the named plaintiffs were permitted to proceed individually with their claims.  Now, Ms. Albert and one other putative class member, Leslie Westmoreland, are attempting to bring claims related to the Alleged Data Breach in this case, coupled with their retaliation and harassment claims related to Ms. Albert's disbarment.  The claims against Tyler include causes of action for negligence, deceit, and unfair competition.  Each of these three claims should be dismissed because they are barred by the statute of limitations or because they otherwise fail to properly state a cause of action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

## II.    **FACTUAL BACKGROUND**

Tyler is a leading provider of technology solutions to schools, courts and other public sector clients at the local, state, and federal level.  Among Tyler's many solutions is a suite of software for state courts and clerks, popularly known as "Odyssey."  Tyler licensed the State Bar a public-facing module referred to as the "Odyssey Portal," which enabled certain information to be searched and accessed by the public.  (FAC, ¶34.)

In October 2021, a third-party decided to make the State Bar's disciplinary records searchable and accessible on a website known as JudyRecords.com. (FAC ¶48.) Because of a previously unknown vulnerability in the Odyssey Portal, this third party was able to access certain Case Data that the State Bar otherwise intended to remain confidential.    (*Id.*)    The Case Data was made available to be searched on JudyRecords.com for approximately four months.  (FAC, ¶¶48-50.)  Only a small amount of the Case Data obtained by JudyRecords.com was actually accessed and viewed while it was available on that third-party website.

On or about February 22, 2022, the State Bar learned that the Case Data had been improperly harvested and posted on JudyRecords.com.  (FAC, ¶49.)  On March 14, 2022, Ms. Albert filed a tort claim on her own behalf with the State Bar, which claim was denied.  (FAC, ¶86.) On March 18, 2022, Ms. Albert, acting as counsel to a putative class, filed a complaint against the State Bar and various Doe Defendants asserting numerous claims based on the Alleged Data Breach in the Superior Court for the County of Orange as Case No. 30-2022-01250695-CU-AT-CXC (the "State Court Action"). (FAC, ¶92.) On March 25, 2022, Ms. Albert amended the complaint to substitute Tyler for "Doe 1."  On April 13, 2022, Ms. Albert amended the complaint again, alleging federal antitrust causes of action, and Tyler timely removed the case to Federal Court in this District as Case No. 8:22-cv-00983-DFM (the "Federal Court Action," and,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

collectively with the State Court Action, the "Data Breach Cases"). (FAC, ¶98; *see also* Petronio Decl., Exs. A and B (Docket Sheets for the Data Breach Cases).)[1]

On April 3, 2023, the Federal Court dismissed the federal antitrust claims with prejudice, and thereafter declined to exercise supplemental jurisdiction over the remaining state-law claims. (Ex. B, at Dkt. 130 & 134.) At Ms. Albert's request, the Federal Court remanded the case to State Court on May 3, 2023. (Ex. B, at Dkt. 135.) Defendants in the State Court Action filed demurrers, which were sustained in part on January 12, 2024. Ms. Albert then filed a Fourth Amended Complaint in the State Court Action on February 1, 2024. Tyler filed another demurrer on March 11, 2024.

Ms. Albert originally obtained her license to practice law in California in 2000. (FAC, ¶426.) Her license was suspended by the State Bar in 2018 and again in 2019. (*See* FAC, Ex. C.) On April 29, 2022, the Office of Chief Trial Counsel ("OCTC") served a Notice of Disciplinary Charges ("NDC") against Ms. Albert related to a pending investigation. (FAC, ¶93.) On April 3, 2023, an OCTC hearing judge recommended that Ms. Albert's license be suspended a third time. (FAC, ¶112.) Following an appeal by both Ms. Albert and OCTC, on March 11, 2024, the Review Department of the State Bar issued an Opinion and Order recommending that Ms. Albert be disbarred. (FAC, ¶124.) Ms. Albert filed a petition for review in the California Supreme Court consistent with Rule 9.13 of the California Rules of Court. On March 14, 2024, the Central District of California issued an Order to Show Cause ("OSC") as to why Ms. Albert should not be suspended from the practice of law in the Central District pursuant to Local Rule 83-3.2. (*See* Petronio Decl., Ex. C (Miscellaneous Action Docket Sheet.)

---

[1] "On a motion to dismiss, [the Court] may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Each of the exhibits to the Petronio Declaration are judicial records, are publicly available, and pertain to cases related to this one, with the exception of Exhibit I, which are Requests for Production served on Tyler in this case prior to removal.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

On March 20, 2024, Ms. Albert filed an *ex parte* application in the closed Federal Court Action, seeking to vacate the federal court's May 2023 remand order—which she had requested—so that the class action case now pending in State Court could be returned to, and proceed in, Federal Court, where she believed she was still permitted to practice law. (Ex. B, at Dkt. 138.) The Federal Court denied the *ex parte* application on March 21, 2024. (*Id*. at Dkt. 143.)

