# EXHIBIT G

**Tentative Decision**

**_Albert et al v. Tyler Technologies, Inc. et al_**

Case No. 8:24-cv-01997-WLH-DFM

HRG: December 20, 2024, at 1:30 p.m.

NOTE: If both parties submit on the tentative ruling, please advise the Courtroom Deputy (WLH_Chambers@cacd.uscourts.gov) and no appearance will be required.

---

Before the Court are Plaintiffs' Corrected Motion for Preliminary Injunction ("Prelim. Inj. Mot.," Docket No. 73), Plaintiffs' Corrected Motion Amend the First Amended Complaint to Substitute Parties ("Mot. to Amend," Docket No. 74), State Bar Defendants' Motion to Dismiss ("State Bar Defs. MTD," Docket No. 79), State Bar Defendants' Request for Judicial Notice in support of the motion ("State Bar Defs. RJN ISO MTD," Docket No. 79-2), Defendant Tyler Technologies' Motion to Dismiss ("Tyler Technologies MTD," Docket No. 80), Plaintiffs' Request for Judicial Notice in support of their opposition to Tyler Technologies' ("Plfs. RJN ISO Opp'n to Tyler MTD," Dockets No. 88-2), and Plaintiffs' Request for Judicial Notice in support of their opposition to State Bar Defendants' Motion ("Plfs. RJN ISO Opp'n to State Bar Defs. MTD," Docket No. 93-1). For the following reasons, the Court **GRANTS** all three Requests for Judicial Notice, **GRANTS** both Motions to Dismiss in their entirety and therefore **DENIES as Moot** Plaintiffs' Corrected Motion for Preliminary Injunction and Corrected Motion to Amend the First Amended Complaint.

The Court is additionally in receipt of two Requests for Judicial Notice filed regarding Plaintiffs' Motion for Preliminary Injunction. (Docket No. 73-7, 82-1). Because the Court denies the Motion for Preliminary Injunction as moot, the Court does not reach these requests. Finally, the Court in receipt of Plaintiffs' Request to Strike Tyler Technologies' reply brief for Tyler Technologies' alleged failure to

1

comply with a local rule information on the title page of the brief. ("Mot. to Strike," Docket No. 101). Because Tyler Technologies filed a notice of errata correcting the title page (Docket No. 106), the Court **DENIES** the request as Moot.

## I.    BACKGROUND

### A.    <u>Factual Background</u>

#### i.    *Albert's Disciplinary History and the Data Breach Case*

This case is brought by six pro se plaintiffs. (First Amended Complaint ("FAC"), Docket No. 57 ¶¶ 2-8). The plaintiffs are as follows: Lenore Albert, who was disbarred by Defendant California State Bar ("State Bar") in July 2024 (*Id.* ¶ 84); Leslie Westmoreland who was disbarred for allegedly assisting Albert in the unauthorized practice of law while Albert was suspended (*Id.* ¶¶ 87-99); James Ocon, whose business Albert supported and who was allegedly harmed by State Bar investigations into Albert (*Id.* ¶¶ 100-112), and; Ryan McMahon, Larry Tran and Theresa Marasco (collectively, "Albert's Former Client Plaintiffs"), each of whom were represented by Lenore Albert at the time of Albert's disbarment and who each allege that they were detrimentally impacted by Albert's disbarment. (*Id.* ¶¶ 5-7).

The thrust of Plaintiffs' claims is that the State Bar and its employees have undertaken a decade-long campaign to harass Plaintiff Albert in retaliation for Albert's litigation against the State Bar. (*see generally* FAC). Plaintiffs further allege harms stemming from a data breach in which confidential information form State Bar investigations "ended up on the internet." (*Id.* ¶ 84). Plaintiff Albert, the State Bar and Tyler Technologies have a storied history which the Court does not attempt to fully recount here. Instead, the Court focuses on the facts most relevant to resolving the motions before the Court.

While practicing as an attorney, Plaintiff Albert sued the State Bar on December 13, 2014. (*Id.* ¶ 38). About one year later, the State Bar filed

disciplinary charges based on Albert's alleged failure to obey court orders.  (*Id.* ¶ 30; *see* State Bar Defendants RJN ISO MTD Ex. 19 ("2018 order"), Docket No. 79-21).  On February 14, 2018, the State Bar suspended Albert's license until she paid ordered sanctions.  (2018 Order).  On July 10, 2019, Albert's license was again suspended, and Albert was ordered to pay sanctions to former clients.  (State Bar Defendants RJN ISO MTD Ex. 24 ("2019 order"), Docket No. 79-26).  Pursuant to these decisions, Albert's license to practice law was suspended from at least February 14, 2018, to May 5, 2021.  (FAC ¶ 876).

On February 22, 2022, the State Bar announced a data breach in which information on State Bar investigations, including information regarding Albert, "ended up online."  (FAC ¶¶ 37, 289).  Albert, along with two prospective clients, presented the State Bar with a claim stemming for the alleged breach on or about March 21, 2022.  (State Bar Defs.' RJN ISO MTD Exh. 36 ("March 2022 Claim Form"), Docket No. 79-38 at 14-20).[1]  On March 18, 2022, Albert filed a class action against the State Bar of California, Tyler Technologies a company which provided technology services to the State Bar (FAC ¶ 9), and Rick Rankin, who worked as an independent contractor for Tyler Technologies on the State Bar project (*Id.* ¶ 11).  (*Id.* ¶ 293).  Albert, importantly, was not a plaintiff in the class action; she represented the putative class as an attorney.  (*Roe v. State Bar* Fourth Amended Complaint, Docket No. 80-2 ¶ 144 ("Excluded from the class are . . . plaintiff's counsel)).[2]

---

[1] On or about May 2, 2022, the State Bar notified Albert that she had six months to file a court action based on the claim.  (State Bar Defs.' RJN ISO MTD Ex. 37 ("Rejection of March 2022 Claim"), Docket No. 79-39).

