Lenore L. Albert
Email: lenalbert@InteractiveCounsel.com
1968 S Coast Hwy #3960
Laguna Beach, CA 92651
Telephone: 424-365-0741
Plaintiff, pro se

James Ocon
Email: Jim.Ocon@Oconcompany.com
10131 Louise Ave.
Northridge, CA 91325
Telephone: 719-505-2187
Plaintiff, pro se

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LENORE ALBERT, et al.,<br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., et al.,<br>Defendants. | CASE NO. 8:25-cv-00647-JLS-DFM<br><br>[Related to: 30-2025-01462434-CU-AT-CXC; 24-cv-1997-JLS-DFM; 8:22-cv-00983-DFM; and 18-bk-10584-SC; 18-ap-1065-SC]<br>**PLAINTIFF LENORE ALBERT'S DECLARATION IN OPPOSITION TO THE STATE BAR'S SPECIAL MOTION TO STRIKE THE SECOND AMENDED COMPLAINT**<br><br>Hearing Date: Nov. 18, 2025<br>Time: 10:00AM<br>Ctrm: 6B |

Ryan McMahon
Email: Codethree53@gmail.com
7533 English Hills Road
Vacaville, CA 95687
Telephone: 707-333-3127

Plaintiff, pro se

Larry Tran
Email: larrylytran@gmail.com
29559 Fitch Ave.
Canyon Country, CA 91351
Telephone: 626-217-7836
Plaintiff, pro se

Theresa Marasco
Email: theresa.marasco@gmail.com
PO Box 1035
Santa Monica, CA 90406
Telephone: 720-226-4051
Plaintiff, pro se

Leslie Westmoreland
Westmorelandlw7@gmail.com
1715 East Alluvial Ave. #214
Fresno, CA 93720
Telephone: 559-727-1604
Plaintiff, pro se

Chad Pratt
Email: Chadprattsr@gmail.com
660 S Figueroa St, Ste 1920
Los Angeles, CA 90017-3569
Telephone: 213-840-2423
Plaintiff, pro se

**DECLARATION OF LENORE ALBERT**

**I. BACKGROUND AND STANDING**

1. I was admitted to the California State Bar in **2000** and have practiced law in this state since that time until I was suspended. I have personal knowledge of the facts stated herein and could testify competently thereto.
2. I am the plaintiff in *Albert-Sheridan v. State Bar of California*, Adv. No. 18-ap-01065-SC (Bankr. C.D. Cal.) and this action. Both cases challenge the State Bar's administrative conduct, not judicial decisions.
3. I make this declaration to provide evidentiary support for the factual background contained in my opposition to the State Bar's anti-SLAPP motion.

**II. VOID DISCOVERY SANCTIONS AND BANKRUPTCY ORDERS**

4. In *Albert-Sheridan v State Bar of California*, 960 F.3d 1188 (9th Cir. 2020), the Ninth Circuit ruled that the discovery-sanction debts used to suspend my law license in 2018 were dischargeable and that the State Bar could not withhold my license based on them.
5. After remand, the Bankruptcy Court allowed me to consolidate my claims against the State Bar.
6. In April 2021, I paid all outstanding disciplinary cost assessments in full using funds loaned by a third party.
7. Attached hereto and fully incorporated herein as **Exhibit 1** is a true and correct copy of my declaration to the Bankruptcy Court showing I paid the State Bar Costs.
8. Despite full payment, the State Bar refused to reinstate my license until the Bankruptcy Court warned **Suzanne Grandt** it would issue an Order to Show Cause threatening sanctions of $10,000 per day, making **Donna Hershkowitz** personally appear, for non-compliance.

9. Attached hereto and fully incorporated herein as **Exhibit 2** is a true and correct copy of the **May 5 2021 reporter's transcript** from the bankruptcy hearing in which the court warned the State Bar it would be sanctioned for each day it failed to reinstate my license.

10. The State Bar reinstated my license at approximately 3:00 p.m. on May 5, 2021, only after that hearing concluded.

## III. RETALIATORY INVESTIGATION INITIATED MAY 11 2021

11. Six days after my reinstatement, on **May 11 2021**, the Office of Chief Trial Counsel opened *Case No. 21-O-05360* against me. There was no complaining witness; instead, State Bar staff—including Investigator **Benson Hom and Cindy Chan** —initiated the matter themselves and acted as the reporting witnesses.

