1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                              -oOo-

4   In Re:                        ) Case No. 8:18-Bk-10548-ES
                                  ) Chapter 7
5   LENORE LUANN ALBERT-SHERIDAN  )
                                  ) Santa Ana, California
6                       Debtor.   ) Wednesday, May 5, 2021
    _____ ) 10:00 AM
7
                                    ADV#: 8:20-ap-01095-SC
8                                   LENORE LUANN ALBERT-SHERIDAN
                                    v. MARICRUZ FARFAN, ET AL.
9
                                    #1.10 HEARING RE: DEBTOR'S
10                                  THIRD EX PARTE APPLICATION
                                    FOR T.R.O. AND PRELIMINARY
11                                  INJUNCTION FILED MAY 3, 2021
                                    (SET PER ORDER ENETERD
12                                  5/3/21)

13                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE SCOTT C. CLARKSON
14                 UNITED STATES BANKRUPTCY JUDGE

15  APPEARANCES (All present by video or telephone):

16  For the Debtor:          LENORE LUANN ALBERT-SHERIDAN,
                             ESQ., Pro Se
17
    For Defendants:          JAMES J. CHANG, ESQ.
18                           SUZANNE C. GRANDT, ESQ.
                             State Bar of California
19                           180 Howard Street
                             San Francisco, CA 94111
20                           (415)538-2388

21

22

23

24

25

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17    Court Recorder:              SALLY DANIELS
                                   United States Bankruptcy
18                                 Court
                                   Ronald Reagan Federal Building
19                                 411 West Fourth Street
                                   Santa Ana, CA 92701
20                                 (855)460-9641

21    Transcriber:                 MICHAEL DRAKE
                                   eScribers, LLC
22                                 7227 N. 16th Street
                                   Suite #207
23                                 Phoenix, AZ 85020
                                   (973)406-2250
24
      Proceedings recorded by electronic sound recording;
25    transcript provided by transcription service.
```

Lenore Luann Albert-Sheridan

1    SANTA ANA, CALIFORNIA, WEDNESDAY, MAY 5, 2021, 10:02 AM

2                            -oOo-

3    (Call to order of the Court.)

4         THE COURT:  Good morning, everyone.  And welcome to

5    Cinco de Mayo, Docket number -- on the 10 o'clock calendar.

6    I'd like to call item number 1.10 in the Albert-Sheridan

7    matter.  Appearances, please.

8         MS. ALBERT:  Good morning, Your Honor.  Lenore Albert,

9    debtor/plaintiff, moving party.

10        THE COURT:  Good morning.

11        MR. CHANG:  Good morning, Your Honor.  James Chang for

12   the State Bar defendants.  And I'm joined by my colleague, Ms.

13   Grandt.

14        THE COURT:  Good morning to both of you.

15        MS. GRANDT:  Good morning.

16        THE COURT:  Does anyone here Mr. Poindexter?

17        MS. ALBERT:  No, I don't, Your Honor.

18        THE COURT:  I don't hear him either.  Does anyone know

19   who Mr. Poindexter is with?

20        MS. ALBERT:  Yes, I do, Your Honor.

21        THE COURT:  Would you perhaps explain?

22        MS. ALBERT:  Yes, I will, Your Honor.  In the case of

23   Paula Gilbert Bonair (ph.) versus Dana Demersian (ph.) which

24   I've been assisting Leslie Ms. Worland on in which Ms. Bonair

25   was going to trial on May 7th, Mr. Poindexter is one the

Lenore Luann Albert-Sheridan

```
 1    opposing counsel.  Yesterday Mr. Poindexter asked the court and

 2    also asked me if I was committing unauthorized practice of law.

 3    I did submit the letter that Mr. Chang wrote to the court in

 4    that case regarding Ms. Bonair's intention of wanting to retain

 5    me as trial counsel and that I've paid the fees, but my license

 6    has not been reinstated.

 7           I asked Mr. Poindexter why he was asking about whether

 8    I was unlawfully practicing law, if he meant that he was going

 9    to be filing a complaint and further injuring me and damaging

10    me when I'm trying my hardest to reinstate my license and

11    assist Leslie until -- Leslie Westmoreland, the attorney, until

12    I get there.  And so I gave him notice of this hearing to

13    attend today.  He did not answer my question directly if he

14    intended to file State Bar complaints against me due to my

15    activity in the other matter which is one of the irrevocable

16    injury reasons why I'm here today and I keep on bothering this

17    Court.  And I apologize for that, Your Honor.

18           THE COURT:  Well, first of all, you're not bothering

19    anybody.

20           Second of all, Mr. Poindexter, do you have your

21    microphone working yet?

22           MR. POINDEXTER:  Yeah, I believe I do, Your Honor.  I

23    called in on my phone.

24           THE COURT:  Oh, that's good.  Thank you.  Now, we'd

25    appreciate it if, when you're not speaking, you mute the phone
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1   so that we don't get any reverb.  But otherwise, welcome to the

2   court.

3           MR. POINDEXTER:  Thank you, Your Honor.

4           THE COURT:  Now, are you making an appearance in this

5   matter?  And tell us why.

6           MR. POINDEXTER:  I'm making an appearance because

7   yesterday I received an email notification from Ms. Albert at

8   about -- and I'll tell you precisely.

9           THE COURT:  I don't care.

10          MR. POINDEXTER:  Yesterday afternoon she said that she

11  was seeking a restraining order against me and the law firm for

12  which I work.

13          THE COURT:  Okay.  So you got notice yesterday.

14          MR. POINDEXTER:  Yesterday afternoon, correct, Your

15  Honor.

16          THE COURT:  All right.  Well, thank you.  And would

17  you put yourself on mute at this point?

18          Okay.  Do we have all appearances?

19          Ms. Albert, you filed an emergency motion for a TRO.

20          MS. ALBERT:  Yes, Your Honor.  It's my position that

21  the State Bar was less than truthful on April 20th.

22          THE COURT:  Mr. Poindexter, you need to really mute

23  your telephone and your -- and your system on Zoom.  Thank you.

24          Please proceed, Ms. Albert.

25          MS. ALBERT:  yes.  On April 20th, 2021, I heard

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1   Attorney Jim Chang and Suzanne Grant tell this Court and tell

2   me that if I paid the $37,550.90 to reinstate my license plus

3   reimburse the client security funds, that they would reinstate

4   my license.  As this Court knows, I did not have the money to

5   do that at the hearing.

6           I had told Ms. Bonair who told Mr. Shale (ph.) what

7   happened at court when I lost the TRO.  And he loaned me the

8   money to pay everything.  I contacted the State Bar right away.

9   I paid everything under reservation of rights.  I do believe

10  definitely that that CSF on money was discharged.  But because

11  of the urgency of the matter, it was paid.  The State Bar never

12  disclosed that they were going to ask the California Supreme

13  Court to ask my license.

14          And I want to point out in the response on page 2,

15  Your Honor, I believe that that is less than truthful.  I have

16  to follow the same procedures here of the State Bar probation

17  office.  It is a State Bar court.  It is the Office of Trial

18  Counsel.  And it is the probation office that can reinstate a

19  license.  It is not --

20          THE COURT:  Ms. Albert?  Ms. Albert?

21          MS. ALBERT:  Um-hum.

22          THE COURT:  Let's do us all favor here.  First of all,

23  I completely respect your motion, and I want to hear what you

24  have to say.  But let's see if we can deescalate some of this

25  right now.

