**FILED**

04/03/2023

**STATE BAR COURT**
**CLERK'S OFFICE**
**LOS ANGELES**

# Public Matter

## STATE BAR COURT OF CALIFORNIA

## HEARING DEPARTMENT - LOS ANGELES

| | | |
|---|---|---|
| In the Matter of | ) | Case No. SBC-22-O-30348-DGS |
| | ) | |
| LENORE LUANN ALBERT, | ) | DECISION |
| | ) | |
| State Bar No. 210876. | ) | |
| | ) | |

### Introduction

In this contested disciplinary matter, respondent Lenore LuAnn Albert (Respondent) is charged with six counts of professional misconduct relating to her practice of law before the United States District Court, Eastern District of California (EDCA) during the period in which she was suspended and/or otherwise ineligible to practice law in California.

After full consideration of the record, the court finds that the Office of Chief Trial Counsel of the State Bar of California (OCTC) has satisfied its burden of proving five of the six counts by clear and convincing evidence.[1]  Specifically, Respondent is found culpable of one count of knowingly disobeying the rules of the EDCA in violation of Rules of Professional Conduct,[2] rule 3.4(f); two counts of engaging in the unauthorized practice of law (UPL) in

---

[1] Clear and convincing evidence leaves no substantial doubt and is sufficiently strong to command the unhesitating assent of every reasonable mind.  (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 552.)  This "standard of proof . . . which requires proof making the existence of a fact highly probable – falls between the 'more likely than not' standard commonly referred to as a preponderance of the evidence and the more rigorous standard of proof beyond a reasonable doubt."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)

[2] Unless otherwise specified, all references to rules refer to the Rules of Professional Conduct, effective November 1, 2018, and all references to former rules refer to the Rules of Professional Conduct in effect through October 31, 2018.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 2 of 56    Page
ID #:5764
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 2 of 56

violation of Business and Professions Code,[3] sections 6125, 6126, and 6068, subdivision (a); and two counts of engaging in UPL in another jurisdiction in violation of rule 5.5(a).  The court dismisses the remaining count alleging moral turpitude by UPL, in violation of section 6106.

In view of the circumstances surrounding Respondent's misconduct and balancing the aggravation and mitigation, the court recommends, among other things, that Respondent be suspended for a period of three years, stayed, and placed on probation for three years with conditions to include an 18-month actual suspension.

<u>**Significant Procedural History**</u>

On April 29, 2022, OCTC initiated this proceeding by filing a notice of disciplinary charges (NDC).

On May 23, 2022, Respondent filed a motion to dismiss the NDC.  On June 17, the court granted Respondent's motion – dismissing the NDC with leave to amend, on the grounds that the NDC failed to provide adequate notice of the specific EDCA rules alleged to have been violated. However, the court specifically rejected Respondent's argument that the court lacked jurisdiction to discipline Respondent with regard to her practice in federal court – finding that there was no federal preemption where admission and ability to practice before the EDCA is conditioned on admission and eligibility to practice in California.  (See *Gadda v. Ashcroft* (9th Cir. 2004) 377 F.3d 934, 945 [no field preemption where immigration regulations condition attorney's ability to practice in immigration court on good standing as a member of the bar of a state court]; EDCA Local Rule 180, subd. (a) ["Admission to and continuing membership in the Bar of (the EDCA) are limited to attorneys who are active members in good standing of the State Bar"].)

On June 20, 2022, OCTC filed an amended NDC (ANDC) and on July 8, Respondent filed a motion to dismiss the ANDC.  Also on July 8, OCTC filed a motion for leave to amend

---

[3] Unless otherwise indicated, all statutory references are to this source.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 3 of 56    Page
ID #:6765
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 3 of 56

the ANDC to clarify the basis upon which it claims Respondent was ineligible to practice law and to reference additional court filings by Respondent as further bases for the UPL charges.  On August 11, the court granted OCTC's motion for leave to amend the ANDC.  OCTC filed a second ANDC (SANDC) the following day, on August 12.[4]

On August 22, 2022, Respondent filed a motion to dismiss the SANDC, asserting various grounds, including the previously rejected federal preemption argument.  On September 23, the court denied Respondent's motion to dismiss the SANDC – ordering Respondent to file a response to the SANDC by September 29.

On September 26, 2022, the parties filed a Pretrial Stipulation as to Facts and Admission of Documents (Stipulation).

On September 30, 2022, Respondent filed a response to the SANDC, denying the charges and raising various defenses, including the twice previously rejected federal preemption defense.

A four-day trial was held remotely on December 13, 14, 16, and 21, 2022.  (Rules Proc. of State Bar, rule 5.18.)  OCTC was represented by Supervising Attorney Cindy Chan and Deputy Trial Counsel Cristina Wang.  Respondent represented herself.

OCTC submitted its closing brief on January 6, 2023, the deadline set by the court,[5] and the case was submitted for decision the same day.  Respondent filed her closing brief late, on January 9.[6]

---

[4] The same day, the court denied Respondent's motion to dismiss the ANDC, as moot.

[5] The court found good cause to permit post-trial briefing to assist the court with the parties' analysis of the evidence submitted at trial.  (See Rules Proc. of State Bar, rule 5.111(A).)

[6] Notwithstanding Respondent's late submission, the court considered all of Respondent's arguments in this case because disbarment is a potential disciplinary result and there does not appear to be any resulting harm or unfairness to OCTC in doing so.  (Cf. *Choi v. Sagemark Consulting* (2015) 18 Cal.App.5th 308, 322.)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 4 of 56    Page
ID #:5766
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 4 of 56

**Evidentiary Record**

The documentary evidence in this case includes certain records from proceedings in other courts, which are relevant to the current disciplinary charges. Pursuant to OCTC's unopposed request, the court took judicial notice of the EDCA Local Rules and various documents filed in the federal court proceedings. Still, the existence of findings and conclusions of law reflected in court documents "does not modify the fundamental requirement that, to establish a disciplinary violation, OCTC must prove each element of a charged violation by clear and convincing evidence." (*In the Matter of Kittrell* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 195, 203.)

This court has independently evaluated all evidence, including the admitted records from the federal court proceedings, applying the clear and convincing evidence burden of proof and resolving all reasonable doubts in Respondent's favor. (*In the Matter of Kittrell*, *supra*, 4 Cal. State Bar Ct. Rptr. at p. 206; *In the Matter of Oheb* (Review Dept. 2006) 4 Cal. State Bar Ct. Rptr. 920, 934.) In addition, Respondent was given fair opportunity to present evidence to contradict, temper, and explain all admitted court records. (*In the Matter of Kittrell*, *supra*, 4 Cal. State Bar Ct. Rptr. at p. 206.)

**Findings of Fact**

The following findings of fact are based on the above-referenced Stipulation, the admitted documentary evidence, and the testimony at trial.

**Respondent is admitted to practice law in California**

Respondent was admitted to the practice of law in California on December 5, 2000, and has since been a licensed attorney of the State Bar of California (State Bar).

**Respondent is suspended from the practice of law in California (*Albert I*)**

On December 13, 2017, in a prior discipline matter, case No. S243927 (State Bar Court No. 15-O-11311 [15-O-11708, 15-O-12260]) (*Albert I*), the California Supreme Court (Supreme

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 5 of 56    Page
ID #:5767
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 5 of 56

Court) ordered that Respondent be suspended for one year, stayed, and placed on probation for one year with conditions, including that she be actually suspended for a minimum of the first 30 days of her probation and continuing until she paid specified sanctions imposed by the Superior Court of Orange County.  Respondent was also ordered to pay disciplinary costs.

Respondent filed a petition for rehearing, and on February 14, 2018, the Supreme Court denied her petition and the discipline order became final.  (See Cal. Rules of Ct., rule 9.18(a).) Therefore, Respondent's 30-day actual suspension commenced on February 14 and would have concluded on March 16, if Respondent had satisfied the superior court sanctions awards. Respondent had actual notice of the Supreme Court order imposing a minimum 30-day actual suspension.

Notwithstanding the fact that Respondent had not paid the sanctions awards, in a June 1, 2018 letter, the State Bar reinstated Respondent's license, retroactive to March 16, 2018, because Respondent had filed for Chapter 13 bankruptcy in February.  However, also in June, Respondent's Chapter 13 bankruptcy was converted to a Chapter 7 bankruptcy and the State Bar reactivated Respondent's suspension on June 28, 2018.[7]  Respondent had actual notice that her suspension was reactivated effective June 28, 2018.

On February 26, 2019, the United States Bankruptcy Court issued an Order of Discharge – Chapter 7, granting Respondent a discharge under 11 U.S.C. § 727.  The superior court sanctions at issue in the December 2017 *Albert I* discipline order were later deemed a dischargeable debt in the Chapter 7 bankruptcy.  (See *Albert-Sheridan v. State Bar of Cal.* (9th Cir. 2020) 960 F.3d 1188.)  Even so, Respondent remained required to pay discipline costs – a non-dischargeable debt – as a condition of her return to active status, pursuant to section 6140.7.

---

[7] Respondent had previously filed a motion to reinstate her license, modify the December 13, 2017 Supreme Court order, and waive payment of the State Bar costs and fees, but that request was denied by the Supreme Court in an order filed July 25, 2018.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 6 of 56    Page
ID #:5768
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 6 of 56

(*Ibid.*)  Thus, Respondent remained ineligible to practice law in California from June 28, 2018, through April 21, 2021, when she paid all outstanding disciplinary costs.

**Respondent is disqualified by the United States District Court, Central District of California (CDCA)**

Beginning sometime before March 22, 2018, Respondent represented the plaintiff in the case of *Mackovski, et al. v. City of Garden Grove et al.*, CDCA case No. SACV 11-01538. During the pendency of the case, the CDCA became aware of Respondent's suspension by the State Bar, and on March 22, 2018, the CDCA issued an order to show cause as to why Respondent should not be disqualified as attorney of record for the plaintiff (Disqualification OSC) citing "serious concerns [about] whether [Respondent] may continue to represent Plaintiff in this case."  (Ex. 57, p. 1.)

On the same date, March 22, 2018, Respondent filed a response to the Disqualification OSC, consisting of her declaration and exhibits, in which Respondent disputed that her State Bar license has been or should be suspended and asserted that she was currently litigating the issues in the superior court and bankruptcy court.

On April 4, 2018, the CDCA issued an order, which addressed Respondent's disqualification, ruling as follows:

> Thus, the [CDCA] **DISQUALIFIES** [Respondent] from participating as Plaintiff's counsel in this case while her license to practice law in California is suspended.  See [CDCA] Local Rule 83-3.3 ("Any attorney previously admitted to the Bar of [the CDCA] who is no longer is enrolled as an active member of the Bar, Supreme Court, or other governing authority of any State, territory or possession, or the District of Columbia, shall not practice before [the CDCA].")  Until [Respondent]'s license to practice law in California is reinstated or there is a judicial determination that the suspension of her license was unlawful, she cannot represent Plaintiff in this case. [Footnote omitted.]

(Ex. 59, p. 6.)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 7 of 56    Page
ID #:5769
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 7 of 56

**Respondent is suspended by United States Court of Appeal, Ninth Circuit (Ninth Circuit)**

On April 17, 2018, Respondent filed a document entitled "Appellant's Attorneys Notice of Temporary Disqualification to Proceed" (Disqualification Notice), on behalf of her client Brooke Noble (Noble) in the case of *Brooke Noble v. Wells Fargo, Bank, N.A.* (*Noble v. Wells Fargo*), Ninth Circuit case Nos. 16-16362; 17-17294.[8]  (Ex. 17.)

In the Disqualification Notice, Respondent claimed that she was "temporarily disqualified" because "an employee at the California State Bar wrongfully and unlawfully suspended her license by back dating the suspension to February 14, 2018" and "[t]he State Bar [C]ourt has refused to reinstate the license to date although it says it was a 30 day suspension." (*Id.* at p. 2.)  Respondent did not mention the Supreme Court order imposing discipline.

On April 24, 2018, Appellate Commissioner Peter L. Shaw (Appellate Commissioner) for the Ninth Circuit issued an order with regard to Respondent's Disqualification Notice, construing the Disqualification Notice as a notice of withdrawal, ordering Respondent to provide the Ninth Circuit with contact information for Noble, and staying the briefing schedule.

In a separate matter before the Ninth Circuit, *In re Lenore Albert, Esquire*, Ninth Circuit case No. 18-80051, on June 13, 2018, Respondent filed a document entitled "Petition for Reinstatement and Request for OSC: re Sanctions Against the State Bar" (Petition for Reinstatement).  (Ex. 50.)  The Petition for Reinstatement included the June 1, 2018 letter from the State Bar, which notified Respondent that her license had been retroactively reinstated on March 16, 2018, based on her Chapter 13 bankruptcy filing.