Ms. Albert then filed a noticed motion seeking the same relief in the Federal Court Action on April 2, 2024. (*Id*. at Dkt. 144.) Defendants subsequently filed a joint *ex parte* application to continue the hearing and briefing schedule regarding that motion until the OSC was decided. (*Id*. at Dkt. 149.)

On June 17, 2024, the California Supreme Court denied Ms. Albert's Petition for Review and ordered her disbarred. (Petronio Decl., Ex. D.) On June 28, 2024, the State Court issued an order continuing a hearing on Defendants' demurrers to the Fourth Amended Complaint and setting a status conference for October 18, 2024. (Ex. A.)

On September 16, 2024, Ms. Albert and six other plaintiffs filed a second federal court action in the Central District of California, Cause No. 8:24-cv-01997-JLS-DJM (the "Albert 2024 Action") that asserted 33 separate causes of action against the State Bar, Tyler, and various State Bar employees. In the Albert 2024 Action, the 950-paragraph Complaint tells the tale of over a decade of supposed "retaliation" and "harassment" by the State Bar and its employees that culminated in Ms. Albert's June 2024 disbarment. Without alleging a single fact connecting Tyler to her disbarment, Plaintiffs asserted that Tyler acted in concert with the State Bar to disbar Ms. Albert and supposedly gain some advantage in the Data Breach Cases. In addition, having been rendered ineligible to be class counsel in the Data Breach Cases, Ms. Albert attempted to bring her own negligence claim against Tyler related to the Alleged Data Breach. (*See* Petronio Decl., Ex. E (Albert 2024 Action First Amended Complaint) and Ex. F (Albert 2024 Action Docket Sheet).)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

On October 18, 2024, the State Court further continued a hearing on the demurrers in the State Court Action until February 7, 2025, in an effort to give Plaintiffs an additional opportunity to find new class counsel. (Ex. A.)

In December 2024 and January 2025, respectively, Tyler filed a motion to dismiss the Albert 2024 Action and a Motion for Rule 11 sanctions, asserting that the claims were frivolous and brought for the purpose of harassment. (Ex. F.) On December 12, 2024, Judge Hsu issued a tentative ruling that dismissed the claims in their entirety, including dismissing Ms. Albert's negligence claim related to the Alleged Data Breach based on the expiration of the statute of limitations. (Petronio Decl., Ex. G (Tentative Ruling).) Six days later, in an effort to avoid the entry of a final ruling on the motions to dismiss, Ms. Albert filed a motion to recuse Judge Hsu. (Ex. F.) The case was transferred to this Court and the pending motions were re-noticed for March 7, 2025. (*Id.*)

On February 7, 2025, the State Court ordered that, in light of the inability to find an attorney to represent the class, the class allegations in the State Court Action were stricken. (Petronio Decl., Ex. H (State Court Ruling).) The Court also denied the pending demurrers, allowing three named plaintiffs to pursue their individual claims against Tyler and the State Bar related to the Alleged Data Breach. (*Id.*) Since then, two additional named plaintiffs have indicated a desire to pursue their individual claims as well. (Ex. A.)

On February 19, 2025, Ms. Albert purported to voluntarily dismiss the Albert 2024 Action. (Ex. F.) *The next day*, February 20, 2025, Ms. Albert and the other plaintiffs "refiled" their Complaint in the Superior Court of California, County of Orange, Cause No. 30-2025-01462434-CU-AT-CXC (the "Albert 2025 Action"). (*See generally* FAC.) The Albert 2025 Action asserted 15 causes of action against Tyler, the State Bar and various State Bar employees based on the same allegations of supposed "retaliation" and "harassment" arising from Ms. Albert's disbarment. (*Id.*) Five of the other plaintiffs in the Albert 2024 Action have now indicated a desire to have their

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

claims dismissed in the Albert 2024 Action in favor of the Albert 2025 Action. (Ex. F.) That would leave only one plaintiff interested in pursuing his claims in the Albert 2024 Action. (*Id.*)

On March 26, 2025, knowing that the State Bar was preparing to remove the Albert 2025 Action to federal court, Plaintiffs filed a "First Amended Complaint." (Ex. A.) On March 27, 2025, the Plaintiffs served another "First Amended Complaint" that appeared in substance to be the same as the one served on March 26, 2024, but contained no indication of why it was being filed a second time or what the differences in the two "first" amended complaints were. (Ex. A.) For purposes of this Motion, Tyler assumes that the last-filed "First Amended Complaint" is the operative pleading and addresses its arguments to that pleading, which is referred to herein as the "FAC."