[2] Though Tyler Technologies does not explicitly ask the Court to take judicial notice of this document, the Court finds the document appropriate for judicial notice given that it is a court filing. *CarMax Auto Superstores.* 94 F. Supp. 3d at 1087.

  ii.   *Albert's Disbarment*

On April 29, 2022, the State Bar filed a notice of disciplinary charges
against Albert alleging unauthorized practice of law. (*Id.* ¶ 294). Plaintiffs allege
that these charges were in retaliation for the *Roe v. State Bar* lawsuit. (*Id.*). In
December 2022, a State Bar hearing was held regarding Albert's alleged
unauthorized practice of law. (*Id.* ¶ 294). On April 3, 2023, the hearing judge
issued a decision on the matter, which both Albert and the State Bar appealed.
(State Bar Defendants RJN ISO MTD Ex. 2 ("2024 Review Department Order"),
Docket No. 79-4 at 3). The State Bar Review Department recommended
disbarment. (*Id.*)

Albert filed a timely petition to the California Supreme Court for review of
the decision and specifically challenged the costs and sanctions ordered,
characterizing them as excessive fines. (Emergency Petition to Reinstate License
and Petition for Review and Damages, *In the Matter of Lenore Luann Albert*, Case
No. S284532, State Bar Court Case No. SBC-22-O-30348-DGS ("Albert Cal.
Supreme Court Petition"), Docket No. 82-4 at 122-124).[3] The Supreme Court of
California denied Albert's petition and issued an order accordingly, specifically
imposing sanctions and costs. (State Bar Defendants RJN ISO MTD Ex. 3 ("Cal.
Supreme Court 2024 Order"), Docket No. 79-5). Albert has been ordered pay
$32,500 in costs and sanctions to the California Bar. (FAC ¶ 868). Costs were

---

[3] While the Court does not reach the majority of the Requests for Judicial Notice regarding
Plaintiffs' Motion for Preliminary Injunction, the Court notices the Albert's petition because court
filings are proper subjects of judicial notice. *CarMax Auto Superstores California LLC*, 94 F.
Supp. 3d at 1087.

assessed in accordance with Business and Professions Code section 6086.10. (Cal. Supreme Court 2024 Order).

At the time of Albert's disbarment, Albert was representing Plaintiffs Tran, Marasco and McMahon. (FAC ¶¶ 645, 655, 660). Each alleges that they were harmed by the loss of Albert's representation. (FAC ¶¶ 645, 655, 660). Plaintiff Ocon alleges that the disciplinary proceedings cost him his business because Albert, who ran operations and marketing for Plaintiff Ocon's business, was being constantly interrupted and distracted by State Bar employees." (FAC ¶¶ 101-12).

        iii.   *Westmoreland's Disbarment*

As stated above, Albert's license to practice law was suspended from at least February 14, 2018, to May 5, 2021. (FAC ¶ 876). On July 19, 2019, Plaintiff Westmoreland hired Albert to assist on cases, including two cases in federal court. (FAC ¶ 88). On September 9, 2022, the State Bar filed disciplinary charges against Westmoreland for allegedly aiding Albert in the unauthorized practice of law. (*Id.* ¶ 88). Plaintiffs characterize these charges as "retaliation for employing" Albert. (*Id.*) After disciplinary proceedings, Westmoreland was disbarred, effective September 23, 2023. (*Id.* ¶ 90). Westmoreland was ordered to pay $5,362 in costs and sanctions. (*Id.* ¶ 875).

**B.**  **Procedural History**

On September 16, 2024, Plaintiffs filed a Complaint in this case. (Complaint, Docket No. 1). On November 04, 2024, Plaintiffs filed an amended complaint. (FAC, Docket No. 57). The Complaint spans 122 pages and asserts twenty causes of actions against the following defendants: the State Bar of California ("State Bar), Tyler Technologies Inc., a company which provided technology services to the State Bar, Rick Rankin who worked as an independent

contractor for Tyler Technologies on the State Bar project,[4] Hon. Patricia Guerrero,[5] the Chief Justice of the California Supreme Court, sued "only to aid this Court in effectuating any orders such as injunctive relief,"  and Steve Mazer, Leah Wilson, Ruben Duran, Sherell McFarlane, Katherine Kinsey, Benson Hom, Cindy Chan, Suzanne Grandt, George Cardona[6] (collectively, "State Bar Employee Defendants").  (FAC ¶¶ 9-22, 733, 750, 863).

Plaintiffs assert 42 U.S.C. § 1983 privacy violation and corresponding supervisory liability claims against State Bar Employee Defendants (Claims 1-3); free speech, due process, and wrongful disciplinary claims against State Bar Employee Defendants based on their decision to pursue disciplinary charges against Albert and Albert's ultimate disbarment (Claims 4, 8, 9, 13-16); a *Brady* violation against one State Bar Employee Defendant (Claim 12); a claim for unconstitutional excessive fines against State Bar Employee Defendants (Claim 18); a money had and received claim against the State Bar for failure to refund Albert's bar dues after disbarring her (Claim 17); anti-trust claims against the State Bar and State Bar Employee Defendants (Claims 19-20); negligence against Tyler Technologies,' Rankin and the State Bar of California based on their alleged roles in the data breach (Claims 5-7[7]); and, finally, claims of negligent and intentional

---

[4] Plaintiffs filed a notice of settlement between Plaintiffs and Rick Rankin on December 17, 2024. (Notice of Settlement, Docket No. 110).

[5] Plaintiffs mistakenly identify Chief Judge Guerrero as Chief Judge Rodriguez in their First Amended Complaint.  (Mot. to Amend).