12. Attached hereto and fully incorporated herein as **Exhibit 3** is a true and correct copy of the **May 11 2021 letter from Investigator Benson Hom** opening Case No. 21-O-05360. The letter demonstrates that the State Bar had no specific complaint. It speculated about "unauthorized practice of law" and "improper loan from a client," citing only filings in my own bankruptcy case and a fully disclosed loan that had already been paid. The letter did not identify any client harmed or any legal matter in which unauthorized practice allegedly occurred.

13. In **July 2021**, Investigator Hom contacted the **U.S. District Court for the Central District of California (CACD)** requesting confirmation of my admission history for UPL. Attached hereto and fully incorporated herein as **Exhibit 4** is a true and correct copy of Hom's July 7-8 2021 email exchange with CACD admissions showing the outreach.

14. In **October 2021**, Hom then contacted the **Eastern District of California (CAED)** for a similar inquiry, as noted on the March 10, 2022 internal **investigation report**. Simultaneously, **Cindy Chan** emailed me asking me a series of questions about assisting Westmoreland in the CAED on October 14, 2021 –

investigating my work prior to any probable cause. Attached hereto and fully incorporated herein as **Exhibit 5** is a true and correct copy of that email on October 14, 2021 from Cindy Chan and **Exhibit 6** is the investigation report dated March 10, 2022.

15. There was no Court Order or complaint from the CAED to the State Bar that I had committed UPL in that district and my membership was reinstated in the CAED by mid-May 2021.

16. During this same period, **Suzanne Grandt** contacted attorney **Kamran Javandel**, according to **Cindy Chan's contemporaneous notes**, showing coordination among multiple State Bar officials in continuing the 2021 investigation without any external complaint or order from a court.

17. Attached hereto and fully incorporated herein as **Exhibit 7** is a true and correct copy of the **March 1, 2022, Witness Interview Memorandum prepared by Investigator Benson Hom and Senior Attorney Cindy Chan, documenting their telephonic interview of attorney Kamran Javendal regarding the Noble and Kilgore matters,** noting that Suzanne Grandt already spoke to him.

18. The memorandum confirms that the State Bar was still attempting to develop a factual basis for the 2021 case nearly a year after it was opened, asking about unrelated appellate filings and speculating about possible suspension periods. The notes do not identify any client complaint or harm, as none occurred, underscoring that the disciplinary investigation was **manufactured internally** and **prolonged without cause**.

## IV. RETALIATION FOLLOWING THE 2022 DATA BREACH

19. On February 24, 2022, the State Bar publicly admitted that confidential attorney disciplinary records for approximately 325,000 current and former attorneys had been posted on the internet.

Attached hereto and fully incorporated herein as **Exhibit 8** is a true and correct

copy of the **State Bar's February 24, 2022 news release** announcing the data breach.

20. On March 1, 2022, I emailed the State Bar requesting confirmation whether my own records were among those compromised and asking for details about the scope of the breach. Attached hereto and fully incorporated herein as **Exhibit 9** is a true and correct copy of my **March 1, 2022 email to the State Bar** titled "Data Breach Disclosure Request."

21. On March 2, 2022, journalist **Susan Bassi** notified the State Bar that I was investigating the breach on behalf of affected attorneys. Attached hereto and fully incorporated herein as **Exhibit 10** is a true and correct copy of **Ms. Bassi's March 2, 2022 email to the State Bar** confirming my involvement.

22. On March 14, 2022, I filed **Government Tort Claims** under California Government Code section 910 et seq. concerning the State Bar's negligent handling of confidential data. Attached hereto and fully incorporated herein as **Exhibit 11** is a true and correct copy of my **March 14, 2022 tort-claim submission to the State Bar**.

23. On March 18, 2022, I filed **Roe v. State Bar of California**, a putative class action in Los Angeles County Superior Court on behalf of attorneys whose confidential disciplinary data had been exposed. Attached hereto and fully incorporated herein as **Exhibit 12** is a true and correct copy of the caption page of the **Roe v. State Bar of California Class Action Complaint**.