Lenore Luann Albert-Sheridan

1          MS. ALBERT:  Okay.

2          THE COURT:  Let's just see if we can deescalate it.

3          Ms. Grandt, hi.  Good morning.

4          MS. GRANDT:  Good morning.

5          THE COURT:  Can you give me a status on Ms. Albert's

6     situation with her law license in California?

7          MS. GRANDT:  Yes. So we -- the State Bar has submitted

8     an emergency petition to the California Supreme Court to

9     reinstate her license.  We asked for emergency consideration.

10    And then once she files a TRO, the State Bar sent immediately

11    notification to the California Supreme Court informing them of

12    that.

13         Mr. Chang, did I miss anything that you want to add?

14         MR. CHANG:  That's accurate.

15         THE COURT:  Okay.  So when you told the California

16    Supreme Court about Ms. Albert's filing of a pleading and her

17    own bankruptcy case, what were your -- well, what were you

18    intending to do?

19         MS. GRANDT:  To take the appropriate steps to

20    reinstate her license.

21         THE COURT:  So you said she's filed a TRO, you need to

22    work on this; or she filed a TRO, and you should stop

23    everything; or she filed a TRO, let's punish her.  Tell me

24    exactly what you did and why you did it.

25         MR. CHANG:  If I may address that, Your Honor.  So

Lenore Luann Albert-Sheridan

1    when the State Bar files the petition to modify discipline

2    orders, it did so on an emergency basis by indicating that in

3    the caption and then by following up with staff contact to the

4    clerk respectfully requesting the Supreme Court to consider the

5    matter on an urgent basis.

6            And the purpose of notifying the Supreme Court of the

7    TRO request was to, of course, make them aware of the

8    developments in this proceeding and to signal, again, the State

9    Bar's interest in an urgent resolution of the petition.

10           MS. GRANDT:  And --

11           THE COURT:  And -- oh, I'm sorry, Ms. Grandt.  Go

12   ahead.

13           MS. GRANDT:  Oh, I was just going to say, to clarify,

14   the State Bar filed the petition before Ms. Albert filed a TRO.

15   So it was just going to -- we got notification.  She paid the

16   money.  So that was when the State Bar filed the petition.

17           THE COURT:  Okay.  So with respect to the situation of

18   Ms. Albert paying the money that's owed that we determined last

19   hearing that she needed to pay to have her license reinstated,

20   what is the State Bar's position today, that she should be

21   getting her license back?

22           MR. CHANG:  The State Bar is very clear in its papers,

23   both in the Supreme Court and in this Court, that its position

24   is that she has paid the discharge and that, accordingly, the

25   Supreme Court should modify the order so that she may be

Lenore Luann Albert-Sheridan

1    reinstated.

2         THE COURT:  Okay.  What can I do to help with respect

3    to, first of all, not getting in the way at all of California

4    Supreme Court and letting them make their own decisions?

5    Because that's the last thing I'm going to ever do is order the

6    California Supreme Court to do anything.  That is so way above

7    my paygrade.  But more importantly, I have a -- I wouldn't do

8    it anyway.  I have a very high respect for the state court all

9    the way from the Avalon, Catalina, all the way up to the

10   Sacramento, California Supreme Court, or are they in San

11   Francisco?  I have no idea.

12        But the point is, what can I do and not get in the way

13   to assist in any activity to get the State Bar to reinstate Ms.

14   Albert's law license if, in fact, she's deserving of it?  Ms.

15   Grandt, Mr. Chang?

16        MS. GRANDT:  I apologize.  I was on mute.

17        Mr. Chang, do you want to take that?

18        MR. CHANG:  Yes.  The Court's question is what can the

19   Court do to assist in the process?

20        THE COURT:  That's right.

21        MR. CHANG:  I'm not sure that I have a clear answer

22   for that.  I suppose that the Court is, of course, within its

23   discretion to issue any order or --

24        THE COURT:  Well, I'm not going to do that.  You're

25   missing my point.  Do you think that I would be getting in the

Lenore Luann Albert-Sheridan

1    way of the process by contacting the California Supreme Court

2    and saying this Court would appreciate a swift determination

3    that Ms. Albert has, in fact, paid her money and she's entitled

4    to the law that's in effect?  Would that help?

5              MR. CHANG:  I believe that would be helpful.  I don't

6    see any reason that the State Bar would have concern or

7    objection to that course of action if that's what the Court

8    believes is appropriate to resolve the situation.

9              THE COURT:  And again, that's why -- I don't know if

10   it's appropriate.  I'm asking you.

11             MS. GRANDT:  Well, I think the -- I think the court is

12   aware of the bankruptcy proceedings.  And the court is aware of

13   the State Bar's position.  So I'm not sure that if your -- if

14   the Court is taking the position that the California Supreme

15   Court is handling that, I'm not sure what else could be done.

16             THE COURT:  So let me give you some insider

17   information.  Courts all the time interact with each other.

18   And they talk to each other through only their orders and only

19   through their public pronouncements.  They don't talk to each

20   other by telephone.  They don't call each other.  They don't --

21   They don't Twitter, tweet I guess.  They don't Facebook.  They

22   don't Instagram.

23             And the problem that occurs is sometimes the courts

24   don't want to get in the way of what they think might be

25   happening in another court.  So it very well may be that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1    there's someone in the California Supreme Court who is

2    scratching their head and saying I wonder what we should do; we

3    don't want to get in the way of the Bankruptcy Court.  And that

4    happens all the time.  It unbelievably happens in mediations

5    where there's some kind of judicial mediator.  And the trial

6    judge has said that to mediation, but mediators aren't supposed

7    to and they don't talk to the trial judge and vice versa.

8          And so you typically as a trial judge don't want to

9    get in the way of the mediator by doing something rationally by

10   having one party suggest something.  And that's the problem.  I

11   don't want to give the California Supreme Court any mixed

12   signals.  I have heard very clearly, and think that the State

13   Bar has been forthright in these proceedings with respect to

14   the fact that if Ms. Albert pays the nondischargeable amounts,

15   she will have her law license back.  And I think that you

16   both -- Mr. Chang and Ms. Grandt, have confirmed that last

17   hearing and this hearing.

18         I just want to make sure that the California Supreme

19   Court understands that that was my intention to bring the

20   parties together and to try to deescalate this entire matter.

21   And so that's why I'm asking you, is there anything I can do to

22   assist in the processing of the -- of your emergency request to

23   have Ms. Albert's law license reinstated by the California

24   Supreme Court.

25         Now, maybe I've already done it.  Maybe somebody might

Lenore Luann Albert-Sheridan

1    take this transcript and send it up to the California Supreme

2    Court.  But the fact is, all I know is this.  And I made no

3    determinations about any of the efficacy of the lawsuits

4    pending in front of me.  All I know is I've been told by the

5    State Bar that if she pays that money, she gets her law license

6    back and that she have it.

7         I don't know what the rules are.  I don't know what

8    the procedures are.  Ms. Albert wanted to look at the rules.

9    The State Bar says that they have to get the California Supreme

10   Court to act.  I don't know the answer.  And frankly, if we can

11   just get it done, whatever has -- whatever has to happen, more

12   people than less will be pleased with the outcome.

13        So now that you have my statement on this, and I think

14   we've beaten this horse pretty badly right now, Ms. Albert, I

15   have to tell you that your request for a TRO does not meet the

16   standards at this point for a temporary restraining order.  I

17   am of the belief that I'm going to take the State Bar's word

18   that they made a California Supreme Court action even if you

19   disagree.

20        But Ms. Albert, let's do this:  Let's see what we can

21   do about getting the process done.  You have been without a law

22   license for how long, how many years?