The following day, on June 14, 2018, the Appellate Commissioner issued an order granting Respondent's Petition for Reinstatement and reinstating Respondent as an attorney

---

[8] Respondent had filed a notice of appeal of the EDCA's dismissal order in *Noble v. Wells Fargo*, EDCA case No. 1:14-cv-01963, on November 7, 2017.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 8 of 56    Page
ID #:5790
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 8 of 56

authorized to practice before the Ninth Circuit but denying the request for an order to show cause regarding sanctions against the State Bar.

But, on July 12, 2018, the Appellate Commissioner reopened reciprocal discipline proceedings, after receiving notice that Respondent's license had again been suspended by the State Bar on June 28.  The Appellate Commissioner issued an order to show cause as to why Respondent should not be reciprocally suspended and ordered to withdraw from all pending cases before the Ninth Circuit, including *Noble v. Wells Fargo* (Reciprocal Discipline OSC).

Respondent filed a response to the Reciprocal Discipline OSC, requesting more time to substantively respond.

In an order filed September 18, 2018, the Appellate Commissioner scheduled a hearing for Respondent to show that reciprocal discipline is improper based upon any of the factors identified in *In re Kramer* (9th Cir. 2001) 282 F.3d 721, 723, i.e., (1) a deprivation of due process; (2) insufficient proof of misconduct; or (3) grave injustice which would result from the imposition of such discipline.  Respondent was ordered to supplement her response to address these issues.  Accordingly, Respondent filed a supplemental response brief on October 5.

On December 19, 2018, the Ninth Circuit filed an order with regard to Respondent's eligibility to practice before the Ninth Circuit.  Based on the report and recommendation by the Appellate Commissioner, the Ninth Circuit suspended Respondent from the practice of law in the Ninth Circuit, with one limited exception.  The order provided, in pertinent part:

> The Clerk shall change [the Ninth Circuit]'s records to reflect that [Respondent] has been suspended and is no longer eligible to practice before the Ninth Circuit, with the exception described below.
>
> For the convenience of the [Ninth Circuit] and in the interests of justice, [Respondent] shall remain counsel of record for Brooke Noble in the related pending appeals, *Noble v. Wells Fargo*, Nos. 16-16362, 17-17294, and respond to any developments in those

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 9 of 56    Page
ID #:5751
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 9 of 56

        cases. [Respondent] shall submit filings in no other case in this
        court during her suspension."

(Ex. 20, pp. 1-2.)

On May 29, 2019, the Ninth Circuit issued a memorandum disposition in *Noble v. Wells Fargo*, affirming the EDCA's rulings in favor of Wells Fargo, and a mandate issued on June 20, 2019.

**Respondent is suspended from the practice of law in California again (*Albert II*)**

On July 10, 2019, in case No. S254967 (State Bar Court Nos. SBC-16-O-12958 and SBC-16-O-10548 (consolidated)) (*Albert II*), the Supreme Court disciplined Respondent in a second disciplinary matter, ordering that she be suspended for one year, stayed, and placed on probation for two years with conditions, including that she be actually suspended for a minimum of the first six months of her probation continuing until she made restitution to Dr. Nira Schwartz-Woods in the amount of $20,000 and Fin City Foods in the amount of $47. Again, Respondent was also ordered to pay disciplinary costs.

Respondent filed a petition for rehearing, and on August 28, the Supreme Court denied her petition and the discipline order became final as of that date. (See Cal. Rules of Ct., rule 9.18(a).) Respondent had actual notice of the Supreme Court order. Respondent's six-month actual suspension commenced on August 28 and would have concluded on or about February 28, 2020, if Respondent had paid the ordered restitution.[9] However, as with *Albert I*,

---

[9] On May 12, 2021, the Supreme Court granted an emergency petition to modify the discipline order, modifying the restitution condition to read that Respondent was suspended for the first six months of probation and until she reimbursed the Client Security Fund (CSF), to the extent of any payment from CSF was made to Dr. Schwartz-Woods. In any event, subsequent case law made clear that the restitution debt was discharged by Respondent's bankruptcy in February 2019. (Cf. *Kassas v. State Bar of Cal.* (9th Cir. 2022) 49 F.4th 1158.) And, on July 28, 2021, the Supreme Court issued a standing order allowing the State Bar to consider any disciplinary order amended to remove any mandatory payment condition if the debt is dischargeable under bankruptcy and/or to treat any such condition as satisfied upon notice that the underlying debt has been discharged.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 10 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 10 of 56
Page ID #:5772

Respondent remained ineligible to practice law in California until April 21, 2021, when all discipline costs were paid.

**Attorney Leslie Westmoreland notifies the State Bar re employment of Respondent**

Around the time of the issuance of the second disciplinary order, in July 2019, California attorney Leslie Westmoreland (Westmoreland) submitted to the State Bar a signed and dated copy of a form entitled "Notice to State Bar Regarding Employment of a Disbarred, Resigned, Suspended or Involuntary Inactive Member," reporting that he employed Respondent as an employee/clerk effective July 12, 2019.  (Ex. 1022)  The pre-printed portion of the form noted the duties that Respondent was allowed and not allowed to perform under former rule 1-311(C) and (B),[10] respectively, as a suspended attorney employed to work for a law firm.  Respondent read and understood the permitted and disapproved activities noted on the form.

**Respondent shuts down her California law practice and starts a tech company**

During her suspension, Respondent closed her law office.  She tried to make a space for herself outside of the practice of law and started a tech company called Simply Lenore LLC in October 2019.  She worked on developing software to help litigation attorneys and spent two years working to perfect two of her own trademarks, ICAN ID and MasterMind.[11]  She attended trade shows with her significant other, Jim Ocon, and Ocon Solutions in 2019 and 2020 and she worked with OConsortium as program director of outreach and on its mobile technology tour.  Respondent also engaged in political activities and volunteer work, discussed *post*.

---

[10] Although former rule 1-311 was no longer in effect at that time, rule 5.3.1, applicable at that time, notes the same duties that may or may not be performed by a suspended attorney.

[11] Names of the marks here do not represent the symbol or design that identify the marks.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 11 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 11 of 56
Page ID #:5773

**Respondent continues to practice law before EDCA while State Bar license is suspended**

   **Relevant Background**

On or about December 17, 2014, Respondent was admitted to practice law before the

EDCA.  EDCA Local Rules 180 and 184 (LR 180 and LR 184, respectively) were effective at all

relevant times herein and remained substantively unchanged throughout the period at issue.

   LR 180, subdivision (a), provides, in relevant part, that admission and continuing

membership in the Bar of the EDCA is limited to attorneys who are active members in good

standing of the State Bar.  And LR 180, subdivision (e), sets forth the standards of professional

conduct before the EDCA, adopting "the standards of professional conduct required of members

of the State Bar of California and contained in the State Bar Act, the Rules of Professional

Conduct of the State Bar of California, and court decisions applicable thereto."

   Furthermore, LR 180, subdivision (c) and LR 184, subdivision (b), both require that an

attorney "promptly notify" the EDCA of any change in status in any other jurisdiction that would

make the attorney ineligible to practice in the EDCA.  As relevant here, LR 184, subdivision (b),

which also requires notification of any disciplinary action, further provides that:

> If an attorney's status so changes with respect to eligibility, the
> attorney shall forthwith be suspended from practice before [the
> EDCA] without any order of [the EDCA] until becoming eligible
> to practice.  Upon written motion to the Chief Judge, an attorney
> shall be afforded an opportunity to show cause why the attorney
> should not be suspended or disbarred from practice in [the EDCA].

   It is unclear whether Respondent read the EDCA Local Rules when she was admitted to

practice before the EDCA in 2014, but she was specifically alerted to the language of LR 184,

subdivision (b), in a document filed by the opposing party in *Marsha Kilgore v. Wells Fargo

Home Mortgage, et al.*, EDCA case No. 12-cv-00899 (*Kilgore*), as discussed below.  Irrespective

of her status as reflected on the EDCA website, pursuant to LR 184, subdivision (b),

Respondent's suspension from the practice of law in California rendered her immediately

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 12 of 56
Case 2:24-mc-00117-KJM    Document 5-17    Filed 04/03/24    Page 12 of 56
Page ID #:5274

suspended from the practice of law before the EDCA until she became eligible to practice law in California again.

**Respondent's litigation in *Kilgore* (August through December 2019)**

Between August 2019 and December 2019, Respondent filed several court documents on behalf of her client Noble, as sole heir to Noble's mother's estate, in *Kilgore*.  *Kilgore*, which involved a dispute over real property located in California, was filed by Noble's mother, Marsha Kilgore, prior to Ms. Kilgore's passing.  The complaint in *Kilgore* involved allegations of various causes of actions, including fraud and deceit in violation of California Civil Code section 1572 and forgery in violation of California Penal Code section 470.  The EDCA had dismissed the matter and entered judgment in favor of Wells Fargo years earlier, on May 24, 2013, but Respondent believed the Ninth Circuit memorandum disposition in the prior related matter, *Noble v. Wells Fargo,* left some issues open to litigate.

So, on behalf of Noble, Respondent prepared a motion to vacate the judgment and dismissal in *Kilgore* (Motion to Vacate), which she filed on August 18, 2019.  Respondent argued that Wells Fargo had committed a fraud on the court, citing to various federal law and authorities and to California Civil Code section 2924g.

Respondent's declaration in support of the Motion to Vacate, dated August 18, 2019, stated, in pertinent part:

> 35. During the appeal [in *Noble v. Wells Fargo*] I was suspended (unjustly) by the California State Bar for (ironically) violating a court order by not paying civil discovery sanctions in an Unlawful Detainer action.
>
> 36. I have protested that suspension and while at the hearing with Commissioner Shaw I showed him how the attorneys in Brooke Noble's case violated a real court order that actually hurt the public and nothing was done to them by the State Bar.
>
> 37. I learned I could bring a motion for fraud on the court to this Court's attention and am doing so understanding I will probably

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 13 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 13 of 56
PageID #: 5775

have an OSC issued against me to kick me out of [the EDCA], too.
So, I have added Leslie Westmoreland as representation for
Brooke Noble also.

…

43.  I am offering myself up to the court to issue an OSC why I
should not be suspended by the [EDCA] so that this Court can
vacate the order of dismissal …"

(Ex. 23, pp. 9-10.)

The Motion to Vacate set forth at the top of the first page, at left margin, that it was

submitted by:

Lenore L. Albert, Esq. SBN 210876
14272 Hoover Street #690741
Westminster, CA 92683
Telephone (424) 365-0741
Email: lenorealbert@msn.com

Leslie W. Westmoreland, Esq. SBN 195188
1606 E. Griffith Way, PO Box 5137
Fresno, CA 93755-5137
Phone: (559) 970-6053
Email: LeslieWWl@gmail.com

Attorneys for Plaintiff BROOKE NOBLE, representative
Of the Estate of MARSHA KILGORE, deceased
(CAED federal jurisdiction only)

(Ex. 22, p. 1.)

It was electronically signed by Respondent and included under Respondent's signature

the following: "LEONORE L. ALBERT, ESQ.  Attorney for Plaintiff, Brooke Noble Sole Heir

to the Estate of Marsha Kilgore".  (*Id.* at pp. 2 and 29.)  Westmoreland also signed electronically,

as attorney for Noble.

On the same day, August 18, 2019, Respondent filed two additional court documents – a

notice of errata (Notice of Errata) correcting the hearing date of the Motion to Vacate and a

document entitled "Suggestion of Death."  (Ex. 25.)  Both documents were submitted with the

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 14 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 14 of 56
Page ID #:5276

same identifying information on the first page and signed by Respondent and Westmoreland in the same manner as the Motion to Vacate.

On September 9, 2019, defendant Wells Fargo filed an opposition to the Motion to Vacate (Opposition to Motion to Vacate), arguing that Noble was not properly substituted as a party into the case for the deceased Ms. Kilgore, Respondent was not eligible to practice law because of her suspension from the State Bar, and there was no fraud on the court. In a footnote, Wells Fargo pointed out that Respondent's status on the State Bar website reflected as currently not eligible to practice law due to a disciplinary suspension, and therefore, she was not eligible to practice in the EDCA pursuant to the Local Rules. Wells Fargo further noted that Local Rule 184, subdivision (b), required an attorney to promptly notify the EDCA of any change in status, which change in status would automatically result in the attorney's forthwith suspension from practice before the EDCA – quoting directly from the EDCA Local Rules. Wells Fargo served the Opposition to Motion to Vacate on both Respondent and Westmoreland, which Respondent received and reviewed.