On March 28, 2025, the State Bar removed the Albert 2025 Action to Federal Court, and Ms. Albert filed a notice of related case in the Albert 2024 Action identifying the Albert 2025 Action. (Dkt. 167.) In the Albert 2025 Action, Ms. Albert and Plaintiff Leslie Westmoreland assert claims that can and should have been brought in the State Court Action, along with the other individuals claims that are proceeding there. Instead, Ms. Albert and Mr. Westmoreland have asserted claims against Tyler for negligence, deceit, and unfair competition in this case.

Although for the time being the Albert 2025 Action does not assert specific claims based on the allegation that Tyler was an intentional participant in Ms. Albert's disbarment, the factual allegations regarding Tyler's alleged participation remain in the FAC. Plaintiffs have made clear that they might reassert those claims following discovery. Indeed, before this case was removed to this Court, Ms. Albert served discovery that requested discovery relevant only to the issue of Tyler's alleged participation in her disbarment, despite the fact that that discovery has no relevance to any pending claim against Tyler in the Albert 2025 Action. (Petronio Decl., Ex. I (Requests for Production).)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    **III.    JUDICIAL STANDARD**

2    Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to

3    dismiss an action for failure to allege "enough facts to state a claim to relief that is

4    plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For

5    purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

6    in the complaint as true and construe[s] the pleadings in the light most favorable to the

7    non-moving party." *Manzareck v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

8    1031 (9th Cir. 2008).  However, a court is not required to "'assume the truth of legal

9    conclusions merely because they are cast in the form of factual allegations.'" *Fayer v.*

10    *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*) (quoting *W. Mining Council*

11    *v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere conclusory allegations of law and

12    unwarranted inferences are insufficient to defeat a motion to dismiss.  *Id.*, *quoting*

13    *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556

14    U.S. 662, 678 (2009).

15    **IV.    ARGUMENT**

16    The FAC purports to assert three causes of action against Tyler: Count 3

17    (Negligence arising from the Alleged Data Breach on behalf of Ms. Albert and Mr.

18    Westmoreland); Count 4 (Deceit arising from the Alleged Data Breach on behalf of Ms.

19    Albert and Mr. Westmoreland); and Count 5 (Unfair Competition pursuant to Bus. &

20    Prof. Code § 17200 on behalf of Ms. Albert).  Each fails to state a claim against Tyler

21    upon which relief can be granted.

22    **A.    Data Breach Negligence Claim**

23    In Count 3, Ms. Albert and Mr. Westmoreland separately assert a claim for

24    negligence based on the Alleged Data Breach. (Dkt. 57, ¶¶526-546.)  In order to state

25    a negligence claim, a plaintiff must allege the following elements: "(1) defendant's

26    obligation to conform to a certain standard of conduct for the protection of others

27    against unreasonable risks (duty); (2) failure to conform to that standard (breach of the

28    duty); (3) a reasonably close connection between the defendant's conduct and resulting

injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennet*, 567 F.3d
554, 572 (9th Cir. 2009), citing *McGarry v. Sax,* 158 Cal.App.4th 983, 994 (2008). The
negligence claim should be dismissed for numerous reasons.

*First,* Ms. Albert's individual negligence claim based on the Alleged Data Breach
is barred by the statute of limitations. The statute of limitations for general negligence
claims is two years. *See Martinez v. Citimortgage, Inc.*, No. CV15-9737 PSG (MRWX),
2016 WL 7469867, at *3 (C.D. Cal. May 19, 2016), citing Cal. Code Civ. Proc. §§
335.1, 339; *E–Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1316
(2007). Here, there is no question that Ms. Albert was aware of the Alleged Data Breach
by at least March 14, 2022, when she first presented a claim to the State Bar related to
the Alleged Data Breach. (FAC ¶86.) She filed the putative class action four days later,
on March 18, 2022. (FAC ¶92.)

Ms. Albert was aware that she could not act as both counsel to the class and assert
her own claims as a member of the class. *See, e.g., Apple Computer, Inc. v. Superior
Ct.*, 126 Cal.App.4th 1253, 1264 (2005) (gathering authorities regarding the conflict
presented by dual interests). Indeed, in drafting the State Court complaint, Ms. Albert
expressly excluded class counsel from the definition of the class. (*See* Petronio Decl.,
Ex. J (Fourth Amended Complaint) ¶144.) Ms. Albert could have opted to pursue her
negligence claim as part of the class and forego her role as counsel, or she could have
separately and timely filed her claim in a separate proceeding. She chose not to do
either, and now the statute of limitations on her individual negligence claim has expired.