[6] This judicial officer, prior to being appointed to the Los Angeles Superior Court, overlapped with Defendant Cardona while employed at the United States Attorney's Office for most of the time-period between 2000-2017.  The Court finds nothing about this former co-worker relationship, which occurred entirely before Defendant Cardona joined the State Bar, requires recusal from this matter.

[7] Plaintiffs filed a notice of settlement between Plaintiffs and Rick Rankin regarding Claim 6. (Notice of Settlement).

interference with prospective economic advantage against Tyler Technologies (Claims 10-11).

Tyler Technologies and the State Bar Defendants each filed timely Motions to Dismiss the First Amended Complaint. (State Bar Defs. MTD; Tyler Technologies MTD). Plaintiff Albert filed an opposition to each Motion. (Albert Opp'n to State Bar Defs. MTD, Docket No. 96; Albert Opp'n to Tyler Technologies MTD, Docket No. 88). Each of the Albert Former Client Plaintiffs filed their own oppositions to the State Bar Defendants' Motion. (Marasco Opp'n, Docket No. 92; Tran Opp'n, Docket No. 91; McMahon Opp'n Docket No. 89). The State Bar filed a request for judicial notice in support of their Motion to Dismiss (State Bar Defs. RJN ISO MTD), and Plaintiffs filed two requests for judicial notice in support of their opposition to the two Motions to Dismiss. (Plfs. RJN ISO Opp'n to Tyler MTD.; Plfs. RJN ISO Opp'n to State Bar Defs. MTD).

On November 9, 2024, Plaintiffs Albert and Westmoreland filed a Motion for Preliminary Injunction to enjoin the State Bar from enforcing costs and sanctions against the Plaintiffs. (Prelim. Inj. Mot). The State Bar filed a timely opposition (Prelim. Inj. Opp'n, Docket No. 82), and Albert and Westmoreland filed a timely reply brief. (Albert and Westmoreland Reply re: Prelim. Inj. Mot, Docket No. 85). In her opposition brief to the State Bar Defendants' Motion to Dismiss, Albert requested that the Court refer to the briefing on the preliminary injunction motion. (Albert Opp'n to State Bar Defs. MTD at 3).

## II.   REQUESTS FOR JUDICIAL NOTICE

State Bar Defendants filed a Request for Judicial Notice in support of their Motion to Dismiss. (State Bar Defs.' RJN ISO MTD). Plaintiffs filed requests for Judicial Notice in support of their opposition to the two present Motions to Dismiss. (Plfs. RJN ISO Opp'n to State Bar Defs. MTD; Plfs RJN ISO Opp'n to Tyler MTD).

### A.    <u>Legal Standard</u>

A district court may take notice of a fact not subject to reasonable dispute if it is generally known within the court's jurisdiction or if it can "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b).  "Court orders and filings are proper subjects of judicial notice." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1087 (C.D. Cal. 2015).  "Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Gerritsen v. Warner Bros. Ent.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015).  A Court may also take notice of pre-lawsuit claims and related records. *Varo v. Los Angeles Cnty. Dist. Attorney's Off.*, 473 F.Supp.3d 1066, 1070–71 (C.D. Cal. 2019); *D.K. ex rel. G.M. v. Solano Cnty. Off. of Educ.*, 667 F.Supp.2d 1184, 1189–90 (E.D. Cal. 2009).

### B.    <u>Analysis</u>

State Bar Defendants ask the Court to notice thirty-eight documents comprising court filings and orders in cases regarding Albert's discipline and in cases filed by Albert, State Bar records regarding Albert's discipline and claim forms filed by the present Plaintiffs.  (State Bar Defs.' RJN ISO MTD).  "Court orders and filings are proper subjects of judicial notice." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1087 (C.D. Cal. 2015).  The Court notices the State Bar records because "the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Gerritsen v. Warner Bros. Ent.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015).  Finally, the Court notices the claim forms because pre-lawsuit claims are "matters of public

record whose accuracy cannot reasonably be questioned."  Varo, 473 F. Supp. 3d at 1071-72.

Plaintiffs ask the Court to notice fourteen documents in support of Albert's opposition to the State Bar Defs. Motion to Dismiss and four documents in support of Albert's opposition to Tyler Technologies' Motion to Dismiss.  (Plfs.' RJN ISO Opp'n to State Bar Defs. MTD; Plfs.' RJN ISO Opp'n to Tyler).  The Court notices each of the underlying documents as they are either court orders, filings or public records.

## III.  MOTIONS TO DISMISS

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6) a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  The court is not required to accept as true legal conclusions couched as factual allegations.  See *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In deciding a Rule 12(b)(6) motion, a court "may generally consider only

allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### B. <u>Analysis</u>

#### iv. *Negligence Claims*

In claims five and seven, Albert alleges that Tyler Technologies and the State Bar, respectively, were negligent in failing to prevent a data breach which allegedly exposed confidential information about investigations into Albert. (FAC ¶¶ 526-46, 563-583). Each of these claims are barred by the statute of limitations.

##### a. Negligence Claims Against Defendants Tyler Technologies

The statute of limitations for negligence claims against Tyler Technologies is two years from accrual of Albert's claim. Cal. Code. Civ. P. § 335.1. A claim accrues once a plaintiff is injured and is aware of that injury. *Martinez v. Citimortgage, Inc.*, No. CV15-9737 PSG (MRWX), 2016 WL 7469867, at *3 (C.D. Cal. May 19, 2016); *see Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 926-27 (Cal. 1988) (*en banc*). Albert was aware of her injury from the alleged breach by March 14, 2022. (March 2022 Claim Form). On that date, Albert filled out and signed a government claims form claiming that she had been injured by the Data Breach.

(*Id.*)  As such, absent any tolling, the statute of limitations expired on March 14, 2024.  *See* Cal. Code. Civ. P. § 335.1.