24. Only four days later, on March 22, 2022, the State Bar issued a **Notice of Intent to File Disciplinary Charges** in *Case No. 21-O-05360*, marking the first activity on that file since its inception nearly one year earlier. Attached hereto and fully incorporated herein as **Exhibit 13** is a true and correct copy of the **March 22, 2022 Notice of Intent to File Disciplinary Charges**.

25. The sequence of events—my filing of the data-breach class action on March 18 followed by the disciplinary escalation on March 22 and dismissal of the original charges in June 2022—demonstrates clear retaliation for protected petitioning activity. Nothing about my conduct changed between those dates; only my decision to investigate the data breach then, sue the State Bar did. The State Bar's immediate activation of dormant Case No. 21-O-05360 following that filing was retaliatory and unlawful as seen in the investigative report.

## V. POST-HEARING DUE PROCESS VIOLATIONS AND EXCESSIVE FINES

### A. Ruffalo Due-Process Violation — Changing the Theory After Hearing

26. On **April 29, 2022**, the State Bar filed a *Notice of Disciplinary Charges* that alleged misconduct unrelated to any "unauthorized practice of law." Attached hereto and fully incorporated herein as **Exhibit 14** is a true and correct copy of that April 29 2022 *Notice of Disciplinary Charges*.

27. On **August 12, 2022**, the State Bar filed a *Second Amended Notice of Disciplinary Charges*, again omitting any allegation that I practiced law while suspended. Attached hereto and fully incorporated herein as **Exhibit 15** is a true and correct copy of that August 12 2022 *Second Amended Notice of Disciplinary Charges.*

28. After the trial concluded, the Hearing Department issued its recommendation on April 3, 2023, expressly finding that no harm to any client or the public was shown or found and rejecting any theory of "unauthorized practice of law" with regard to a reply email. The recommendation concluded that none of the charged conduct involved client injury, public harm, moral turpitude, violation of a court order (because there was none), or a criminal conviction. Attached hereto and fully incorporated herein as **Exhibit 16** is a true and correct copy of the *April 3 2023 Hearing Department Recommendation.*

29. Despite this finding, the Review Department's **March 11 2024 Opinion** found liability on an uncharged theory —that an email reply in the *Grewal* matter

constituted unauthorized practice "in California" and moral turpitude—and relied on that new rationale to increase discipline. Attached hereto and fully incorporated herein as **Exhibit 17** is a true and correct copy of the *March 11 2024 Review Department Opinion.*

30. Following that decision, the State Bar filed a *Request for Publication* stating that the opinion "should be published to provide guidance," confirming that the theory was newly articulated rather than previously charged. Attached hereto and fully incorporated herein as **Exhibit 18** is a true and correct copy of the *May 8, 2024 Request for Publication.*

31. The Review Department's reliance on conduct never charged in the Notice of Disciplinary Charges, coupled with the Hearing Department's express finding of no client or public harm or continuing threat of harm to the public (Conway mandate), demonstrates that the disciplinary proceeding failed to comply with *In re Ruffalo*, 390 U.S. 544 (1968), which requires advance notice of all charges to ensure a fair opportunity to defend.

**B. Excessive and Punitive Disciplinary Costs**

32. On **April 10, 2024**, the State Bar issued a new cost bill assessing **$27,055.00** in disciplinary costs against me. Attached hereto and fully incorporated herein as **Exhibit 19** is a true and correct copy of that *April 10 2024 Cost Bill.*

33. Prior cost assessments had already been imposed in **2017, and 2019**, totaling more than **$55,000**. Attached hereto and fully incorporated herein as **Exhibit 20** is a true and correct copy of the *2017 Cost Bill*, and as **Exhibit 21** the *2019 Cost Bill.*

34. On **April 20, 2021**, I paid all disciplinary cost assessments in full using funds loaned by a third party, as declared in my bankruptcy adversary proceeding. See **Exhibit 1**).

35. Attached hereto and fully incorporated herein as **<u>Exhibit</u> 22** is a true and correct copy of the *July 3 2024 certified cost-order package* showing the State Bar's continuing effort to collect on the 2024 cost bill.