23        MS. ALBERT:  Since 2018, July of -- June 28th, 2018.

24        THE COURT:  Okay.  You can wait another week.  If

25   that's the case, you can wait another week.  Let's see what the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1    State Bar can do for you.  And let's show what you can do for

2    yourself by perhaps letting the State Bar know what my

3    position -- I mean the Supreme Court.

4         And the reason is, again, that why fight when you

5    don't need to?  Why do we do this?  Because you're not going to

6    get a TRO from me on this.  You're not going to have me enjoin

7    anybody at this point.  But the fact is we're making progress.

8    It's incremental, I know.  But the fact is you have to

9    sometimes adopt or adapt to the processes that the bar -- that

10   the administrative structure believes is the correct way rather

11   than may be the correct way.  It might not be worth the squeeze

12   to get the juice that you want.

13        And so anyway, let me let you proceed now.

14        MS. ALBERT:  Yes.  Your Honor, I want to point

15   something out to you.  Their petition that they filed with the

16   California Supreme Court does not ask the Supreme Court -- the

17   California Supreme Court to reinstate my license.  That is not

18   the relief that they've asked of the California Supreme Court.

19   So when the California Supreme Court rules on their emergency

20   petition, it will not reinstate my license.

21        The only thing they've asked the California Supreme

22   Court is to modify the orders.  The California State Bar and

23   the probation office is the department that actually suspends a

24   license and reinstates a license.  They do not get an order

25   from the California Supreme Court to do so.

Lenore Luann Albert-Sheridan

1        In the letter that Mr. Chang wrote to the California

2   Supreme Court yesterday, again, did not ask the California

3   Supreme Court to reinstate my license.  There is no petition

4   before the California Supreme Court requesting that type of

5   relief.  They filed that petition also with the State Bar court

6   who has done nothing with it.  There are no rules that the

7   California Supreme Court has to act.

8        And as far as their comity argument goes, this is

9   actually reversed comity.  This is a core proceeding with

10  regard to dischargeability of debt.  A state court does not

11  rule on that issue.  That is within the purview of the Federal

12  Bankruptcy Court.  And I looked.  I got, like, 20 pages of

13  cases where I could refute what Mr. Chang and Ms. Grandt wrote

14  in their brief yesterday.

15       So it is not within the purview of the state court to

16  determine which part of the payments were dischargeable or not.

17  That was --

18            THE COURT:  All right.  You're repeating yourself, Ms.

19  Albert.

20            MS. ALBERT:  Right.

21            THE COURT:  Let me --

22            MS. ALBERT:  No.

23            THE COURT:  Stop for a second.

24            MS. ALBERT:  Okay.

25            THE COURT:  Mr. Chang, now she's told you that --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1    she's told me that you guys aren't being as forthright as I've

2    given you credit for.

3            MR. CHANG:  We have submitted to the Court with our

4    papers the petition that was filed with the Supreme Court.

5    And --

6            THE COURT:  Yes, I know.  And she may be right about

7    that.  So let's ask the straight question:  Do you believe that

8    you -- the State Bar needs the California Supreme Court to do

9    anything to give her her law license back?

10           MR. CHANG:  That is our client's position, yes.

11           THE COURT:  Okay.  What does the Supreme Court have to

12   do?

13           MR. CHANG:  The State Bar's position is that the

14   Supreme Court has to modify the discipline order to vacate the

15   condition that were discharged.

16           THE COURT:  That's not true.  They don't have to

17   vacate it.  They don't have to vacate it at all.  You have

18   to -- you know what a satisfaction of judgment is?  You

19   don't --

20           MR. CHANG:  Yes.

21           THE COURT:  -- vacate the order.  The order was the

22   order was to pay.  She paid.  You don't vacate it.  You provide

23   something with respect to satisfaction.

24           And, Ms. Albert, have you provided the State Bar with

25   some sort of evidence that you've satisfied the dischargeable

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1   amount -- nondischargeable amounts?

2           MS. ALBERT:  Yes, I did.

3           THE COURT:  Okay.  Do you see the difference, Mr.

4   Chang, between -- they're not going to -- why would they vacate

5   the order?

6           MR. CHANG:  If --

7           THE COURT:  If the order was correct -- Mr. Chang, the

8   order was correct.  She was required to make the payments.  She

9   did make the payments.  You litigated this all the way to the

10  Ninth Circuit.  And you got told by the Ninth Circuit that

11  the -- some aspects were dischargeable and some aspects were

12  nondischargeable.  Now we've got ourselves a pretty good, hard,

13  and fast rule with respect to some of those issues.  Thank you

14  very much.  The Court and other Bankruptcy Courts in the Ninth

15  Circuit are appreciative.

16          But now I don't want to be misled here.  Why would

17  you -- why would they ever vacate it?  They would deny your

18  motion.  They don't vacate their order.  You say you've been

19  satisfied.

20          MR. CHANG:  So there are two different components of

21  the orders.  There are the components that have been satisfied.

22  And the State Bar does not dispute that Ms. Albert has

23  satisfied the discipline costs and the debt to the CSF.  And

24  there are those remaining unsatisfied conditions which are

25  still part of the order.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1          THE COURT:  Yes.  And now you're violating the

2   automatic stay.  Now you are definitely violating the automatic

3   stay.  Waiting for this California Supreme Court to vacate

4   something which they have already been told by the Ninth

5   Circuit that they cannot attempt to collect -- I'd like a

6   response, Mr. Chang.

7          MR. CHANG:  The client --

8          THE COURT:  You've been told by the Ninth -- do you

9   agree the Ninth Circuit has told the State Bar that they cannot

10  force Ms. Albert to pay the third parties the money that she

11  previously owed before she filed and got a discharge?

12         MR. CHANG:  I personally agree with that reading, Your

13  Honor.

14         THE COURT:  Well, you know, personally.  Maybe ought

15  to put you in as a plaintiff -- or a defendant because here you

16  are telling me that you personally agree.  Who doesn't

17  personally agree, Mr. Chang?  Because I'm going to have them

18  come to court and talk to me about it.

19         MR. CHANG:  The position that I have been instructed

20  by my client to represent --

21         THE COURT:  And who is the name of that person?

22  Because they're coming to court.  Name them.

23         MR. CHANG:  What I have been authorized to disclose is

24  that --

25         THE COURT:  Mr. Chang?  Mr. Chang?

Lenore Luann Albert-Sheridan

1          MR. CHANG:  Yes.  Yes.

2          THE COURT:  Name the person who has instructed you on

3   behalf of the State Bar to represent what you're -- what you've

4   now represented to me.

5          MR. CHANG:  Yes.  It's the State Bar Court of the

6   State Bar.

7          THE COURT:  Give me the names.  You don't talk to a

8   court; you talk to people.  Names of people.

9          MR. CHANG:  Right.  But there are -- okay.  The agent

10  of that internal component of the bar are Michele Cramton, the

11  Clerk of the State Bar Court.  And the ultimate client in this

12  matter is Donna Hershkowitz, the executive director of the

13  State Bar.

14         THE COURT:  Good.  I am this close to ordering them to

15  appear at a hearing tomorrow.  I'm that close to having them

16  explain why they're not violating the automatic stay and a

17  discharge injunction.  The Ninth Circuit has already told the

18  State Bar that the aspects of the dischargeable debts have

19  been -- have been determined.  And they're final.  And you

20  haven't appealed -- well, maybe we did go to the Supreme Court

21  of the United States.  And so now it's hard in cast.