On September 16, 2019, Respondent filed a reply brief in further support of the Motion to Vacate (Reply Brief) with the same identifying information on the first page and signed in the same manner as the prior filings. In the Reply Brief, Respondent addressed her eligibility to practice law, arguing that she must be given notice and opportunity to be heard before being suspended in the EDCA, citing *Theard v. United States* (1956) 354 U.S. 278 and *Selling v. Radford* (1916) 243 U.S. 46. Respondent referenced her 30-day suspension in *Albert I* but failed to mention that she had recently been suspended a second time, effective August 28, 2019, in *Albert II*. She noted that the Ninth Circuit allowed her to remain on the appeal of *Noble v. Wells Fargo* and wrote as follows: "This court may well find like the Ninth Circuit that it would be in the interest of justice to keep [Respondent] on this case as well." (Ex. 27, p. 17.)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 15 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 15 of 56
Page ID #:5277

On October 28, 2019, Respondent filed a motion to substitute a party (Motion to Substitute a Party) seeking to substitute Noble in as a party in place of her deceased mother, Ms. Kilgore. The Motion to Substitute a Party was also submitted with the same identifying information on the first page as the filings but page two was signed only by Respondent as follows: "LEONORE L. ALBERT, ESQ. Attorney for Plaintiffs, Brooke Noble." (Ex. 29, p. 2.) Westmoreland did not sign page two of the Motion to Substitute a Party but did sign under Respondent's signature on page six, following the memorandum of points and authorities.

On November 12, 2019, Respondent filed a supplemental reply brief with Noble's declaration (Supplemental Reply Brief). The Supplemental Reply Brief was also submitted with the same identifying information on the first page as before and was signed in the same manner as the Motion to Vacate, Notice of Errata, and Reply Brief.

Each of the aforementioned court submissions was filed by Respondent using her PACER account and the federal court's Case Management/Electronic Case Files system (CM/ECF).

On various occasions, Respondent consulted with Westmoreland regarding the preparation and filing of the court submissions in *Kilgore*. Their communications were generally over the phone, but they did exchange some emails and texts. For example, on July 22, 2019, Respondent texted Westmoreland, stating: "Hey, by the way, what is happening on Brook (sic) Noble's motion to vacate due by the 27th?" (Ex. 1037.) Westmoreland responded that he would get it done. Then, on August 18, Respondent wrote an email to Westmoreland, in which she advised him that she was too tired to finish work on *Kilgore* but that she would finish what she was working on the next morning for filing. Westmoreland responded hours later, asking Respondent to send him the final version with corrections. Respondent wrote another email to Westmoreland on September 16, in which she advised him she was working on *Kilgore* and

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 16 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 16 of 56
Page ID #:5778

requested "the form and Rule [Westmoreland] found re: substituting in Brooke Noble for Marsha Kilgore." (Ex. 1030.) Westmoreland responded, asking Respondent to look at a particular case. Finally, in an email to Westmoreland on November 8, Respondent advised that they needed to file a reply brief within seven days and suggested that they submit another declaration from Noble – noting that she "[w]ould like to hear [Westmoreland's] thoughts." (Ex. 1029.) Westmoreland replied a few hours later, asking Respondent to resubmit Noble's declaration.

On December 23, 2019, EDCA Senior District Judge Anthony W. Ishii, who was assigned to *Kilgore*, issued an order denying the Motion to Vacate. The order did not make any findings with regard to Respondent's suspension or ineligibility to practice in the EDCA.

**Respondent's litigation in *Avalos v. Gonzalez, et. al* (February through April 2021)**

On November 9, 2020, plaintiff George Avalos filed a lawsuit against Felipe Gonzalez, Pritam S. Grewal, Manjeet K. Grewal, Dev S. Grewal, and doe defendants, entitled *Avalos v. Gonzalez, et al.,* EDCA case No. 1:20-cv-01578 (*Avalos*). The complaint alleged violations of (1) the Americans with Disabilities Act (42 U.S.C. §12181 et seq.); and (2) the Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq*.).

On February 19, 2021, Respondent filed an answer to the complaint (Answer), on behalf of defendants Pritam S. Grewal, Manjeet K. Grewal, and Dev S. Grewal (collectively the Grewals). Respondent was involved in the drafting of the Answer and filed it using her PACER account and CM/ECF.[12] Respondent sent an email to Pritam Grewal, with a copy to Westmoreland, the same day, attaching a conformed copy of the Answer and instructing that payment should be remitted to Westmoreland.

---

[12] At some point prior to filing the Answer, Respondent drafted an attorney-client fee agreement for the representation of the Grewals, who were California residents. However, the content of any such agreement is unknown and the evidence did not establish when the agreement was drafted nor who signed the agreement.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 17 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 17 of 56
PageID #: 5279

The Answer set forth at the top of the first page, left of center, that it was submitted by:

> Lenore L. Albert, Esq. SBN 210876*
> 31872 Joshua Dr #22C
> Trabuco Canyon, CA 92679
> Telephone (424) 365-0741
> Email: lenorealbert@msn.com
>
> Leslie W. Westmoreland, Esq. SBN 195188
> 1606 E. Griffith Way, PO Box 5137
> Fresno, CA 93755-5137
> Phone: (559) 970-6053
> Email: LeslieWWl@gmail.com
> Attorneys for Defendants, PRITAM S. GREWAL,
> MANJEET K. GREWAL, and DEV S. GREWAL

(Ex. 34, p. 1.)

The asterisk after Respondent's State Bar number was not defined in the Answer or elsewhere. Further, the Answer was electronically signed by Respondent and Westmoreland as "Attorney for Defendants, PRITAM S. GREWAL, MANJEET K. GREWAL, AND DEV S. GREWAL." (*Id.* at p. 12.)

Prior to filing the Answer, Respondent verified with the EDCA website that her membership with the EDCA was in good standing and printed a copy of the webpage showing her status as active as of February 12, 2021. That same day, Respondent sent a letter to the clerk's office of the EDCA and requested two certificates of good standing, which she needed for her application for admission to the Michigan State Bar.

After the Answer was filed, on February 22, 2021, the paralegal for Craig Cote (Cote) of Manning Law APC, counsel for Avalos, emailed Respondent on behalf of Cote in an attempt to settle the case, writing: "Please find this as our client's demand to settle" and including various settlement terms. (Ex. 62, p. 13.) Cote wrote a follow up email to Respondent on February 24, and Respondent replied to Cote the following day stating, "I do not have settlement authority yet

Case 8:25-cv-00647-JLS-DFM   Document 134-17   Filed 10/28/25   Page 18 of 56
Case 2:24-mc-00117-KJM   Document 5-12   Filed 04/03/24   Page 18 of 56
Page ID #:5780

from my clients.  When I hear back from them, I will let you know." (Ex. 62, p. 11.)  Cote

responded that he would check back on March 3, if he did not hear from Respondent before then.

On March 2, 2021, the EDCA clerk sent an email to Respondent which informed

Respondent she was on inactive status due to her inactive status with the State Bar.  Respondent

checked the EDCA website again and this time it showed her status as inactive.  Consequently,

Respondent inquired with Judge Ishii's clerk to determine if Judge Ishii had issued an order

suspending her in connection with *Kilgore*.  She was informed that Judge Ishii did not.[13]  So, on

March 3, Respondent followed up with the EDCA clerk to try to get the issue of her inactive

status resolved.

On March 3, 2021, Cote followed up with Respondent, asking if she now had settlement

authority.  Respondent replied to Cote the same day, with a copy to Westmoreland, as follows:

> Mr. Cote, I do not have settlement authority and to complicate
> matters the [EDCA] has taken my status and changed it.  Today it
> shows inactive.  I am drafting a letter that attorney Leslie
> Westmoreland will be filing electronically which all counsel will
> be copied on.  Please direct communications to Leslie and copy me
> until this is resolved (out of an abundance of caution). His email is
> above.

(Exs. 62, p. 7; 1176, p. 8.)

That same day, on March 3, 2021, Respondent filed a letter, addressed to Magistrate

Judge Barbara A. McAuliffe, the assigned judge in *Avalos*, and the courtroom deputy, Esther

Valdez, wherein she sought permission to represent the Grewals in *Avalos*, with Westmoreland

as co-counsel.  Respondent presented arguments as to why she should be allowed to proceed as

counsel for the Grewals despite her inactive status with the State Bar, citing federal case law and

---

[13] Judge Ishii confirmed in his testimony before this court that he did not issue any order
suspending Respondent from practicing before the EDCA.  However, Judge Ishii also affirmed
that no order was necessary because LR 184 provided for Respondent's automatic suspension
without any court order due to her change in status with the State Bar.

Case 8:25-cv-00647-JLS-DFM   Document 134-17   Filed 10/28/25   Page 19 of 56
Case 2:24-mc-00117-KJM   Document 5-12   Filed 04/03/24   Page 19 of 56
Page ID #:5781

her representation in *Kilgore*.  Respondent explained that she had two Supreme Court orders of suspension since 2018 and claimed that the "only reason [she] remain[ed] suspended with the California State Bar is for inability to pay the State Bar fees."  (Ex. 35, p. 3.)  Respondent also attached her recent certificate of good standing from the United States Supreme Court and an email exchange with the Office of Probation of the State Bar, discussing the amounts she was required to pay to return to active status.  Westmoreland concurred in the letter and a copy of the letter was sent to opposing counsel, Manning Law APC.

On March 5, 2021, after receiving Respondent's letter, Magistrate Judge McAuliffe issued an order to show cause as to why Respondent's request for admission to the EDCA should not be denied on the basis that she is not authorized to practice law in California (*Avalos* OSC) and scheduled a remote hearing to address the *Avalos* OSC.

On March 19, 2021, Respondent filed a response to the *Avalos* OSC, arguing that she remains a member admitted to the EDCA but that her "status was changed *without* a Court order or notice and an opportunity to be heard."  (Ex. 37, p. 2, emphasis in original.)  Respondent further argued that the "State Bar's suspension did not legitimately automatically suspend [her] membership in [the EDCA]."  (*Ibid.*)  The identifying information on the first page of Respondent's response to the *Avalos* OSC was identical to the identifying information used for the Answer and Respondent signed the pleading as attorney for the Grewals.  Respondent also submitted a memorandum of points and authorities and her separate declaration in support of her response to the *Avalos* OSC with the same identifying information on the first page but signed as "Lenore Albert."  (Exs. 38, p. 52 and 40, p. 5.)

On March 24, 2021, Cote sent another email to Respondent and Westmoreland, asking for a settlement response.  That same day, Westmoreland replied, with a copy to Respondent,

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 20 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 20 of 56
Page ID #:5782

informing Cote that he would let him know about settlement authority soon and requesting that he continue to include Respondent on all contacts.

On April 1, 2021, Cote sent another email to Respondent and Westmoreland again asking about their clients' response to the settlement offer. Westmoreland wrote back, "I'll talk with the clients this weekend."[14] (Ex. 1176, p. 1.)

On May 12, 2021, Magistrate Judge McAuliffe issued an order discharging the *Avalos* OSC and denying, as moot, Respondent's request for permission to proceed as counsel for the Grewals. Magistrate Judge McAuliffe noted that Respondent submitted a letter from the State Bar in her supplemental briefing that her State Bar license had been returned to active status. Magistrate Judge McAuliffe did not make any findings as to whether Respondent practiced law while suspended in the EDCA but did direct Respondent to "complete the process for readmission to and continuing membership in the Bar of the [EDCA] pursuant to Local Rule 180(a)" and reminded Respondent of "her obligation pursuant to Local Rule 184 to promptly notify the [EDCA] of any disciplinary action or any change in status in any jurisdiction that would make her ineligible for membership in the Bar of [the EDCA] or ineligible to practice before [the EDCA]." (Ex. 41, p. 2.)

**Respondent seeks an amendment to LR 180**

The day before the NDC was filed, on April 28, 2022, Respondent sent a letter, via email, to Scott Cameron of the EDCA Judicial Advisory Committee administrator, with a copy to Chief Judge of the ECDA, the Honorable Kimberly J. Mueller, and others, wherein she requested to amend LR 180.

---

[14] The record was not clear as to how settlement negotiations concluded after this email.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 21 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 21 of 56
Page ID #:5783

## Conclusions of Law

### Count One – Rule 3.4(f) (Knowingly Disobeying Rules of a Tribunal)

Rule 3.4(f) prohibits an attorney from knowingly[15] disobeying an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists. In count one, OCTC charges Respondent with violating rule 3.4(f) by disobeying her obligations under LR 180 and LR 184 by failing to promptly notify the EDCA of her suspensions in *Albert I* and *Albert II*.

As applicable here, LR 180, subdivision (c), required Respondent to promptly notify the EDCA of her change in status with the State Bar, which made her ineligible to practice before the EDCA. Likewise, LR 184, subdivision (b), required Respondent to promptly notify the EDCA of the State Bar disciplinary actions resulting in her suspension from the practice of law in California and ineligibility to practice before the EDCA.

Respondent argues in her defense that: (1) she did not violate LR 180 and LR 184 because she notified the EDCA through her filings in *Noble v. Wells Fargo* and *Kilgore*; and (2) any violation of LR 180 or LR 184 would fall within the open refusal exception in rule 3.4(f).

The court will begin by addressing Respondent's claim that she timely notified the EDCA of her change in status in her Notice of Disqualification filed April 17, 2018, in *Noble v. Wells Fargo* and in her declaration dated August 18, 2019, in the *Kilgore* matter.

First, the court notes that the Notice of Disqualification was filed with the Ninth Circuit and not the EDCA, and at a time when she was not actually suspended. Moreover, subsequent to the filing of the Notice of Disqualification, Respondent's status changed again, as her suspension was reinstated on June 28, 2018. Although the Ninth Circuit thereafter initiated reciprocal

---

[15] "Knowingly" is defined as having "actual knowledge of the fact in question," which can be inferred from the circumstances. (Rule 1.0.1(f).)