Contrary to the allegations in FAC (¶202), the statute of limitations on Ms.
Albert's individual negligence-based claims was not tolled based on the pendency of
the class action. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-53 (1983),
quoting *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974) ("[T]he
commencement of a class action suspends the applicable statute of limitations as to all
asserted members of the class *who would have been parties had the suit been permitted
to continue as a class action*.") (emphasis added). As class counsel, Ms. Albert would

1    not have been a member of the class had it continued as a class action, and she chose

2    not to pursue her own individual claims during the limitations period.

3        *Second,* Ms. Albert and Mr. Westmoreland have not sufficiently alleged that

4    Tyler owed a duty to them.  Instead, the FAC only superficially alleges the following:

5    "Tyler Technologies as the software developer…owed plaintiffs, Lenore Albert and

6    Leslie Westmoreland as members of the State Bar a duty to implement and maintain

7    adequate security measures to safeguard plaintiffs' personal information and existence

8    of State Bar investigations consistent with public policy, State Bar policies, statutes,

9    and California privacy laws." (FAC ¶241.)  This conclusory and generalized allegation

10   of a duty is insufficient to state a claim pursuant to Rule 12(b)(6).  Plaintiffs have not

11   and cannot allege that a duty arose out of any pre-existing relationship Ms. Albert or

12   Mr. Westmoreland had with Tyler, that Tyler expressly assumed a duty to them, or that

13   such a duty was imposed by law on Tyler.

14       *Third*, Ms. Albert's and Mr. Westmoreland's allegations of damages are equally

15   conclusory.  "It is fundamental that a negligent act is not actionable unless it results in

16   injury to another."  *Fields v. Napa Milling Co.*, 164 Cal.App.2d 442, 447 (1958).

17   "California courts have indicated that speculative harm or the mere threat of future harm

18   is insufficient to constitute actual loss."  *Corona v. Sony Pictures Entertainment, Inc.*,

19   No. 14-CV-09600-RGK, 2015 WL 3916744, at *3 (C.D. Cal., June 15, 2015), citing

20   *Jordache Enters., Inc. v. Brobeck, Pheger & Harrison,* 18 Cal.4th 739, 743 (1998).

21   Here, Ms. Albert and Mr. Westmoreland have alleged nothing more than that they have

22   suffered a "privacy harm" that included "loss of peace of mind," "anxiety" and "general

23   emotional distress." (FAC ¶254.)  These allegations are so bare as to be insufficient.

24   *See, e.g., Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496-ODW (MRWx), 2020

25   WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) (recognizing that, "although actual

26   damages can include emotional distress, a plaintiff must support [their] claim for pain

27   and suffering with something more than [their] own conclusory allegations, such as

28   specific claims of genuine injury").

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

*Finally*, Ms. Albert's and Mr. Westmoreland's allegations are also impermissibly speculative as to future damages. Ms. Albert and Mr. Westmoreland hypothesize that they "will forever be at risk of becoming the targets of time-consuming and annoying spam and phishing schemes." (FAC ¶255.) Not only is this speculative, but they fail to allege any form of proximate cause or relationship between these damages and the Alleged Data Breach. The Alleged Data Breach involved Case Data, akin to a docket sheet that listed name, case number and filing date. The Alleged Data Breach did not disclose Ms. Albert's or Mr. Westmoreland's phone number, email address, credit card or other personal information. Ms. Albert's concerns about "annoying spam and phishing schemes" and money spent on "online services" have no logical relationship to any of the Case Data allegedly accessed during the Alleged Data Breach.

To properly allege damages arising from the Alleged Data Breach, Ms. Albert and Mr. Westmoreland would need to assert that they suffered some actual monetary or reputational damage from the disclosure of their Case Data. Even two-and-a-half years after the alleged Data Breach, they cannot make such an allegation. Moreover, given that both Ms. Albert and Mr. Westmoreland have been the subject of multiple disciplinary proceedings, including suspensions and/or disbarment, their disciplinary status with the State Bar was and has been public record separate and apart from, the Alleged Data Breach. Thus, they could not have suffered any damages from the alleged public disclosure of their Case Data.[2]

## B.   Deceit

Ms. Albert and Mr. Westmoreland also assert a claim for "deceit," alleging *Tyler* failed to disclose certain facts regarding the *State Bar's* notifications to Plaintiffs. (*See*

---

[2]    Depending upon the outcome of the various motions to dismiss, Tyler expressly reserves the right to request that Mr. Westmoreland's claims based on the Alleged Data Breach, to the extent not otherwise dismissed, should be remanded to the State Court or dismissed and/or stayed based on the doctrines of claim-splitting, the first-filed doctrine, the *Colorado River* abstention doctrine, the *Landis* abstention doctrine or other similar legal theory. Mr. Westmoreland should have brought his claims based on the Alleged Data Breach in the State Court Action, along with the other individual plaintiffs who are currently pursuant their claims in that action.