Albert argues that the statute of limitations was tolled under either the *American Pipe* rule or the doctrine of equitable tolling.  (Albert Opp'n to State Bar Defs. MTD at 7-8; Albert Opp'n to Tyler MTD at 14-15).  When a class action is pending, the *American Pipe* rule suspends the applicable statute of limitations for all claimed class members until a class member opts out of the class or until class certification has been denied.  *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1097 (9th Cir. 2024).  Albert argues that the statute of limitations for her claims against Tyler Technologies and Rankin are therefore tolled given that class certification has yet to be denied in *John Roe v. State Bar of California*, a class action regarding the data breach for which Albert served as class counsel.  (Albert Opp'n to State Bar Defs. MTD at 7-8; Albert Opp'n to Tyler MTD at 14-15; FAC ¶¶ 38-29).  The *American Pipe* rule, however, does not toll the statute of limitations for Albert as Albert was not a potential member of the class.  The *Roe. v. State Bar* complaint explicitly excluded Albert from the definition of the class.  (Ex. E to Tyler Technologies' MTD, (*Roe v. State Bar* Fourth Amended Complaint ¶ 144 ("Excluded from the class are . . . plaintiff's counsel")).[8]

The Court, likewise, declines in its discretion to apply the doctrine of equitable tolling.  "The [equitable tolling] doctrine applies occasionally and in special situations to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court."  *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 467 P.3d 1033, 1037 (Cal. 2020) (quotation marks and citations omitted).  Under the doctrine, Courts may toll the

---

[8]Though Tyler Technologies does not explicitly ask the Court to take judicial notice of this document, the Court finds the document appropriate for judicial notice given that it is a court filing. *CarMax Auto Superstores.* 94 F. Supp. 3d at 1087.

statute of limitations "where justice demands it" if defendants are timely notified of the claims, defendants would not suffer prejudice and the plaintiff acted reasonably and in good faith. *Addison v. State of California*, 578 P.2d 941, 944 (Cal, 1978). The Court does not view this circumstance as one where the plaintiff acted reasonably and in good faith such that justice demands equitable tolling– Albert, a trained attorney, knew of her injury in March 2022, chose not to be part of a class action and elected to not file a separate action regarding the data breach until September 16, 2024, over six months after the statute of limitations expired. The Court therefore DISMISSES with prejudice the negligence claim (Claim 5) against Tyler Technologies.

### b. Negligence Claim Against the State Bar

The California Torts Claim Act governs the statute of limitations for the negligence claim against the State Bar. Under the California Torts Claim Act, plaintiffs like Albert cannot file a lawsuit "until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." Cal. Gov. Code § 945.4. If the public entity issues a notice of its response to the claim, the claimant must bring suit within six months of the notice. Cal. Gov. Code § 945.6(a)(1). If the public entity does not provide written notice of a response, a claimant must bring suit within two years from the accrual of the cause of action. Cal. Gov. Code § 945.6(a)(2).

Albert presented the State Bar with a claim stemming from the alleged data breach on or about March 21, 2022. (March 2022 Claim Form). On or about May 2, 2022, the State Bar provided notice that it had rejected her claim and that she had six months to file a court action based on the claim. ("Rejection of March 2022 Claim"). Plaintiff, instead, filed an action for her own claim more than two years later. (*See* Complaint). As explained in the prior sub-section, neither

12

equitable tolling nor the *American Pipe* rule applies.  As such, the Court DISMISSES with prejudice the negligence claim against the State Bar (Claim 7).

     v.    *Additional Claims Against Tyler Technologies*

In addition to Albert's negligence claim, which the Court dismisses as untimely, all Plaintiffs allege that Tyler Technologies negligently and intentionally interfered with their prospective economic advantage.  (FAC ¶¶ 683-714).

To state a claim for negligent or intentional interference with a prospective economic advantage, a plaintiff must show that (1) an economic relationship existed between plaintiff and a third parties; (2) the defendant knew of the relationship; (3) the defendant negligently interfered with relationship or, in the case of intentional inference, intentionally interfered with the relationship, and (4) the relationship was interfered with such that the plaintiff lost the economic benefits expected from the relationship.  *Venhaus v. Shultz*, 66 Cal. Rptr. 3d 432, 435-36 (Cal. Ct. App. 2007) (listing elements of negligent interference); *Nolan Miller Incorporation v. Hees*, No. 217CV07355ODWPLA, 2018 WL 3533392, at *7 (C.D. Cal. July 20, 2018) (listing elements of intentional interference).  "To state a claim for intentional interference, the plaintiff must plead that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'"  *Id.* (quoting *Della Penna v. Toyota Motor Sales*, *U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)).  (FAC ¶¶ 699-714).

Plaintiffs fail to state a claim for Tyler Technologies' intentional or negligent interference with prospective economic advantage.  Plaintiffs allege that Albert was in an economic relationship with each of the other Plaintiffs (FAC ¶¶ 684, 699), and that each relationship was interfered with due to the State Bar's disciplinary process against Albert and ultimate revocation of her law license.  (*Id.* ¶¶ 689, 702).  Plaintiffs, however, do not plausibly allege that Tyler Technologies knew of the economic relationship between the present plaintiffs.

13

Plaintiffs argue that Tyler Technologies knew of Westmoreland and Albert's relationship given that Plaintiff Westmoreland fell within the proposed class definition of *Roe v. State Bar*, in which Tyler Technologies was a Defendant (FAC ¶¶ 685, 700), and that Tyler Technologies "knew or should have known" of Albert's relationship with Albert's Former Client Plaintiffs because Tyler Technologies could have searched databases or asked the State Bar of California for client lists. (FAC ¶¶ 686). Neither of these allegations plausibly suggest that Tyler Technologies actually *knew* about Plaintiffs' prospective economic relationships with each other, so Plaintiffs' claims fail. *Venhaus*, 66 Cal. Rptr. 3d at 435-36 (Cal. Ct. App. 2007); *Nolan Miller Incorporation*, 2018 WL 3533392 at *7.