36. The State Bar's own *Ad Hoc Commission on the Discipline System* of which **Brandon Stallings** was a member, previously found that its cost structure "outpaced every other attorney-licensing agency in the nation" and was "punitive and disproportionate." Attached hereto and fully incorporated herein as **<u>Exhibit</u> 23** is a true and correct copy of the *Commission Recommendations Report*, and as **<u>Exhibit</u> 24** the *Status Update Report.*

37. In **October 2024**, Executive Director **Leah Wilson** publicly acknowledged that these disciplinary costs were excessive and inequitable, and announced a new "offer-and-compromise" program to address "burdensome debts often stemming from previously exorbitant fees." Attached hereto and fully incorporated herein as **<u>Exhibit</u> 25** is a true and correct copy of *Leah Wilson's October 2024 Staff Newsletter.*

38. The disciplinary cost assessments fund salaries for employees of the State Bar Court and the Office of Chief Trial Counsel, creating a direct financial interest in imposing and collecting such costs. (See **<u>Exhibits 23 & 24)</u>**.

39. I was not afforded a right to a jury trial although the Bar is mandated to issue costs and sanctions.(*Jarskey* violation).

40. Attached hereto and fully incorporated herein as **<u>Exhibit</u> 26** is a true and correct copy of Defendant **Cindy Chan's salary records** showing annual increases each year on **September 21**, my birthday, as produced in response to a California Public Records Act request.

41. These documents demonstrate that the State Bar's cost assessments were excessive, the employees have an economic incentive to manufacture and find a violation, which violated my due process rights and the California Constitution.

**C. April 20, 2023 Protest and Retaliation**

42. On **April 20, 2023**, I participated in a peaceful protest on the public sidewalk outside the State Bar of California's Los Angeles headquarters along with Theresa Marasco, James Ocon, Chad Pratt, Larry Tran and a few others. The purpose of the protest was to draw public attention to the State Bar's 2022 data breach cover-up and its retaliatory actions against attorneys who had spoken out about it.

43. During the protest, uniformed private security guards under State Bar supervision restricted my access to portions of the public sidewalk and ordered participants to move.

44. Attached hereto and fully incorporated herein as **Exhibit 27** are true and correct photographs depicting the protest and the signs displayed on the sidewalk.

45. Records later obtained under the California Public Records Act show that **Sunley Yap**, an administrative officer of the State Bar, was in charge of coordinating security for that day and directed security personnel in a manner inconsistent with the State Bar's own written procedures.

46. Attached hereto and fully incorporated herein as **Exhibit 28** is a true and correct copy of the CPRA response providing the **State Bar Security Guard Instructions** Manual for April 20, 2023, identifying **Sunly Yap** as the responsible officer and showing that the restriction of my movement on the sidewalk deviated from the ordinary building security protocol.

47. Following the protest, I was subjected to additional scrutiny and retaliatory administrative actions by the Office of Chief Trial Counsel with **George Cardona**, consistent with the pattern of retaliation alleged in the Second Amended Complaint.

**D. Void Ab Initio Discovery Sanctions and Their Misuse by the State Bar**

48. The State Bar's disciplinary case against me originally relied on discovery sanctions entered in 2012 in *10675 Orange Park Blvd., LLC v Koshak*, Orange County Superior Court.

49. Those sanctions were void ab initio because the underlying orders were entered without jurisdiction and in violation of due process on August 31, 2012.

50. No one treated them as valid until the State Bar got involved.

51. Attached hereto and fully incorporated herein as **Exhibit 29** is a true and correct copy of my Declaration in Support of Motion to Vacate the Discovery-Sanction Orders, with supporting papers and court orders establishing that the 2012 sanctions were void ab initio as of August 31, 2012 I presented to the Superior Court earlier this year.

52. Attached hereto and fully incorporated herein as **Exhibit 30** is a true and correct copy of the August 6, 2025 state-court order vacating the discovery-sanction orders in response to my unopposed motion and supporting declaration, confirming I can collaterally attack them as void ab initio in this or any other case.

53. During my 2016 State Bar trial, the Hearing Judge expressly barred me from introducing evidence or argument showing that the sanctions were void, stating, "**We're not going to do that**." Attached hereto and fully incorporated herein as **Exhibit 31** is a true and correct excerpt of the July 2016 State Bar trial transcript confirming I was precluded from litigating the validity of the discovery orders.