22         So now I completely understand what the State Bar has

23  done.  You've delayed this more by seeking a court order from

24  the California Supreme Court to vacate something that's already

25  been vacated by the United States Courts for the Ninth Circuit.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1    I get it now.  It took me a few minutes to get it, but that's

2    what's happening here.  And I've been trying to be real nice

3    about this.  What are you going to do, Mr. Chang, to get Ms.

4    Albert's law license back?

5            MR. CHANG:  Well, I will certainly convey to my client

6    the Court -- what the Court has clarified here.  Frankly, the

7    Court's proposal may well be helpful to this process.

8            THE COURT:  Well, that's not enough.  You know, every

9    day that Ms. Albert doesn't -- isn't able to earn a living and

10   repay the loan that she took to get your State Bar fee is

11   damages.

12           So I'll ask again, what are you going to do today to

13   get Ms. Albert's law license back, reinstated as an active

14   member?

15           MR. CHANG:  What I can do in my role as counsel is to

16   advise the client of what this Court has explained.  And if I

17   understand correctly, the Court's view here is that a -- and

18   please clarify so that I have an accurate record to convey to

19   my client, but that the Bankruptcy Court's view is that no

20   California Supreme Court order is required to vacate conditions

21   that have already been discharged by the --

22           THE COURT:  You misstated me.  You misstated me.  We

23   don't need to vacate anything.  The only thing that needs to be

24   done, according to that order -- that Supreme Court order is

25   she has to pay what's owed.  We now know that she does not owe

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1   a sizeable portion of that amount.

2          Now, any action that delays her being able to function

3   in her chosen profession is a violation of the discharge

4   injunction.  And I will hold the individuals responsible for

5   violating that discharge injunction.

6          So what I'm going to do is I'm going to continue this

7   hearing until tomorrow.  One second, please.  I'm going to

8   continue this hearing until tomorrow at 11 a.m.  That would be

9   May 6th.  And we're going to reconvene.  And I want a report.

10  And I want the names, again, filed today of the people who have

11  -- the individuals on behalf of the State of California's bar

12  who has told you that you need anything but an understanding,

13  that you've already told this Bankruptcy Court that all Ms.

14  Albert has to do is make those payments and she'll have her law

15  license back.

16         MR. CHANG:  Yes, Your Honor.  And are you ordering

17  those individuals' appearance?

18         THE COURT:  Not yet.  I want to -- I'll hear from you

19  at 11 o'clock.  And then I'll issue an order to show cause if I

20  need to because my order to show cause will be about probably

21  10,000 dollars a day for violation of the discharge injunction

22  until it's done.  And you can report that back too.  And if you

23  don't believe I will do it, ask Governor Robert "Bobby" Jindal

24  of Louisiana if I don't have a problem doing that.

25         MR. CHANG:  Yes, Your Honor.  So I want to ensure that

Lenore Luann Albert-Sheridan

1    I have a clear understanding so that I can communicate this to

2    my client.  You are ordering the State Bar's counsel to report

3    to the Court today the names of the individuals at the State

4    Bar who are responsible --

5              THE COURT:  You've already give me their names.

6              MR. CHANG:  Right, right.  Okay.

7              THE COURT:  I want you to repeat it on paper.

8              MR. CHANG:  Yes.  And --

9              THE COURT:  And file it with this Court.

10             MR. CHANG:  Right.  And you are informing the bar that

11   the Court may issue an order that would --

12             THE COURT:  An order to show cause.

13             MR. CHANG:  An order to show cause.

14             THE COURT:  Why they shouldn't -- why these

15   individuals should not be held in contempt for violating the

16   discharge injunction.

17             MR. CHANG:  Okay.

18             THE COURT:  And there's no immunity here.  And if you

19   don't believe me, talk to Governor Jindal of Louisiana.

20             MR. CHANG:  And that the order could include sanctions

21   of 10,000 dollars?

22             THE COURT:  At least -- 10,000 dollars a day for

23   keeping Ms. Albert away after you -- and I'll tell you this,

24   I'll add on.  Under Section 105 of the Bankruptcy Code, I think

25   you've misled me.  And you'll be subjects to sanctions too and

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1   MS. Grandt too.  And then if we get into the issues of the

2   discharge injunction, you may beheld to that too.

3           I think I have been abused and misled.  I previously

4   asked -- we have transcripts, what does Ms. Albert need to do

5   to get her law license back.  And you've already told me pay

6   her fines that are nondischargeable.  And she's done it.

7           MR. CHANG:  I understand, Your Honor.

8           THE COURT:  Okay.  We're going to come back here --

9           Mr. Poindexter, I have no idea why you're here except

10  that apparently you're personally dissatisfied with Ms. Albert;

11  is that correct?

12          MR. POINDEXTER:  It's correct that I had no idea why

13  I'm here.  I'm not personally dissatisfied with her.  As a

14  matter of fact, I'm involved in a state court proceeding that

15  I'd like to go to trial.  My understanding is that once she

16  gets her license reinstated, she's going to handle that trial.

17  So it's actually in my client's interest to have her

18  reinstated.

19          THE COURT:  Okay.

20          MR. POINDEXTER:  And I'm not even sure why I'm here to

21  be candid, Your Honor.  But I'd like to be excused from

22  tomorrow.

23          THE COURT:  You're excused from tomorrow.

24          MR. POINDEXTER:  Thank you, Your Honor.

25          THE COURT:  You're welcome.



Lenore Luann Albert-Sheridan

1      All right.  That's what we're going to do.  I truly --

2  and see we have another person on the call.

3           Mr. Okon (ph.), are you there?

4           MR. OKON:  Hello.

5           THE COURT:  Are you involved in this matter?

6           MR. OKON:  Yes, Your Honor.  No, I'm not involved.

7  I'm an interested party, a very close friend to Ms. Albert,

8  sir.

9           THE COURT:  Okay.  Thank you.

10           All right.  If you'll -- I appreciate you coming.

11           Now, is there any questions that you have for me

12  before tomorrow at 11?  You'll have the time now to gather up

13  your statements from the transcript of the last hearing and the

14  last hearings that we've had so that we can make sure that

15  everyone is still on the same page.  And I'll determine whether

16  or not this Court has been misled.  Thank you very much.

17           Are there any other parties wishing to be heard on the

18  10 o'clock calendar?  If not --

19           MS. ALBERT:  Yes, Your Honor.  I just want to say I

20  did file all the transcripts for the Court.  It's on my -- in

21  my declaration, Exhibits 10 through 13.

22           THE COURT:  Good.  That'll be helpful.  Thank you very

23  much.

24           All right.  The Court is in recess until 11:00.  Thank

25  you.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Lenore Luann Albert-Sheridan

1          MR. CHANG:  Thank you, Your Honor.

2          MS. ALBERT:  Thank you.

3      (Whereupon these proceedings were concluded at 10:33 AM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T I O N

 2

 3    I, Michael Drake, certify that the foregoing transcript is a

 4    true and accurate record of the proceedings.