Case 8:25-cv-00647-JLS-DFM   Document 134-17   Filed 10/28/25   Page 22 of 56
Case 2:24-mc-00117-KJM   Document 5-12   Filed 04/03/24   Page 22 of 56
PageID #: 5784

discipline proceedings, that does not satisfy Respondent's obligation to provide notice to the EDCA.[16]   As such, the court does not find that the Notice of Disqualification filed in the Ninth Circuit constituted notice to the EDCA as required by LR 180 and LR 184.

     As to Respondent's notification through her filings in *Kilgore*, Respondent's declaration was not filed until August 2019 – more than 13 months after the June 2018 reinstatement of her suspension in *Albert I*.  Nonetheless, this was Respondent's first appearance before the EDCA after her suspension in *Albert I* took effect and, most significantly, rule 3.4(f) was not in effect either in June 2018, as alleged in count one, or in February 2018, when the suspension order initially became effective.  While OCTC argues – for the first time in its closing brief – that Respondent should have reported *Albert I* to the EDCA immediately after rule 3.4(f) became effective, presumably sometime around November 1, 2018, OCTC did not plead this nor raise the issue earlier so as to give Respondent the opportunity to respond.  Therefore, the court does not find a violation of rule 3.4(f) by Respondent's failure to promptly report her change in status as a result of *Albert I,* in or about June 2018, because the rule was not in effect at the time of the alleged misconduct.

     Nonetheless, rule 3.4(f) was in effect by the time that Respondent's suspension in *Albert II* took effect, on August 28, 2019.  Although Respondent may have already notified the EDCA of her suspension in *Albert I,* in connection with *Kilgore*, she did not notify the EDCA of her subsequent suspension in *Albert II*.  Although Respondent ultimately notified the EDCA of her suspension in *Albert II,* in her March 3, 2021 letter, said notification was more than 18

---

[16] The Ninth Circuit has its own attorney notification requirements.  (See Ninth Circuit Rule 46-2(c) [requiring, in part, that an attorney "provide the Clerk of this Court with a copy of any order or other official notification that the attorney has been subjected to suspension or disbarment in another jurisdiction"].)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 23 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 23 of 56
Page ID #:5785

months after her suspension in *Albert II* began.  Therefore, the court finds that Respondent failed to promptly notify the EDCA of *Albert II*, as required.

Nonetheless, in order to find a violation of rule 3.4(f), the court must find that such conduct was done knowingly.  Although it is unclear whether Respondent read LR 180 or LR 184 when she was first admitted to the EDCA, the evidence clearly and convincingly shows that Respondent was on actual notice of her obligation under LR 184, subdivision (b), when she reviewed the Opposition to the Motion to Vacate that was filed on September 9, 2019 – shortly after her suspension in *Albert II* went into effect.  Yet she did not notify the EDCA of her suspension in *Albert II* until March 3, 2021.

In fact, Respondent does not dispute having actual knowledge of the EDCA Local Rules, instead arguing that the open refusal exception in rule 3.4(f) applies.[17]  The court does not agree. The conduct at issue is Respondent's failure to provide prompt notice of her suspensions to the EDCA, not whether she disagreed with the forthwith nature of the resultant suspension from practice before the EDCA, as dictated by the EDCA Local Rules.  Whether the automatic suspension is unconstitutional, as Respondent claims, is not before this court, and does not change the fact that Respondent failed to comply with her valid obligation under LR 184, subdivision (b), to promptly notify the EDCA of "any disciplinary action or change in status in any jurisdiction that would make [her] ineligible for membership in the Bar of [the EDCA] or ineligible to practice in [the EDCA]."

---

[17] Respondent raised this issue for the first time in her closing brief, arguing that she cannot be found culpable of a violation of rule 3.4(f) because she openly refused to "automatically deem herself suspended in the Eastern District based on *Theard* and *Selling*." (Respondent's Closing Brief, p. 6.)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 24 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 24 of 56
PageID #:5786

Therefore, the court finds by clear and convincing evidence that Respondent is culpable for a violation of rule 3.4(f) by her failure to promptly notify the EDCA of her disciplinary suspension in *Albert II* in knowing disobedience of her obligation under LR 184, subdivision (b).

### Count Two – § 6068(a) (Failure to Comply with California Law – UPL)
### Count Three – Rule 5.5(a)(1) (UPL in Other Jurisdiction)

Section 6068, subdivision (a), provides that it is the duty of an attorney "to support the Constitution and laws of the United States and of this state." Therefore, section 6068, subdivision (a), constitutes a conduit whereby attorneys may be disciplined for violating laws that are not otherwise disciplinable under the State Bar Act (i.e., section 6000 et seq.). (See *In the Matter of Lilley* (Review Dept.1991) 1 Cal. State Bar Ct. Rptr. 476, 487, and cases cited therein.) Case law has established that a violation of section 6068, subdivision (a), may be predicated on violations of sections 6125 and 6126. (*In the Matter of Trousil* (Review Dept.1990) 1 Cal. State Bar Ct. Rptr. 229, 236-237.) Section 6125 provides: "[n]o person shall practice law in California unless the person is an active licensee of the State Bar" and section 6126 prohibits any person who is not an active licensee of the State Bar (or otherwise authorized to practice law in the state of California) from holding himself or herself out as entitled to practice law or otherwise practicing law.

In count two, OCTC charges Respondent with violating section 6068, subdivision (a), by holding herself out as entitled to practice law and actually practicing law between August and December 2019, while she was ineligible to do so as a result of disciplinary suspensions imposed by the Supreme Court in *Albert I* and *Albert II,* in violation of sections 6125 and 6126 by:

    (a) Providing legal services and rendering legal advice to Noble, a resident of California, regarding *Kilgore*, which involved allegations of various causes of actions, including fraud and deceit in violation of California Civil Code section 1572 and forgery in violation of California Penal Code section 470;

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 25 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 25 of 56
PageID #: 5787

(b) Preparing and filing the Motion to Vacate, and related documents, in *Kilgore,* on or about August 18, 2019, in which Respondent identified herself, along with Westmoreland, as "Attorneys for Plaintiff, BROOKE NOBLE";

(c) Preparing and filing the Reply Brief in support of the Motion to Vacate, and related documents, in *Kilgore,* on or about September 16, 2019, in which she identified herself, along with Westmoreland, as "Attorneys for Plaintiff, BROOKE NOBLE";

(d) Preparing and filing the Motion to Substitute a Party, and related documents, in *Kilgore,* on or about October 28, 2019, in which she identified herself, along with Westmoreland, as "Attorneys for Plaintiff, BROOKE NOBLE";

(e) Preparing and filing the Supplemental Reply Brief, in *Kilgore,* on or about November 12, 2019, in which she identified herself, along with Westmoreland, as "Attorneys for Plaintiff, BROOKE NOBLE."

In count three, OCTC also charged Respondent with violating rule 5.5(a) by filing the aforementioned court documents when she was ineligible to practice law before the EDCA. As applicable here, rule 5.5(a)(1) prohibits a California attorney from practicing law in a jurisdiction where to do so would be in violation of the regulations of the profession in that jurisdiction.

Because counts two and three allege essentially the same underlying misconduct as the basis for the violations, the court will address them together.

As to the pertinent facts, there is no reasonable dispute that Respondent was suspended from the practice of law in California by virtue of the *Albert I* discipline order, from February 14, 2018, through March 16, 2018, that her suspension was reinstated by the State Bar on June 28, 2018, and that she remained ineligible to practice law in California until April 21, 2021. There is also no reasonable dispute that Respondent was suspended from the practice of law in California pursuant to the *Albert II* discipline order, as of August 28, 2019, and she remained ineligible to practice law in California until April 21, 2021. Furthermore, Respondent admits to having prepared and filed the above-noted court documents in the EDCA between August 18 and November 12, 2019, wherein she noted her State Bar License Number and identified herself, along with Westmoreland, as "Attorneys for Plaintiff, BROOKE

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 26 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 26 of 56
PageID #: 5788

NOBLE." However, the record before this court does not clearly and convincingly establish that Respondent provided any other legal services or rendered legal advice to Noble. Noble did not testify at trial and the evidence did not otherwise reflect that Noble received legal advice from Respondent. Also, Respondent was working with and under the direction of Westmoreland in preparing and filing the various court documents, as evidenced by their documented discussions.

So, the court is left to determine whether Respondent committed violations of section 6068(a) and/or rule 5.5(a) by her actions in preparing and filing the aforementioned court documents in the EDCA.

As a preliminary matter, the court notes that it is arguable as to whether sections 6125 and 6126 apply to Respondent's practice before the EDCA with respect to the acts of preparing and filing the above-noted court documents in the EDCA on behalf of Noble, and OCTC failed to establish that Respondent otherwise actually practiced law in California. (See *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 130 ["The [State Bar] Act does not regulate practice before United States courts."]; see also, *Benninghoff v. Superior Court* (2006) 136 Cal.App.4th 61, 74.) Nevertheless, in view of the fact that (1) the EDCA applies the State Bar Act to attorneys practicing before it; (2) eligibility to practice before the EDCA is conditioned upon being eligible to practice law in California; and (3) Respondent used her State Bar license number on the court documents filed with the EDCA at a time when her State Bar license was not active, the evidence clearly and convincingly establishes that Respondent, at the very least, held herself out as eligible to practice law in California while she was suspended from the practice of law in California, in violation of sections 6125 and 6126.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 27 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 27 of 56
Page ID #:5789

Even if Respondent's conduct in filing the above-noted court documents in the EDCA is not appropriately disciplinable under section 6068, subdivision (a), the court must still consider whether such conduct amounts to a violation of rule 5.5(a) for UPL in another jurisdiction.[18]

In her defense, Respondent argues that: (1) the Ninth Circuit's order disqualifying her from all cases except *Noble v. Wells Fargo* permitted her to file the documents in *Kilgore*; (2) drafting and filing the above-noted court documents did not constitute the practice of law but rather permissible administrative tasks, and (3) she was not actually suspended from the practice of law before the EDCA at the time that she filed such court documents.  She is incorrect.

First, the December 19, 2018, Ninth Circuit order dealt *only* with Respondent's eligibility to practice before the Ninth Circuit.  The order was clear and specific.  It did not authorize her practice in the EDCA and it certainly did not authorize her to practice law in connection with any case besides *Noble v. Wells Fargo*.  Although *Kilgore* may have been related to *Noble v. Wells Fargo*, the cases were entirely distinct.  Further, Respondent's uncorroborated testimony that there is a transcript of a hearing before the Ninth Circuit, wherein the Appellate Commissioner stated that Respondent was allowed to practice in the EDCA, was not credible.  (See *In the Matter of Oheb, supra,* 4 Cal. State Bar Ct. Rptr. at p. 935, fn. 13 [attorney's unexplained failure to substantiate testimony with evidence expected to be produced is strong indication testimony not credible].)

Second, the practice of law includes a wide range of activities undertaken on behalf of a client, including filing court documents on behalf of a client bearing the attorney's name as counsel.  (See *In the Matter of Rodriguez* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 480, 493 [finding a violation of section 6125 "by knowingly permitting a complaint bearing [the

---

[18] The court has previously addressed and rejected Respondent's argument that federal preemption deprives this court of jurisdiction to discipline Respondent for her practice before the EDCA and will not revisit the issue here.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 28 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 28 of 56
PageID #:5790

attorney's] name as counsel to be filed after the effective date of his suspension"].)  Although Respondent claimed that she did not intend to engage in impermissible activities and even sought clarification from the State Bar, OCTC need not show that Respondent "intended the consequences of h[er] acts or omissions, it simply requires proof that [s]he intended the act or omission itself." (*In the Matter of Taggart* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 302, 309.)  There is no question that Respondent intended to file the court documents bearing her name as counsel for Noble in *Kilgore*, actions which constitute the practice of law.

Finally, Respondent's eligibility to practice law in the EDCA was contingent on her status as an active licensee of the State Bar.  Therefore, when Respondent became ineligible to practice law in California, she was *forthwith* suspended from practice in the EDCA without the need for any court order.  If Respondent disagreed with that result, she could have filed a motion asking to show cause as to why she should not be automatically suspended from the practice of law before the EDCA – raising her constitutional challenges in an appropriate forum – at any point before filing the Motion to Vacate, but she did not.[19]  (See LR 184, subd. (b) ["Upon written motion to the Chief Judge, an attorney shall be afforded an opportunity to show cause why the attorney should not be suspended or disbarred from practice in [the EDCA]."].)  Instead, more than a year after her status changed, she practiced law before the EDCA, by filing the Motion to Vacate.  The fact that she mentioned, in her supporting declaration, that she had been suspended from the practice of law in California and suggested the EDCA may want to issue an order to show cause as to why she should not also be suspended in the EDCA, did not relieve her of the automatic suspension under LR 184, subdivision (b).