10

FAC at ¶¶258-274.)  A "deceit" is one of the following: "1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, *by one who is bound to disclose it,* or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it."  Cᴀʟ. Cɪᴠ. Cᴏᴅᴇ § 1710 (emphasis added).   Importantly, in order to use an alleged suppression of a fact to support a claim for deceit/fraud, "Plaintiff must show that defendant had a duty to disclose."  *Huy Fong Foods, Inc. v. Underwood Ranches, LP*, 66 Cal.App.5th 1112, 1121–22 (2021); *see also Moe v. Transamerica Title Ins. Co*., 21 Cal.App.3d 289, 306 (1971) ("Deceit may consist of *the suppression of a fact by one who is bound to disclose it* . . .") (emphasis added).

        "Typically, a duty to disclose only arises when there is a fiduciary or confidential relationship between the parties." *Shum v. Intel Corp*., 633 F.3d 1067, 1078 (Fed. Cir. 2010), citing *Warner Const. Corp. v. Los Angeles*, 2 Cal.3d 285, 294 (1970).  "It is well settled that [a] confidential relationship exists when one party gains the confidence of the other and purports to act or advise with the other's interests in mind. . ." *Hudson v. Foster*, 68 Cal.App.5th 640, 662 (2021), quoting *Estate of Sanders*, 40 Cal.3d 607, 615 (1985).

        Further, a claim for "deceit" is founded in fraud, and therefore subject to Federal Rule of Civil Procedure ("FRCP") 9(b)'s heightened pleading standard.  *See, e.g., Biovill Co. v. Oh*, No. 2:23-CV-07920-SVW-JC, 2024 WL 3001472, at *3 (C.D. Cal. Apr. 25, 2024) (evaluating a claim for fraud and intentional deceit under Rule 9(b) and dismissing the complaint in its entirety for failure to satisfy the heightened pleading standard); *see also Ligaya Ronduen et al. The Geo Grp., Inc*., No. EDCV 23-481 JGB (SHKX), 2023 WL 5506001, at *5 (C.D. Cal. July 6, 2023) (same).  "Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

2003), quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997).

Plaintiffs have failed to allege facts regarding ***any*** relationship between themselves and Tyler, let alone a fiduciary or confidential relationship. In fact, the FAC fails to allege any facts to support that Plaintiffs *knew* of Tyler's existence prior to the alleged incident, let alone placed any confidence in Tyler to act on their behalf. (*See generally*, FAC.) The reverse is true as well—prior to the filing of the various lawsuits related to the Alleged Data Breach, Tyler was unaware of the existence of either Ms. Albert or Mr. Westmoreland. Thus, Plaintiffs' allegations are based solely on the legal conclusion that Tyler was "in a relationship wherein it owed a duty to the plaintiffs and all class members to disclose a material fact about the data breach." (FAC ¶260.) The Supreme Court of California has made clear, however, that such conclusions of law *are not* accepted as true for purposes of considering dismissal. *See, e.g., Zelig v. Cnty. Of Los Angeles*, 27 Cal.4th 1112, 1126 (2002).

Thus, Plaintiffs' legal conclusion of a relationship establishing a duty to disclose information need not be accepted as true. The only "fact" on which this alleged duty is based is that Plaintiffs claim to be victims of a data breach allegedly caused by Tyler's lack of access controls. (FAC ¶260.) Such fact *does not* establish a fiduciary or confidential relationship between Tyler and Plaintiffs and is insufficient to give rise to a duty for Tyler to disclose anything to Plaintiffs.