Plaintiffs additionally fail to allege any facts that plausibly suggest that Tyler Technologies negligently or intentionally interfered with Plaintiffs' prospective economic advantage. Plaintiffs' interference claims are based on the State Bar's disciplinary proceedings against Albert and the ultimate revocation of her license—not any action nor negligence by Tyler Technologies. (FAC ¶¶ 689, 702). The only allegations connecting Tyler Technologies to the State Bar's actions are allegations that (1) Tyler Technologies "was in an agency relationship with the Defendant State Bar of California and as a result is liable for the conduct of Defendant State Bar of California and its employees." (FAC ¶¶ 694, 708); and (2) Tyler Technologies "directed permitted ratified or acted in concert with Defendant State Bar of California in revoking Plaintiff Lenore Albert's license to practice law to gain an advantage in the State Bar data breach case." (FAC ¶¶ 695, 709). Both of these allegations are the type of wholly conclusory allegations which are insufficient to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). Accordingly, Plaintiffs have failed to state a claim for Tyler Technologies' intentional or negligent interference with prospective economic advantage.

14

While the Court is skeptical that Plaintiffs can correct their errors on amendment, the Court DISMISSES without prejudice the interference with prospective economic relationship causes of actions (Claims 10 and 11).

vi.   *Additional Claims Against the State Bar*

In addition to Albert's negligence claim, which the Court dismisses as untimely, Plaintiffs assert three causes of actions against the California State Bar. In claim seventeen, Plaintiff Albert makes a claim against the State Bar of California for money had and received given that she paid bar dues on January 28, 2024, but was disbarred later that year.  (FAC ¶¶ 852-58).  In claims nineteen and twenty, all Plaintiffs allege antitrust violations against the State Bar as well as State Bar Employee Defendants.  (FAC ¶¶ 891-950).

Under the Eleventh Amendment to the Constitution, a state is immune from suit in federal court, unless that state consents to being sued.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  This sovereign immunity extends to arms of the state.  *Kohn v. State Bar of California*, 87 F.4th 1021, 1026 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1465, 218 L. Ed. 2d 694 (2024).  The Ninth Circuit has held that the State Bar "is an arm of the state and entitled to sovereign immunity."  *Id.* at 1032.  Sovereign immunity, however, is not a bar to contract claims; by entering into a contract, a state in essence waives sovereign immunity on claims arising from that contract.  *Souza & McCue Const. Co. v. Superior Ct. of San Benito Cnty.*, 57 Cal. 2d 508, 510, 370 P.2d 338, 339 (Cal. 1962) ("When the state makes a contract with an individual, it is liable for a breach of its agreement in like manner as an individual, and the doctrine of governmental immunity does not apply.")

Plaintiffs appear to concede that sovereign immunity bars their antitrust claims.  (*See* Albert Opp'n at 12 (only arguing that sovereign immunity does not apply to money had an received claim); Marsaco Opp'n at 7; Tran Opp'n at 6;

McMahon Opp'n at 6 (each stating, erroneously, that sovereign immunity does not apply because plaintiff did not sue the State Bar)).  Because the State Bar is immune from these claims in federal court, the Court DISMISSES with prejudice the anti-trust claims (Claims 19 and 20) as to the State Bar.

Existing law does not settle whether sovereign immunity bars money had and received claims against the government.  Without citing any authority, Albert asserts that a money had and received claim is a contract claim and is therefore not barred by sovereign immunity.  (Albert Opp'n at 12).  Even if sovereign immunity does not bar the claim, Plaintiff Albert fails to allege sufficient facts to state a money had and received claim.  "A cause of action for money had and received is stated if it is alleged [that] the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff."  *Avidor v. Sutter's Place, Inc.*, Cal. Rptr. 3d 804, 816 (Cal. Ct. App. 2013) (citations and quotation marks omitted).  Albert alleges that the State Bar of California received her money for the benefit of Albert to practice law in California for 2024 but that the money was not used for Albert's benefit given that she was later disbarred. (FAC ¶¶ 852-58).  Albert does not properly allege that the State Bar is "indebted" to Albert as she does not allege any legal basis for the proposition that the State Bar must reimburse an attorney for dues when the State Bar revokes that attorney's license.  (*See id.*).  The Court, therefore, DISMISSES the money had and received claim (Claim 17) but does so without prejudice.

vii.   *Claims Against State Bar Employees*

Plaintiffs assert fourteen causes of actions against State Bar Employees, comprising twelve 42 U.S.C. § 1983 claims (Claims 1-4, 8, 9, 12-16, 18) and two anti-trust claims (Claims 19 and 20).

a.   Applicability of Sovereign Immunity

State Bar Defendants argue that sovereign immunity bars Plaintiffs' claims against the State Bar Employee Defendants.  "A suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."  *Pennhurst*, 465 U.S. at 102.  There are two key exceptions to this rule.  First, under the *Ex Parte Young* doctrine, when state official violate federal law, plaintiffs may seek to enjoin state officials acting in their official capacity from continuing to violate the law.  *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1220 (9th Cir. 2023).  Second, under 42 U.S.C. § 1983, plaintiffs may sue state officials in their individual or personal capacity for damages when the officials violate a federal right while acting under color of state law.  *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 175 (2023).  Plaintiffs sue the state bar employees in their personal capacity pursuant to 42 U.S.C. § 1983.  (FAC ¶¶ 474, 490, 499, 509, 522, 586, 629, 732, 749, 762, 811, 831, 846, 885).  As such, the Court finds that sovereign immunity does not apply to these claims.