54. Despite this, the State Bar continued to rely on those void orders as the foundation for disciplinary suspensions, disbarment, and cost assessments issued in 2018, 2019, and 2024.

55. Because a void order has no legal effect, there is no "final judgment" to support claim or issue preclusion. The State Bar's continued reliance on the 2012 void

orders in later proceedings made those later disciplinary orders a legal nullity and a trespasser of the law which may be attacked at any time.

56. In early 2016, while **Sherell McFarlane** of the OCTC of the Bar was still pursuing me on those same void orders, confidential State Bar investigation documents from 2008—matters that never resulted in public discipline—were leaked to the public.

57. On May 11, 2016, two documents from those investigations were anonymously uploaded to Scribd, a public file-sharing website, where they received more than 500 views. Attached hereto and fully incorporated herein as **Exhibit 32** is a true and correct screenshot of the anonymous upload showing the number of views.

58. I was running for political office (Assembly District 72) at the time, and the leak occurred shortly before the primary election and my disciplinary hearing, compounding the reputational harm.

59. I did not learn of this upload until defense counsel Kevin Gilbert emailed me the link on July 8, 2025. Attached hereto and fully incorporated herein as **Exhibit 33** is a true and correct copy of that email from Kevin Gilbert that I received.

60. I verified with the Los Angeles Superior Court records department that the documents uploaded to Scribd were never filed in the court's docket and the original sealed exhibit envelope for *Abeles v. Albert* (Case No. BS112693) had never been opened.

61. I also verified with Steve Mazer's office.

62. The only known source with possession of those combination of documents was the Office of Chief Trial Counsel of the State Bar, which maintained the 2008 investigative files under confidentiality mandated by Business and Professions Code § 6086.1(b).

63. I verified through a California Pubic Records Act Request that the Bar did not have any policy or procedure in 2016 to track who had accessed the confidential

state bar investigation in 2016. Attached hereto and fully incorporated herein as **Exhibit 34** is a true and correct copy of response I received from the State Bar showing there was no tracking of who accessed confidential state bar investigations in 2016 at the State Bar.

64. Despite knowing the documents were confidential and not part of any public record, Mr. Gilbert filed them on the federal docket on April 16, 2025 as part of the Bar Defendants' Request for Judicial Notice, to my injury and in further breach of § 6086.1(b).

65. Between the threat of sanctions in response to my February 2025 tort claim submission to the Bar and Kevin Gilbert's upload to the Court docket of these documents, along with the tone of his writings, the animus of the Bar defendants is felt by me.

66. The State Bar also continued to rely on the void 2012 orders as "prior misconduct" to justify harsher discipline and ultimately my disbarment. (See, e.g., Review Dept. Opn., Mar. 11, 2024.)

**E. Forged "Koshak" Discovery Notes and Disparate Treatment**

67. There is no holy ground to stand on.

68. In 2012, I represented **Helen and Norman Koshak** in *10675 S. Orange Park Blvd LLC* v. *Koshak.* Orange County Superior Court Case. The opposing party, 10675 S. Orange Park Blvd LLC, was represented by attorneys **Philip Greene** and **Jennifer Needs** of the firm **Samuels, Greene & Steele**.

69. The members of 10675 S. Orange Park Blvd LLC altered the Koshaks' original $200,000 promissory note by copying their signatures onto a second version showing an $800,000 balance with inflated monthly and balloon payments. They then used the falsified note to place the Koshaks' home into foreclosure and to obtain possession through an unlawful-detainer action.

70. When I was retained shortly before the initial unlawful-detainer trial in late July 2012, the LLC's counsel designated the forged $800,000 note as **Exhibit 7**. I produced the true $200,000 note and retained a forensic document examiner who confirmed the Koshak signatures on the $800,000 version were copied from the original. The trial court declined to hear the expert because opposing counsel conceded the signatures were identical but argued the duplication was not "forgery." The unlawful-detainer court ruled only on possession and non-payment, not on the authenticity of the documents. Attached hereto and fully incorporated herein as **Exhibit 35** is a true and correct copy of the **Orange County Sheriff's Department report** (Case No. 13-061001) documenting the forgery complaint and booking of both loan documents into evidence.