 5

 6

 7

 8    _____

 9    /s/ MICHAEL DRAKE, CER-513, CET-513

10

11    eScribers

12    7227 N. 16th Street, Suite #207

13    Phoenix, AZ 85020

14

15    Date:  May 6, 2021

16

17

18

19

20

21

22

23

24

25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

**$**

**$37,550.90 (1)**
6:2

**A**

**able (2)**
19:9;20:2
**above (1)**
9:6
**abused (1)**
22:3
**according (1)**
19:24
**accordingly (1)**
8:24
**accurate (2)**
7:14;19:18
**act (2)**
12:10;14:7
**action (3)**
10:7;12:18;20:2
**active (1)**
19:13
**activity (2)**
4:15;9:13
**actually (2)**
13:23;14:9;22:17
**adapt (1)**
13:9
**add (2)**
7:13;21:24
**address (1)**
7:25
**administrative (1)**
13:10
**adopt (1)**
13:9
**advise (1)**
19:16
**afternoon (2)**
5:10,14
**again (6)**
8:8;10:9;13:4;14:2;
19:12;20:10
**against (2)**
4:14;5:11
**agent (1)**
18:9
**agree (4)**
17:9,12,16,17
**ahead (1)**
8:12
**ALBERT (39)**
3:8,8,17,20,22;5:7,
19,20,24,25;6:20,20,
21;7:1;8:14,18;10:3;
11:14;12:8,14,20,23;
13:14;14:19,20,22,24;
15:24;16:22,22;17:10;
19:9;20:14;21:23;22:4,

10;23:7,19;24:2
**Albert's (6)**
7:5,16;9:14;11:23;
19:4,13
**Albert-Sheridan (1)**
3:6
**amount (2)**
16:1;20:1
**amounts (2)**
11:14;16:1
**ANA (1)**
3:1
**apologize (2)**
4:17;9:16
**apparently (1)**
22:10
**appealed (1)**
18:20
**appear (1)**
18:15
**appearance (3)**
5:4,6;20:17
**Appearances (2)**
3:7;5:18
**appreciate (3)**
4:25;10:2;23:10
**appreciative (1)**
16:15
**appropriate (3)**
7:19;10:8,10
**April (2)**
5:21,25
**argument (1)**
14:8
**aspects (3)**
16:11,11;18:18
**assist (4)**
4:11;9:13,19;11:22
**assisting (1)**
3:24
**attempt (1)**
17:5
**attend (1)**
4:13
**attorney (2)**
4:11;6:1
**authorized (1)**
17:23
**automatic (3)**
17:2,2;18:16
**Avalon (1)**
9:9
**aware (3)**
8:7;10:12,12
**away (2)**
6:8;21:23

**B**

**back (10)**
8:21;11:15;12:6;
15:9;19:4,13;20:15,22;
22:5,8

**badly (1)**
12:14
**bankruptcy (8)**
7:17;10:12;11:3;
14:12;16:14;19:19;
20:13;21:24
**Bar (39)**
3:12;4:14;5:21;6:8,
11,16,17;7:7,10;8:1,14,
16,22;9:13;10:6;11:13;
12:5,9;13:1,2,9,22;
14:5;15:8,24;16:22;
17:9;18:3,5,6,10,11,13,
18,22;19:10;20:11;
21:4,10
**Bar's (6)**
8:9,20;10:13;12:17;
15:13;21:2
**basis (2)**
8:2,5
**beaten (1)**
12:14
**behalf (1)**
18:3;20:11
**beheld (1)**
22:2
**belief (1)**
12:17
**believes (2)**
10:8;13:10
**Bobby (1)**
20:23
**Bonair (3)**
3:23,24;6:6
**Bonair's (1)**
4:4
**both (3)**
3:14;8:23;11:16
**bothering (2)**
4:16,18
**brief (1)**
14:14
**bring (1)**
11:19

**C**

**calendar (2)**
3:5;23:18
**CALIFORNIA (33)**
3:1;6:12;7:6,8,11,15;
9:3,6,10;10:1,14;11:1,
11,18,23;12:1,9,18;
13:16,17,18,19,21,22,
25;14:1,2,4,7;15:8;
17:3;18:24;19:20
**California's (1)**
20:11
**Call (4)**
3:3,6;10:20;23:2
**called (1)**
4:23
**can (18)**

6:18,24;7:2,5;9:2,12,
18;11:21;12:10,20,24,
25;13:1,1;19:15;20:22;
21:1;23:14
**candid (1)**
22:21
**caption (1)**
8:3
**care (1)**
5:9
**case (4)**
3:22;4:4;7:17;12:25
**cases (1)**
14:13
**cast (1)**
18:21
**Catalina (1)**
9:9
**cause (4)**
20:19,20;21:12,13
**certainly (1)**
19:5
**CHANG (49)**
3:11,11;4:3;6:1;7:13,
14,25;8:22;9:15,17,18,
21;10:5;11:16;14:1,13,
25;15:3,10,13,20;16:4,
6,7,20;17:6,7,12,17,19,
23,25,25;18:1,5,9;19:3,
5,15;20:16,25;21:6,8,
10,13,17,20;22:7;24:1
**chosen (1)**
20:3
**Cinco (1)**
3:5
**Circuit (7)**
16:10,10,15;17:5,9;
18:17,25
**clarified (1)**
19:6
**clarify (2)**
8:13;19:18
**clear (3)**
8:22;9:21;21:1
**clearly (1)**
11:12
**clerk (2)**
8:4;18:11
**client (8)**
6:3;17:7,20;18:11;
19:5,16,19;21:2
**client's (1)**
15:10;22:17
**close (3)**
18:14,15;23:7
**Code (1)**
21:24
**colleague (1)**
3:12
**collect (1)**
17:5
**coming (2)**
17:22;23:10

**comity (1)**
14:8,9
**committing (1)**
4:2
**communicate (1)**
21:1
**complaint (1)**
4:9
**complaints (1)**
4:14
**completely (1)**
6:23;18:22
**component (1)**
18:10
**components (2)**
16:20,21
**concern (1)**
10:6
**concluded (1)**
24:3
**condition (1)**
15:15
**conditions (2)**
16:24;19:20
**confirmed (1)**
11:16
**consider (1)**
8:4
**consideration (1)**
7:9
**contact (1)**
8:3
**contacted (1)**
6:8
**contacting (1)**
10:1
**contempt (1)**
21:15
**continue (2)**
20:6,8
**convey (1)**
19:5,18
**core (1)**
14:9
**correctly (1)**
19:17
**costs (1)**
16:23
**counsel (5)**
4:1,5;6:18;19:15;
21:2
**course (3)**
8:7;9:22;10:7
**Court (146)**
3:3,4,10,14,16,18,21;
4:1,3,17,18,24;5:2,4,9,
13,16,22;6:1,4,7,13,17,
20,22;7:2,5,8,11,15,16,
21;8:4,6,11,17,23,23,
25;9:2,4,6,8,10,19,20,
22,24;10:1,2,7,9,11,12,
14,15,16,25;11:1,3,11,
19,24;12:2,10,18,24;

ALBERT-SHERIDAN; 8:18-Bk-10548-ES
ALBERT-SHERIDAN v. FARFAN; 8:20-ap-01095-SC

13:3,16,16,17,18,19,22,
25;14:2,3,4,5,7,10,12,
15,18,21,23,25;15:3,4,
6,8,11,11,14,16,21;
16:3,7,14;17:1,3,8,14,
18,21,22,25;18:2,5,7,8,
11,14,20,23,24;19:6,6,
8,16,20,22,24;20:13,
18;21:3,5,7,9,9,11,12,
14,18,22;22:8,14,19,
23,25;23:5,9,16,20,22,
24
**Courts (4)**
10:17,23;16:14;
18:25
**Court's (4)**
9:18;19:7,17,19
**Cramton (1)**
18:10
**credit (1)**
15:2
**CSF (2)**
6:10;16:23

## D

**damages (1)**
19:11
**damaging (1)**
4:9
**Dana (1)**
3:23
**day (3)**
19:9;20:21;21:22
**de (1)**
3:5
**debt (2)**
14:10;16:23
**debtor/plaintiff (1)**
3:9
**debts (1)**
18:18
**decisions (1)**
9:4
**declaration (1)**
23:21
**deescalate (3)**
6:24;7:2;11:20
**defendant (1)**
17:15
**defendants (1)**
3:12
**definitely (2)**
6:10;17:2
**delayed (1)**
18:23
**delays (1)**
20:2
**Demersian (1)**
3:23
**deny (1)**
16:17
**department (1)**