---

[19] Whether or not the EDCA Local Rules are unconstitutional is not before this court.  It also bears mentioning that all of the cases cited by Respondent concern instances in which an attorney was summarily *disbarred* based on the attorney's disbarment by the State Bar; whereas here the issue is Respondent's eligibility to practice before the EDCA and her temporary suspension until such eligibility requirements are met.

Case 8:25-cv-00647-JLS-DFM   Document 134-17   Filed 10/28/25   Page 29 of 56
Case 2:24-mc-00117-KJM   Document 5-12   Filed 04/03/24   Page 29 of 56
Page ID #:5791

Based on the foregoing, the court finds clear and convincing evidence that Respondent held herself out as eligible to practice law in California while she was inactive, in violation of sections 6125 and 6126, and thereby violated section 6068, subdivision (a).  So, culpability is found under count two.  Similarly, the court finds by clear and convincing evidence that Respondent engaged in UPL in another jurisdiction, in violation of rule 5.5(a), because Respondent filed several court documents in the EDCA, as counsel for Noble, when she was ineligible to practice law in California and was required to be a licensee in good standing in California to practice in the EDCA.  (See *In the Matter of Lenard* (Review Dept. 2013) 5 Cal. State Bar Ct. Rptr. 250, 257 [analyzing regulations in other jurisdiction to determine whether California attorney's conduct constituted UPL].)  Therefore, culpability is found under count three.  However, since counts two and three rely upon the same underlying facts, the court assigns no additional weight to this duplication in determining discipline.  (*In the Matter of Wolff* (Review Dept. 2006) 5 Cal. State Bar Ct. Rptr. 1, 10-11.)

### Count Four – § 6068(a) (Failure to Comply with California Law – UPL)
### Counts Five – Rule 5.5(a)(1) (UPL in Other Jurisdiction)

Counts four and five allege misconduct by Respondent's conduct in connection with her representation of the Grewals in *Avalos.*  Specifically, count four charges Respondent with violating section 6068, subdivision (a), by holding herself out as entitled to practice law and actually practicing law in February 2021, while she ineligible to do so as a result of disciplinary suspensions imposed by the Supreme Court in *Albert I* and *Albert II,* in violation of sections 6125 and 6126 by:

(a) Providing legal services and rendering legal advice to the Grewals in *Avalos*, which concerned violations of the American with Disabilities Act (42 U.S.C. §12181 et seq.) and Unruh Civil Rights Act (CA Civil Code § 51 et seq.) with regards to property located in California that was owned by the Grewals;

(b) Drafting the attorney-client fee agreement regarding the representation of the Grewals in connection with *Avalos*; and

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 30 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 30 of 56
Page ID #:5792

(c) Preparing and filing the Answer on behalf of the Grewals, in *Avalos*, on February 19, 2021, in which she identified herself, along with Westmoreland, as "Attorneys for Defendants."

Similarly, count five charges Respondent with violating rule 5.5(a) by filing the Answer in *Avalos,* when she was ineligible to practice law before the EDCA.

As with counts two and three, the dates of Respondent's suspensions from the practice of law in California are not reasonably in dispute and Respondent admits to preparing and filing the Answer on behalf of the Grewals, using her State Bar license number on the face of the document and identifying herself as the Grewals' attorney. However, the evidence does not clearly and convincingly establish that Respondent provided any other legal services or rendered legal advice to the Grewals.[20] The record also does not establish, by clear and convincing evidence, that Respondent practiced law while ineligible to do so by drafting an attorney-client fee agreement for the Grewals, because there is no evidence before the court as to the nature of the agreement, when it was drafted, and/or by whom it was executed.

Accordingly, as reasoned in the discussion of count two, the court finds by clear and convincing evidence that, by filing the Answer in *Avalos* (using her State Bar license number and identifying herself as the attorney for the defendants on the face of the document) Respondent held herself out as eligible to practice law in California while she was inactive, in violation of sections 6125 and 6126, and thereby violated section 6068, subdivision (a). So, culpability is found under count four. Likewise, the court finds by clear and convincing evidence that Respondent engaged in UPL in another jurisdiction, in violation of rule 5.5(a), because Respondent filed the Answer in the EDCA, as counsel for the Grewals, when she was ineligible to practice law in California and was required to be a licensee in good standing in California to practice in the EDCA. (*Lenard, supra,* 5 Cal. State Bar Ct. Rptr. at p. 257.) Therefore,

---

[20] As with Noble, the Grewals did not testify at trial.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 31 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 31 of 56
Page ID #:5293

culpability is also found under count five.  However, since counts four and five rely upon the same underlying facts, the court assigns no additional weight to this duplication in determining discipline.  (*Wolff, supra,* 5 Cal. State Bar Ct. Rptr. at pp. 10-11.)

### Count Six – § 6106 (Moral Turpitude – UPL)

Section 6106 provides, in part, that the commission of any act involving dishonesty, moral turpitude, or corruption constitutes cause for suspension or disbarment.[21]  In count six, OCTC charges Respondent with committing an act of moral turpitude by knowingly (or grossly negligently) engaging in UPL in *Avalos*, by the same acts alleged in count four.

This court has already found that there is insufficient evidence to support the finding that Respondent engaged in UPL by drafting the attorney-client fee agreement or by providing legal services to the Grewals, apart from filing the Answer on their behalf.  However, because the Court concluded that Respondent engaged in UPL by filing the Answer on behalf of the Grewals, the court next considers whether Respondent acted with the requisite level of intent, guilty knowledge, or, at a minimum, gross negligence to prove moral turpitude.  (See *In the Matter of Respondent H* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 234, 241; see also *In the Matter of Wyrick* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 83, 91.)

OCTC argues that Respondent's misconduct amounts to moral turpitude because she, either intentionally or through willful blindness, practiced law when she knew or reasonably should have known that she was not eligible to do so.

On the other hand, Respondent asserts various arguments as to why her misconduct did not amount to moral turpitude.  Preliminarily, the court rejects Respondent's arguments that she was merely performing clerical work authorized under rule 5.3.1 (former rule 1-311) or that her

---

[21] "Moral turpitude, broadly defined, is conduct which is contrary to justice, honesty and good morals."  (*Fall* v. *State Bar* (1944) 25 Cal.2d 149, 160.)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 32 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 32 of 56
Page ID #:5794

behavior was somehow excused because she did not know UPL applied in federal court. However, the court does consider Respondent's "intent, state of mind, good faith and reasonable beliefs and actions" in determining whether or not moral turpitude was involved. (*Respondent H., supra,* 2 Cal. State Bar Ct. Rptr. at p. 241.) To that end, Respondent argues that she acted in good faith, honestly believing that she was permitted to continue appearing in the EDCA.

Here, although Respondent undoubtedly knew that she had been suspended from the practice of law in California state courts, the evidence does not clearly and convincingly establish that she *knew* that meant that she was automatically suspended from the practice of law before the EDCA. Notably, Respondent did not attempt to conceal the fact that she had been suspended from the practice of law in California; rather, she attempted to place the EDCA on notice of that fact and offered herself up for an OSC in her declaration submitted in support of the Motion to Vacate – the first court document that she filed in the EDCA after her suspension in *Albert I* became effective. Furthermore, albeit not proper, the notation "CAED Jurisdiction Only," conspicuously placed on the first page under the attorneys' names appears to have been an additional attempt by Respondent to qualify her appearance. (See, e.g., ex. 23, p. 1.)

Complicating things, instead of issuing an OSC, as suggested, or otherwise affirming Respondent's ineligibility to practice before the EDCA, Judge Ishii remained silent on the issue, leaving Respondent with the mistaken impression that she was permitted to act as Noble's counsel. Even after Wells Fargo raised the issue in its Opposition to the Motion to Vacate, Judge Ishii did not issue an OSC, initiate contempt proceedings, or impose a penalty on Respondent, as authorized under the EDCA Local Rules. So, Respondent continued to act as Noble's counsel by filing court documents on Noble's behalf.

The fact that she appeared to have been tacitly permitted to act as counsel for Noble in *Kilgore*, considered alongside her experience with the CDCA and Ninth Circuit and the fact that

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 33 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 33 of 56
PageID #: 5295

her status remained unchanged on the EDCA website, credibly led to Respondent's honest, albeit mistaken and unreasonable, belief that she was permitted to continue practicing before the EDCA unless she was informed otherwise.  Respondent even confirmed her active status on the EDCA website before she filed the Answer in *Avalos.*  It was only after Respondent sought a certificate of good standing from the EDCA that her status was changed on the website to reflect her ineligibility due to her inactive status with the State Bar.  Immediately after being alerted to the issue, Respondent filed a letter with the judge in *Avalos*, disclosing her two disciplinary actions and seeking permission to be allowed to appear before the EDCA on behalf of the Grewals.  None of these actions are suggestive of bad faith or even willful blindness.

Based upon the foregoing, although Respondent's actions came very close to constituting moral turpitude, her attempt to notify the EDCA and request an OSC through her initial filings in *Kilgore,* coupled with the reasonable action that Respondent took to ascertain her status prior to filing the Answer in *Avalos*, weighs against a moral turpitude finding.  So, while Respondent's action in filing the Answer in *Avalos* clearly constituted UPL, as discussed under counts four and five, it does not rise to the level of gross negligence as found in other moral turpitude UPL cases. (See, e.g., *Wyrick, supra,* 2 Cal. State Bar Ct. Rptr. 83 [moral turpitude UPL committed by gross negligence where attorney, by omission, gave false impression that he was entitled to practice law].)  Resolving all reasonable doubts in Respondent's favor, the court finds insufficient evidence to support a finding that Respondent's actions involved moral turpitude, dishonesty, or corruption.

Accordingly, count six is dismissed with prejudice.  (Compare *In the Matter of Tishgart* (Review Dept. 2014) 5 Cal. State Bar Ct. Rptr. 338, 343-344 [UPL involved moral turpitude because attorney concealed suspension and left false impression that he was entitled to practice

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 34 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 34 of 56
PageID #: 5796

law] with *In the Matter of Hazelkorn* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 602, 606

[UPL did not involve moral turpitude where attorney honestly believed entitled to practice].)

<u>**Aggravation and Mitigation**</u>[22]

**Aggravation**

OCTC must establish aggravating circumstances by clear and convincing evidence.

(Std. 1.5.)  The court finds that OCTC has established two aggravating factors: prior record of

discipline and multiple acts of wrongdoing.  However, the court does not find aggravation for

indifference or lack of candor.

### *Prior Record of Discipline (Std. 1.5(a))*

As noted above, Respondent has two prior records of discipline.

In *Albert I*, effective February 18, 2018, the Supreme Court suspended Respondent from

the practice of law for one year, stayed, and imposed a two-year probation term with conditions,

including an actual suspension for the first 30 days and until Respondent paid the superior court

sanctions awards.  Respondent was found culpable of failing to cooperate with a disciplinary

investigation in July 2015, in violation of section 6068, subdivision (i), and disobeying three

superior court orders to pay discovery sanctions, issued in August 2012, in violation of

section 6103.  Respondent's misconduct was aggravated by multiple acts of wrongdoing and

indifference and mitigated by her lack of prior discipline and extraordinary good character.

In *Albert II*, effective August 28, 2019, the Supreme Court suspended Respondent from

the practice of law for one year, stayed, and imposed a two-year probation term with conditions,

including an actual suspension for the first six months and until Respondent made restitution.

Involving two client matters, Respondent was found culpable of six violations between 2015 and

---

[22] All references to standards (Stds.) are to the Rules of Procedure of the State Bar, title IV, Standards for Attorney Sanctions for Professional Misconduct.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 35 of 56
Page ID #:5297
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 35 of 56

2017.  In one client matter, Respondent (1) failed to perform with competence (former rule 3-110(A)); (2) failed to provide an appropriate accounting (former rule 4-100(B)(3)); (3) failed to return unearned fees (former rule 3-700(D)(2)); (4) failed to cooperate in the disciplinary investigation (§ 6068, subd. (i)); and (5) failed to promptly release the client file (former rule 3-700(D)(1)).  In the other client matter, Respondent failed to obey a February 2015 court order to pay discovery sanctions, in violation of section 6103.  Respondent's misconduct was aggravated by her prior record of discipline, multiple acts of wrongdoing, indifference, and failure to make restitution.  No mitigation was found.

First, the court notes that Respondent's misconduct in *Albert II* occurred between 2015 and 2017, prior to the imposition of discipline in *Albert I* in 2018.  Furthermore, given the relatively limited scope of the present misconduct and the fact that it does not involve a repetition of her prior misconduct, the court concludes Respondent's prior records of discipline merit moderate weight in aggravation.  (Cf. *In the Matter of Jensen* (Review Dept. 2013) 5 Cal. State Bar Ct. Rptr. 283, 289.)