Plaintiffs' allegations regarding Tyler "role" center around various communications between Kevan Schwitzer—the individual who harvested the Case Data for JudyRecords.com—and Tyler's chief information security officer regarding the potential that Schwitzer had also impermissibly harvested data from Tyler's other clients. (FAC ¶262.)[3] These communications do not establish that there was any sort of

---

[3] Tyler disagrees with the characterizations of the various communications between Mr. Schwitzer and Mr. Ward in the FAC, including the suggestion, which is contradicted on the face of the FAC and the documents quoted therein, that Mr. Schwitzer indexed State Bar records to Google. (*Compare* FAC ¶59 with ¶244(c) (Mr. Schwitzer stating that he did *not* index anything to Google other than certain court opinions)). Tyler also disputes the relevance of these communications to this case, as they were not related to the Alleged Data Breach or to these specific Plaintiffs in any

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  relationship between Tyler and Ms. Albert or Mr. Westmoreland: Plaintiffs never put
2  their trust in Tyler, Plaintiffs never relied on Tyler, and Plaintiffs never entered into any
3  agreements with Tyler. (*Id.*)

4      In fact, Plaintiffs have not alleged that they ever communicated with Tyler or that
5  Tyler communicated with them, nor have Plaintiffs alleged that Tyler even knew who
6  Plaintiffs were or that Tyler *could* have communicated with them. (There are no
7  allegations, for example, that Tyler had access to any State Bar documents that might
8  identify Plaintiffs or contain their contact information).  Indeed, Plaintiffs necessarily
9  acknowledge that the notification they received regarding the Alleged Data Breach was
10 not from Tyler, it was from the State Bar (*see, e.g.,* FAC ¶¶262 (referencing the "State
11 Bar's Notice"; FAC, Ex. 2 (a copy of the State Bar Notice sent to Ms. Albert)), and they
12 have not and cannot allege that Tyler had any involvement in the drafting of that
13 notification (which Tyler did not). As such, Plaintiffs have failed to satisfy FRCP 9(b)'s
14 heightened pleading standard.  *See, e.g., Vess*, 317 F.3d at 1106.

15     Nor can Plaintiffs allege that Tyler was aware of the Plaintiffs' identities or
16 contact information such that they could have had a duty to disclose something to these
17 unknown Plaintiffs. (*Id.*)  Simply put, Tyler was not, is not, and never has been in a
18 fiduciary or confidential relationship with Plaintiffs. Tyler therefore had no duty to
19 disclose any of the supposed facts Plaintiffs allege Tyler failed to disclose.

20     In the absence of a fiduciary or confidential relationship, a duty *may* arise in
21 certain other circumstances.  *See, e.g., LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336
22 (1997) ("There are four circumstances in which nondisclosure or concealment may
23 constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with
24 the plaintiff; (2) when the defendant had exclusive knowledge of material facts not
25 known to the plaintiff; (3) when the defendant actively conceals a material fact from the
26
27 way, but instead involved Tyler's efforts to investigate and understand whether Mr.
   Schwitzer had harvested other potentially confidential information from other Tyler
   clients.  The fact that Tyler takes these allegations as true for purposes of this motion
28 does not imply any agreement that the allegations are accurate or properly before this
   Court. Tyler does not so agree.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.")  However, "[e]ach of the other three circumstances in which nondisclosure may be actionable presupposes the existence of ***some other relationship*** between the plaintiff and defendant in which a duty to disclose can arise."  *Id*., at 336-37 (emphasis added).  "As a matter of common sense, such a relationship can only come into being as a result of some sort of transaction between the parties."  *Id*.  As addressed above, Plaintiffs have alleged *zero* facts about *any* type of relationship between themselves and Tyler (and cannot do so, because no such relationship existed).  Nor have Plaintiffs identified how the information allegedly withheld from them is material, as required by the *LiMandri* factors.[4]

Moreover, "liability for concealment requires that the defendant have "suppressed the fact with the intent to defraud the plaintiff."  *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.App.4th 858, 869 (2008).  "In the context of fraud by concealment, the more precise formula is probably intent to induce conduct—action or inaction—that differs from what the plaintiff would have done if informed of the concealed fact."  *Id*.  Plaintiffs again make a sweeping and general legal conclusion that Tyler "intended to deceive plaintiffs and the members of the Class," (FAC, ¶ 265) but provide no facts to support such an unfounded conclusion.  Plaintiffs' unsupported legal conclusion need not be accepted as true.  *See, e.g., Zelig*, 27 Cal.4th at 1126.  Importantly, the FAC alleges no facts specifying what Tyler supposedly intended to induce Plaintiffs to do or not do.  *See Blickman Turkus, LP,* 162 Cal.App.4th at 869.