Sovereign immunity, however, does bar Plaintiffs' antitrust claims against the State Bar Employee Defendants.  Construing the complaint in the light most favorable to Plaintiffs, Plaintiffs assert antitrust claims against State Bar Employee Defendants in both their personal and official capacity.  (FAC ¶¶ 891-950).  Plaintiffs' claims against State Bar Employee Defendants in their official capacity fail because the type of injunctive relief sought is not the type of relief that Courts can order under the *Ex Parte Young* exception to sovereign immunity for state

17

officials.  Plaintiffs seek an order prohibiting "a federal court in this district from refusing to admit or reciprocally disbarring [Albert and Westmoreland] based on a California State Bar admission status."  (FAC ¶¶ 912, 949).  This claim for injunctive relief is not "prospective relief against a state official for a violation of federal law" and therefore does not fall under the *Ex Parte Young* exception to sovereign immunity.  *See R.W.*, 77 F.4th and 1220.

Plaintiffs anti-trust claims for damages against State Bar Employee Defendants are also barred by sovereign immunity.  Plaintiffs do not sue the State Bar Employee Defendants for alleged anti-trust violations pursuant to 42 U.S.C. § 1983.  Plaintiffs likely cannot do so given that a federal statute is only enforceable under § 1983 when the statute unambiguously creates a federal right for an identified class through "'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class."  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 287 (2002)).  Plaintiffs make no showing that the Sherman Antitrust Act does so.  The court, therefore DISMISSES without prejudice Plaintiffs' anti-trust claims as to State Bar Employee Defendants (Claims 19 and 20).

### b.  Quasi-judicial immunity

State Bar Defendants contend that State Bar Employee Defendants are entitled to absolute, quasi-judicial immunity from all of Plaintiffs' claims.  State Bar Court judges and prosecutors are entitled to absolute immunity from monetary damages when performing any quasi-judicial or quasi-prosecutorial functions. *Hirsh v. Justs. of Supreme Ct. of State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) ("The Bar Court judges and prosecutors have quasi-judicial immunity from monetary damages.").  When quasi-judicial or quasi-prosecutorial immunity applies, it cannot be overcome by allegations of bad faith or malice.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  This absolute immunity, however, does not cover all

conduct of State Bar Employees. The immunity only applies to quasi-judicial or quasi-prosecutorial functions, not functions which are exclusively investigative or administrative. *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 647 (N.D. Cal. 2007), *aff'd*, 308 F. App'x 176 (9th Cir. 2009) (*citing* Schwartz & Kirklin, Section 1983 Litigation § 9.05[K] ("[U]nder the functional approach, the immunity to which the investigator is entitled should depend upon an assessment of whether the contested activities were quasi-prosecutorial as opposed to administrative or investigative ....")).

> 1. Claims based on State Employee Defendants' Decision to Pursue Disciplinary Charges against Albert

Seven of Plaintiffs' remaining causes of actions attempt to challenge actions taken pursuant to State Employee Defendants prosecutorial functions. "[It] is well established that a prosecutor has absolute immunity for the decision to prosecute a particular case." *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005). Plaintiff Albert and Albert Former Employee Plaintiffs' first amendment claims (Claims 4, 8, 9), Albert and Westmoreland's wrongful disciplinary action claims (Claims 13), and Plaintiff Albert, Plaintiff Ocon and Albert Former Employee Plaintiffs' 42 U.S.C. § 1983 claims regarding Albert's disbarment (Claims 14-16) all challenge state bar employees' decisions to pursue disciplinary charges against Albert and/or Westmoreland. (FAC ¶¶ 510-525, 584-623, 624-682, 741-797). The decision to pursue disciplinary charges is a decision to prosecute shielded by absolute immunity. *See Botello*, 413 F.3d 971 at 967.

Plaintiffs largely concede that State Employee Defendants are entitled to quasi-judicial immunity for their decision to pursue disciplinary charges. Albert's opposition notes that quasi-judicial immunity does not apply to investigative functions and instructs the court to review "the reply brief to the preliminary injunction motion for further analysis." (Albert Opp'n at 4). The cited reply brief

only discusses quasi-judicial immunity as to Albert and Westmoreland's excessive fines claim, a claim which is distinct from the claims based on State Bar Employee Defendants' decision to pursue disciplinary charges against Albert. (Albert and Westmoreland Reply re: Preliminary Injunction at 4-5). Albert Former Client Plaintiffs all argue that quasi-judicial immunity is inapplicable to their claims given that the employees sued never prosecuted them. (Marsaco Opp'n at 4; Tran Opp'n at 4; McMahon Opp'n at 6.) This argument is unavailing because Albert Former Client Plaintiffs' 42 U.S.C. § 1983 claims regarding Albert's disbarment (Claims 9 and 16) are based entirely on the State Bar Employees' decision to prosecute Albert—a decision for which the employees receive absolute immunity from damage claims.

Because State Defendant Employees are entitled to absolute immunity from damages for pursuing disciplinary charges against Albert, the Court DISMISSES with prejudice the claims which challenge this decision (Claims 4, 8-9, 13-16).

### 2. Privacy Claims

Plaintiffs' privacy related claims against State Bar Employee Defendants are also barred by the Defendants' immunity. Plaintiff Albert alleges that certain State Bar Employee Defendants unreasonably searched or seized a variety of evidence while investigating Albert. (Claim 1; FAC ¶¶ 439-76). In the alternate, Albert alleges that certain State Bar Employee Defendants invaded her right to privacy. (Claim 3; FAC ¶¶ 503-09). Albert and Albert Former Client Plaintiffs assert supervisory liability against remaining State Bar Employee Defendants based on these allegations. (Claim 2, FAC ¶¶ 477-502).