71. Attached hereto and fully incorporated herein as **Exhibit 36** is a true and correct copy of the **partial reporter's transcript** from the *Koshak* unlawful-detainer hearing showing that the "Koshak notes" were admittedly forged via photocopy.

72. Attached hereto and fully incorporated herein as **Exhibit 37** is a true and correct copy of a lien (Deed of Trust) by the law firm of Philips, Greene and Steel on the Koshak home that was foreclosed on by 10675 S Orange Park Blvd, LLC showing the LLC owed the law firm $700,000.00 and intended to pay after obtaining possession of the property.

73. Despite these **verifiable facts**, the State Bar intervened by charging Albert while the Koshak forgery case *was pending* and took the obviously void discovery sanction orders, mischaracterizing them as valid court orders.

74. When Sherrell McFarlane failed to prove up the other laundry list of charges against me, the Review Dept. sent its opinion to the California Supreme Court with only two cases left to recommend a 30 days suspension: (1) Sisson matter for failure to cooperate with a Bar investigation and (2) failure to obey the 3 void discovery sanction orders in *10675 S. Orange Park Blvd LLC* v. *Koshak.*

75. The California Supreme Court removed the Sisson Case Number from the Order.

76. It is my understanding that one cannot fail to cooperate with the Bar when the attorney is cooperating with the Bar in another matter.

77. Attached hereto and fully incorporated herein as **Exhibit 38** is a true and correct copy of a **March 20 2018 email from Maricruz Farfan** of the Office of Probation acknowledging that the Sisson matter was dropped from the actual Order but not the allegation and the Court simply removed the Sisson case number and then removed who the discovery orders were payable to.

78. Whether the Bar sent a proposed to the California Supreme Court in this format or how it occurred remains a mystery because the California Supreme Court had refused my petition to review the matter.

79. These materials show that the disciplinary actions and cost orders against me were predicated on fabricated evidence and void judicial orders. Because forged or void orders cannot confer jurisdiction, any discipline resting on them is void *ab initio* and incapable of supporting collateral estoppel or res judicata.

80. The State Bar's handling of the *Koshak* matter also demonstrates *disparate enforcement*. I—the attorney who exposed the forgery—was suspended for allegedly violating a void order, while attorney **Philip Greene** and the principals of 10675 S. Orange Park Blvd LLC, who presented the forged $800,000 note in court to secure a $700,000 windfall, were never investigated or disciplined.

81. This unequal treatment violates the **Equal Protection Clause** and Article I, § 7 of the California Constitution. *Lawyer A* (myself) was punished for challenging a void order; *Lawyer B* and his clients, who introduced forged evidence to obtain title and payment, were protected from scrutiny. The State Bar's decision to prosecute the whistleblower while excusing the perpetrators reflects arbitrary, discriminatory enforcement of its disciplinary power.

82. These facts are directly relevant because the same void *Koshak* sanctions formed the basis for all subsequent disciplinary prosecutions and cost assessments challenged in this action.

**F. Resulting Harm and Economic Loss**

83. The State Bar's retaliatory actions and continuing suspensions caused direct financial and professional harm. I was forced to close my law office, cancel client retainers, and withdraw from several active cases that were nearing resolution.

84. In *Gilbert-Bonnaire v. Demerjian* (Orange County Superior Court Case No. 30-2019-01089080-CU-FR-CJC I had a memo of costs totaling **$98,275.87** on file which were *partially* advanced by me and a pending motion for attorney fees totaling **$657,445.10** when the Bar suspended my license on March 14, 2024 I had fully briefed an attorney-fee motion and was awaiting hearing when the State Bar's unlawful suspension prevented my appearance. The motion was taken off calendar, and I was unable to recover approximately $60,000 in earned fees. Attached hereto and fully incorporated herein as **Exhibit 39** is a true and correct copy of the costs bill.