13:23
**deserving (1)**
9:14
**determination (1)**
10:2
**determinations (1)**
12:3
**determine (2)**
14:16;23:15
**determined (2)**
8:18;18:19
**developments (1)**
8:8
**difference (1)**
16:3
**different (1)**
16:20
**directly (1)**
4:13
**director (1)**
18:12
**disagree (1)**
12:19
**discharge (8)**
8:24;17:11;18:17;
20:3,5,21;21:16;22:2
**dischargeability (1)**
14:10
**dischargeable (4)**
14:16;15:25;16:11;
18:18
**discharged (3)**
6:10;15:15;19:21
**discipline (3)**
8:1;15:14;16:23
**disclose (1)**
17:23
**disclosed (1)**
6:12
**discretion (1)**
9:23
**dispute (1)**
16:22
**dissatisfied (2)**
22:10,13
**Docket (1)**
3:5
**dollars (3)**
20:21;21:21,22
**done (9)**
10:15;11:25;12:11,
21;14:6;18:23;19:24;
20:22;22:6
**Donna (1)**
18:12
**due (1)**
4:14

## E

**earn (1)**
19:9
**effect (1)**

10:4
**efficacy (1)**
12:3
**either (1)**
3:18
**else (1)**
10:15
**email (1)**
5:7
**emergency (6)**
5:19;7:8,9;8:2;
11:22;13:19
**enjoin (1)**
13:6
**enough (1)**
19:8
**ensure (1)**
20:25
**entire (1)**
11:20
**entitled (1)**
10:3
**even (2)**
12:18;22:20
**everyone (2)**
3:4;23:15
**evidence (1)**
15:25
**exactly (1)**
7:24
**except (1)**
22:9
**excused (2)**
22:21,23
**executive (1)**
18:12
**Exhibits (1)**
23:21
**explain (2)**
3:21;18:16
**explained (1)**
19:16

## F

**Facebook (1)**
10:21
**fact (7)**
9:14;10:3;11:14;
12:2;13:7,8;22:14
**far (1)**
14:8
**fast (1)**
16:13
**favor (1)**
6:22
**Federal (1)**
14:11
**fee (1)**
19:10
**fees (1)**
4:5
**few (1)**

19:1
**fight (1)**
13:4
**file (3)**
4:14;21:9;23:20
**filed (12)**
5:19;7:21,22,23;
8:14,14,16;13:15;14:5;
15:4;17:11;20:10
**files (2)**
7:10;8:1
**filing (2)**
4:9;7:16
**final (1)**
18:19
**fines (1)**
22:6
**firm (1)**
5:11
**first (3)**
4:18;6:22;9:3
**follow (1)**
6:16
**following (1)**
8:3
**force (1)**
17:10
**forthright (2)**
11:13;15:1
**Francisco (1)**
9:11
**frankly (2)**
12:10;19:6
**friend (1)**
23:7
**front (1)**
12:4
**function (1)**
20:2
**funds (1)**
6:3
**further (1)**
4:9

## G

**gather (1)**
23:12
**gave (1)**
4:12
**gets (2)**
12:5;22:16
**Gilbert (1)**
3:23
**given (1)**
15:2
**goes (1)**
14:8
**Good (12)**
3:4,8,10,11,14,15;
4:24;7:3,4;16:12;
18:14;23:22
**Governor (2)**

20:23;21:19
**Grandt (15)**
3:13,15;7:3,4,7,19;
8:10,11,13;9:15,16;
10:11;11:16;14:13;
22:1
**Grant (1)**
6:1
**guess (1)**
10:21
**guys (1)**
15:1

## H

**handle (1)**
22:16
**handling (1)**
10:15
**happen (1)**
12:11
**happened (1)**
6:7
**happening (2)**
10:25;19:2
**happens (2)**
11:4,4
**hard (2)**
16:12;18:21
**hardest (1)**
4:10
**head (1)**
11:2
**hear (3)**
3:18;6:23;20:18
**heard (3)**
5:25;11:12;23:17
**hearing (9)**
4:12;6:5;8:19;11:17,
17;18:15;20:7,8;23:13
**hearings (1)**
23:14
**held (1)**
21:15
**Hello (1)**
23:4
**help (2)**
9:2;10:4
**helpful (3)**
10:5;19:7;23:22
**Hershkowitz (1)**
18:12
**hi (1)**
7:3
**high (1)**
9:8
**hold (1)**
20:4
**Honor (22)**
3:8,11,17,20,22;4:17,
22;5:3,15,20;6:15;
7:25;13:14;17:13;
20:16,25;22:7,21,24;

Case 2:20-cv-01095-SCFD Doc Document 73 Filed 05/06/21 Filed 05/06/21 Page 28 of 30 Page
ALBERT-SHERIDAN; 8:18-Bk-10548-ES Main Document Page 28 of 30
ALBERT-SHERIDAN v. FARFAN; 8:20-ap-01095-SC
Chapter 7
May 5, 2021

23:6,19;24:1
**horse (1)**
12:14

**I**

**idea (3)**
9:11;22:9,12
**immediately (1)**
7:10
**immunity (1)**
21:18
**importantly (1)**
9:7
**include (1)**
21:20
**incremental (1)**
13:8
**indicating (1)**
8:2
**individuals (4)**
20:4,11;21:3,15
**individuals' (1)**
20:17
**information (1)**
10:17
**informing (2)**
7:11;21:10
**injunction (6)**
18:17;20:4,5,21;
21:16;22:2
**injuring (1)**
4:9
**injury (1)**
4:16
**insider (1)**
10:16
**Instagram (1)**
10:22
**instructed (2)**
17:19;18:2
**intended (1)**
4:14
**intending (1)**
7:18
**intention (2)**
4:4;11:19
**interact (1)**
10:17
**interest (2)**
8:9;22:17
**interested (1)**
23:7
**internal (1)**
18:10
**into (1)**
22:1
**involved (3)**
22:14;23:5,6
**irrevocable (1)**
4:15
**issue (4)**
9:23;14:11;20:19;

21:11
**issues (2)**
16:13;22:1
**item (1)**
3:6

**J**

**James (1)**
3:11
**Jim (1)**
6:1
**Jindal (2)**
20:23;21:19
**joined (1)**
3:12
**judge (3)**
11:6,7,8
**judgment (1)**
15:18
**judicial (1)**
11:5
**juice (1)**
13:12
**July (1)**
12:23
**June (1)**
12:23

**K**

**keep (1)**
4:16
**keeping (1)**
21:23
**kind (1)**
11:5
**knows (1)**
6:4

**L**

**last (5)**
8:18;9:5;11:16;
23:13,14
**law (15)**
4:2,8;5:11;7:6;9:14;
10:4;11:15,23;12:5,21;
15:9;19:4,13;20:14;
22:5
**lawsuits (1)**
12:3
**least (1)**
21:22
**Lenore (1)**
3:8
**Leslie (3)**
3:24;4:11,11
**less (3)**
5:21;6:15;12:12
**letter (2)**
4:3;14:1
**letting (2)**

9:4;13:2
**license (27)**
4:5,10;6:2,4,13,19;
7:6,9,20;8:19,21;9:14;
11:15,23;12:5,22;
13:17,20,24,24;14:3;
15:9;19:4,13;20:15;
22:5,16
**litigated (1)**
16:9
**living (1)**
19:9
**loan (1)**
19:10
**loaned (1)**
6:7
**long (1)**
12:22
**look (1)**
12:8
**looked (1)**
14:12
**lost (1)**
6:7
**Louisiana (2)**
20:24;21:19