### Multiple Acts of Wrongdoing (Std. 1.5(b))

Respondent committed multiple acts of wrongdoing by her failure to notify the EDCA of *Albert II* and by filing court documents in two matters before the EDCA while she was ineligible to practice law.  However, given the limited scope of the violations, which appear to stem from Respondent's mistaken belief that she was permitted to continue practicing before the EDCA until she was informed otherwise, the court assigns limited weight in aggravation for multiple acts of wrongdoing.  (See *In the Matter of Bach* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 646-647 [three instances of misconduct considered multiple acts]; see also *In the Matter of Amponsah* (Review Dept. 2019) 5 Cal. State Bar Ct. Rptr. 646, 653 [finding modest aggravating weight is appropriate for attorney's three acts of wrongdoing]; compare *In the Matter of Shalant*

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 36 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 36 of 56
Page ID #:5798

(Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 829, 839 [two counts of misconduct arising from one transaction did not constitute multiple acts of misconduct].)

### *Indifference (Std. 1.5(k))*

OCTC argues that Respondent displayed indifference by failing to accept responsibility for her actions and instead blaming others for her misconduct. The court does not agree. The court found unavailing Respondent's arguments that (1) she was permitted to continue to appear in the EDCA because Judge Ishii never issued an OSC or order prohibiting her from continuing to appear; (2) the EDCA clerk wrongfully and unilaterally changed Respondent's status to reflect her ineligibility when she requested a certificate of good standing; (3) the automatic suspension provision of LR 184, subdivision (b), is unconstitutional; and (4) she was wrongfully kept on inactive status by the State Bar despite the payment conditions of her suspensions having been discharged by her bankruptcy. Although these arguments did not aid in her defense, they do not clearly and convincingly establish Respondent's "indifference toward rectification or atonement for the consequences of the misconduct." (Std. 1.5(k); cf. *In re Morse* (1995) 11 Cal.4th 184, 209 [accused attorney has the right to vigorously defend oneself].) Additionally, Respondent's belief that she was being unfairly targeted by the State Bar appears to be better characterized as an expression of her frustration with the situation, rather than a demonstration of indifference.

Respondent was apologetic in her testimony before this court, acknowledging that her violation of the EDCA Local Rules was based upon her apparently mistaken interpretation of the law and noting that she acted to correct the issue once it was brought to her attention. While this does not constitute clear and convincing evidence of remorse and recognition of wrongdoing so as to warrant credit in mitigation, discussed *post*, it persuades this court that there is insufficient evidence to establish Respondent's indifference.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 37 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 37 of 56
Page ID #:5799

*Lack of Candor (Std. 1.5(l))*

Standard 1.5(l) allows for aggravation for lack of candor and cooperation during disciplinary investigations.  OCTC argues that Respondent demonstrated a lack of candor and cooperation by failing to answer OCTC's investigative questions in substance and instead accusing OCTC of harassing and annoying her.  OCTC points to Respondent's assertion of her Fifth Amendment privilege against self-incrimination during the OCTC investigation as further evidence of her non-cooperation.  The court does not agree.

Respondent testified credibly as to feeling harassed by OCTC and section 6126 does make UPL punishable as a crime.  So, Respondent's assertion of her constitutional privilege against self-incrimination was not completely unreasonable under the circumstances.  Moreover, because Respondent was not questioned at trial as to why she asserted her constitutional privilege during the OCTC investigation, the court would be left to speculate as to her motives for doing so.

In sum, although Respondent may not have answered the investigation letters as OCTC would have wanted her to, there is not clear and convincing evidence to support a finding of lack of candor for purposes of aggravation.

**Mitigation**

Respondent bears the burden of proving mitigating circumstances by clear and convincing evidence.  (Std. 1.6.)  The court finds the following four factors in mitigation: lack of client harm; extraordinary good character; pro bono work and community service; cooperation.  However, the court does not find mitigation for the absence of a prior record of discipline; good faith belief; remorse and recognition of wrongdoing; excessive delay; or remoteness in time and subsequent rehabilitation.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 38 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 38 of 56
PageID #:5800

*Absence of a Prior Record of Discipline (Std. 1.6(a))*

In view of Respondent's two prior records of discipline, found in aggravation, Respondent is not entitled to mitigation under standard 1.6(a).

*Good Faith Belief (Std. 1.6(b))*

Mitigation may include a "good faith belief that is honestly held and objectively reasonable." (Std. 1.6(b); see also *Sternlieb v. State Bar* (1990) 52 Cal.3d 317, 331 [credible good faith belief must also be objectively reasonable to qualify for mitigation].) However, as discussed, *supra,* although the court found Respondent credible in her statements that she honestly believed that she was still entitled to practice law in the EDCA, that belief was not objectively reasonable in view of the plain and unequivocal language of LR 184, subdivision (b). Therefore, the court does not find good faith belief as a factor in mitigation.

*Lack of Client Harm (Std. 1.6(c))*

Respondent argues that she should receive mitigation credit because she did not cause any harm to her clients, the public, or the administration of justice. While the court agrees that the evidence did not show any harm to her clients, Respondent failed to affirmatively demonstrate a lack of harm to the administration of justice in her failure to comply with the EDCA Local Rules. Nonetheless, the court accords moderate weight in mitigation for lack of client harm. (Std. 1.6(c) [mitigating circumstances include lack of harm to the client, the public, *or* the administration of justice].)

*Cooperation (Std. 1.6(e))*

To receive mitigation under standard 1.6(e), Respondent must establish "spontaneous candor and cooperation displayed to the victims of the misconduct or to the State Bar." Respondent argues that she demonstrated spontaneous candor and cooperation in her filings in the EDCA. The court disagrees because Respondent had a duty to inform the EDCA of her

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 39 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 39 of 56
Page ID #:5801

suspensions. Furthermore, although the court does find mitigation for Respondent's cooperation with OCTC by entering into a partial stipulation of facts and admission of documents, the court assigns minimal weight in mitigation for this factor. This is because Respondent only stipulated to the admission of certain documents and a limited number of facts, most of which could have been easily proven. (*In the Matter of Johnson* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 179, 190 [factual stipulation merits less mitigating weight than stipulation to culpability]; *In the Matter of Oheb, supra,* 4 Cal. State Bar Ct. Rptr. at p. 938 [no significant mitigation for stipulation to easily provable facts].)

### *Extraordinary Good Character (Std. 1.6(f))*

To receive mitigation under standard 1.6(f), Respondent must establish that she possesses "extraordinary good character attested to by a wide range of references in the legal and general communities, who are aware of the full extent of the misconduct[.]"

Respondent presented declarations from the following 16 individuals: (1) Theresa Marasco, a paralegal, friend, and client; (2) James D. Ocon, a military veteran and Respondent's romantic partner and business colleague; (3) Melissa Hartung Keyes, a high school friend; (4) Thomas Scott Schales, a civil engineer and friend; (5) Holly Burns, a client and Theresa Marasco's daughter; (6) Antonio Marasco, a client and Theresa Marasco's son; (7) Mark A. Aitken, a business colleague; (8) Michael WM Chernus, a retired probation officer, fellow political committee member, and friend; (9) Edward Garza, a military veteran and close friend; (10) Deborah Rich, a retired social worker and close friend; (11) Monique Bryher, a licensed real estate broker; (12) Christine Rossi, a friend and former neighbor; (13) Gerald Senear, a military veteran and close friend; (14) James P. OBrien, a business colleague; (15) Gregory Meinhardt, a military veteran and former Homeland Security investigator; and (16) Joanne Anderson, a former client and friend. In addition, Respondent presented the testimony of 10 live character witnesses,

Case 8:25-cv-00647-JLS-DFM     Document 134-17     Filed 10/28/25     Page 40 of 56
Case 2:24-mc-00117-KJM     Document 5-12     Filed 04/03/24     Page 40 of 56
PageID #: 5802

including 8 of the above-mentioned declarants; attorney Brian Liddicoat; suspended attorney

Chad Pratt[23]; and Dan Chmielewski, a professional associate and friend.

OCTC argues that Respondent's character evidence should be given little weight in

mitigation because many of the witnesses/declarants had limited interactions with Respondent;

the witnesses/declarants did not each demonstrate an understanding of the full extent of the

misconduct; several witnesses/declarants did not believe that Respondent was culpable of the

alleged misconduct; only two of the witnesses were attorneys; and several of the witnesses had a

potential bias or motive to testify on Respondent's behalf.

First, while the character references have known Respondent for varying lengths of time,

ranging from 2 years to over 30 years, in varying capacities, they consistently offered praise of

Respondent's overall character, including her honesty, integrity, caring disposition, fierce

advocacy, and professionalism.

For example, OBrien, who has known Respondent for three years, wrote that "[s]he's

considerate, kind and trustworthy" and "a quality person, smart, compassionate, and sincere."

(Ex. 1139, p. 2.)  Likewise, Rich, who has known Respondent for four years, considers her "to be

[of] the highest integrity…honest and straightforward[,]" and "trust[s] her completely."

(Ex. 1135, p. 1.)  Senear, who has known Respondent for over seven years, described her as "an

attorney who had her client's best interest at heart, and is a person that possesses an exceptional

innate, moral compass."  (Ex. 1138, p. 2.)  Meinhardt, who has known Respondent for over six

years and worked on a case with her, "would not hesitate to vouch for her character as:

honorable, genuine, and morally excellent."  (Ex. 1140, p. 1.)  Chmielewski even provided three

---

[23] Pratt is currently suspended from the practice of law in California due to UPL related misconduct; therefore, the weight of his character testimony is limited.  (Cf. *In the Matter of Brown* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 309, 319 [serious consideration given to character testimony from attorneys because they have a "strong interest in maintaining the honest administration of justice"].)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 41 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 41 of 56
Page ID #:5803

specific instances illustrating how Respondent upheld ethics within the context of her political engagements.

Ocon, Theresa Marasco, Garza, Burns, Liddicoat, Schales, and Pratt, each also testified specifically to Respondent's legal abilities having either worked with her on cases, observed her abilities in court, and/or used her legal services.  In fact, Schales even loaned Respondent the money to pay her disciplinary costs associated with *Albert I* and *Albert II,* so that Respondent could have her license reinstated and take over the representation of his girlfriend in a civil case. Schales described Respondent's work product as "high quality backed by good intentions and good ethics." (Ex. 1124, p. 4.)

Second, although many of the character witnesses expressed their personal disagreement with the merits of some of the present charges – e.g., stating that they did not believe that Respondent *knowingly* engaged in UPL – most were generally aware of Respondent's prior suspensions and the current allegations of UPL.  Many even indicated that they had read the pertinent court documents.  Nevertheless, the court agrees with OCTC that some of the references did not demonstrate a complete understanding of the misconduct.  For example, Burns was not aware that Respondent's prior suspensions were imposed by Supreme Court orders and Liddicoat and Chmielewski were unable to recall any details about the alleged misconduct.

Finally, the court acknowledges that some of the above-noted character references may have a personal or financial interest in Respondent's ability to maintain her active law license, but that does not mean that their testimony was untruthful.  Overall, the court found the witnesses to be candid and credible in their descriptions of Respondent's character.

Taken together, the court affords such evidence substantial weight in mitigation because (1) it came from a wide range of references from the legal and general communities, most of whom had known Respondent in a personal and/or professional capacity for many years; (2) the

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 42 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 42 of 56
Page ID #:5804

references were generally aware of the nature and extent of the alleged misconduct; and (3) the references expressed an overwhelmingly favorable opinion of Respondent's professional abilities and good moral character.  (See *In the Matter of Davis* (Review Dept. 2003) 4 Cal. State Bar Ct. Rptr. 576, 591-592 [significant mitigative weight accorded to only three character witnesses based upon their familiarity with the attorney and their knowledge of his good character, work habits, and professional skills].)

### *Pro Bono and Community Service Activities*

Separately, the court finds that Respondent established pro bono work and community service as a mitigating circumstance.  (*Calvert v. State Bar* (1991) 54 Cal.3d 765, 785.)

OCTC again seeks to diminish Respondent's evidence in this regard, arguing that it was not specific and uncorroborated.  The court does not entirely agree.

Respondent provided numerous examples of her service to the community.  For example, Respondent explained that she worked hard to develop an algorithm related to long COVID in the hopes of assisting those suffering from such a condition and shared this information for free with VICE news.  She also volunteered at numerous events to support veterans, such as stuffing stockings around the Christmas holiday for homeless veterans; was a member of and volunteered with numerous professional groups; volunteered to judge college moot court competitions; and dedicated herself to civic service by participating in political committees, political events, and even running for elected office.  Respondent also provided pro bono legal services to individuals facing eviction and other legal issues.  Her testimony was corroborated by several of her character references, such as Garza, who testified that Respondent helped him with volunteer work at Heroes' Hall in Santa Ana, which services homeless veterans; helped put up crosses at a cemetery in honor of veterans; attended Veterans for Peace meetings; attended Orange County

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 43 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 43 of 56
Page ID #:5805

Peace Coalition gatherings; attended a city council meeting; and even helped a pro bono client with issues with the Department of Motor Vehicles.