Plaintiffs generally allege they would have taken the Alleged Data Breach "more seriously" (FAC, ¶ 266) had Tyler disclosed certain facts regarding the notification the State Bar sent, but fail to allege what actual actions Plaintiffs might have taken, or what actions Tyler intended to induce Plaintiffs *not* to take.  And in particular, it is unclear

---

[4]     Indeed, as noted above, the information allegedly withheld—that the Case Data had been "indexed" to Google—is belied by the face of the FAC, wherein the owner of JudyRecords.com expressly confirms he did ***not*** index the Case Data from the State Bar to Google.  (FAC, ¶262.)  It could not be possible for a disclosure that something was indexed to Google to be material if it, in fact, it was not indexed to Google.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

how, if at all, Plaintiffs could have possibly taken the Alleged Data Breach "more seriously" than they had already done. For example, Tyler is alleged to have learned of the facts it allegedly omitted between March 9, 2022, and March 18, 2022. (*See, e.g.,* FAC, ¶ 262.) ***Plaintiffs filed the State Court Action on March 18, 2022***, and were necessarily preparing it before that date. It is hard to see what additional actions Plaintiffs might have taken that are "more serious" than preparing and filing, a class action complaint within nine days.

Moreover, the State Bar is alleged to have first learned of the alleged breach on February 24, 2022. (FAC, ¶1.) That means between the time the State Bar learned of the issue and the time Plaintiffs filed State Court Action, approximately three weeks had passed. Plaintiffs own legal strategy suggests that Plaintiffs were taking the Alleged Data Breach *very* seriously, and were doing so even before Tyler's alleged failure to disclose any facts.[5] As such, Plaintiffs' claim for deceit fails for a second and independent reason.

Finally, "[i]t must also appear, as with any other tort, that the defendant's wrongful conduct was a legal or proximate cause of harm to the plaintiff. These are two distinct elements. It is not enough that the misstatement (or concealment) actually harmed the plaintiff; it must have been made by the defendant with the intent to induce action (or inaction) by the plaintiff. Similarly, an intent to deceive the plaintiff is legally meaningless unless the deception caused injury." *Blickman Turkus, LP*, 162 Cal.App.4th at 869. Even assuming Plaintiffs could allege a fiduciary or confidential relationship—which they cannot—and that Tyler intended to induce Plaintiffs' inaction—which it did not—the FAC fails to allege facts sufficient to show how Tyler's alleged failure to disclose facts regarding the State Bar's notification (as opposed to the alleged data breach itself) was the proximate cause of damages to Plaintiffs.

---

[5] Tyler does not concede any "serious" data breach occurred, and further denies that Plaintiffs have been harmed in any way. Tyler highlights Plaintiffs' conduct only to illustrate that *they* seem to have acted as if *they* thought this was serious, and it appears unlikely that conduct would have changed regardless of what Tyler said or did not say.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## C. Unfair Competition

Ms. Albert's unfair competition claim fails in multiple respects as well.  In fact, the claim looks nothing like a proper claim under California's Unfair Competition Law ("UCL").   CAL. BUS. & PROF. CODE § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice[.]"  "[The UCL] is written in the disjunctive, establishing 'three varieties of unfair competition.'"   *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043 (9th Cir. 2010) (internal quotations and citations omitted).  Ms. Albert fails to allege a business act or practice that falls within any of the three categories of conduct that the UCL prohibits.

*First*, to the extent the UCL claim is based on fraudulent conduct—*i.e.,* the alleged failure to disclose that also forms the basis of the deceit claim—Ms. Albert's failure to satisfy FRCP 9(b) is fatal to her entire claim.  FRCP 9(b) applies to allegations of "fraudulent" conduct under the UCL.  *See, e.g., Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1158 (E.D. Cal. 2010) ("[T]o the extent Plaintiff asserts a UCL claim that is based on or grounded in fraud, it must meet the requirements of Rule 9(b)").  Indeed, a claim that alleges a unified course of fraudulent conduct must satisfy Rule 9(b) "***as a whole***."  *Kearns*, *supra*, 567 F.3d at 1127 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (emphasis added)).

In *Kearns*, the Ninth Circuit affirmed the dismissal of a plaintiff's "entire complaint" because it "allege[d] a unified course of fraudulent conduct," yet failed to satisfy the requirements of FRCP 9(b).  *Id*.  In addition, despite recognizing that "[e]ach prong of the UCL is a separate and distinct theory of liability . . . offer[ing] an independent basis for relief," the Court expressly rejected the plaintiff's invitation to "evaluate his complaint under the unfairness prong of the UCL[.]"  *Id*.  Because Ms. Albert's UCL claim—like the deceit claim—focuses on an alleged course of fraudulent conduct, the entire claim fails under Rule 9(b) regardless of which UCL prong applies.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

1    *Second*, Ms. Albert's UCL claim, to the extent it is based on the same alleged

2   failure to disclose as her deceit claim, fails for all the same reasons that the deceit claim

3   fails.  Tyler was under no duty to disclose any information to Ms. Albert, the allegedly

4   undisclosed information was not material, and Ms. Albert does not properly allege any

5   specific damages arising from the failure to disclose, as opposed to the Alleged Data

6   Breach more generally.

7    *Third*, the FAC fails to allege any "unlawful business practice" that would form

8   the basis of her UCL claim.  "For an action based upon an allegedly unlawful business

9   practice, the UCL 'borrows violations of other laws and treats them as unlawful

10   practices that the unfair competition law makes independently actionable.'"  *Stearns v.*

11   *Select Comfort Retail Corp.,* No. 08-2746 JF (PVT), 2010 WL 2898284, at \*16 (N.D.