Albert argues that "prelitigation conduct like investigative functions do not gain quasi-judicial immunity." (Albert Reply at 11 (citing *Delacruz v. State Bar of Cal.*, No. 16-cv-06858-BLF (SVK), 2017 WL 7310715, at *3 (N.D. Cal. June 21, 2017), *report and recommendation adopted*, 2017 WL 3129207 (N.D. Cal. July 24,

2017))).  Albert's recitation of the law obscures a key point: State Bar Employee
Defendants retain absolute immunity for investigations after electing to pursue
disciplinary charges, so long as the investigations are in support of prosecutorial
functions.  *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) ("Prosecutors are
absolutely immune from liability for gathering additional evidence after probable
cause is established or criminal proceedings have begun when they are performing
a quasi-judicial function."); *Hays v. Clark Cnty.*, Nevada, No.
207CV1395LDGPAL, 2008 WL 11452125, at *4 (D. Nev. Sept. 30, 2008) ("[A]
prosecutor is entitled to absolute immunity for gathering evidence after a probable
cause determination in preparation for trial").

The State Bar initiated disciplinary proceedings to revoke Albert's license
on or about December 15, 2015.  (FAC ¶ 202).  Each of the privacy-related
allegations pertain to State Bar Employee Defendants' conduct following the
initiation of disciplinary proceedings against Albert.  (FAC ¶¶ 439-509).  Based on
those facts, it is clear that Plaintiff have failed to allege any facts that the State Bar
Employee Defendants were acting in a purely investigative function, rather than a
quasi-judicial function.  Because the timing outlined in the Complaint
demonstrates that State Bar Employee Defendants were acting in a quasi-judicial
function, the Court finds absolute immunity applies to the actions underlying
Plaintiffs' privacy claim.  Even if absolute immunity does not apply, Plaintiffs
appear to concede that the Defendants are entitled to qualified immunity and *Noer-
Pennington* immunity on the federal claims.  (*See generally* Albert Opp'n,
McMahon Opp'n, Tran Opp'n and Maraco Opp'n (failing to address Defendants'
qualified immunity and *Noer-Pennington* immunity claims)).  As such, the Court
DISMISSES without prejudice Plaintiffs' privacy claims (Claims 1-3).

### 3. *Brady* Claims

Finally, Albert's damages claim for an alleged *Brady* violation is also barred by immunity.

Albert alleges that during a December 2022 State Bar Hearing, State Bar Employee Defendant Cindy Chan produced to the State Bar Court an incomplete email string between Plaintiff Albert and an opposing counsel. (FAC ¶¶ 720-23). Albert, feeling that the portion of the email string was misleading, submitted the full email string to the Court. (*Id.* ¶¶ 721, 724). Albert alleges that "Defendant Cindy Chan's suppression of the rest of the settlements email string in December 2022 was akin to a Brady violation because the part of the evidence she suppressed was favorable to the accused, Plaintiff Lenore Albert, either because it is exculpatory, or because it is impeaching." (*Id.* ¶ 722).

Albert's claim for damages against Chan is barred by Chan's immunity. A prosecutor has absolute immunity from *Brady* damages claims under § 1983 when those claims stem from decisions regarding material to disclose at trial. *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (prosecutors are entitled to absolute immunity when exercising "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.").

To the extent that Albert seeks relief from her disbarment due to Chan's alleged actions, Albert fails to state a *Brady* claim. For a Brady claim to succeed, "[1] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Towery v. Schriro*, 641 F.3d 300, 309 (9th Cir. 2010) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). In this context suppression does not

mean failing to file the exculpatory evidence with the court, it means failing to disclose such evidence to the defendant. *See* United States v. Bagley, 473 U.S. 667, 675 (1985) (explaining the *Brady* rule as one regarding disclosing evidence to the accused). Here, Albert obviously had the full email chain. Moreover, even if the Court construed a submission of only a portion of an email chain as evidence suppression, Albert is unable show prejudice from Chan's actions. Albert filed the full email chain with the Court during trial. (*Id.* ¶ 724). As such, the State Bar Court was able to consider the full email string when issuing its decision (*Id.* ¶ 725), as was the Review Department when considering the decision on appeal. (*See Id.* ¶¶ 726-27).

Because Albert fails to adequate state a *Brady* Claim and because the damage claims against Defendant Chan are barred by immunity, the Court DISMISSES with prejudice Albert's *Brady* Claim (Claim 12).

> viii. *Excessive Fine Claim*

The Court addresses Plaintiffs' excessive fine claim in a separate sub-section given the numerous grounds on which the Court dismisses the claim and given Plaintiffs' pending motion for preliminary injunction to enjoin the costs at issue in the claim. Plaintiffs Albert and Westmoreland were charged $35,500 and $5,362 respectively in State Bar costs and sanctions related to the disciplinary processes in which each was disbarred. (FAC ¶¶ 868, 875). Plaintiffs seek damages and an "[o]rder enjoining the State Bar of California from attempting to collect on these excessive fines." (*Id.* ¶¶ 886-89). Plaintiffs seek damages against three State Bar Employee Defendants and names Defendant Chief Justice Patricia Guerrero as a Defendant "only to aid this Court in effectuating any orders such as injunctive relief by barring the State Bar or the California supreme court from collecting or attempting to collect any excessive fines from Plaintiffs." (*Id.* ¶ 863).