85. In *John Roe v. State Bar*, the State Bar and Tyler Technologies each reached settlement agreements with at least four of the named plaintiffs directly with the plaintiffs while disregarding my attorney liens and prior contingency-fee contracts. Attached hereto and fully incorporated herein as **Exhibit 40** is a true and correct copy of the declaration from Daniel Chmielewski confirming that his claims were settled for **$10,000.00** without honoring my lien.

86. Over 1,100 other attorneys had evidence of a page view and over 200,000 other attorneys were victims of the breach. I lost that economic opportunity and ability to prove the Bar has been misusing their investigatory powers by targeting attorneys for illegitimate purposes.

87. In *Marasco v. 1753 9th Street LLC* (Los Angeles Superior Court Case No. 19SMCV00056, I represented the plaintiff on a 33 to 40-percent contingency. The case was trial-ready, with over **$60,000** invested in expert and discovery costs by Ms. Marasco. Because my license remained suspended, I had to withdraw on the eve of trial and accept only an **$8,500** payment to allow the client to proceed to settlement. The case settled for approximately **$350,000** shortly thereafter. Attached hereto and fully incorporated herein as **Exhibit 41** is a true and correct copy of the Notice to Attend Trial.

88. Collectively, these matters represent over **$700,000** in lost or unrecoverable attorney fees and advanced costs directly traceable to the State Bar's retaliatory actions, false suspensions, and interference with existing client relationships.

89. In addition, I incurred property loss, credit damage, and suffered emotional and reputational damage from the publicized suspension notices posted on the State Bar's website and social-media pages.

90. My own AI project was disrupted, the Oconsortium technology tour was disrupted, and so were the cases of Chad Pratt, Larry Tran and Ryan McMahon.

91. Because of the State Bar's continuing retaliatory actions, I could not defend myself while also representing my clients. The dual deprivation of license and due process prevented me from maintaining my practice, enforcing attorney liens, or completing existing cases. These harms remain ongoing.

92. Presentation of Tort Claims: I filed a tort claim form in March 2022, May 2024, September 2024, February 2025, and around June 2025. All claims were denied. The February 2025 claim was responded to with a threat of sanctions if I filed litigation against the Bar.

93. The U.S. Supreme Court has been aware of each of the disciplinary actions the Bar has taken against me and has taken my side in each instance by not issuing reciprocal discipline.

94. If I missed an element, then that is because I need discovery of the defendants' emails, chats, and conversations, which are in their possession and control.

95. The foregoing facts are based on my own personal knowledge, contemporaneous court records, and documents obtained directly from the State Bar through discovery or the California Public Records Act. They show a continuing pattern of retaliatory enforcement, procedural irregularities, and selective discipline violating both state and federal law.

96. Further factual detail is available in the exhibits and supporting filings referenced herein.

97. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on this day, at Raleigh, North Carolina.

Dated: October 28, 2025

Respectfully Submitted,
/s/ Lenore Albert
Lenore Albert, Plaintiff pro se

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and a party to the within action; that I am employed in Orange County, California; my business address is 1968 S Coast Hwy #3960, Laguna Beach, CA 92651.

**PLAINTIFF LENORE ALBERT'S DECLARATION IN OPPOSITION TO THE STATE BAR'S SPECIAL MOTION TO STRIKE THE SECOND AMENDED COMPLAINT**

On the interested parties in this action as follows:

See Electronic Service list

**[x] BY E-SERVE and EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth.

**[] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Huntington Beach, California, to the aforementioned addressee(s).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: October 28, 2025

_/s/Lenore Albert_______________________
Lenore Albert

## ELECTRONIC SERVICE LIST

**For Defendants State Bar of California, Cindy Chan, Benson Hom, Suzanne Grandt, George Cardona, Ruben Duran, Steve Mazer, Leah Wilson**
Kevin Gilbert
kgilbert@ohhlegal.com
Orbach Huff & Henderson LLP
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
(510) 350-3582 Direct

Suzanne Grandt (304794)
Email: suzanne.grandt@calbar.ca.gov
State Bar of California, Ofc of General Counsel
180 Howard Street
San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517

**For Defendant Tyler Technologies, Inc.**
Beth Petronia
beth.petronio@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Seventh Floor
Los Angeles, California 90067
Telephone: 310.552.5000 Facsimile: 310.552.5001

Co-plaintiffs by email by consent – as listed on the caption.