**M**

**making (3)**
5:4,6;13:7
**many (1)**
12:22
**matter (9)**
3:7;4:15;5:5;6:11;
8:5;11:20;18:12;22:14;
23:5
**MAY (11)**
3:1,25;7:25;8:25;
10:25;13:11;15:6;19:7;
20:9;21:11;22:2
**Maybe (4)**
11:25,25;17:14;
18:20
**Mayo (1)**
3:5
**mean (1)**
13:3
**meant (1)**
4:8
**mediation (1)**
11:6
**mediations (1)**
11:4
**mediator (2)**
11:5,9
**mediators (1)**
11:6
**meet (1)**
12:15
**member (1)**
19:14
**Michele (1)**

18:10
**microphone (1)**
4:21
**might (3)**
10:24;11:25;13:11
**minutes (1)**
19:1
**misled (4)**
16:16;21:25;22:3;
23:16
**miss (1)**
7:13
**missing (1)**
9:25
**misstated (2)**
19:22,22
**mixed (1)**
11:11
**modify (4)**
8:1,25;13:22;15:14
**money (8)**
6:4,8,10;8:16,18;
10:3;12:5;17:10
**more (3)**
9:7;12:11;18:23
**morning (8)**
3:4,8,10,11,14,15;
7:3,4
**motion (5)**
5:19;6:23;16:18
**moving (1)**
3:9
**much (3)**
16:14;23:16,23
**mute (4)**
4:25;5:17,22;9:16

**N**

**name (3)**
17:21,22;18:2
**names (5)**
18:7,8;20:10;21:3,5
**need (7)**
5:22;7:21;13:5;
19:23;20:12,20;22:4
**needed (1)**
8:19
**needs (2)**
15:8;19:23
**nice (1)**
19:2
**Ninth (8)**
16:10,10,14;17:4,8,
9;18:17,25
**nondischargeable (4)**
11:14;16:1,12;22:6
**notice (2)**
4:12;5:13
**notification (3)**
5:7;7:11;8:15
**notifying (1)**
8:6

**number (2)**
3:5,6

**O**

**objection (1)**
10:7
**occurs (1)**
10:23
**o'clock (3)**
3:5;20:19;23:18
**Office (4)**
6:17,17,18;13:23
**Okon (3)**
23:3,4,6
**once (2)**
7:10;22:15
**one (4)**
3:25;4:15;11:10;
20:7
**only (4)**
10:18,18;13:21;
19:23
**oOo- (1)**
3:2
**opposing (1)**
4:1
**order (26)**
3:3;5:11;8:25;9:5,
23;12:16;13:24;15:14,
21,21,22;16:5,7,8,18,
25;18:23;19:20,24,24;
20:19,20;21:11,12,13,
20
**ordering (3)**
18:14;20:16;21:2
**orders (4)**
8:2;10:18;13:22;
16:21
**otherwise (1)**
5:1
**ought (1)**
17:14
**ourselves (1)**
16:12
**out (2)**
6:14;13:15
**outcome (1)**
12:12
**owe (1)**
19:25
**owed (3)**
8:18;17:11;19:25
**own (2)**
7:17;9:4

**P**

**page (2)**
6:14;23:15
**pages (1)**
14:12
**paid (8)**

Case 8:20-ap-01095-SC Doc 73 Filed 05/06/21 Entered 05/06/21 11:57:18 Desc
Main Document Page 29 of 30

Case 8:18-bk-10548-ES Doc 569 Filed 05/06/21 Page 29 of 30
ALBERT-SHERIDAN; 8:18-Bk-10548-ES                                                    Chapter 7
ALBERT-SHERIDAN v. FARFAN; 8:20-ap-01095-SC                                          May 5, 2021

**4:**5;6:2,9,11;8:15,24;
10:3;15:22
**paper (1)**
21:7
**papers (2)**
8:22;15:4
**part (2)**
14:16;16:25
**parties (3)**
11:20;17:10;23:17
**party (3)**
3:9;11:10;23:7
**Paula (1)**
3:23
**pay (6)**
6:8;8:19;15:22;
17:10;19:25;22:5
**paygrade (1)**
9:7
**paying (1)**
8:18
**payments (4)**
14:16;16:8,9;20:14
**pays (2)**
11:14;12:5
**pending (1)**
12:4
**people (4)**
12:12;18:8,8;20:10
**perhaps (2)**
3:21;13:2
**person (3)**
17:21;18:2;23:2
**personally (6)**
17:12,14,16,17;
22:10,13
**petition (10)**
7:8;8:1,9,14,16;
13:15,20;14:3,5;15:4
**ph (4)**
3:23,23;6:6;23:3
**phone (2)**
4:23,25
**plaintiff (1)**
17:15
**pleading (1)**
7:16
**please (4)**
3:7;5:24;19:18;20:7
**pleased (1)**
12:12
**plus (1)**
6:2
**Poindexter (16)**
3:16,19,25;4:1,7,20,
22;5:3,6,10,14,22;22:9,
12,20,24
**point (7)**
5:17;6:14;9:12,25;
12:16;13:7,14
**portion (1)**
20:1
**position (9)**

5:20;8:20,23;10:13,
14;13:3;15:10,13;
17:19
**practice (1)**
4:2
**practicing (1)**
4:8
**precisely (1)**
5:8
**pretty (2)**
12:14;16:12
**previously (2)**
17:11;22:3
**probably (1)**
20:20
**probation (3)**
6:16,18;13:23
**problem (3)**
10:23;11:10;20:24
**procedures (2)**
6:16;12:8
**proceed (2)**
5:24;13:13
**proceeding (3)**
8:8;14:9;22:14
**proceedings (3)**
10:12;11:13;24:3
**process (4)**
9:19;10:1;12:21;
19:7
**processes (1)**
13:9
**processing (1)**
11:22
**profession (1)**
20:3
**progress (1)**
13:7
**pronouncements (1)**
10:19
**proposal (1)**
19:7
**provide (1)**
15:22
**provided (1)**
15:24
**public (1)**
10:19
**punish (1)**
7:23
**purpose (1)**
8:6
**purview (2)**
14:11,15
**put (2)**
5:17;17:15

**R**

**rather (1)**
13:10
**rationally (1)**
11:9

**reading (1)**
17:12
**real (1)**
19:2
**really (1)**
5:22
**reason (2)**
10:6;13:4
**reasons (1)**
4:16
**received (1)**
5:7
**recess (1)**
23:24
**reconvene (1)**
20:9
**record (1)**
19:18
**refute (1)**
14:13
**regard (1)**
14:10
**regarding (1)**
4:4
**reimburse (1)**
6:3
**reinstate (10)**
4:10;6:2,3,18;7:9,20;
9:13;13:17,20;14:3
**reinstated (7)**
4:6;8:19;9:1;11:23;
19:13;22:16,18
**reinstates (1)**
13:24
**relief (2)**
13:18;14:5
**remaining (1)**
16:24
**repay (1)**
19:10
**repeat (1)**
21:7
**repeating (1)**
14:18
**report (3)**
20:9,22;21:2
**represent (2)**
17:20;18:3
**represented (1)**
18:4
**request (3)**
8:7;11:22;12:15
**requesting (2)**
8:4;14:4
**required (2)**
16:8;19:20
**reservation (1)**
6:9
**resolution (1)**
8:9
**resolve (1)**
10:8
**respect (7)**