Although Respondent's testimony may have lacked some specificity in terms of exact dates and time commitments for each of the activities, collectively, Respondent's pro bono and volunteer work warrants moderate weight in mitigation.  (See *Schneider v. State Bar* (1987) 43 Cal.3d 784, 799 [services to the profession and the community worthy of "considerable weight" in mitigation]; cf. *Shalant, supra,* 4 Cal. State Bar Ct. Rptr. at p. 840 [limited mitigation weight for community service established only by the attorney's testimony].)

### *Remorse and Recognition of Wrongdoing (Std. 1.6(g))*

To receive mitigation under standard 1.6(g), Respondent must show "prompt objective steps, demonstrating spontaneous remorse and recognition of the wrongdoing and timely atonement."  Although Respondent has expressed remorse for mistakenly appearing in the EDCA when she was not eligible to do so, expressing remorse for misconduct, standing alone, deserves no special consideration in determining the appropriate discipline.  (See *In the Matter of Spaith* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 511, 519.)  Further, Respondent's letter to the Chief Judge of the EDCA, suggesting a rule change, on the eve of the filing of the NDC and more than a year after the misconduct at issue, does not show prompt steps demonstrating remorse.  (Compare *Hipolito v. State Bar* (1989) 48 Cal.3d 621, 626-627, fn. 2 [timely atonement in consideration with other factors and acceptance of responsibility deserves significant mitigation].)  Therefore, the court does not find clear and convincing evidence to support a finding of mitigation under standard 1.6(g).

### *Remoteness in Time and Subsequent Rehabilitation (Std. 1.6(h))*

Mitigation may be found if the underlying misconduct was remote in time and there is an adequate showing of subsequent rehabilitation.  Here, Respondent's misconduct is not remote in

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 44 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 44 of 56
Page ID #:5806

time nor has she demonstrated a sufficiently prolonged period of post-misconduct practice to establish rehabilitation being as she has only been reinstated to the practice of law in California since April 21, 2021.  (Compare *In the Matter of Crane and DePew* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 139, 157 [where NDC filed three and one-half years after original complaint and the attorney showed six years of unblemished practice between the date of alleged misconduct and the disciplinary hearing].)  Accordingly, the court does not find mitigation for this circumstance.

### *Excessive Delay (Std. 1.6(i))*

Respondent argues for mitigation for excessive delay because she had been reinstated for nearly one year prior to the filing of the NDC in this matter.  While this may be true, a 12-month period between the end of the misconduct and the filing of an NDC does not constitute excessive delay.  Cases recognizing undue delay involve much longer periods of time.  (See *In the Matter of Wolff* (Review Dept. 2006) 5 Cal. State Bar Ct. Rptr. at p.12, [over four-year delay in filing charges excessive]; see also *In the Matter of Klein* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 1, 12 [five-year delay excessive].)

### <u>Discussion</u>

The purpose of State Bar disciplinary proceedings is not to punish the attorney, but to protect the public, the courts, and the legal profession; to maintain the highest possible professional standards for attorneys, and to preserve public confidence in the legal profession.  (Std. 1.1; *Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; *Cooper v. State Bar* (1987) 43 Cal.3d 1016, 1025.)

OCTC argues that Respondent should be disbarred, whereas Respondent argues that her misconduct warrants no more than a reproval.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 45 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 45 of 56
PageID #:5807

In determining the appropriate level of discipline, the court looks first to the standards for guidance.  (*Drociak v. State Bar* (1991) 52 Cal.3d 1085, 1090; *In the Matter of Koehler* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 615, 628.)  The Supreme Court gives the standards "great weight" and will reject a recommendation consistent with the standards only where the Court entertains "grave doubts" as to its propriety.  (*In re Silverton* (2005) 36 Cal.4th 81, 91-92; *In re Naney* (1990) 51 Cal.3d 186, 190.)  Although the standards are not mandatory, a compelling, well-defined reason must be provided for any deviation from them.  (*Bates v. State Bar* (1990) 51 Cal.3d 1056, 1061, fn. 2; *Aronin v. State Bar* (1990) 52 Cal.3d 276, 291.)

Standard 1.7(a) provides that if two or more acts of professional misconduct are found in a single disciplinary proceeding, the sanction imposed shall be the most severe of the applicable sanctions.  Here, the most severe sanction can be found in standard 1.8(b).[24]

Standard 1.8(b) provides that, unless the most compelling mitigating circumstances clearly predominate or the prior misconduct occurred in the same time period as the current misconduct, disbarment is appropriate if: (1) an actual suspension was ordered in one of the prior matters; (2) the prior and current matters together demonstrate a pattern of misconduct; or, (3) the prior disciplinary matters coupled with the current record demonstrate the lawyer's unwillingness or inability to conform to ethical responsibilities.  This case meets the first criterion, as both of Respondent's prior disciplines involved an actual suspension.  Therefore, the court must determine whether one of the specified exceptions applies.

Because the current misconduct did not occur at the same time as the misconduct underlying the prior disciplines, the court's discipline recommendation is dependent upon

---

[24] The court notes the following additional applicable standards: standard 2.10(a), which provides for suspension to disbarment for UPL while on disciplinary suspension, depending on whether the attorney acted knowingly; and standard 2.12(a), which provides for suspension to disbarment for violations of rule 3.4(f) and section 6068, subdivision (a).

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 46 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 46 of 56
Page ID #:5808

whether there is sufficiently compelling mitigation or some other well-defined reason to deviate from the presumptive discipline of disbarment in standard 1.8(b).  Even in the absence of compelling mitigation, the Supreme Court has not ordered disbarment in every case where an attorney has two or more prior disciplines.  (See, e.g., *Conroy v. State Bar* (1991) 53 Cal.3d 495 [one-year actual suspension despite lack of compelling mitigation].)  Recognizing that "[m]erely declaring that an attorney has [two prior] impositions of discipline, without more analysis, may not adequately justify disbarment in every case[,]" it is necessary for this court to examine the nature and chronology of Respondent's prior discipline records in determining whether disbarment is appropriate.  (*In the Matter of Miller* (Review Dept.1990) 1 Cal. State Bar Ct. Rptr. 131, 136.)

Finally, in determining whether to impose a sanction greater or less than that specified in a given standard, in addition to the factors set forth in the specific standard, consideration is to be given to the primary purposes of discipline; the balancing of all aggravating and mitigating circumstances; the type of misconduct at issue; whether the client, public, legal system, or profession was harmed; and the member's willingness and ability to conform to ethical responsibilities in the future.  (Stds. 1.7(b) and (c).)

Here, the misconduct underlying Respondent's second prior discipline occurred prior to her first discipline being imposed, somewhat lessening the aggravating effect of her priors.  Additionally, while Respondent was found culpable of very serious misconduct in her priors – violating the commands of direct court orders and engaging in client-related misconduct causing substantial harm – the current misconduct is less egregious.  Notably, Respondent's conduct in violating the EDCA Local Rules and committing UPL did not involve bad faith, as Respondent honestly believed that she had a right to a hearing before being suspended to practice before the EDCA, which was raised to the judge in *Kilgore*.  And, although she was automatically

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 47 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 47 of 56
PageID #:5809

disqualified from practicing before the EDCA by virtue of the Supreme Court orders suspending her from the practice of law in California, she did not knowingly or intentionally violate any court order expressly prohibiting her from practicing in the EDCA – as there was none. Moreover, while some harm to the administration of justice may be inherent in any violation of court rules and UPL, Respondent did not cause any harm to a client and the harm, if any, to the legal system and/or profession was minimal.

Finally, unlike her priors, which were each aggravated by indifference, Respondent has demonstrated her willingness and ability to conform to her ethical responsibilities in the future. Upon being notified of her ineligibility to practice before the EDCA and realizing her status had been changed to inactive on the EDCA website, Respondent immediately notified Magistrate Judge McAuliffe and opposing counsel and sought to rectify the issue. Shortly thereafter, Respondent's active status was reinstated and she has been successfully practicing law without apparent issue for nearly two years since.

Overall, Respondent's mitigation for extraordinary good character, pro bono work/community service, lack of client harm, and cooperation, as well as the circumstances surrounding her misconduct, are sufficiently compelling and clearly predominate over the aggravation for multiple acts and prior record of discipline. Therefore, in consideration of the primary purposes of discipline, discipline consisting of a lengthy actual suspension is appropriate. (Std. 1.7(c).)

In addition to the standards, the court looks to decisional law for guidance in determining the appropriate level of discipline. (*Snyder v. State Bar* (1990) 49 Cal.3d 1302, 1310-11; *In the Matter of Taylor* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 563, 580.). Here, the court finds some guidance in *In the Matter of Mason* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 639,

*Arm v. State Bar* (1990) 50 Cal.3d 763, and *In the Matter of Burke* (Review Dept. 2016) 5 Cal.

State Bar Ct. Rptr. 448.

In *Mason,* the attorney made a court appearance in superior court while he was serving a

75-day actual suspension.  He did not inform the court or opposing counsel that he was

suspended.  In aggravation, Mason had a prior record of discipline, while he received credit in

mitigation for his pro bono work.  As a result, Mason was suspended for three years, stayed, and

placed on three years' probation with conditions to include a 90-day actual suspension.

In *Arm v. State Bar,* the attorney was found culpable of misleading a court by failing to

disclose his disciplinary suspension scheduled to coincide with an upcoming court hearing and

he was also found culpable of commingling funds in his client trust account.  In aggravation,

Arm had three prior records of discipline (a public reproval, a stayed suspension, and a 60-day

actual suspension) and had prepared and submitted a letter to opposing counsel that appeared to

be "a continuation of [his] misguided efforts at [an earlier] hearing to conceal his suspension

from opposing counsel."  (*Arm v. State Bar, supra,* 50 Cal.3d at p. 778.)  In determining that

discipline less than disbarment was warranted, the Supreme Court noted the lack of a common

thread in the four disciplinary matters and found that the lack of harm and the absence of bad

faith constituted compelling mitigation.  So, Arm was ordered to be suspended for five years,

stayed, and placed on probation for five years with conditions, including an 18-month actual

suspension.

In *Burke*, the attorney was found culpable of engaging in UPL while on administrative

suspension, by filing and serving pleadings and appearing at a case management conference in

one matter and attempting to negotiate a settlement in another.  The court found that Burke had

committed an act of moral turpitude by his knowing UPL in the second matter.  Additionally, the

court found culpability for failing to obey five court orders to pay sanctions and violating the

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 49 of 56
Page ID #:5811
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 49 of 56

duty to maintain only just actions.  In aggravation, the court found multiple acts of wrongdoing
and two prior records of discipline.  Burke's two prior records of discipline (60 days' and
9 months' actual suspension) were significantly aggravating because the misconduct at issue
mirrored the misconduct underlying his second discipline (UPL and failure to obey court orders)
and continued after the filing of the NDC in the second discipline case, which provided notice
that such conduct was disciplinable.  The only mitigating factor was Burke's cooperation by
stipulating to certain facts before trial.  Accordingly, the court found no reason to deviate from
the presumptive sanction in standard 1.8(b) and recommended that Burke be disbarred.

Like the attorneys in *Mason* and *Burke*, Respondent engaged in UPL and her conduct was
aggravated by her prior discipline.  However, unlike in *Burke*, the misconduct herein does not
demonstrate a repetition of prior misconduct and Respondent's misconduct ceased as soon as she
was placed on notice of her wrongdoing.  Rather, Respondent's misconduct is more similar to
*Mason*.  Yet, because Respondent has two priors and her second prior involved greater discipline
that the sole prior in *Mason*, proportionally greater progressive discipline than that which was
imposed in *Mason* is appropriate.  Finally, although the attorney in *Arm v. State Bar* was found
culpable of misconduct involving dishonesty – not present here – and had *three* prior disciplines,
only one of the three priors involved an actual suspension and the balance of aggravation and
mitigation in *Arm* was otherwise similar to that in the instant matter, such that comparable
discipline is appropriate.

Therefore, in view of the Standards and relevant case law, and after full consideration of
the facts and circumstances of this matter, including the balance of aggravation and mitigation,
this court concludes that discipline to consist of a three-year stayed suspension with a three-year
period of probation with conditions, to include an 18-month actual suspension is appropriate and
will adequately serve the purposes of attorney discipline.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 50 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 50 of 56
Page ID #:5812

### *Monetary Sanctions are Recommended and Appropriate*

Having found that discipline consisting of actual suspension is appropriate, the court turns to the parties' arguments regarding the imposition of monetary sanctions. (Rules Proc. of State Bar, rule 5.137(E) [in any case recommending the imposition of actual suspension the State Bar Court shall make a recommendation regarding monetary sanctions].)

OCTC argues that $5,000 is an appropriate monetary sanction under the facts and circumstances of the case. To the contrary, Respondent contends there is no basis for an award of monetary sanctions because the vast majority of alleged misconduct occurred prior to April 1, 2020, the effective date of rule 5.137 of the Rules of Procedure of the State Bar (Rule 5.137) and Rule 5.137 should not be applied retroactively.[25] Alternatively, she argues that the court were to recommend the imposition of monetary sanctions, it should take into account that no clients were harmed, no court order was violated, and no opposing counsel was offended. Furthermore, she asserts financial hardship, given that she has been in bankruptcy since 2018 and did not have the funds to get her license reinstated.