12   Cal. July 21, 2010) quoting *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*,

13   20 Cal.4th 163, 180 (1999); *see also Jackson v. Ocwen Loan Servicing, LLC*, No. 2:10-

14   cv-00711-MCE-GGH, 2010 WL 3294397, at \*5 (E.D. Cal. Aug. 20, 2010) ("'Unlawful'

15   practices are practices 'forbidden by law, be it civil or criminal, federal, state, or

16   municipal, statutory, regulation, or court-made'"), citing *Saunders v. Superior Court*,

17   27 Cal.App.4th 832, 838-39 (1994), and *People v. McKale*, 25 Cal.3d 626, 632 (1979).

18   Allegations supporting a claim under the unlawful prong of the UCL "must state with

19   reasonable particularity the facts supporting the ... elements" of the alleged violation.

20   *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal.

21   1997), quoting *Khoury v. Maly's of Cal., Inc.*, 14 Cal.App.4th 612, 619 (1993).  Again,

22   to the extent Ms. Albert's UCL claim is based on the same allegations underlying the

23   negligence and deceit claims alleged against Tyler, they fail for the same reasons

24   articulated above.[6]

25   ───────────────────────────
[6]    The only additional facts plead in the UCL claim that are not otherwise the basis
26   for either the negligence (*see* FAC ¶277) or deceit (*see* FAC ¶¶279-280) claims are
      found in paragraph 278.  There, Ms. Albert alleges that Tyler violated federal securities
27   law by failing to disclose the supposed "litigation risk related to the data breach." This
      far-fetched and preposterous suggestion, in addition to being entirely speculative and
28   conclusory, evidences a complete misunderstanding of Tyler and the threshold for
      litigation disclosures in SEC filings. Certainly, because Ms. Albert does not allege that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

*Fourth*, the FAC also fails to state a claim under the UCL's unfairness prong. "[T]he proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). One of two prevailing tests might apply: (1) "'unfair' conduct occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'"; and (2) "'unfair' means 'conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition[,]' such that "any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id*. at 1169–70.

Regardless of which test applies, the FAC fails to state a claim for unfairness because it has "neither alleged that [Tyler's] actions violated a public policy, nor . . . tethered [its] claim of unfairness to a constitutional or statutory provision or regulation carrying out such a statutory policy[.]" *Krouse v. BAC Home Loans Servicing, LP*, No. 2:10-CV-03309-MCE-EF, 2011 WL 2367093, at *6 (E.D. Cal. June 9, 2011); *see Davis*, 691 F.3d at 1170-71 ("[Plaintiff] fails to state a claim under either definition . . . we will affirm a judgment of dismissal where the complaint fails to allege facts showing that a business practice is unfair." (citing *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 644 (2006)). Ms. Albert's UCL claim is simply not proper and should be dismissed.

## V.    <u>CONCLUSION</u>

In light of the foregoing, Tyler respectfully requests that the Court grant this motion, dismiss Plaintiffs claims against Tyler, with prejudice and without leave to amend, and grant Tyler such other and further relief to which it may be entitled.

---

she owns Tyler's stock, no damage to her could possibly stem from a supposed lack of disclosure in Tyler's SEC filings. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737 (1975).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

1
2                                **K&L GATES LLP**

3    Dated:  April 4, 2025              By: */s/ Zachary T. Timm*
4                                           Beth W. Petronio
                                            Christina N. Goodrich
5                                           Zachary T. Timm

6                                           Attorneys for Defendant
7                                           TYLER TECHNOLOGIES, INC.

8

9                       <u>**CERTIFICATE OF WORD COUNT**</u>

10        The undersigned, counsel of record for Defendant Tyler Technologies, Inc.,

11   certifies that this brief contains 6,627 words, which complies with the word limit of

12   L.R. 11-6.1.

13

14                                      */s/ Zachary T. Timm*
                                        Zachary T. Timm
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            19
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
          TO DISMISS FIRST AMENDED COMPLAINT