The claims against the three State Bar Employee Defendants—George
Cardona, Suzanne Grandt and Cindy Chan— are not viable.  To start, Plaintiffs fail
to state a claim against these defendants because Plaintiffs do not allege any facts
tying these defendants to the imposition of costs and sanctions.  (*See* FAC ¶¶ 859-
90; *see also id.* ¶ 867 (noting that the 'Defendant State Bar of California' charged
Albert the fees at issue in the claim)).  Even if Plaintiffs included allegations
regarding Cardona's, Grandt's and Chan's role in imposing the costs and sanctions,
the defendants would be immune to claims for damages.  To the extent that
Cardona, Grandt or Chan pursued sanctions and costs—or ordered Plaintiffs Albert
and Westmoreland to pay sanctions and costs—those actions are "intimately
associated" with the quasi-judicial phase of a hearing and the Defendants are
therefore entitled to absolute immunity.  *See Broam*, 320 F.3d at 1028 (explaining
rule as to prosecutorial immunity).  Beyond the absolute immunity granted to these
defendants, Plaintiffs appear to concede that the Defendants are entitled to
qualified immunity and *Noer-Pennington* immunity on all 42 U.S.C. § 1983
claims.  (See generally Albert Opp'n, McMahon Opp'n, Tran Opp'n and Maraco
Opp'n (failing to address Defendants' qualified immunity and Noer-Pennington
immunity claims).  The Court, accordingly, DISMISSES with prejudice the
excessive fine claim (Claim 18) as to State Bar Employee Defendants.

While immunity doctrines do not apply to Plaintiffs' claim for injunctive
relief, the Court dismisses the claim because it does not have jurisdiction to hear
the claim.  The California Supreme Court has exclusive authority over attorney
discipline matters.  *Sheller v. Superior Ct.*, 71 Cal. Rptr. 3d 207, 216 (Cal. Ct. App.
2008), *as modified on denial of reh'g* (Feb. 6, 2008) ("[I]n 1951, the State Bar Act
was amended to exclude superior courts and appellate courts from exercising such
jurisdiction, leaving the Supreme Court as the sole judicial entity with jurisdiction
over attorney discipline."); *see also Jacobs v. State Bar,* 570 P.2d 1230, 1232 (Cal.

1977) (noting sole jurisdiction to disbar or suspend attorney).  The Court, therefore, cannot hear Plaintiffs' claim for injunctive relief regarding Plaintiffs' discipline by the state court.

The Court is further barred from hearing Plaintiff Albert's claim by the *Rooker-Feldman* doctrine and the doctrine of claim preclusion.  "Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised or *could have been raised'* in a prior action."  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis in the original).  "Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties."  *Id.*  "*Rooker–Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment."  *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1139 (9th Cir. 2004).  *Rooker-Feldman* applies when "the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment."  *Id.* at 1140.  Both doctrines bar the Court from hearing Plaintiffs' excessive fine claim.

The California Rules of Court specify that "[d]enial of review of a decision of the State Bar Court is a final judicial determination on the merits and the recommendation of the State Bar Court will be filed as an order of the Supreme Court."  Cal. Rules of Court, Rule 9.16(b).  Albert petitioned the California Supreme Court to review the decision of the State Bar Court.  ("Albert Cal. Supreme Court Petition").  In her petition, Albert specifically argued that the State Bar costs and sanctions constituted an excessive fine.  (*Id.*)  The California Supreme Court of California denied Albert's petition and issued an order accordingly.  (Cal. Supreme Court 2024 Order).  That California Supreme Court order is a final judicial determination on the merits.  Cal. Rules of Court, Rule 9.16(b).

*Rooker-Feldman* therefore bars the Court from hearing Albert's excessive fine claims given that Albert seeks relief from the California Supreme Court's final judgment.   The claim is also precluded by the doctrine of *res judicata* given that a final judgement on the merits denied Albert's claim against the State Bar Court. [9] Westmoreland, for his part, did not appeal his but has lost his opportunity to do so; petitions to the Supreme Court to review a decision of the State Bar Court must be filed within 60 days after the decision is published.  Cal. Rules of Court, Rule 9.13. Westmoreland was disbarred on or before September 23, 2023.  (FAC ¶ 90 (noting that Westmoreland's disbarment was effective on that date)).

The Court is barred from hearing Plaintiffs' excessive fine claim (Claim 18) and therefore DISMISSES with prejudice the claims for injunctive relief on the matter.  Because the Court dismisses the only claim at issue in Plaintiffs' Motion for Preliminary Injunction, the Court DENIES Plaintiffs' Motion as moot.[10]

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** both Requests for Judicial Notice. The Court additionally **GRANTS** both Motions to Dismiss in their entirety.  To summarize, the Court **DISMISSES** without prejudice the following claims in their entirety: the privacy claims (Claims 1-3), the intentional and negligent interference with prospective economic advantage claims (Claims 10-11) and the money had and received claim (Claim 17).  The Court **DISMISSES** with prejudice the following claims in their entirety: the negligence claim against Tyler

---

[9] Plaintiffs Albert and Westmoreland's citation to a case applying the principle that "a general attack on a state's admissions rules may be heard by lower courts" is unavailing given that Albert and Westmoreland attack the specific costs and sanctions levied upon them.  (See Plaintiffs' Reply ISO Prelim. Injc at 4, (citing *Mothershed v. Justs. of Supreme Ct.*, 410 F.3d 602, 608 (9th Cir. 2005), as amended on denial of reh'g (July 21, 2005), opinion amended on denial of reh'g, No. 03-16878, 2005 WL 1692466 (9th Cir. July 21, 2005))).

[10]To the extent that the Motion for Preliminary Injunction was premised on a *Brady* violation, the Motion is still moot as the Court dismisses the *Brady* claim.

Technologies (Claim 5), the negligence claim against the State Bar (Claim 7)[11], and the remaining 42 U.S.C. § 1983 claims (Claims 4, 8-9, 12-16, and 18). Regarding the anti-trust claims (Claims 19 and 20), the Court **DISMISSES** with prejudice the claims as to Defendant State Bar and **DISMISSES** without prejudice the claims as to State Bar Employee Defendants.

Because the Court **DISMISSES** all remaining claims, the Court **DENIES as Moot** Plaintiffs' Corrected Motion for Preliminary Injunction and Corrected Motion to Amend the First Amended Complaint.

---

[11] On December 17, 2024, Plaintiffs filed a notice of settlement regarding Claim 6.  (Notice of Settlement).