6:23;8:17;9:2,8;
11:13;15:23;16:13
**respectfully (1)**
8:4
**response (2)**
6:14;17:6
**responsible (2)**
20:4;21:4
**restraining (2)**
5:11;12:16
**retain (1)**
4:4
**reverb (1)**
5:1
**reversed (1)**
14:9
**right (15)**
5:16;6:8,25;9:20;
12:14;14:18,20;15:6;
18:9;21:6,6,10;23:1,10,
24
**rights (1)**
6:9
**Robert (1)**
20:23
**role (1)**
19:15
**rule (2)**
14:11;16:13
**rules (4)**
12:7,8;13:19;14:6

**S**

**Sacramento (1)**
9:10
**same (2)**
6:16;23:15
**San (1)**
9:10
**sanctions (2)**
21:20,25
**SANTA (1)**
3:1
**satisfaction (2)**
15:18,23
**satisfied (4)**
15:25;16:19,21,23
**saying (2)**
10:2;11:2
**scratching (1)**
11:2
**Second (3)**
4:20;14:23;20:7
**Section (1)**
21:24
**security (1)**
6:3
**seeking (2)**
5:11;18:23
**send (1)**
12:1
**sent (1)**

7:10
**Shale (1)**
6:6
**show (5)**
13:1;20:19,20;21:12,
13
**signal (1)**
8:8
**signals (1)**
11:12
**situation (3)**
7:6;8:17;10:8
**sizeable (1)**
20:1
**somebody (1)**
11:25
**someone (1)**
11:1
**sometimes (2)**
10:23;13:9
**sorry (1)**
8:11
**sort (1)**
15:25
**speaking (1)**
4:25
**squeeze (1)**
13:11
**staff (1)**
8:3
**standards (1)**
12:16
**State (46)**
3:12;4:14;5:21;6:8,
11,16,17;7:7,10;8:1,8,
14,16,20,22;9:8,13;
10:6;13;11:12;12:5,9,
17;13:1,2,22;14:5,10,
15;15:8,13,24;16:22;
17:9;18:3,5,6,11,13,18,
22;19:10;20:11;21:2,3;
22:14
**statement (1)**
12:13
**statements (1)**
23:13
**States (1)**
18:21,25
**status (1)**
7:5
**stay (3)**
17:2,3;18:16
**steps (1)**
7:19
**still (2)**
16:25;23:15
**stop (2)**
7:22;14:23
**straight (1)**
15:7
**structure (1)**
13:10
**subjects (1)**

Min-U-Script®                      eScribers, LLC | (973) 406-2250                 (4) paper - subjects
                          operations@escribers.net | www.escribers.net
                                                                                  1168-29

Case 8:20-cv-01095-SCFD Doc 73 Filed 05/06/21 Entered 05/06/21 11:57:18 Desc
ALBERT-SHERIDAN; 8:18-Bk-10548-ES Main Document Page 30 of 30
ALBERT-SHERIDAN v. FARFAN; 8:20-ap-01095-SC

Chapter 7
May 5, 2021

21:25
**submit (1)**
  4:3
**submitted (2)**
  7:7;15:3
**suggest (1)**
  11:10
**suppose (1)**
  9:22
**supposed (1)**
  11:6
**Supreme (41)**
  6:12;7:8,11,16;8:4,6,
  23,25;9:4,6,10;10:1,14;
  11:1,11,18,24;12:1,9,
  18;13:3,16,16,17,18,
  19,21,25;14:2,3,4,7;
  15:4,8,11,14;17:3;
  18:20,24;19:20,24
**sure (6)**
  9:21;10:13,15;11:18;
  22:20;23:14
**suspends (1)**
  13:23
**Suzanne (1)**
  6:1
**swift (1)**
  10:2
**system (1)**
  5:23

**T**

**talk (7)**
  10:18,19;11:7;17:18;
  18:7,8;21:19
**telephone (2)**
  5:23;10:20
**telling (1)**
  17:16
**temporary (1)**
  12:16
**That'll (1)**
  23:22
**third (1)**
  17:10
**today (6)**
  4:13,16;8:20;19:12;
  20:10;21:3
**together (1)**
  11:20
**told (14)**
  6:6,6;7:15;12:4;
  14:25;15:1;16:10;17:4,
  8,9;18:17;20:12,13;
  22:5
**tomorrow (6)**
  18:15;20:7,8;22:22,
  23;23:12
**took (2)**
  19:1,10
**transcript (2)**
  12:1;23:13

transcripts (2)
  22:4;23:20
**trial (8)**
  3:25;4:5;6:17;11:5,7,
  8;22:15,16
**TRO (10)**
  5:19;6:7;7:10,21,22,
  23;8:7,14;12:15;13:6
**true (1)**
  15:16
**truly (1)**
  23:1
**truthful (2)**
  5:21;6:15
**try (1)**
  11:20
**trying (2)**
  4:10;19:2
**tweet (1)**
  10:21
**Twitter (1)**
  10:21
**two (1)**
  16:20
**type (1)**
  14:4
**typically (1)**
  11:8

**U**

**ultimate (1)**
  18:11
**Um-hum (1)**
  6:21
**unauthorized (1)**
  4:2
**unbelievably (1)**
  11:4
**under (2)**
  6:9;21:24
**understands (1)**
  11:19
**United (2)**
  18:21,25
**unlawfully (1)**
  4:8
**unsatisfied (1)**
  16:24
**up (4)**
  8:3;9:9;12:1;23:12
**urgency (1)**
  6:11
**urgent (2)**
  8:5,9

**V**

**vacate (12)**
  15:14,17,17,21,22;
  16:4,17,18;17:3;18:24;
  19:20,23
**vacated (1)**

18:25
**versa (1)**
  11:7
**versus (1)**
  3:23
**vice (1)**
  11:7
**view (2)**
  19:17,19
**violating (5)**
  17:1,2;18:16;20:5;
  21:15
**violation (2)**
  20:3,21

**W**

**wait (2)**
  12:24,25
**Waiting (1)**
  17:3
**way (12)**
  9:3,6,9,9,12;10:1,24;
  11:3,9;13:10,11;16:9
**WEDNESDAY (1)**
  3:1
**week (2)**
  12:24,25
**welcome (3)**
  3:4;5:1;22:25
**Westmoreland (1)**
  4:11
**what's (2)**
  19:2,25
**Whereupon (1)**
  24:3
**wishing (1)**
  23:17
**within (3)**
  9:22;14:11,15
**without (1)**
  12:21
**wonder (1)**
  11:2
**word (1)**
  12:17
**work (2)**
  5:12;7:22
**working (1)**
  4:21
**Worland (1)**
  3:24
**worth (1)**
  13:11
**wrote (3)**
  4:3;14:1,13

**Y**

**years (1)**
  12:22
**Yesterday (7)**
  4:1;5:7,10,13,14;

14:2,14

**Z**

**Zoom (1)**
  5:23

**1**

**1.10 (1)**
  3:6
**10 (3)**
  3:5;23:18,21
**10,000 (3)**
  20:21;21:21,22
**10:33 (1)**
  24:3
**105 (1)**
  21:24
**11 (3)**
  20:8,19;23:12
**11:00 (1)**
  23:24
**13 (1)**
  23:21

**2**

**2 (1)**
  6:14
**20 (1)**
  14:12
**2018 (2)**
  12:23,23
**2021 (2)**
  3:1;5:25
**20th (2)**
  5:21,25
**28th (1)**
  12:23

**5**

**5 (1)**
  3:1

**6**

**6th (1)**
  20:9

**7**

**7th (1)**
  3:25