Rule 5.137 expressly provides that it is applicable to all proceedings commenced on or after April 1, 2020, without regard to when the underlying misconduct was committed. (Rule 5.137(H).) This case commenced on April 29, 2022, with the filing of the NDC, which contained notice of possible monetary sanctions. Therefore, Rule 5.137 applies.

As to the appropriate amount of monetary sanctions, the court's analysis is informed by Rule 5.137(E)(2), which establishes guidelines for the amount of monetary sanctions dependent upon the level of discipline and provides that the court shall consider all the facts and

---

[25] Respondent also argues that costs should not be awarded to the State Bar but to her or that she should only be assessed a pro rata share consistent with the law. Respondent provides no authority for such a proposition and the court rejects it. However, in the exercise of its discretion, the court recommends that Respondent be permitted to pay discipline costs in installments over several years.

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 51 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 51 of 56
PageID #:5813

circumstances of the discipline case. (See Rule 5.137(E)(2) [up to $2,500 for actual suspension and up to $5,000 for disbarment].) Notwithstanding, the court is permitted to waive monetary sanctions, in whole or in part, based upon an attorney's demonstration of proof by a preponderance of the evidence in support thereof. (Rule 5.137(E)(4).) Hence, the determination of the amount of monetary sanctions to be imposed is an individualized assessment that is designed to be proportional to the seriousness of the violation, while still allowing for the consideration of an attorney's inability to pay, where appropriate. (See *United States v. Bajakajian* (1998) 524 U.S. 321, 334 ["touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality"].)

Here, Respondent engaged in UPL while on disciplinary suspension, which is a serious violation, and this is her third disciplinary proceeding. Respondent's evidence of financial hardship consisted solely of her testimony that she is in between homes, is in bankruptcy, had her income diminished greatly after she was suspended from the practice of law, and has little money in savings. Yet, Respondent also testified that she hopes to receive a large sum of money from one pending case. In consideration of all the facts and circumstances of this case, including, but not limited to, Respondent's limited financial resources and the fact that no clients were harmed by her misconduct, the court finds that the imposition of monetary sanctions in this case in the amount of $1,500 pursuant to section 6086.13, is well-supported and within the applicable range set forth in the Rules of Procedure of the State Bar.

## Recommendations

It is recommended that Lenore LuAnn Albert, State Bar Number 210876, be suspended from the practice of law for three years, that execution of that suspension be stayed, and that she be placed on probation for three years with the following conditions:

1. **Actual Suspension.** Lenore LuAnn Albert must be suspended from the practice of law for the first 18 months of the period of her probation.

Case 8:25-cv-00647-JLS-DFM   Document 134-17   Filed 10/28/25   Page 52 of 56
Page ID #:5814
Case 2:24-mc-00117-KJM   Document 5-12   Filed 04/03/24   Page 52 of 56

2. **Comply with State Bar Act, Rules of Professional Conduct, and Probation Conditions.** Lenore LuAnn Albert must comply with the provisions of the State Bar Act, the Rules of Professional Conduct, and all conditions of probation.

3. **Review Rules of Professional Conduct.** Within 30 days after the effective date of the Supreme Court order imposing discipline in this matter, Lenore LuAnn Albert must (1) read the California Rules of Professional Conduct (Rules of Professional Conduct) and Business and Professions Code sections 6067, 6068, and 6103 through 6126, and (2) provide a declaration, under penalty of perjury, attesting to her compliance with this requirement, to the State Bar's Office of Probation in Los Angeles (Office of Probation) with Lenore LuAnn Albert's first quarterly report.

4. **Complete E-Learning Course Reviewing Rules and Statutes on Professional Conduct.** Within 90 days after the effective date of the Supreme Court order imposing discipline in this matter, Lenore LuAnn Albert must complete the e-learning course entitled "California Rules of Professional Conduct and State Bar Act Overview." Lenore LuAnn Albert] must provide a declaration, under penalty of perjury, attesting to Lenore LuAnn Albert's compliance with this requirement, to the Office of Probation no later than the deadline for Lenore LuAnn Albert's next quarterly report due immediately after course completion.

5. **Maintain Valid Official State Bar Record Address and Other Required Contact Information.** Within 30 days after the effective date of the Supreme Court order imposing discipline in this matter, Lenore LuAnn Albert must make certain that the State Bar Attorney Regulation and Consumer Resources Office (ARCR) has her current office address, email address, and telephone number. If she does not maintain an office, she must provide the mailing address, email address, and telephone number to be used for State Bar purposes. Lenore LuAnn Albert must report, in writing, any change in the above information to ARCR, within 10 days after such change, in the manner required by that office.

6. **Meet and Cooperate with Office of Probation.** Within 15 days after the effective date of the Supreme Court order imposing discipline in this matter, Lenore LuAnn Albert must schedule a meeting with her assigned Probation Case Coordinator to discuss the terms and conditions of her discipline and, within 30 days after the effective date of the court's order, must participate in such meeting. Unless otherwise instructed by the Office of Probation, Lenore LuAnn Albert may meet with the Probation Case Coordinator in person or by telephone. During the probation period, Lenore LuAnn Albert must promptly meet with representatives of the Office of Probation as requested by it and, subject to the assertion of applicable privileges, must fully, promptly, and truthfully answer any inquiries by it and provide to it any other information requested by it.

7. **State Bar Court Retains Jurisdiction/Appear Before and Cooperate with State Bar Court.** During Lenore LuAnn Albert's probation period, the State Bar Court retains jurisdiction over her to address issues concerning compliance with probation conditions. During this period, Lenore LuAnn Albert must appear before the State Bar Court as required by the court or by the Office of Probation after written notice mailed to her official State Bar record address, as provided above. Subject to the assertion of applicable privileges, Lenore LuAnn Albert must fully, promptly, and truthfully answer any inquiries by the court and must provide any other information the court requests.

Case 8:25-cv-00647-JLS-DFM     Document 134-17     Filed 10/28/25     Page 53 of 56
Page ID #:5815
Case 2:24-mc-00117-KJM     Document 5-12     Filed 04/03/24     Page 53 of 56

8. **Quarterly and Final Reports.**

   a. **Deadlines for Reports.** Lenore LuAnn Albert must submit written quarterly reports to the Office of Probation no later than each January 10 (covering October 1 through December 31 of the prior year), April 10 (covering January 1 through March 31), July 10 (covering April 1 through June 30), and October 10 (covering July 1 through September 30) within the period of probation. If the first report would cover less than 30 days, that report must be submitted on the next quarter date and cover the extended deadline. In addition to all quarterly reports, Lenore LuAnn Albert must submit a final report no earlier than 10 days before the last day of the probation period and no later than the last day of the probation period.

   b. **Contents of Reports.** Lenore LuAnn Albert must answer, under penalty of perjury, all inquiries contained in the quarterly report form provided by the Office of Probation, including stating whether she has complied with the State Bar Act and the Rules of Professional Conduct during the applicable quarter or period. All reports must be: (1) submitted on the form provided by the Office of Probation; (2) signed and dated after the completion of the period for which the report is being submitted (except for the final report); (3) filled out completely and signed under penalty of perjury; and (4) submitted to the Office of Probation on or before each report's due date.

   c. **Submission of Reports.** All reports must be submitted by: (1) fax or email to the Office of Probation; (2) personal delivery to the Office of Probation; (3) certified mail, return receipt requested, to the Office of Probation (postmarked on or before the due date); or (4) other tracked-service provider, such as Federal Express or United Parcel Service, etc. (physically delivered to such provider on or before the due date).

   d. **Proof of Compliance.** Lenore LuAnn Albert is directed to maintain proof of compliance with the above requirements for each such report for a minimum of one year after either the period of probation or the period of actual suspension has ended, whichever is longer. Lenore LuAnn Albert is required to present such proof upon request by the State Bar, the Office of Probation, or the State Bar Court.

9. **State Bar Ethics School.** Within one year after the effective date of the Supreme Court order imposing discipline in this matter, Lenore LuAnn Albert must submit to the Office of Probation satisfactory evidence of completion of the State Bar Ethics School and passage of the test given at the end of that session. This requirement is separate from any Minimum Continuing Legal Education (MCLE) requirement, and she will not receive MCLE credit for attending this session. If she provides satisfactory evidence of completion of the Ethics School after the date of this Decision but before the effective date of the Supreme Court's order in this matter, Lenore LuAnn Albert will nonetheless receive credit for such evidence toward her duty to comply with this condition.

10. **Commencement of Probation/Compliance with Probation Conditions.** The period of probation will commence on the effective date of the Supreme Court order imposing discipline in this matter. At the expiration of the probation period, if Lenore LuAnn Albert

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 54 of 56
Page ID #:5816
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 54 of 56

has complied with all conditions of probation, the period of stayed suspension will be satisfied and that suspension will be terminated.

11. **Proof of Compliance with Rule 9.20 Obligation.** Lenore LuAnn Albert is directed to maintain, for a minimum of one year after commencement of probation, proof of compliance with the Supreme Court's order that she comply with the requirements of California Rules of Court, rule 9.20, subdivisions (a) and (c), as recommended below. Such proof must include: the names and addresses of all individuals and entities to whom Lenore LuAnn Albert sent notification pursuant to rule 9.20; a copy of each notification letter sent to each recipient; the original receipt or postal authority tracking document for each notification sent; the originals of all returned receipts and notifications of non-delivery; and a copy of the completed compliance affidavit filed by her with the State Bar Court. She is required to present such proof upon request by the State Bar, the Office of Probation, or the State Bar Court.

### Multistate Professional Responsibility Examination

It is further recommended that Lenore LuAnn Albert be ordered to take and pass the Multistate Professional Responsibility Examination administered by the National Conference of Bar Examiners within one year after the effective date of the Supreme Court order imposing discipline in this matter and to provide satisfactory proof of such passage to the State Bar's Office of Probation within the same period. Failure to do so may result in suspension. (Cal. Rules of Court, rule 9.10(b).) If Lenore LuAnn Albert provides satisfactory evidence of the taking and passage of the above examination after the date of this Decision but before the effective date of the Supreme Court's order in this matter, she will nonetheless receive credit for such evidence toward her duty to comply with this requirement.

### California Rules of Court, Rule 9.20

It is further recommended that Lenore LuAnn Albert be ordered to comply with California Rules of Court, rule 9.20, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 calendar days, respectively, after the date the Supreme Court order

Case 8:25-cv-00647-JLS-DFM   Document 134-17   Filed 10/28/25   Page 55 of 56
Case 2:24-mc-00117-KJM   Document 5-12   Filed 04/03/24   Page 55 of 56
Page ID #:5817

imposing discipline in this matter is filed.[26]  (*Athearn v. State Bar* (1982) 32 Cal.3d 38, 45 [the operative date for identification of clients being represented in pending matters and others to be notified is the filing date of this order].)  Failure to do so may result in disbarment or suspension.

### Monetary Sanctions

It is further recommended that Lenore LuAnn Albert be ordered to pay monetary sanctions to the State Bar of California Client Security Fund in the amount of $1,500 in accordance with Business and Professions Code section 6086.13 and rule 5.137 of the Rules of Procedure of the State Bar.  Monetary sanctions are enforceable as a money judgment and may be collected by the State Bar through any means permitted by law.  Monetary sanctions must be paid in full as a condition of reinstatement or return to active status, unless time for payment is extended pursuant to rule 5.137 of the Rules of Procedure of the State Bar.

### Costs

It is further recommended that costs be awarded to the State Bar in accordance with Business and Professions Code section 6086.10, and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment, and may be collected by the State Bar through any means permitted by law.  Unless the time for payment of discipline costs is extended pursuant to subdivision (c) of section 6086.10, costs assessed against an attorney who is actually suspended or disbarred must be paid as a condition of reinstatement or return to active status.  One-fourth of the costs must be paid with Respondent's annual fees for each of the years 2024, 2025, 2026, and 2027.  If Respondent fails to pay any installment as

---

[26] Lenore LuAnn Albert is required to file a rule 9.20(c) affidavit even if she has no clients to notify on the date the Supreme Court filed its order in this proceeding.  (*Powers v. State Bar* (1988) 44 Cal.3d 337, 341.)  In addition to being punished as a crime or contempt, an attorney's failure to comply with rule 9.20 is, inter alia, cause for disbarment, suspension, revocation of any pending disciplinary probation, and denial of an application for reinstatement after disbarment.  (Cal. Rules of Court, rule 9.20(d).)

Case 8:25-cv-00647-JLS-DFM    Document 134-17    Filed 10/28/25    Page 56 of 56
Case 2:24-mc-00117-KJM    Document 5-12    Filed 04/03/24    Page 56 of 56
Page ID #:5818

described above, or as may be modified in writing by the State Bar or the State Bar Court, the

remaining balance is due and payable immediately.

Dated: April 3, 2023                                        DENNIS G. SAAB
                                                           Judge of the State Bar Court