
# The State Bar
## *of California*

**OPEN SESSION
AGENDA ITEM
60-3 JANUARY 2023**

**DATE:** **January 19, 2023**

**TO:** **Members, Regulation and Discipline Committee**

**FROM:** **Lisa Chavez, Director, Mission Advancement & Accountability Division**

**SUBJECT:** **Discussion and Approval of the Ad Hoc Commission on the Discipline System Report and Recommendations**

### EXECUTIVE SUMMARY

At its meeting on September 22, 2022, the Board of Trustees received the final report of the Ad Hoc Commission on the Discipline System and issued all recommendations for a 60-day public comment period. The commission reviewed public comments at its December 5, 2022, meeting and directed staff to develop four new recommendations in response to public comments received.

This agenda item outlines the commission's original nine recommendations as well as the four new recommendations. In addition, this item presents staff's recommendations to amend certain commission recommendations as well as one additional staff recommendation the subject of which aligns with, but was not expressly addressed by, the commission's process.

The Board is asked to: (1) receive the commission's updated final report; (2) consider the commission's original recommendations, the four new commission-directed recommendations, and staff's proposed amendments to commission recommendations; (3) consider the new recommendation developed by staff; and (4) direct staff to provide a status update on any adopted recommendations at the Board's September 2023 meeting.

San Francisco Office
180 Howard Street
San Francisco, CA 94102

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

## BACKGROUND

The Board convened the 26-member commission to assess reforms implemented by the State Bar to further the efficiency, effectiveness, and fairness of the discipline system and to identify any additional improvements needed. On September 22, 2022, the Board received the commission's final report with nine recommendations and directed staff to issue the recommendations for a 60-day public comment period.

The State Bar engaged in several strategies to encourage public comment on the commission's recommendations. A public-friendly minisite was launched in English on September 28, 2022, and a Spanish minisite launched October 6, 2022. Social media posts and paid ads in English and Spanish were regularly placed on Facebook, Instagram, LinkedIn, and Twitter. In addition, staff emailed approximately 80 community-based organizations to encourage their review and comment. The public comment period closed on November 28, 2022, and 78 public comments were received, the majority of which (54) were submitted by attorneys. Respondents were allowed to submit comments anonymously or provide their names and email addresses and to submit comments on behalf of an organization. Public comment respondents were asked to select one of three responses for each recommendation: (1) Agree only if modified; (2) Agree with proposed recommendation; or (3) Disagree with the proposed recommendation. Respondents were also invited to submit written comments for each recommendation.

The commission convened on December 5, 2022, to review public comments received. Staff prepared a memo outlining five potential new recommendations, as well as clarifying amendments to existing recommendations, based on public comment received.

The commission fully supported clarifying the text in the final report per staff's proposal. In addition, the commission expressed support for four of the five new recommendations identified by staff. However, the commission did not vote on the new recommendations; as such, these recommendations are not reflected as commission-adopted recommendations in the commission's final report. Instead, the commission agreed that staff would develop the four new recommendations for the Board's consideration. The commission's final report is provided as Attachment A. The commission's original nine recommendations as well as the four new recommendations the commission decided to advance after reviewing public comment, are described in the Discussion section below.

Staff developed proposed amendments to some commission recommendations. The State Bar's 2022–2027 Strategic Plan includes the following Implementation Step: *Align and implement recommendations of the Special Discipline Case Audit Committee and the Ad Hoc Commission on the Discipline System.* The practical implication of this directive is that any perceived relaxation of attorney discipline processes, standards, and impacts should be carefully weighed against the State Bar's public protection mission.

Staff's proposed amendments seek to strike this balance and are intended to address anticipated stakeholder concerns with the commission's recommendations and/or fiscal and other implementation challenges.

Staff also developed a new topically related recommendation separately from the commission's deliberations for the Board's consideration. Staff's proposed amendments to commission recommendations as well as staff's new recommendation, are also addressed in the Discussion section below.

## DISCUSSION

### PUBLIC COMMENT RECEIVED

All recommendations adopted by the commission received a majority vote for "Agree with proposed recommendation" among public comment participants. In general, attorneys participating in the public comment process were more likely to agree with the proposed recommendations than all members of the public who participated. Table 1 sets out the results for each recommendation disaggregated by total and attorney respondents.[1]

**Table 1. Summary of Public Comments on Recommendations Adopted by the Commission**

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| **Discipline Costs and Sanctions** | | | |
| 1. The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed. | | | |
| Total Respondents | 12% | 76% | 13% |
| Attorneys | 9% | 85% | 6% |
| **2.** The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions. | | | |
| Total Respondents | 10% | 69% | 21% |
| Attorneys | 9% | 81% | 9% |

---

[1] The recommendation regarding the adoption of timelines for removal of discipline history from the State Bar website and expungement of discipline records was presented to the public in the form of two recommendations. Recommendation 5A discussed removing discipline history and recommendation 5B discussed expungement of discipline records. Numbers associated with recommendations presented in table 1 and the body of this report supersede the numbering in previous published documents.

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|

**Early Neutral Evaluation Conference**

3. The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference.

| | | | |
|---|---|---|---|
| Total Respondents | 9% | 73% | 18% |
| Attorneys | 6% | 83% | 11% |

4. The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at prefiling settlements of State Bar disciplinary proceedings.

| | | | |
|---|---|---|---|
| Total Respondents | 14% | 76% | 10% |
| Attorneys | 7% | 85% | 7% |

**Attorney Discipline on State Bar Website and Expungement of Attorney Discipline**

5A. The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of the attorney discipline from the website attorney profile page:
- Private reproval:  1 year of when conditions are met
- Public reproval:  3 years
- Probation with stayed suspension:  3 years of conclusion of probation
- Probation with actual suspension:  5 years from reinstatement
- Disbarment:  Public indefinitely (no change)

| | | | |
|---|---|---|---|
| Total Respondents | 27% | 61% | 12% |
| Attorneys | 26% | 67% | 7% |

5B. The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for expungement of attorney discipline records:
- Private reproval:  1 year of when conditions are met
- Public reproval:  3 years
- Probation with stayed suspension:  3 years of conclusion of probation
- Probation with actual suspension:  5 years from reinstatement
- Disbarment:  Public indefinitely (no change)

| | | | |
|---|---|---|---|
| Total Respondents | 25% | 64% | 12% |
| Attorneys | 24% | 69% | 7% |

**Moral Turpitude**

6. The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pretransmittal meeting similar to an Early Neutral Evaluation

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|

Conference in misdemeanor conviction matters subject to Rule 5.340 – 5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter.

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| Total Respondents | 9% | 79% | 12% |
| Attorneys | 6% | 87% | 7% |

7. The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice.

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| Total Respondents | 12% | 79% | 9% |
| Attorneys | 7% | 87% | 6% |

**Progressive Discipline**

8. The Ad Hoc Commission recommends to the State Bar Board of Trustees analyze and modify Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regards to progressive discipline.

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| Total Respondents | 9% | 77% | 14% |
| Attorneys | 7% | 83% | 9% |

**Attorney Representation**

9. The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program.

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| Total Respondents | 9% | 81% | 10% |
| Attorneys | 4% | 89% | 7% |

**COMMISSION ADOPTED RECOMMENDATIONS AND STAFF'S ALTERNATIVE RECOMMENDATIONS**

The commission adopted the following recommendations. Staff's proposed alternate recommendations are noted where applicable.

**Discipline Costs and Sanctions**

1. The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed.

Staff recommends that the Board adopt this recommendation.

2. The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions.

Staff recommends that the Board direct further assessment of the need for a statutory revision given the permissive language in the relevant statute, Business and Professions Code section 6086.13 which reads in pertinent part: "any order of the Supreme Court imposing suspension or disbarment of a licensee of the State Bar or accepting a resignation with a disciplinary matter pending *may* include an order that the licensee pay a monetary sanction" [emphasis added]. The State Bar's implementing rule, State Bar Rule 5.137(A), might benefit from modification given the discretionary statutory language and considering the concerns expressed by the commission. Staff recommends that this topic be further reviewed before any action directing the pursuit of a statutory change is taken by the Board.

**Early Neutral Evaluation Conference**

3. The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference.

4. The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of State Bar disciplinary proceedings.

Staff recommends the Board adopt these recommendations with a slight amendment to recommendation 4. Staff notes that the case processing standards recently submitted by the State Bar pursuant to Senate Bill 211 suggest that it would be beneficial to render the Early Neutral Evaluation Conference (ENEC) process a post-filing activity. The Legislative Analyst's Office (LAO) published its analysis of the State Bar's case processing standards proposal on January 6, 2023. In that report the LAO identifies the ENEC process/timelines, as well as overall case adjudication timelines, as appropriate for further study. As such, staff recommends that the word "pre-filing" be removed from recommendation 4 in order to afford more flexibility in the consideration of this topic.

**Attorney Discipline on State Bar Website and Expungement of Attorney Discipline Records**

5. The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of attorney discipline from the attorney profile page and for expungement of attorney discipline records:
   • Private reproval: 1 year of when conditions are met
   • Public reproval: 3 years
   • Probation with stayed suspension: 3 years of conclusion of probation
   • Probation with actual suspension: 5 years from reinstatement
   • Disbarment: Public indefinitely (no change)

Staff appreciates and understands the sentiment behind the commission's recommendations regarding website removal. Staff notes, however, that the Medical Board of California, cited as a basis for the commission's recommendations in this area, has provisions allowing for the removal of public reprovals only; suspensions and revocations remain online indefinitely. The Nursing Board of California, another commission reference point, has longer timelines for removal than those suggested by the commission. While staff identified two states with online posting removal policies, a 50-state analysis has not been conducted since 2016 and needs to be updated.

With this context in mind, and considering the anticipated public protection concerns likely to be generated by the topic of website removal generally, staff recommends that the Board direct staff to study this issue further. Importantly, staff is not recommending that the question of removing discipline history from an attorney's profile page be revisited, but instead that the specific applicable timeframes be reassessed. Staff should be directed to develop proposed timelines consistent with the practices of those California regulatory agencies and other state attorney licensing agencies that currently have policies in place for both the display and removal of discipline histories from their respective websites. In addition to considering other entities' practices, staff will assess recidivism data to inform proposed removal timelines.

The commission recommended matching timeframes for both website removal and expungement. Staff agrees with this approach but is concerned that the commission did not define expungement or delineate the practical implications expungement of attorney discipline records. In the criminal context the impact of an expungement generally relates to an individual's duty to disclose a conviction. A similar approach may make sense in the attorney discipline context, but additional analysis of this topic is needed. The Board is asked to direct staff to develop a proposed definition of expungement for the Board's consideration.

**Moral Turpitude**

6. The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340–5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter.

7. The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice.

Staff recommends that the Board adopt these recommendations.

**Progressive Discipline**

8. The Ad Hoc Commission recommends that the State Bar Board of Trustees analyze and

consider modifying Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regard to progressive discipline.

Staff recommends that the Board adopt this recommendation.

**Attorney Representation**

9.  The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program.

Staff recommends that the Board adopt this recommendation. However, staff asks the Board to consider funding this recommendation at the time of the mid-year budget review, given the significant General Fund deficit currently projected for 2023. Staff will use the intervening period to finalize an implementation plan so that if the funding is approved, at midyear a program launch will follow shortly thereafter.

**NEW RECOMMENDATIONS CONSIDERED BY THE COMMISSION IN RESPONSE TO PUBLIC COMMENT**

The commission expressed support for staff development of the following four recommendations in response to public comments received.

**Attorney Discipline on State Bar Website and Expungement of Attorney Discipline Records**

Many public commenters provided written responses to the recommendations regarding removing discipline history from attorney profiles on the State Bar's website and expungement of discipline records. In addition, three written comments suggested additional scenarios for which timelines could be considered for removing discipline history from attorney profiles and expungement of attorney discipline records. The following three new recommendations reflect these scenarios.

10. For attorneys who satisfy all discipline requirements and resign without pending discipline charges, remove all discipline history from attorney profiles on the State Bar website and expunge discipline records (including disbarments) upon resignation.

This recommendation is based on the following public comment received:
> *It may be worth allowing disciplined attorneys to resign without charges pending after they satisfy all of their discipline requirements on the condition that their State Bar website profile is expunged. This would accomplish OCTC's goal of preventing disciplined attorneys from ever practicing again and the disciplined attorneys' privacy interests and their ability to succeed in a different career.*

11. For attorneys who resign with charges pending, develop a timeline and procedure for removing the notice of resignation from attorney profiles on the State Bar website and expungement of this notice, and submit it to the Board for approval.

This recommendation was based on the following public comment received:

> There need be a similar timeline for removal of the attorney discipline from the website attorney profile page of "attorneys who submitted a voluntary resignation with charges pending," who have subsequently been reinstated on the active roster of the California State Bar. Note: I am such an attorney who resigned in 1994 "while charges were pending," and though my petition for reinstatement was granted in 2003, and though I've been practicing since without any discipline, my State Bar website profile, on many occasions has caused many hardships. Despite not having been disciplined, many who have viewed my profile on the bar's website, have incorrectly surmised that I was disciplined and consequently disbarred.

California Rules of Court rule 9.21 allows attorneys with pending disciplinary charges to resign from the State Bar. For these attorneys, "Resignation with charges pending" and the relevant State Bar Court case number are noted on their attorney profile pages as a discipline. In the last 40 years, 2,071 attorneys have resigned with charges pending.

Staff has not had sufficient time to review the implications of recommendations 10 and 11, particularly with respect to attorneys who resign and subsequently seek reinstatement. As such, staff recommends a modified recommendation substituting for both 10 and 11 as follows:

Direct staff to develop a proposal that addresses the website posting of discipline history for attorneys who resign with or without charges pending and the implications of future reinstatement and submit the proposal to the Board for approval.

12. Develop a timeline and procedure for removing administrative inactive enrollments from attorney profiles on the State Bar website and submit the proposal to the Board for approval.

This recommendation was based on the following public comment received:

> I have been practicing for over 40 years. My first year my dues were late due to mailing address change from LA County to Orange County; thereafter from death in family due another move. Extreme upsets in my personal life. For the subsequent 39 or so years my Dues have been timely. I have committed no further wrongs in the sight of the State Bar. Although these Rule changes state they are intended to address "disciplinary" matters, There no discipline, no reproval, no probation, no disbarment, only briefly suspended until my dues were received. The Rules should address "suspensions for failure to pay dues in timely manner" in the same manner, but with a lesser consequence. And, last but not least, I hereby request my "suspensions" be expunged in full. I believe a 38-year penalty is sufficient, even if consecutive. Thank you.

For attorneys subject to nondisciplinary administrative action, their license status on their attorney profile pages states "Inactive" or "Not eligible to practice law in CA" and the administrative matter at issue is noted. Examples of nondisciplinary administrative matters include Minimum Continuing Legal Education (MCLE) noncompliance, failure to pay licensing fees, fingerprinting noncompliance, fee arbitration noncompliance, and when an attorney is placed under conservatorship.

Currently, there are avenues attorneys may use to remove administrative inactive enrollments from attorney profile pages on a one-time basis where the administrative inactive enrollment is related to MCLE noncompliance or the failure to pay fees, and the attorney meets certain conditions. (See rule 9.31(f) and rule 9.8(b) of the California Rules of Court). Adoption of this recommendation would result in all nondisciplinary administrative actions being removed from an attorney's profile page pursuant to defined criteria to be adopted by the Board.

Staff recommends the Board adopt this recommendation. [2]

**State Bar Website and Attorney Profile Pages**

13. Configure the State Bar website so internet browsers cannot index attorney profile pages.

This recommendation was based on the following public comment received:

> *It may be worth considering a change to the State Bar website whereby Google cannot index attorney profile pages. This is consistent with every other licensed profession in California. This provides at least some measure of privacy for respondents.*

Staff contacted the Medical Board of California to get more information about its "License Verification" webpage, which allows the public to search for physician profiles and other healthcare providers licensed/registered in the state and is managed by the Department of Consumer Affairs (DCA). DCA staff shared that they do not intentionally configure the search function to preclude indexing: "[It] has been actively configured and designed for performance, security, and status integrity. These configuration choices may preclude search engines from indexing the platform."

Staff does not recommend further exploring this recommendation given the obvious public protection and transparency concerns that would arise should the State Bar actively seek to prevent Google indexing.

**NEW RECOMMENDATION NOT ORIGINATING FROM THE COMMISSION BUT RELATED TO COMMISSION'S CHARGE**

Should the Board adopt recommendations related to removing attorney discipline history from attorney profile pages, staff recommends the Board adopt the following recommendation as well.

**Expunged Criminal Convictions**

14.  Direct staff to explore the removal of criminal conviction transmittals and discipline from the profile page where the sole underlying basis for discipline was a criminal conviction that was expunged pursuant to Penal Code section 1203.4 and submit the proposal to the Board for approval.

---

[2] It should be noted that the current Executive Director would be impacted by a policy that provides for removal of administrative inactive enrollments from attorney profile pages.

Currently, a notice of a pending disciplinary proceeding is posted on an attorney's profile page when the State Bar initiates a disciplinary proceeding by transmitting a criminal conviction record to the Review Department of the State Bar Court that may subject an attorney to discipline. This notice remains on the page while the disciplinary proceeding is pending. If the disciplinary proceeding is resolved in the attorney's favor and no discipline or admonition is imposed, the notice is removed and no additional notice is posted. However, if discipline is imposed, the notice remains, and a new notice is posted indicating the discipline imposed due to the disciplinary proceeding. This notice and the conditions under which it remains on the attorney's profile page are similar to a notice posted when the State Bar files a Notice of Disciplinary Charges in State Bar Court arising from allegations other than a criminal conviction.

The Office of the Chief Trial Counsel (OCTC) is required, within 30 days of receipt, to "transmit the record of any conviction which involves or may involve moral turpitude" (see Business and Professions Code section 6101(c)). This includes felony convictions that may subject an attorney to summary disbarment (see Business and Professions Code section 6102(c)) and either felony or misdemeanor convictions that involve moral turpitude (see Business and Professions Code section 6102(e)). Both sections make clear that they extend to convictions "irrespective of any subsequent order under Section 1203.4 of the Penal Code." Based on Supreme Court law, OCTC may also transmit criminal conviction records for felony and misdemeanor convictions that do not involve moral turpitude but do involve "other misconduct warranting discipline." OCTC may pursue discipline by transmitting to the Review Department of the State Bar Court the record of criminal conviction in some instances where a conviction has been "expunged" pursuant to Penal Code section 1203.4. Therefore, this recommendation is limited to matters in which discipline has already been imposed.

When developing a proposal for the Board's consideration, staff will explore a variety of options, including the development of procedures to expedite removal from the attorney profile page on the State Bar website or simply allowing the conviction transmittal and any discipline imposed to be removed consistent with the timelines adopted for the removal of other discipline.

## FISCAL/PERSONNEL IMPACT

There is no fiscal impact for the requested action. However, minor costs associated with technical work related to removing discipline and administrative history from attorney profiles are anticipated and will be identified in future agenda items.

## AMENDMENTS TO RULES

None

## AMENDMENTS TO BOARD OF TRUSTEES POLICY MANUAL

None

## STRATEGIC PLAN GOALS & IMPLEMENTATION STEPS

Goal: 1. Protect the Public by Strengthening the Attorney Discipline System.

Implementation Steps: d. Policy and Systems Change:
Align and implement recommendations of the Special Discipline Case Audit Committee and the Ad Hoc Commission on the Discipline System.

## RECOMMENDATIONS

**Should the Regulation and Discipline Committee concur in the proposed action, passage of the following resolution is recommended:**

> **RESOLVED**, that the Regulation and Discipline Committee receives the updated final report of the Ad Hoc Commission on the Discipline System; and it is

> **FURTHER RESOLVED**, that the Regulation and Discipline Committee, upon recommendation of the Ad Hoc Commission on the Discipline System, directs staff to reevaluate its current discipline cost model with a focus on reducing costs, including, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed; and it is

> **FURTHER RESOLVED**, that the Regulation and Discipline Committee directs staff to assess the need for a statutory amendment to eliminate disciplinary sanctions given the commission's concerns and report its findings to the Board; and it is

> **FURTHER RESOLVED**, that the Regulation and Discipline Committee, upon recommendation of the Ad Hoc Commission on the Discipline System, directs staff to develop a proposal to seek a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference; and it is

> **FURTHER RESOLVED**, that the Regulation and Discipline Committee, upon recommendation of the Ad Hoc Commission on the Discipline System and staff, directs staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at settlements of State Bar disciplinary proceedings; and it is

> **FURTHER RESOLVED**, that the Regulation and Discipline Committee directs staff to propose timelines for the removal of discipline from attorney profile pages on the State Bar website that are consistent with the practices of California regulatory agencies and other state attorney licensing agencies that currently have policies in place for both the display and removal of discipline histories from their respective websites and submit to Board for approval; and it is

12

**FURTHER RESOLVED**, that the Regulation and Discipline Committee directs staff to propose a definition of expungement of attorney discipline and submit the proposal to the Board for approval; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee, upon recommendation of the Ad Hoc Commission on the Discipline System, directs staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340–5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter, and report its findings to the Board; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee, upon recommendation of the Ad Hoc Commission on the Discipline System, directs staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee, upon recommendation of the Ad Hoc Commission on the Discipline System, directs staff to analyze and consider modifications to Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regard to progressive discipline; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee, upon recommendation of the Ad Hoc Commission on the Discipline System, directs staff to develop a plan to implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 State Bar Court Appointed Counsel Program; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee will review the implementation plan and funding for the State Bar Appointed Counsel Program during the 2023 midyear budget review process and make decision to fund the program at that time; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee directs staff to develop a proposal that addresses the website posting of discipline history for attorneys who resign with or without charges pending and the implications of future reinstatement and submit the proposal to the Board for approval; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee directs staff to develop a timeline and procedure for removing administrative inactive enrollments from attorney profiles on the State Bar website and submit the proposal to the Board for approval; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee directs staff to explore the removal of criminal conviction transmittals and discipline from the profile page where the sole underlying basis for discipline was a criminal conviction that was expunged pursuant to Penal Code section 1203.4 and submit the proposal to the Board for approval; and it is

**FURTHER RESOLVED**, that the Regulation and Discipline Committee directs staff to update the Board on the status of resolutions adopted at the September 2023 meeting of the Board of Trustees.

## ATTACHMENT LIST

**A.** Ad Hoc Commission on the Discipline System Final Report and Recommendations, Updated January 9, 2023



The State Bar *of California*

# Ad Hoc Commission on the Discipline System

## Final Report and Recommendations

**Updated**
**January 9, 2023**

# CONTENTS

EXECUTIVE SUMMARY ................................................................................................ 1

   RECOMMENDATIONS ADOPTED ........................................................................... 2

      Discipline Costs and Sanctions Assessment .................................................... 2

      Attorney Discipline on State Bar Website and Expungement of Attorney Discipline Records ................................................................................................................... 3

      Early Neutral Evaluation Conference (ENEC) .................................................. 4

      Moral Turpitude ............................................................................................... 4

      Progressive Discipline ...................................................................................... 6

      Attorney Representation .................................................................................. 6

INTRODUCTION ...................................................................................................... 8

   COMMISSION MEMBERS .................................................................................... 8

SUBCOMMITTEES ................................................................................................. 10

   EFFECTIVENESS SUBCOMMITTEE ..................................................................... 12

      Case Processing: Standardization and Consistency ...................................... 12

      Factors Impacting Case Settlement .............................................................. 13

      Prevention Efforts and Attorney Support ..................................................... 14

      Metrics .......................................................................................................... 14

      Diversion ....................................................................................................... 15

   FAIRNESS SUBCOMMITTEE ............................................................................... 16

      Bias in Complaint Process ............................................................................. 16

      Communication with Complaining Witnesses During Intake ......................... 18

      Costs Associated with Discipline .................................................................. 19

      Expungement ................................................................................................ 20

      Perception of State Bar Court Independence ................................................ 22

      Prior Complaints ........................................................................................... 23

RECOMMENDATIONS ............................................................................................ 24

   DISCIPLINE COSTS ............................................................................................ 26

      Recommendations ........................................................................................ 27

   EXPUNGEMENT ................................................................................................. 27

      Removal of Discipline History from Attorney Profile Page ............................ 28

      Discipline Record Expungement ................................................................... 29

Recommendations ................................................................................................................ 30

EARLY NEUTRAL EVALUATION CONFERENCE ........................................................................ 32

    Criminal Conviction Matters ................................................................................................ 32

    Time Standards for ENECs .................................................................................................... 34

    Recommendations ................................................................................................................ 34

MORAL TURPITUDE ............................................................................................................... 35

    Moral Turpitude in Original Matters ................................................................................... 36

    Moral Turpitude in Criminal Conviction Matters ................................................................ 37

    Recommendations ................................................................................................................ 38

PROGRESSIVE DISCIPLINE ...................................................................................................... 43

    Recommendations ................................................................................................................ 44

ATTORNEY REPRESENTATION ............................................................................................... 44

    Option 1: State Bar-Appointed Counsel Program, Hourly Rate .......................................... 45

    Option 2: State Bar-Appointed Counsel Program, Flat Fee ................................................. 45

    Recommendations ................................................................................................................ 45

CLOSED COMPLAINTS ........................................................................................................... 46

DIVERSION ............................................................................................................................ 47

PUBLIC COMMENT .................................................................................................................... 47

    COMMISSION REVIEW OF PUBLIC COMMENTS ................................................................. 50

        Potential New Recommendations ..................................................................................... 50

        Modifications to Existing Recommendations .................................................................... 52

DISSENTING OPINIONS ............................................................................................................. 53

    ROSENBLATT ....................................................................................................................... 53

    LAWRENCE .......................................................................................................................... 57

    MOAWAD .............................................................................................................................. 59

APPENDICES ............................................................................................................................. 61

    APPENDIX A. COMMISSION CHARTER ................................................................................ 61

    APPENDIX B. INVENTORY OF DISCIPLINE SYSTEM INITIATIVES ........................................ 63

    APPENDIX C. STAFF MEMO ON DISCIPLINE COSTS AND SANCTIONS ............................... 64

    APPENDIX D. STAFF MEMO ON EXPUNGEMENT ............................................................... 65

    APPENDIX E. STAFF MEMO ON EARLY NEUTRAL EVALUATION CONFERENCE ................... 66

    APPENDIX F. STAFF MEMO ON MORAL TURPITUDE .......................................................... 67

    APPENDIX G. STAFF MEMO ON PROGRESSIVE DISCIPLINE ............................................... 68

APPENDIX H. STAFF MEMO ON ATTORNEY REPRESENTATION ................................... 69

APPENDIX I. STAFF MEMO ON PUBLIC COMMENTS.................................................. 70

APPENDIX J. SUMMARY OF PUBLIC COMMENTS RECEIVED....................................... 71

# EXECUTIVE SUMMARY

The State Bar of California has implemented several initiatives, policies, and procedures to improve the effectiveness and fairness of the attorney discipline system. Examples of reforms that address effectiveness include implementing a case prioritization system, modernizing the online complaint portal and the Office of Chief Trial Counsel's (OCTC) case management system, and reorganizing OCTC teams. Reforms addressing fairness include creating the Complaint Review Unit, expanding multilingual communication, and increasing targeted services and outreach to vulnerable populations. In addition, the Board of Trustees has taken a proactive approach to researching and addressing disproportionate discipline. As a result of these efforts, the State Bar has begun work on several reforms, including archiving complaints older than five years old, proactively educating attorneys who experience low-level reportable action bank matters, and advising respondents of the importance of securing counsel as they engage in disciplinary investigation and proceedings.

Given these wide-ranging and ambitious efforts, the Board directed a comprehensive review of discipline system improvement efforts and established an Ad Hoc Commission on the Discipline System. At its meeting on November 19, 2020, the Board approved the commission charter (Appendix A), which tasked the commission with evaluating:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

To begin, the commission would review the entire catalog of reforms implemented by the OCTC. From that review, the commission would: (1) identify one or more sets of processes, policies, and procedures to focus on; (2) evaluate whether these processes, policies, and procedures had their intended effect; and (3) based on this evaluation, recommend additional or revised reforms.

The 26-member commission began its work in April 2021 and formed two subcommittees to review the OCTC catalog of reforms. One, the Effectiveness Subcommittee, focused on reforms intended to improve effectiveness, and the other, the Fairness Subcommittee, focused on reforms intended to improve fairness. The two subcommittees were further divided into seven working groups:

- Closed Complaints
- Discipline Costs
- Diversion
- Early Neutral Evaluation Conference
- Expungement
- Moral Turpitude
- Progressive Discipline

1

Each working group was tasked with developing recommendations for consideration by the full commission. No working group was formed to study attorney representation; instead, the full commission reviewed two options for a counsel representation pilot program developed by staff and adopted a recommendation accordingly.

## RECOMMENDATIONS ADOPTED

At its meetings on June 1, 2022, and August 24, 2022, the commission adopted these recommendations.

### Discipline Costs and Sanctions Assessment

The commission explored discipline costs and monetary sanctions imposed on attorneys by the State Bar.

Business and Professions Code section 6086.10 instructs the State Bar to recover costs associated with disciplinary investigation and court proceedings. The State Bar, however, determines the exact costs imposed. Attorneys who do not pay discipline costs have their license to practice suspended until payment is made. The statute allows for relief of costs in very narrow circumstances, with most of the relief resulting in an extension of time to pay costs, rather than a reduction in costs. Current discipline costs range from $3,693 for original matters that settle before filing disciplinary charges, to $24,695 for original matters that proceed to the Review Department after trial. The commission also reviewed Business and Professions Code section 6086.13, which requires the State Bar to adopt rules set for the imposition of monetary sanctions on disciplined attorneys. Monetary sanction revenue is deposited in the Client Security Fund (CSF), a fund that reimburses clients who have lost money or property due to attorney misconduct. State Bar rules implement section 6086.13 sanctions in the following amounts: (1) $5,000 for disbarment; (2) $2,500 for actual suspension; and (3) $1,000 for resignation with charges pending. Projected 2022 sanctions revenue totals $100,000; $100,000 is equivalent to 1.1 percent of the 2022 CSF budget.

In general, commission members expressed widespread support for lowering discipline cost assessments and eliminating sanctions for several reasons, including:
- State Bar discipline costs are much higher than those assessed by other state bars, comparable California regulatory boards, and other state attorney regulatory agencies;
- Among 16 jurisdictions surveyed, none report imposing monetary sanctions in addition to disciplinary costs, and the punitive nature of sanctions is contrary to long-standing precedent that discipline exists to protect the public, not to impose punishment;
- High costs can impact the ability of an attorney to return to practice, impeding rehabilitation; and
- The current cost structure unfairly penalizes respondents for contesting charges. For instance, costs for matters that proceed to a one-day trial are more than two times higher than costs for matters that settle prior to filing of a notice of disciplinary charges (NDC).

2

The commission adopted the following recommendations:

> The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed.

> The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions.

### Attorney Discipline on State Bar Website and Expungement of Attorney Discipline Records

The commission explored policy issues relating to public access to attorney discipline history in two ways. First, the commission reviewed current options for discipline record expungement. Second, the commission examined the State Bar's practice of displaying public discipline history on the licensee's attorney profile page on the State Bar's website.

Despite the existence of  Business and Professions Code section 6092.5(e), which states the State Bar shall "Expunge the records of the State Bar as directed by the California Supreme Court" the process for petitioning the Supreme Court for expungement does not appear to be readily accessible to the average respondent. Indeed, only two petitions have been filed in recent years, neither successful. Although there is no statutory or rule requirement that the State Bar display public discipline history on the licensee's attorney profile page on the State Bar's website, the State Bar has chosen to facilitate the public's right of access to attorney disciplinary records as prescribed by Business and Professions Code section 6094.5(f) by posting it.

There is currently no time limit on how long such information is posted, contrary to the practice of other state agencies such as the California Board of Registered Nursing, which has provisions allowing for the removal of all discipline except for license revocation or surrender, and the Medical Board of California, which has provisions allowing for the removal of public reprovals. There was widespread consensus regarding both adoption of timeframes for removing discipline history from attorneys' profiles and expunging discipline records. Eligibility for both would be based on no new discipline imposed during the relevant timeframes, no current active investigations, and payment of all restitution. Proponents in favor of adopting shorter timelines argued that the proposed timeframes would begin to redress historical racial disparities in discipline and align the State Bar with California's current criminal justice trends and the practices of other regulatory agencies. Expungement of attorney discipline records would require changes to the California Rules of Court.

The commission adopted the following recommendation:

> The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt
> the following timelines for removal of the attorney discipline from the website attorney
> profile page and for expungement of attorney discipline records:
> - Private reproval:  1 year of when conditions are met
> - Public reproval:  3 years
> - Probation with stayed suspension:  3 years of conclusion of probation
> - Probation with actual suspension:  5 years from reinstatement
> - Disbarment:  Public indefinitely (no change)

### Early Neutral Evaluation Conference (ENEC)

The commission explored the ENEC phase of the discipline process, particularly in relation to
criminal conviction matters. The ENEC is a settlement conference held before filing an NDC. The
purpose of the ENEC is for all parties to obtain a judicial evaluation of the case. Before filing an
NDC, OCTC notifies a respondent of their right to request an ENEC; the respondent must
respond to the notice within 10 days to exercise this right. The conference is to take place
within 15 days of a respondent's request for an ENEC.

Business and Professions Code section 6101 requires OCTC to transmit criminal conviction cases
to the State Bar Court Review Department within 30 days of receipt if it determines that the
case may or does involve moral turpitude. Commission members expressed interest in affording
respondents in conviction matters an ENEC because State Bar research showed that nearly half
of all criminal conviction cases where the underlying charge was a misdemeanor resulted in
nondisciplinary action and nearly all were dismissed pretrial. Allowing respondents an
opportunity to present a response to the allegation that a misdemeanor conviction involves
moral turpitude before the case becomes public would increase fairness in the system and
benefit both the respondents, who would avoid costs associated with trial should they settle
their cases in an ENEC, and the costs associated with State Bar Court. Because the current
statutory timeline does not allow sufficient time for an ENEC to be offered, scheduled, and
conducted, modifying the criminal conviction transmittal timeline would require a legislative
change.

The commission adopted the following recommendation:

> The Ad Hoc Commission on the Discipline System recommends seeking a statutory
> amendment to extend the deadline for the transmission of criminal conviction matters in
> misdemeanor cases to allow for an Early Neutral Evaluation Conference.

### Moral Turpitude

The commission explored the experiences of respondents who are charged with moral
turpitude. Moral turpitude, which is discussed in Business and Professions Code section 6106, is
a designation meant to protect the public against unsuitable practitioners: "The commission of

any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension." The California Supreme Court defined moral turpitude in *In re Lanksky* (2001) 25 Cal.4th, 16, as conduct that "shows a deficiency in any character trait necessary for the practice of law (such as trustworthiness, honesty, fairness, candor, and fidelity to fiduciary duties) or if it involves such a serious breach of a duty owed to another or to society, or such a flagrant disrespect for the law or for societal norms, that knowledge of the attorney's conduct would be likely to undermine public confidence in and respect for the legal profession." Attorneys can also be charged with moral turpitude when OCTC seeks discipline for a criminal conviction. As noted above, Business and Professions Code section 6101 requires OCTC to transmit criminal conviction cases to the State Bar Court Review Department within 30 days of receipt if it determines that the case may or does involve moral turpitude. Under State Bar Rules of Procedure, rule 5.382(c), attorneys disciplined for acts of moral turpitude, dishonesty, or corruption that have resulted in significant harm to a client or the administration of justice are ineligible for participation in the Alternative Discipline Program (ADP), which supports attorneys whose misconduct stems from mental health or substance abuse issues.

There was widespread consensus among commission members about needing to address several moral turpitude-related issues. With respect to criminal conviction matters, for example, State Bar research found high rates of nondisciplinary action in misdemeanor cases and high rates of pretrial case dismissal initiated by OCTC. These rates suggest that if a determination of whether a criminal conviction matter involves moral turpitude was conducted before transmittal to State Bar Court both respondents and the discipline system would be better served. However, as described above, there is no rule (or sufficient time) that authorizes either an ENEC or other pretransmittal meeting in a misdemeanor criminal conviction proceeding, at which respondents or the State Bar Court could weigh in on whether a respondent's misdemeanor criminal conviction involves moral turpitude or other misconduct warranting discipline. In addition, there appears to be ambiguity within the State Bar rules involving referrals to ADP. Finally, OCTC is not bound to follow judges' judicial evaluations during the ENEC process, even those that raise concerns regarding a lack of evidence to support moral turpitude charges.

The commission adopted the following recommendations:

> The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pretransmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340–5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter.

The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice.

The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at prefiling settlements of State Bar disciplinary proceedings.

## Progressive Discipline

The commission explored discipline standards adopted by the Board of Trustees to ensure consistency in disciplinary proceedings. The State Bar currently follows a policy of "progressive discipline," which means each successive incident of discipline should generally be more severe than the last. The rationale for what is commonly referred to as progressive discipline is that an attorney who is at odds with professional standards even after having been disciplined recently for serious misconduct should receive more serious discipline. The commission specifically reviewed standard 1.8, which states that "If a lawyer has a single prior record of discipline, the sanction must be greater than the previously imposed sanction unless the prior discipline was so remote in time and the previous misconduct was not serious enough that imposing greater discipline would be manifestly unjust." The commission also reviewed standard 1.6, which details mitigating circumstances.

Among commission members, there was widespread interest in modifying standards 1.8 and 1.6 to enable greater judicial discretion to reduce the impact of racial disparities in discipline on future outcomes. However, there was also consensus that specific changes to the standards would require extensive and in-depth legal analyses beyond the commission's scope.

The commission adopted the following recommendation:

The Ad Hoc Commission recommends that the State Bar Board of Trustees analyze and consider modifying Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regards to progressive discipline.

## Attorney Representation

The commission examined the impact that lack of respondent representation has on discipline outcomes, as empirically demonstrated by the State Bar's research on racial disparities in discipline. Staff developed two options for an attorney representation pilot program. Eligible participants (i.e., respondents) for both options include attorneys licensed in California who qualify for reduced license fees and undergo a formal discipline investigation by OCTC.[1] Both

---

[1] Approximately 200 attorneys who pay reduced license fees undergo a formal investigation per year. The 2022 reduced license fees threshold is approximately $60,500 in gross annual individual income from all sources.

options proposed the use of $250,000 in State Bar resources to provide representation to low-income respondents as a pilot program that would remain active until funds are exhausted. The options varied by compensation structure: (1) an hourly rate at $300 per hour, an approach estimated to result in 83 attorneys per year being served; or (2) a flat fee of $3,500 for complete services only up to and including the ENEC, estimated to benefit 71 attorneys annually. The funding to provide this representation would come from the State Bar's General Fund, which supports the attorney discipline system overall.

The commission debated both options and adopted the following recommendation:

> The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program.[2]

---

[2] This is a State Bar Court program that appoints counsel to two case types: (1) when a licensee asserts a claim of insanity or mental incompetence (Business and Professions Code section 6007, subdivision (b)(1) and (2) when the State Bar Court finds the licensee unable to perform competently due to mental infirmity or illness, or the habitual use of intoxicants or drugs. (Business and Professions Code section 6007, subdivision (b)(3)).

## INTRODUCTION

The State Bar of California has implemented several initiatives, policies, and procedures to improve the effectiveness and fairness of the attorney discipline system. Examples of reforms that address effectiveness include implementing a case prioritization system, modernizing the online complaint portal and the Office of Chief Trial Counsel's (OCTC) case management system, and reorganizing OCTC teams. Reforms addressing fairness include creating the Complaint Review Unit (CRU), expanding multilingual communication, and increasing targeted services and outreach to vulnerable populations. In addition, the Board of Trustees has taken a proactive approach to researching and addressing disproportionate discipline. As a result of these efforts, the State Bar has begun work on several reforms, including archiving complaints older than five years old, proactively educating attorneys who experience low-level reportable action bank matters, and advising respondents of the importance of securing counsel as they engage in disciplinary investigation and proceedings.

The Board established the Ad Hoc Commission on the Discipline System to assess the reforms that have been implemented and to identify any additional improvements needed to further the efficiency, effectiveness, or fairness of the discipline system. At its meeting on November 19, 2020, the Board approved the commission charter, which tasked members with evaluating:
- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

In so doing, the commission would review the entire catalog of reforms OCTC has implemented and identify one or more sets of processes, policies, and procedures to focus on; evaluate whether these processes, policies, and procedures had their intended effect; and based on this evaluation, recommend additional or revised reforms. The charter identified key institutional entities from which to select commission members, including those focused on public protection, attorney representation, and attorney diversity and inclusion. The commission charter is provided as Appendix A. This report describes how the commission carried out its charge and outlines its recommendations to the State Bar Board of Trustees.

### COMMISSION MEMBERS

The State Bar solicited applications for the commission in several ways, including conducting targeted outreach to affinity bar organizations throughout the state, sending an announcement in an all-licensee email, posting on social media, and providing links to application materials on the State Bar website homepage during the application period. The application period began on December 9, 2020, and ended on January 5, 2021, with 33 applications received.
At its meeting on January 21, 2021, the Board appointed members to the commission, with Trustee Ruben Duran as chair, and Trustee Sean SeLegue as vice-chair. Appointments included members with a broad array of backgrounds and expertise in the legal profession and

professional regulation. The Board also authorized the chair to fill additional vacant slots. Under this authorization, Chair Duran appointed four additional members to increase the commission's racial and ethnic diversity and add a direct consumer voice. Due to his promotion to chair of the Board of Trustees in September 2021, Mr. Duran was unable to continue as commission chair, and he appointed Trustee Brandon Stallings as his replacement. The commission roster is provided in table 1.

**Table 1. Commission Roster and Stakeholder Group[3]**

| Members | Stakeholder Group |
|---|---|
| Brandon Stallings, Chair [L] | Board of Trustees |
| Sean SeLegue, Vice-Chair [L] | Board of Trustees |
| Michele Anderson [L] | Prosecutor |
| Karen Bell [L] | California Lawyers Association |
| Ray Buenaventura [L] | Defense Counsel |
| Shanae Buffington [L] | Affinity Bar Association |
| Hailyn Chen [L] | Board of Trustees |
| Ruben Duran [L] | Board of Trustees |
| Shirin Ershadi [P] | Public Member |
| Gary Farwell [L] | Affinity Bar Association |
| Sarah Good [L] | Committee on Access and Fairness |
| Jenna Jones [P] | Medical Board of California |
| Shelan Joseph [L] | Prosecutor |
| Janet King [P] | Public Member |
| Jerry Larkin [L] | National Organization of Bar Counsel |
| Melanie Lawrence [L] | OCTC |
| Edward Lear [L] | Association of Discipline Defense Counsel |
| Alexia Mayorga [L] | Defense Counsel |
| Judge W. Kearse McGill [J] | State Bar Court |
| Steven Moawad [L] | OCTC |
| Cynthia Nakao [L] | Prosecutor |
| Ellen Pansky [L] | Association of Discipline Defense Counsel |
| Eloise Rosenblatt [L] | California Lawyers Association |
| Linda Schneider [L] | Department of Consumer Affairs |
| Judge Phong Wang [J] | State Bar Court |
| Martin Winfield [L] | Affinity Bar Association |

[J] = Judge      [L] = Lawyer      [P] = Public Member

---

[3] Commission members served in their individual capacity rather than as representatives of any organization or employer.

9

## SUBCOMMITTEES

The commission held its inaugural meeting on April 30, 2021. Members discussed the commission charter, received a comprehensive overview of the attorney discipline system, and reviewed key components of an inventory of discipline system initiatives, policies, and procedures the State Bar has developed and implemented over the last several years. The inventory (provided as Appendix B), provided to members in advance of the meeting on April 30, 2021, was organized into two categories:

- **Effectiveness:** These initiatives, policies, and procedures address workload and operational efficiency; and
- **Fairness:** These initiatives, policies, and procedures promote procedural justice, reduce disparate impact, prevent future attorney misconduct, and improve the experiences and perceptions of complaining witnesses and respondents.

Significant time during the kickoff meeting was spent reviewing a section of the inventory's fairness category that addresses racial disparities in attorney discipline. Staff gave an in-depth presentation on a 2019 State Bar-initiated study of complaints and discipline against attorneys admitted to the State Bar between 1990 and 2009. Conducted by Professor George Farkas, Distinguished Professor in the School of Education at the University of California, Irvine, the analysis sought to determine whether nonwhite attorneys experience disproportionate discipline. Key findings included:

- Without controlling for any other factors, there was disproportionate discipline against Black male attorneys, who were three times as likely to be placed on probation and almost four times as likely to be disbarred as compared to their white male counterparts.
- Over one in 10 (12 percent) Black male attorneys were the subject of 10 or more complaints compared to 4 percent of white men.
- Among attorneys with 10 or more complaints, Black male attorneys had, on average, 6.8 reportable-action bank cases, while white male attorneys had 3.7.[4]
- Using multiple regression analysis to introduce control variables into the evaluation, the study found the factors that correlated with race and were statistically significant predictors of discipline included:
  - Number of prior complaints. Discipline disparities between Black and white male attorneys are explained in part by a higher number of complaints against Black attorneys.
  - Rates of counsel representation. Black male attorneys have a lower likelihood of being represented by defense counsel during the investigation stage and during State Bar Court discipline proceedings.

---

[4] As is discussed further, reportable-action bank matters arise from a bank's notification to the State Bar that a client trust account check was presented with insufficient funds.

Staff also provided an overview of how the State Bar engaged in corrective action in response to this study. The State Bar invited Professor Christopher Robertson, N. Neal Pike Scholar and Professor at the School of Law of Boston University, to explore possible remedies.[5] His July 2020 report to the Board of Trustees focused on 13 potential reforms across three broad areas: (1) client trust fund accounting, (2) the treatment of prior complaints and discipline history, and (3) securing legal representation for those facing discipline. The commission received an overview of Professor Robertson's report and the State Bar's implementation of several of his recommendations.[6]

The commission concluded its first meeting by forming two subcommittees reflecting the effectiveness and fairness categories, to continue reviewing the inventory of discipline system initiatives, policies, and procedures implemented over the last several years and to identify a subset of the inventory to explore further and develop recommendations. Members submitted their subcommittee preferences, and Chair Duran assigned members and appointed chairs to each subcommittee. Six members (Chair Duran, Vice-Chair SeLegue, Melanie Lawrence, Edward Lear, Steve Moawad, and Ellen Pansky) served on both subcommittees to ensure that commission leadership were kept apprised of subcommittee work and that both subcommittees benefited from the expertise and perspective of OCTC and Association of Discipline and Defense Counsel members. Subcommittee rosters and meetings are provided in table 2.[7]

**Table 2. Subcommittee Rosters and Meeting Dates**

| Subcommittee | Subcommittee Members | Meeting Dates |
|---|---|---|
| Effectiveness | Edward Lear[C]<br>Karen Bell<br>Ruben Duran<br>Gary Farwell<br>Jenna Jones<br>Melanie Lawrence<br>Alexia Mayorga<br>Steve Moawad<br>Cynthia Nakao<br>Ellen Pansky<br>Eloise Rosenblatt<br>Linda Schneider<br>Sean SeLegue | May 24, 2021<br>June 25, 2021<br>July 16, 2021<br>August 18, 2021 |

[5] Professor Robertson met with OCTC staff and leadership, conducted focus group interviews, and reviewed documents related to OCTC process and policy.
[6] Details about the State Bar's implementation of Professor Robertson's recommendations are described in the Fairness Subcommittee section.
[7] Shirin Ershadi and Janet King were appointed to the commission after the subcommittees' work was nearly complete; they were not appointed to any subcommittees as a result.

| | Brandon Stallings<br>Judge Phong Wang | |
|---|---|---|
| Fairness | Shanae Buffington[C]<br>Michele Anderson<br>Ray Buenaventura<br>Ruben Duran<br>Sarah Good<br>Shelan Joseph<br>Jerry Larkin<br>Melanie Lawrence<br>Edward Lear<br>Judge W. Kearse McGill<br>Steve Moawad<br>Ellen Pansky<br>Sean SeLegue<br>Martin Winfield | May 24, 2021<br>June 22, 2021<br>July 19, 2021<br>August 24, 2021 |

[C] = Chair

Each subcommittee reviewed the remaining inventory pertaining to its respective focus and identified a subset of topics to explore more thoroughly. Upon concluding their reviews of each subject, the subcommittees decided whether to form working groups to develop recommendations.

## EFFECTIVENESS SUBCOMMITTEE

At its kickoff meeting on May 24, 2021, the Effectiveness Subcommittee reviewed the inventory of initiatives, policies, and procedures meant to improve effectiveness. Upon conclusion of this meeting, the subcommittee chose to focus its work on five areas of the inventory:

- Case processing – standardization and consistency;
- Factors impacting case settlement;
- Prevention efforts and attorney support;
- Metrics; and
- Diversion.

### Case Processing: Standardization and Consistency

Some of the most significant changes OCTC has made in recent years to streamline operations and ensure that the State Bar fulfilled its public protection mandate have addressed the need for standardization and consistency in case processing. In 2017, OCTC established a training and calibration team to formalize and improve training for all staff levels. The subcommittee

12

received a comprehensive overview of the methods OCTC uses to calibrate case handling between teams and offices, including stipulation calibration meetings and trial team meetings. Throughout the year, knowledge and expertise are reinforced through training, policy directives, and staff review of the results of random audits of open and closed cases. Open investigation audits are conducted by supervising attorneys within OCTC whereas an independent external auditor conducts an audit of closed cases.

Subcommittee members also discussed how the State Bar follows a policy of "progressive discipline," which means each successive incident of discipline should generally be more severe than the last. The rationale is that a prior record of discipline is a significant aggravating factor in determining the appropriate level of discipline. Members reviewed standard 1.8 of the State Bar of California Rules of Procedure, which states that "If a lawyer has a single prior record of discipline, the sanction must be greater than the previously imposed sanction unless the prior discipline was so remote in time and the previous misconduct was not serious enough that imposing greater discipline would be manifestly unjust."

Subcommittee members expressed concern that standard 1.8 does not provide for judicial discretion. Noting racial and ethnic disparities in discipline, some members questioned whether the progressive discipline policy exacerbates these disparities.

The subcommittee concluded its review of OCTC's efforts to ensure standardization and consistency in case processing with the decision to form a working group to further explore the concept of progressive discipline.

### Factors Impacting Case Settlement

The Effectiveness Subcommittee explored factors that impact discipline case settlement, particularly during the ENEC phase of the discipline process. The ENEC is a settlement conference held before filing an NDC. The purpose of the NDC is for all parties to obtain a judicial evaluation of the case. State Bar Rules of Procedure rule 5.30(B) states: "At the conference, the judge must give the parties an oral evaluation of the facts and charges and the potential for imposing discipline." Before filing an NDC, OCTC notifies a respondent of their right to request an ENEC; the respondent must respond to the notice within 10 days to exercise this right. The conference takes place within 15 days of the respondent's request for an ENEC.

Subcommittee members shared their opinions on the aspects of the ENEC process that both impacted case settlements and contributed to overall case delays. Some members pointed out that judges can order multiple ENECs. Others expressed concern that OCTC "overcharges" moral turpitude, which impedes respondents' willingness to settle, given the seriousness of this allegation. Finally, others noted that the State Bar does not resolve criminal conviction matters with an ENEC due to statutory requirements that direct OCTC to transmit criminal conviction cases to the State Bar Court Review Department if it determines the case may involve moral turpitude. The transmittal to the Review Department renders the case public, obviating the possibility of a private resolution—when appropriate—through an ENEC. In response to the

repeated theme of the impact of moral turpitude charges on case settlement, OCTC staff gave a comprehensive presentation on this topic, including a summary of the most common disciplinary charges involving moral turpitude and sanctions associated with this allegation.

The subcommittee concluded its review of factors that impact case settlement with the decision to form two working groups: one that would focus on the ENEC process and another that would focus on moral turpitude.

## Prevention Efforts and Attorney Support

The Effectiveness Subcommittee reviewed the State Bar's efforts to prevent misconduct before it occurs. The Office of Professional Competence gave a comprehensive overview of resources available to attorneys, such as the Ethics hotline (including data on its usage and customer satisfaction results), and many educational opportunities, including a new attorney training program, minimum continuing legal education (MCLE) self-study articles, e-learning courses, ethics school, client trust accounting school, an annual ethics symposium, and forthcoming self-assessment modules. In response to questions about support for solo practitioners, subcommittee members learned about the now-defunct Law Office Management Assistance program that the State Bar established in 1995 for attorneys needing law office management advice. A contractor provided the program at an annual cost of $160,000. Services included management audits and educational seminars, and attorneys had access to information on accounting and billing programs and reviews of new products and software. The Board terminated the program in 2008 due to underutilization.

Subcommittee members also learned about the State Bar's Lawyer Assistance Program (LAP). This confidential program provides a supportive structure for building a personal recovery program concerning mental health issues or problematic substance use. Law students, State Bar applicants, and attorneys (both current and former) are eligible for the LAP.
The subcommittee concluded that it was satisfied with the State Bar's efforts in this area and decided against pursuing these topics further.

## Metrics

The subcommittee reviewed metrics used by the State Bar to assess OCTC's effectiveness. In 2019, the State Bar adopted performance metrics for all functional areas of the organization. OCTC's metrics measure cycle time (for example, caseload clearance rates) and quality (for example, the number of closed cases the CRU recommended for reopening and the number of Walker petitions granted by the California Supreme Court).[8] Staff prepares OCTC metric reports for the Board throughout the year. Staff also prepares a Discipline System Statistical Report to supplement the metrics. This report includes additional measures of the system's impact, including recidivism rates and access and fairness ratings given by complaining witnesses in

---

[8] Should CRU decline to recommend reopening a case, it will notify the complainant and inform them of their right to request that the California Supreme Court review the complaint pursuant to *In re Walker* (1948) 32 Cal.2d 488 to determine if it should be reopened.

surveys administered upon case closure. The subcommittee also reviewed statutorily mandated reporting of case backlog and the State Bar's efforts to propose an alternative to the backlog standard.

The subcommittee concluded that it would be appropriate for staff to develop new metrics that align with the recommendations ultimately adopted by the commission but that no additional focus on metrics was needed at this time.

## Diversion

The subcommittee approached the topic of diversion in two ways. First, it reviewed the State Bar's options for nondisciplinary actions. Next, it examined the post-trial Alternative Discipline Program (ADP).

OCTC has several options for nondisciplinary actions, including issuing directional letters, resource letters, warning letters, or entering into an Agreement in Lieu of Discipline (ALD). The ALD is the most severe nondisciplinary action, and OCTC uses it for instances when minor misconduct occurs with a lack of harm. Respondents must stipulate to the underlying facts, including acknowledgment of violating rules, and agree to a series of remedial activities, including attending State Bar Ethics School. ALDs are confidential.

OCTC issued 59 ALDs between 2016 and 2020; subcommittee members expressed concern about how infrequently OCTC used this nondisciplinary action. OCTC described the extensive resources required to administer ALDs, including negotiating and drafting the agreement and monitoring compliance over the term of the agreement—typically, at least one year).

The ADP supports attorneys whose misconduct stems from mental health or substance abuse issues. Respondents must request participation in the ADP at least 45 days before trial, provide evidence that mental health or substance abuse contributed to the misconduct, and be accepted into the LAP, which conducts check-ins and reports on attorney compliance.[9] The benefit of ADP for participating attorneys is that State Bar Court imposes a lower level of discipline upon successful ADP completion. Attorneys are not eligible to participate if disbarment or summary disbarment is recommended for discipline, misconduct involves moral turpitude, dishonesty or corruption resulting in significant harm to a a client or the administration of justice, or the respondent has previously participated in ADP or expert testimony establishes treatment would not be beneficial. A State Bar Court judge, other than the trial judge, handles the ADP process.

Members reviewed data on outcomes among attorneys who entered an ALD or participated in ADP. Within three years, nearly one in four ALD recipients and almost half of ADP participants were the subjects of a new OCTC investigation.

---

[9] State Bar Court or OCTC may also refer or suggest that a respondent seek eligibility to ADP in a given case.

The subcommittee concluded its review of the State Bar's diversion efforts and formed a working group to explore this topic more extensively.

## FAIRNESS SUBCOMMITTEE

At its kickoff meeting on May 24, 2021, the Fairness Subcommittee continued its review of the discipline system inventory. Upon the meeting's conclusion, the subcommittee chose to focus its discussions on six areas of the discipline system:

- Bias in complaint process;
- Communication with complaining witnesses during intake;
- Costs associated with discipline process;
- Expungement;
- Perception of State Bar Court independence; and
- Prior complaints

The narrative below describes the information the subcommittee reviewed for these six areas, whether the subcommittee decided to form a working group to explore the topics more deeply, and any related recommendations. Professor Farkas's research and Professor Robertson's subsequent recommendations addressed three of the six areas in the subcommittee's list. The subcommittee reviewed the research, recommendations, and the Board's corresponding action when discussing these three areas.

### Bias in Complaint Process

The Fairness Subcommittee was motivated to explore the possibility of bias in the complaint process for two two reasons. First, Professor Farkas's research on racial disparities in attorney discipline found that the number of prior investigations opened against an attorney is one of the factors most strongly associated with attorney disbarment. Over one in 10 (12 percent) Black male attorneys were the subject of 10 or more complaints compared to 4 percent of white men. Among attorneys with 10 or more complaints, Black male attorneys had on average 6.8 reportable-action bank cases, while white male attorneys had 3.7. Reportable action bank matters arise from a bank's notification to the State Bar that a client trust account (CTA) check was presented with insufficient funds (see Business and Professions Code section 6091.1). As a result, the subcommittee sought to understand the reportable action bank matter process thoroughly. Second, the subcommittee was interested in exploring the general sense that solo practitioners and attorneys who practice specific areas of law are at higher risk of being the subject of a complaint, given the nature of their work.

### Bank Reportable Actions

Reportable-action bank matters reflect insufficient fund activity on CTAs that banks must report to the State Bar pursuant to Business and Professions Code section 6091.1. Upon receiving a notice of insufficient fund activity, OCTC intake staff reviews the notice to determine if an investigation is warranted, often reaching out to attorneys for an explanation. If there are no facts to show misconduct (or minimal misconduct), OCTC sends the attorney a closing letter

alerting them to the matter. If the insufficient funds activity is less than $50 (referred to as the de minimis threshold), OCTC closes the matter with a de minimis letter that encourages attorneys to pay greater attention to CTA management and take appropriate corrective action to avoid future reports of insufficient funds activity. The subcommittee reviewed how other jurisdictions approach client trust accounting rules and learned that out of 19 states surveyed, none reported having a di minimis threshold.  In other cases, OCTC will send resource or warning letters.[10] Should attorneys fail to respond to OCTC information requests, or there is an indication of commingling or misappropriation, intake staff will forward the matter to investigation. In 2020, OCTC disposed of over 1,100 reportable bank matters. The majority (over 700) showed no misconduct (or minimal misconduct) and were disposed of with a closing letter, an additional 150 were disposed of because the amount involved was less than the di minimis threshold, less than 50 received a resource or warning letter, and 175 were forwarded to investigation.

The subcommittee received an in-depth presentation on Professor Robertson's recommendations regarding reportable bank matters. As noted above, among attorneys with 10 or more complaints, Black male attorneys had on average 6.8 reportable-action bank cases while white male attorneys had 3.7. Professor Robertson recommended two reforms to address these disparities:
- Revise the policy for handling de minimis bank overdrafts (currently defined as overdrafts of less than $50); and
- Explore options to allow attorneys to create a cushion consisting of personal funds in a CTA (similar to how attorneys may deposit a reasonable amount of their funds to cover bank fees).

The subcommittee received a thorough overview of how the State Bar addressed Professor Robertson's recommendations. First, with respect to revision of the de minimis policy, the Board directed staff to analyze the potential impact of implementing Professor Robertson's recommendation to raise the de minimis threshold. An analysis of over 100,000 reportable bank matters from 1991 to 2008 found that the chance of being disciplined is greatest when overdraft amounts are smaller. OCTC staff who specialize in reportable bank matters observed that larger overdrafts tended to result from occasional mistakes in account maintenance while smaller overdraft amounts, especially involving multiple incidents, tended to reflect more serious misconduct. Staff concluded that the analysis did not support changing the de minimis threshold and that doing so would compromise public protection. Staff also examined the option of creating a cushion and concluded that existing ethics rules prohibit such commingling.

Instead of implementing reforms recommended by Professor Robertson to address disparities in reportable bank matters, the Board directed OCTC to explore proactive, preventive measures. Accordingly, OCTC modified all four form letters it sends to attorneys in response to

---

[10] OCTC contacts all attorneys who are the subject of reportable bank matters with one of the letters described here except for disbarred attorneys, deceased attorneys, or in situations where the reportable action matter was the result of a bank error.

notices from banks of insufficient funds in a CTA. The new letters provide a comprehensive list of resources and warning language regarding the risk of discipline. Over 800 attorneys now receive this letter annually.

## Other Complaint Considerations

The subcommittee also reviewed the State Bar's research on the relationship between the area of law practiced and complaint risk. An analysis of attorneys whose licenses were active between 2018 and 2020 found that 15 percent received a complaint during this period. Practice areas with the highest risk for complaints are family law (35 percent), criminal law (28 percent), elder abuse (27 percent), personal injury (26 percent), bankruptcy (24 percent), and trusts and estates (23 percent).

Finally, the subcommittee reviewed the State Bar's research on solo practitioners. Approximately one in four active attorneys are solo practitioners; solo practitioners are more likely to practice in trusts and estates, personal injury, and criminal and family law than non-solo practitioners. An analysis of solo practitioners with active licenses between 2018 and 2020 found that 29 percent of solo practitioners received at least one complaint compared with 15 percent of all attorneys during the same period.

The subcommittee learned about the State Bar's current efforts to address complaint risk among solo practitioners. An example includes requiring attorneys to report their employment sector to the State Bar. When attorneys change their employment sector to a solo practitioner or a law firm with 10 attorneys or less, the State Bar sends a letter alerting them to requirements under the Rules of Professional Conduct and the State Bar Act (Business and Professions Code sections 6000 et seq) that apply to operating a law firm. The letter also describes resources such as client trust accounting school, ethics school, and publications made available by the California Lawyers Association.

The subcommittee concluded that it was satisfied with the State Bar's efforts to curtail multiple reportable bank matters and complaint risk among solo practitioners and decided against pursuing these topics further.

## Communication with Complaining Witnesses During Intake

The subcommittee reviewed OCTC's process for communicating with individuals who file complaints, known as "complaining witnesses.". The subcommittee was interested in this topic, given anecdotal evidence that other jurisdictions proactively interviewed complaining witnesses during the intake stage. OCTC staff gave a comprehensive overview of how staff communicates with complaining witnesses to obtain the information necessary to substantiate their complaints and in some cases, to explain reasons for closing complaints with no action. The subcommittee also learned that OCTC always sends a closing letter to complaining witnesses when closing a case without action. The closing letter provides a legal analysis for case closure and provides information regarding fee arbitration and lawyer referral services. In addition, the

closing letter invites the complaining witness to provide more details on the matter and directs them to the State Bar's CRU if they wish to have OCTC's decision to close their case reviewed.

The subcommittee concluded that it was satisfied with the State Bar's efforts in this area and decided against pursuing this topic further.

## Costs Associated with Discipline

The subcommittee explored discipline costs and sanctions imposed on attorneys by the State Bar and other costs that respondents incur, including those associated with defense counsel representation.

The subcommittee first explored costs related to attorney representation. Professor Farkas's research found that lack of attorney representation during investigation and State Bar Court discipline proceedings was a substantial factor contributing to racial disparities in discipline, with Black male respondents less likely to be represented by counsel. Professor Robertson identified five potential reforms to address the attorney representation gap: (1) track and report the proportion of discipline cases with attorney representation; (2) inform attorneys facing discipline about the increased statistical likelihood of discipline without counsel; (3) develop a roster of attorneys who agree to provide low-cost and pro bono consultation; (4) facilitate sliding-scale fee representation by members of the Association of Discipline Defense Counsel; and (5) create a Discipline Equity Office to monitor disparities and support unrepresented attorneys.

Staff shared that the State Bar implemented the first two reforms, deferred the creation of a Discipline Equity Office for lack of resources, and was developing options to address the third and fourth reforms for the commission to consider.

The subcommittee also learned about costs the State Bar imposes on disciplined attorneys. Business and Professions Code section 6086.10 instructs the State Bar to collect costs associated with disciplinary investigation and court proceedings. The State Bar, however, determines the exact costs imposed. Current discipline costs range from $3,693 for original matters that settle before filing disciplinary charges, to $24,695 for original matters that proceed to the Review Department after trial. Attorneys who do not pay their discipline costs have their license to practice suspended until payment is made. The statute allows for relief from costs in very narrow circumstances, with most of the relief resulting in an extension of time to pay costs rather than a reduction in costs. The subcommittee reviewed the practices of 16 other states and learned that most assessed minimal costs, $3,000 or less, with two states imposing no costs at all.[11]

Finally, the subcommittee reviewed Business and Professions Code (BPC) section 6086.13, which requires the State Bar to adopt rules for imposing monetary sanctions on disciplined

---

[11] These states are: Alaska, Florida, Georgia, Idaho, Illinois, Iowa, Louisiana, Massachusetts, Minnesota, Missouri, New Mexico, North Carolina, Pennsylvania, Vermont, Virginia, and Washington.

attorneys. Monetary sanction revenue is deposited in the Client Security Fund (CSF), which reimburses clients who have lost money or property due to attorney misconduct. State Bar rules implement section 6086.13 sanctions in the following amounts: (1) $5,000 for disbarment; (2) $2,500 for actual suspension; and (3) $1,000 for resignation with charges pending. Projected 2022 sanctions revenue totals $100,000; $100,000 is equivalent to 1.1 percent of the 2022 CSF budget.

The subcommittee formed a working group to further study the issue of State Bar imposed costs and sanctions; a subcommittee was not formed on the topic of respondent representation, with the subcommittee instead opting to wait for pending staff recommendations in this area.

## Expungement

The Fairness Subcommittee explored the topic of discipline record expungement from multiple angles. It began its work by reviewing California's criminal expungement laws. Penal Code section 1203.4 allows for expunging a criminal record for certain misdemeanors and felonies. However, eligibility requires satisfying several conditions and considering specific criteria. In addition, there are several exemptions to the reach of criminal expungement, including when applying to be a peace officer, running for public office, or applying to a licensing agency. Advocates for criminal record expungement argue that it removes barriers to securing employment and housing.

The State Bar's Office of General Counsel (OGC) provided the subcommittee with an overview of Business and Professions Code section 6092.5(e), which states the State Bar shall "Expunge the records of the State Bar as directed by the California Supreme Court." The process for petitioning the Supreme Court for expungement does not appear to be readily available and only two petitions have been filed in recent years, neither successful. There are avenues for attorneys to have administrative suspensions related to short-term MCLE noncompliance (California Rules of Court 9.31(f)) or failure to pay fees expunged if they meet certain conditions (California Rules of Court 9.8(b).

The subcommittee considered the practices of other jurisdictions concerning record expungement. Based on a survey of 19 jurisdictions, none reported expunging discipline records.[12] However, three of these states reported that while records are not expunged, certain low-level discipline is not considered in subsequent discipline consideration after a specified period of time has passed. The subcommittee also consider the practices of the Medical Board of California and the California Board of Registered Nursing. Neither one of these regulatory agencies expunge discipline records.

[12] The 19 states that responded to a State Bar survey are: Alaska, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Massachusetts, Minnesota, Missouri, New Mexico, North Carolina, Pennsylania, Vermont, Virgnia, and Washington.

In addition to record expungement, the subcommittee reviewed the State Bar's practice of posting license status and disciplinary and administrative history on attorney profile pages of the State Bar website and determined that the current practice can have adverse effects on impacted attorneys in perpetuity. For instance, one California attorney licensee delivered a public comment to the commission describing his struggle securing employment 16 years after he was disciplined by public reproval because this history appeared when prospective employers searched his name on the internet.[13]

The OGC provided an overview of the statutory and California Rules of Court that govern how the State Bar publicizes attorney discipline history. Business and Professions Code section 6094.5(f) states: "The State Bar… shall respond within a reasonable time to inquiries… as to public discipline that has been imposed upon an attorney in California." However, there is no statutory or rule requirement that the State Bar post public discipline on its website. The State Bar has chosen to facilitate the public's right of access to attorney disciplinary records as prescribed by statute by posting public disciplinary history on the State Bar website. Currently, there is no time limit on how long such information is posted.

The subcommittee reviewed the website posting practices of other professional regulatory agencies within California, with a significant focus on the Medical Board of California and the California Board of Registered Nursing. Table 3 outlines the current website publishing practices for the State Bar of California compared to these two boards.

**Table 3. Length of Time Discipline History Remains on Public Website:**
**California Attorneys, Doctors, and Nurses**

| Intervention or Type of Discipline | Attorneys<br><br>(State Bar of California) | Doctors<br><br>(Medical Board of California) | Nurses<br><br>(California Board of Registered Nursing) |
|---|---|---|---|
| Private Reproval | Private discipline | N/A | N/A |
| Public Reproval | Indefinitely | 10 years from the effective date | 3 years from effective date |
| ADP Participation | Indefinitely | N/A | Private discipline |
| Probation | Indefinitely | Indefinitely | 10 years from effective date |

---

[13] Examples of public discipline posted include public reprovals, probation, suspension, and disbarment. Private reprovals and nondisciplinary actions, such as agreements in lieu of discipline and warning letters, are not published on the attorney profile page.

| Intervention or Type of Discipline | Attorneys (State Bar of California) | Doctors (Medical Board of California) | Nurses (California Board of Registered Nursing) |
|---|---|---|---|
| Suspension | Indefinitely | Indefinitely (if this suspension is part of an interim suspension order or similar type order, indefinitely but only posted on the website while in place) | 10 years from effective date |
| Disbarment or Revocation | Indefinitely | Indefinitely | Indefinitely |

N/A= not applicable (this intervention or type of discipline is not an option for this Board)

The subcommittee also reviewed parallel practices in other states. All states with exception of two (Mississippi and South Dakota) make discipline history available on their websites. Two larger states, Texas and Florida, limit the website display of discipline to 10 years.[14]

The subcommittee concluded its review by forming a working group to explore: (1) the State Bar's practice of posting discipline history on attorney profile pages; and (2) the expungement of discipline records.

## Perception of State Bar Court Independence

State Bar Court Judge W. Kearse McGill gave an overview of the history of the State Bar Court, describing how proceedings were handled before 1989, when the State Bar Court was established in its current form. Subcommittee members learned about the composition and functions of the Hearing and Review Departments, including the judicial appointment process that is independent of State Bar management. Judge McGill stressed that the State Bar Court, in most cases, makes recommendations to the California Supreme Court, which exercises sole authority over most disciplinary matters. The State Bar Court can only order dismissal of formal charges or issue admonitions as well as both public and private reprovals.

Subcommittee members discussed respondent and public perceptions about the State Bar Court's independence and impartiality, specifically the origin of the concern that the court lacks both. The physical space and location of State Bar Court proceedings play a big role, as the court shares the same buildings as the OCTC, and the State Bar logo is in courtrooms. Additionally, State Bar Court judges are paid by the State Bar. Finally, OGC represents both State Bar Court judges and OCTC personnel in various types of litigation.

---

[14] Texas posts attorney discipline that are public findings or sanctions and Florida posts "public record" attorney discipline.

After consideration of Judge McGill's presentation, the Fairness Subcommittee concluded that the Board, rather than the commission, was best equipped to address the issues raised. Since then, the following changes have been implemented to promote independence and impartiality: (1) the State Bar Court has a new seal different from the one in current use by the State Bar; and (2) State Bar Court staff and judges have a new email domain (statebarcourt.ca.gov).

## Prior Complaints

An analysis of more than 51,000 original matters received by OCTC between 2017 and 2020 showed that 58 percent were closed in intake. Generally, these complaints do not state a basis for attorney discipline, even if all the facts stated by the complaining witness are assumed to be true. Most attorneys who were the subject of these complaints never learned that a complaint was filed against them.

The Fairness Subcommittee explored how OCTC considers complaints closed without discipline when evaluating new complaints. This focus was motived by Professor Farkas's finding that the number of prior complaints filed against an attorney is one of the variables most strongly associated with attorney disbarment. Nearly half (46 percent) of Black male attorneys had at least one complaint filed against them, and 12 percent had 10 or more complaints. In contrast, 32 percent of white male attorneys had at least one complaint filed against them, and 4 percent had 10 or more complaints.

Professor Robertson's research found that while prior complaints closed without discipline have no probative value in State Bar Court, OCTC uses closed complaints to evaluate whether a new complaint establishes a pattern of misconduct. He recommended shielding decision-makers from information that is potentially prejudicial and offered two potential reforms:
- Expunge complaints closed without discipline after five years; and
- Archive all closed complaints but establish conditions for gaining rare access to them.

The subcommittee learned that, in response to these recommendations, the Board passed a resolution representing a hybrid of both reforms. This resolution directed OCTC not to consider closed complaints more than five years old when evaluating a new complaint with limited exceptions. In late 2020, the State Bar archived nearly 400,000 cases over five years old and closed without discipline (excluding the issuance of warning, directional, or resource letters). Archiving complaints removes them from the view of intake staff when they assess the merits of a new complaint.

The subcommittee also reviewed other states' practices in this area. Among 19 states that responded to a State Bar inquiry regarding attorney discipline system policies and procedures, six reported having rules that called for the expungement of cases closed without discipline, and three reported limiting line staff from viewing such closed complaints.

Finally, the subcommittee reviewed the practice of notifying attorneys of closed complaints. Among the 19 states that responded to the inquiry described above, 13 indicated that they notified respondents of closed complaints, and two shared their motivation for doing so, which was to prevent potential future misconduct. This is contrary to OCTC's practice, which is not to alert attorneys to complaints filed against them with no action. Some subcommittee members questioned the fairness of OCTC's practice of not alerting attorneys of closed complaints, given that it can still consider complaints less than five years old when evaluating new complaints.

The subcommittee concluded its review of how OCTC handled complaints closed without discipline with the decision to form a working group to further examine the issues raised during its initial consideration of the topic.

## RECOMMENDATIONS

As a result of the meetings of both the Effectiveness and Fairness Subcommittees, seven working groups were formed:
- Closed Complaints
- Discipline Costs
- Diversion
- Early Neutral Evaluation Conference
- Expungement
- Moral Turpitude
- Progressive Discipline

The working groups held 16 meetings, as detailed in table 4.[15] Working groups requested and reviewed additional information, research, and analyses to facilitate their work. When scheduling meetings of the working groups proved challenging, staff facilitated discussions of identified topics at meetings of the full commission. This section discusses the commission's recommendations based on the working groups' deliberations. The Closed Complaints and Diversion Working Groups did not develop recommendations; their deliberations are discussed at the end of this section.

---

[15] The Early Neutral Evaluation Conference and Moral Turpitude Working Groups held a joint meeting on July 8, 2022.

24

**Table 4. Working Group Rosters and Meeting Dates**

| Working Group | Working Group Members | Meeting Dates |
|---|---|---|
| Closed Complaints | Shanae Buffington<br>Sarah Good<br>Jerry Larkin<br>Edward Lear<br>Steven Moawad | October 26, 2021 |
| Discipline Costs | Ruben Duran<br>Judge W. Kearse McGill<br>Ellen Pansky<br>Sean SeLegue | November 22, 2021 |
| Diversion | Michelle Anderson<br>Karen Bell<br>Shanae Buffington<br>Alexia Mayorga<br>Steven Moawad<br>Ellen Pansky | November 1, 2021 |
| Early Neutral Evaluation Conference | Edward Lear<br>Melanie Lawrence<br>Linda Schneider<br>Judge Phong Wang | August 23, 2021<br>September 15, 2021<br>September 29, 2021<br>December 8, 2021<br>January 19, 2022<br>July 8, 2022 |
| Expungement | Michele Anderson<br>Ray Buenaventura<br>Sarah Good<br>Shelan Joseph<br>Steven Moawad<br>Martin Winfield | August 12, 2021<br>October 20, 2021<br>January 18, 2022 |
| Moral Turpitude | Melanie Lawrence<br>Ellen Pansky<br>Sean SeLegue | August 26, 2021<br>May 16, 2022<br>July 8, 2022 |

| Working Group | Working Group Members | Meeting Dates |
|---|---|---|
| Progressive Discipline | Ray Buenaventura<br>Sarah Good<br>Shelan Joseph<br>Steven Moawad<br>Eloise Rosenblatt<br>Judge Phong Wang<br>Martin Winfield | October 25, 2021<br>December 15, 2021 |

## DISCIPLINE COSTS

At its kickoff meeting on November 22, 2021, the Discipline Costs Working Group confirmed it would focus on costs the State Bar imposes on attorneys who undergo the discipline process. In so doing, members reviewed discipline costs and monetary sanctions currently collected by the State Bar and discussed their fairness and impact on respondents. The working group met once, and the full commission addressed this topic on April 28, 2022.

Working group members questioned the fairness of the existing discipline cost structure, which reflects significant increases in costs between one-day and multi-day trials. One member noted that Business and Professions Code section 125.3 allows boards within the Department of Consumer Affairs to recoup costs for investigation and minimal prefiling charges but not for costs related to going to trial. The purpose of excluding trial costs is to avoid discouraging licensees from pursuing their right to a hearing, a point that resonated with many working group members. Staff shared an analysis of 870 attorneys who were suspended or received public or private reprovals between 2014 and 2016. The research showed that 11 percent failed to pay fees and/or filed a petition for relief within the original disciplinary period. The median disciplinary cost assessment for this group of attorneys was $12,800.

The working group also reviewed Business and Professions Code section 6086.13, which requires the State Bar to adopt rules for the imposition of monetary sanctions on disciplined attorneys and the current sanction amounts. Staff confirmed that no other jurisdiction assessed sanctions in addition to disciplinary costs on its attorneys.

In general, members of the working group expressed widespread support for lowering discipline cost assessments and eliminating sanctions for the following reasons:

- State Bar discipline costs are much higher than those assessed by other state bars, comparable California regulatory boards, and other state attorney regulatory agencies;
- Among 16 jurisdictions surveyed, none report imposing monetary sanctions in addition to disciplinary costs, and the punitive nature of sanctions is contrary to long-standing precedent that discipline exists to protect the public, not to impose punishment;
- High costs can impact the ability of an attorney to return to practice, impeding rehabilitation;

- The current cost structure unfairly penalizes respondents for contesting charges. For instance, costs for matters that proceed to a one-day trial are more than two times higher than costs for matters that settle prior to filing of an NDC;
- Respondents are subject to a cost assessment with no regard for proportionality. For example, if a respondent gets multiple serious charges dismissed but is convicted of one minor charge, there is no corresponding reduction in the fees assessed. State Bar Court judges do not have the discretion to lower discipline costs in matters where the respondent is successful in getting the most serious charges dismissed; and
- Costs associated with matters that proceed to the Review Department are the highest among all proceedings ($24,695 for original matters and $22,136 for criminal referrals in 2022). Respondents must pay total costs even if they successfully reduce the final level of discipline during the review process.

## Recommendations

The full commission discussed this topic at its meeting on June 1, 2022. A staff memo with proposed recommendations and detailed discussions regarding the basis for these recommendations was distributed in advance of this meeting and is provided in Appendix C. There was widespread support among members to lower discipline costs. The commission adopted the following recommendations.

> The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed.

The vote was as follows:
Yes: 12
No: 4
Abstain: 0
Absent: 2

> The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions.

The vote was as follows:
Yes: 12
No: 0
Absent: 13

## EXPUNGEMENT

The Expungement Working Group met three times. At its kickoff meeting on August 12, 2021, the working group confirmed it would explore two areas: (1) the removal of discipline history from the attorney profile page; and (2) the expungement of attorney discipline records.

27

## Removal of Discipline History from Attorney Profile Page

Working group members received a comprehensive primer on the policies and procedures surrounding discipline history on attorneys' State Bar profile page. In addition, they delved deeply into the rationale behind the State Bar's decision to post public discipline online despite not being specifically required to do so. They also reviewed website posting practices of other professional regulatory agencies within California as described in table 3 and parallel practices in other states.

Based on the findings of the study on racial disparities in the discipline system, information gleaned from other states and California licensing agencies, and public comment submitted on this topic, the working group adopted a recommendation to establish the following timeframes for the automatic removal of discipline history from attorney profile pages on the State Bar website. The vote was not unanimous, and a dissenter offered an alternative that called for lengthier timeframes. Both sets of timeframes are presented in table 5.

**Table 5. Working Group and Alternative Recommendations for Attorney Discipline History Website Posting Timeframes**

| Type of Discipline | Working Group Proposed Timeframes | Alternative Proposed Timeframes |
|---|---|---|
| Private Reproval | 1 year or when conditions are met | 1 year after conditions are met |
| Public Reproval | 3 years | 6 years after conditions are met |
| Probation with Stayed Suspension | 3 years of conclusion of probation | 10 years from the conclusion of probation |
| Probation with Actual Suspension | 5 years from reinstatement | 10 years from the conclusion of probation |
| Disbarment | Public indefinitely (no change) | Public indefinitely (no change) |

Both proposals recommend that eligibility for removal of discipline history from the State Bar website be conditioned upon no new discipline imposed during the relevant timeframes, no current active investigations, and payment of all restitution.

The full commission discussed the topic at its meetings on January 25, 2022, and April 28, 2022. Proponents in favor of the working group's proposal argued that the proposed timeframes would:

- Begin to redress historical racial disparities in discipline;

28

- Align the approach with current criminal justice trends in California;
- Align the approach with other states and other California regulatory agencies; and
- Balance the public's right to know with attorneys' ability to move past already satisfied disciplinary conditions.

Proponents of the alternative set of timeframes argued that:
- The proposed timeframes offered were too short;
- The alternative timeframes better align with other California regulatory boards, falling midway between what is in place for nurses and doctors; and
- The alternative timeframes better align with large states such as Texas and Florida, which limit their websites' display of discipline to 10 years.

The full commission considered these two sets of timeframes at its meeting on June 1, 2022, as summarized in the "Recommendations Adopted" below. A staff memo with all recommended timeframes and detailed discussions regarding the basis for these recommendations was submitted to the commission in preparation for this meeting and is provided in Appendix D.

## Discipline Record Expungement

The working group reviewed Business and Professions Code section 6092.5(e), which states the State Bar shall "Expunge the records of the State Bar as directed by the California Supreme Court." Staff confirmed there is no formal process for attorneys to petition the Supreme Court for expungement. Working group members also reviewed State Bar Rules of Procedure, rule 5.12, which allows for sealing portions of discipline records. Respondents' motions must be supported by specific facts showing that a statutory privilege or constitutionally protected interest outweighs the public interest in the proceeding. This requirement severely limits record sealing in practice. The working group also reviewed other professional regulatory agencies within California and parallel practices in other states.

The working group developed recommended timeframes for expungement of attorney discipline records that were aligned with the timeframes with those proposed for removing attorney discipline from the attorney profile page. This decision was driven by members' interest in avoiding public confusion that could result from removing discipline history from the website yet providing this same history upon verbal or written request.[16] The vote was not unanimous, and a dissenter offered an alternative set of timeframes using the same framework. Both sets of timeframes are presented in table 6. Both proposals recommend that eligibility for expungement of the attorney record be based on no new discipline imposed during the relevant timeframe, no current active investigations, and payment of all restitution.

---

[16] A different approach could have been taken. The California Board of Registered Nursing for example, has timeframes for removal of disciplinary history from its website yet also explicitly states that all disciplinary actions "are considered a public record and will be provided when requested."

**Table 6. Working Group and Alternative Recommendations for
Expungement of Attorney Discipline Record Timeframes**

| Type of Discipline | Working Group Proposed Timeframes | Alternative Proposed Timeframes |
|---|---|---|
| Private Reproval | 1 year or when conditions are met | 1 year after conditions are met |
| Public Reproval | 3 years | 6 years after conditions are met |
| Probation with Stayed Suspension | 3 years of conclusion of probation | 10 years from the conclusion of probation |
| Probation with Actual Suspension | 5 years from reinstatement | 10 years from the conclusion of probation |
| Disbarment | Public indefinitely (no change) | Public indefinitely (no change) |

The full commission discussed the topic at its meetings on January 25, 2022, and April 28, 2022.

Proponents of the working group's proposed timeframes for expunging the discipline record state that doing so would:

- Address disproportionate involvement of Black male attorneys in the discipline system; and
- Eliminate confusion that could result from only removing discipline from the website by aligning these timeframes with those proposed for discipline removal from the website.

Opposition to the working group's recommended timeframes is summarized as follows:
- Discipline record expungement is not aligned with the State Bar's mission to protect the public; and
- The recommended timelines for expungement of low-level discipline are too short and not in the public's interest.

## Recommendations

On June 1, 2022, commission members engaged in vigorous discussion about both topics, and staff provided clarity in response to questions regarding what expungement of discipline records meant in practice. Records are not destroyed when expunged; however, attorneys would no longer be required to report discipline, nor would the State Bar report on expunged discipline in response to inquiries. OCTC would, however, continue to access expunged records as they apply to the imposition of progressive discipline. Nevertheless, one member expressed

concern about the impact the proposal would have on public protection, particularly in situations where attorneys have been convicted of domestic violence.

One member moved that rather than voting on each topic separately, members would vote on the two sets of timeframes, understanding that their vote would apply to both the removal of discipline records from attorney website profiles and expungement of discipline records. The full commission adopted this motion.

On June 1, 2022, the commission adopted the following timeframes recommended by the working group.

The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of the attorney discipline from the website attorney profile page and for expungement of attorney discipline records:

- Private reproval:  1 year of when conditions are met
- Public reproval:  3 years
- Probation with stayed suspension:  3 years of conclusion of probation
- Probation with actual suspension:  5 years from reinstatement
- Disbarment:  Public indefinitely (no change)

The votes were as follows:

Yes: 9
No: 0
Abstain: 3
Absent: 13

On August 24, 2022, one commission member proposed amending the recommendation above by excluding criminal convictions based on domestic violence. The proposed amendment was as follows:

Any record associated with an attorney's misdemeanor involving domestic violence, including the record of a restraining order, whether under PC 273.5 (battery as felony or misdemeanor); (PC 243 (e)(1) (battery, crime of moral turpitude); or Fam. Code §6320 (as amended to include coercive control) shall be excluded from either an ENEC or expungement after 3 years, 5 years or 10 years. Rather, any record associated with domestic violence—misdemeanor or not-- remains on the State Bar disciplinary record of that attorney permanently in the interest of the State Bar's mission to protect the public, especially women. The State Bar does not initiate expungement of DV and restraining orders from attorney disciplinary records. Expungement of DV records is reserved to the procedures of a State court of proper jurisdiction.

31

Arguments in favor of this amendment included:

- A domestic violence conviction is the "tip of the iceberg" given how underreported it is and offenders have, at that point, engaged in escalating abuse;
- Women (who compose the vast majority of victims) have the right to know if an attorney they are considering hiring has a domestic violence record; and
- The State Bar runs the risk of individual and class action tort lawsuits for "failure to warn" if it expunges discipline based on domestic violence;

Arguments in opposition to this amendment included:

- Domestic violence convictions are disposed with 104 mandatory hours of domestic violence counseling and are often accompanied by restraining orders;
- Domestic violence convictions are eligible for expungement under California's criminal expungement laws; and
- Attorneys whose criminal convictions are expunged by the criminal justice system should not have this same conviction trail their careers as a result of being posted on their State Bar's attorney profile page.

The commission did not approve the proposed amendment. The vote was as follows:

Yes: 2
No: 11
Abstain: 7
Absent: 5

### EARLY NEUTRAL EVALUATION CONFERENCE

The ENEC Working Group met several times to explore the ENEC process. Discussions settled on two topics: (1) extending the deadline to transmit criminal conviction matters to allow for an ENEC; and (2) establishing timelines between subsequent ENECs.

No consensus was reached among working group members regarding these issues. A staff memo with proposed recommendations and detailed discussions regarding the basis for these recommendations was distributed to the full commission in preparation for its meeting on June 1, 2022, and is provided in Appendix E.

### Criminal Conviction Matters

Working group members reviewed Business and Professions Code section 6101, which requires OCTC to transmit criminal conviction cases to the State Bar Court Review Department within 30 days of receipt if it determines that the case may or does involve moral turpitude. This statutory timeline does not allow sufficient time for an ENEC to be offered, scheduled, and conducted before transmittal to the Review Department makes the matter public.

Working group members also reviewed data on the criminal conviction cases that OCTC learns of through Criminal Offender Record Information (CORI). These cases (referred to as "CORI cases") result from California Rules of Court, rule 9.9.5, requiring all licensed attorneys to be re-fingerprinted by December 2019. In addition, the State Bar now regularly receives Subsequent Arrest Notification and Records of Arrest and Prosecution (RAP) sheets from the Department of Justice. State Bar staff evaluate these RAP sheets to ensure that OCTC is aware of any criminal charges and convictions against attorneys that had not been previously reported. Before 2019, criminal conviction cases fluctuated at around 250 per year. This number increased to more than 2,000 cases in 2019 and 2020 but is now on a downward trend as processing of the remaining CORI cases generated from the re-fingerprinting requirement continues with approximately 750 criminal conviction cases in 2021 and 244 cases as of September 2022.

The memo distributed to the commission contained additional research staff generated for the Moral Turpitude Working Group on outcomes for criminal conviction cases transmitted to the Review Department within 30 days per statutory requirements. The analysis found that 45 percent of criminal conviction cases where the underlying charge was a misdemeanor resulted in nondisciplinary action, and nearly all of those cases were dismissed pretrial. Of those dismissed pretrial, more than half were dismissed by OCTC.

Proponents of offering an ENEC to respondents in criminal conviction cases assert that doing so would have many benefits for the respondent and the State Bar, including:
- Given that nearly half of all criminal conviction cases, where the underlying charge was a misdemeanor resulted in nondisciplinary action and nearly all were dismissed pretrial, allowing respondents to resolve criminal conviction matters in an ENEC would save resources associated with State Bar Court proceedings;
- Allowing respondents an opportunity to present a response before the case becomes public would increase fairness in the system; and
- The ENEC process provides the respondent with an early assessment of the matter and can alert the attorney to its seriousness.

The counterview was based on the following arguments:
- Criminal convictions are already a matter of public record, and there are opportunities to settle cases during pretrial and even the trial phase;
- Offering ENECs in criminal conviction cases would overburden an already strained resource; and
- Modifying the criminal conviction transmittal timeline would require a legislative change. Given that the legislature extended the time to transmit criminal conviction cases from five to 30 days in 2019, the legislature is unlikely to extend this timeline further.[17]

---

[17] Business and Professions Code section 6101 was amended in 2019 to extend the amount of time OCTC must transmit criminal conviction cases that involve or may involve moral turpitude from five days to 30 days.

## Time Standards for ENECs

Judges may order multiple ENECs. The working group explored the possibility of establishing time standards between the first and subsequent ENECs by examining data and analyses provided by the State Bar and reviewing the various rules that govern the ENEC process. An analysis of 442 cases filed in State Bar Court between March 2019 and October 2021 found that cases with ENECs took on average 659 days to file compared to 485 days for cases that did not have an ENEC. In addition, around one-third of cases with an ENEC required two sessions, and 24 percent required three or more.[18] The working group also reviewed an analysis of settlement rates, which showed that 26 percent of all ENECs result in settlement. This settlement rate does not vary significantly by the number of ENECs held.

Proponents for establishing timelines between the initial and subsequent ENECs asserted:
- The lack of time constraints between ENECs delays the public notification of the pending charges against respondents;
- Rule 5.30 calls for the first ENEC to be held within 25 days of the notice to the respondent. This shows the intent of the Board to conduct the process quickly; and
- Multiple ENECs do not increase the likelihood of settlement.

The counter view was that multiple ENECs occur when the judge believes the settlement is possible and is in the best interests of all parties. Therefore, the State Bar should maintain judicial discretion in the ENEC process.

## Recommendations

As noted above, working group members were divided as to whether to extend the deadline to transmit criminal conviction matters to allow for an ENEC or to establish timelines between multiple ENECs.

At its meeting on June 1, 2022, commission members engaged in a discussion regarding the recommendation to seek a statutory change that would allow time for criminal conviction matters to be resolved with an ENEC. Some commission members expressed concern about consumer notice delays the ENEC process would cause, particularly concerning criminal conviction cases based on domestic violence. In addition, one member argued that criminal conviction cases are not regular discipline cases and, therefore, should not be given the option to "settle" because the convicted person's guilt is not in question.

On June 1, 2022, the commission adopted the following recommendation regarding criminal conviction cases:

---

[18] Among all cases that held at least one ENC, 40 percent had incomplete data on the number of ENECs held. This prevented a conclusive analysis of the impact of multiple ENECs on case age.

The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference.

The vote was as follows:

Yes: 12
No: 1
Absent: 12

At the same meeting, commission members engaged in an equally rigorous discussion regarding the recommendation to impose timelines on subsequent ENECs, essentially repeating the pros and cons described above. The commission voted on and ultimately did not approve the following recommendation.

The Ad Hoc Commission on the Discipline System recommends that the State Bar conduct subsequent ENECs only in cases in which the hearing judge determines that a private reproval is a likely outcome.

The vote was as follows:

Yes: 1
No: 11
Absent: 13

## MORAL TURPITUDE

The Moral Turpitude Working Group  was formed to explore the experiences of respondents who are charged with moral turpitude. Moral turpitude is discussed in Business and Professions Code section 6016 and is a designation that is meant to protect the public against unsuitable practitioners: "The commission of any act involving moral turpitude, dishonesty, or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension." The California Supreme Court defined moral turpitude in *In re Lanksky* (2001) 25 Cal.4[th], 16, as conduct that "shows a deficiency in any character trait necessary for the practice of law (such as trustworthiness, honesty, fairness, candor, and fidelity to fiduciary duties) or if it involves such a serious breach of a duty owed to another or to society, or such a flagrant disrespect for the law or for societal norms, that knowledge of the attorney's conduct would be likely to undermine public confidence in and respect for the legal profession." Staff shared that case law has established that moral turpitude cannot be defined with precision but that the most common allegations involving moral turpitude are misrepresentation, misappropriation, and intentional culpability through gross negligence. Under State Bar Rules of Procedure, rule 5.382(c), attorneys disciplined for acts of moral turpitude, dishonesty, or corruption that have

resulted in significant harm to a client or the administration of justice are ineligible for participation in the ADP.

Commission members expressed several concerns about moral turpitude including:
- A perception that OCTC overcharges moral turpitude;
- Respondents experience moral turpitude allegations akin to a "scarlet letter" and are hesitant to settle original matters during an ENEC without having an opportunity to defend themselves thoroughly;
- A perception that OCTC is inconsistent in its willingness to settle cases involving moral turpitude;
- Concern that OCTC does not sufficiently use its discretion when evaluating criminal conviction cases to transmit to the State Bar Court;
- A perception that the State Bar Court dismisses many criminal conviction matters based on misdemeanors, particularly old cases OCTC receives through CORI, thus wasting resources and subjecting respondents to unfair treatment because criminal conviction matters become public once transmitted to State Bar Court; and
- Ambiguity within the State Bar rules involving referrals to the ADP.

These concerns guided the discussions and the empirical research conducted in support of these discussions.

### Moral Turpitude in Original Matters

Attorneys can be charged with moral turpitude as an original matter.[19] An analysis of 442 original matters that reached disposition in the State Bar Court's Hearing Department between March 1, 2019, and May 31, 2021, found that 37 percent had at least one moral turpitude charge during the matter's pendency.[20] To explore whether OCTC overcharges moral turpitude, staff examined outcomes among these matters. Key findings include the following:
- The vast majority (93 percent) of matters that involved moral turpitude resulted in the respondent being found culpable of moral turpitude. The State Bar Court dismissed moral turpitude charges in just 7 percent of matters.
- Nearly half of matters analyzed were disposed of by stipulation, one-third by trial, and one in five by default. This pattern is the same for matters with and without moral turpitude charges.
- Respondents charged with moral turpitude had similar attorney representation rates in State Bar Court compared with respondents who were not charged with moral turpitude (45 percent versus 42 percent).
- Among matters with at least one moral turpitude charge, attorney representation during proceedings was not significantly related to whether the moral turpitude charge

---

[19] An "original matter" is a case that stems from one or more complaints from various sources (complaining witness, court, bank, media, or other source, or a State Bar initiated investigation).
[20] These 442 matters represent 429 individual respondents and 670 complaints.

was dismissed or the disposition outcome (i.e., disbarment, probation or suspension, or reproval).

Two of the three Moral Turpitude working group members agreed the results showing a high conviction rate among matters that involved moral turpitude disproved the claim that OCTC overcharged moral turpitude.[21] However, one working group member expressed concern that the analysis excluded criminal convictions. Staff conducted an analysis focused on criminal conviction matters in response to this concern.

### Moral Turpitude in Criminal Conviction Matters

Attorneys can also be charged with moral turpitude when OCTC seeks discipline for a criminal conviction. Business and Professions Code section 6101(c) states the following: "Within 30 days of receipt, the Office of Chief Trial Counsel shall transmit the record of any conviction which involves or may involve moral turpitude to the Supreme Court with such other records and information as may be appropriate to establish the Supreme Court's jurisdiction." OCTC receives notices of criminal conviction matters from attorneys (Business and Professions Code sections 6068(o)(4), (5)), prosecutors (Business and Professions Code section 6101(b), and courts (Business and Professions Code section 6101(c)). OCTC also learns of criminal convictions through CORI as described in the section on ENECs above.

The working group also received a thorough overview of how OCTC responds to criminal convictions. OCTC's initial transmission of the certified conviction record is to the State Bar Court's Review Department.[22] In some misdemeanor cases, if sufficient information regarding particular facts and circumstances is available to OCTC within the 30-day period when it must make its initial transmittal determination, OCTC may determine that the facts and circumstances underlying the conviction did not involve moral turpitude or other misconduct warranting discipline. When OCTC so concludes, it has the discretion to refrain from transmitting the record of the misdemeanor conviction for further proceedings. Records of misdemeanor convictions are public, as are OCTC's transmittals of misdemeanor conviction records to the Review Department. The State Bar Court Review Department, on its own motion or on the motion of any party, may direct the Hearing Department to conduct a hearing to resolve whether the case involves moral turpitude.

Staff analyzed 397 criminal conviction cases that reached disposition in State Bar Court between March 3, 2019, and February 28, 2022. Issues explored include the relationship between disposition outcomes and case characteristics, such as case origin (CORI versus non-

---

[21] The rationale was that if OCTC "overcharged" moral turpitude, the State Bar Court would have dismissed moral turpitude charges at a much higher rate than 7 percent.
[22] California Rule of Court 9.10(a) authorizes the State Bar Court to exercise "statutory powers under Business and Professions Code sections 6101 and 6102 with respect to the discipline of attorneys convicted of crimes." As a result, pursuant to State Bar Rule of Procedure 5.341, OCTC's initial transmission of the certified record of conviction (whether or not final) is to the Review Department of the State Bar Court.

CORI), type of criminal conviction (misdemeanor versus felony), and length of time since conviction. Key findings include the following:

- Most cases transmitted during the time analyzed were CORI cases, and nearly all of these cases were based on misdemeanor convictions.
- Among all cases where the underlying charge was a misdemeanor, 43 percent resulted in nondisciplinary action, and nearly all of those cases were dismissed pretrial. Of those dismissed pretrial, more than half were dismissed by OCTC.[23]
- Over two-thirds (76 percent) of cases based on misdemeanor convictions more than 10 years old were disposed of with no disciplinary action.

All three working group members agreed that the results addressed concerns raised by the member who requested an analysis of criminal conviction data. However, there was no consensus on the results' implications. One member argued that the high rates of nondisciplinary action in misdemeanor cases and the high share of such cases dismissed by OCTC pretrial suggests that both respondents and the system would be better served if a determination of whether a criminal conviction matter involves moral turpitude was conducted before transmittal to State Bar Court in a venue like the ENEC. In response, one member asserted that the system works as it should. Statute does not require OCTC to determine whether a criminal conviction matter involves moral turpitude, only to transmit the case if it "may" involve moral turpitude. In turn, the State Bar Court's Review Department directs the Hearing Department to conduct a hearing to resolve whether misdemeanor cases involve moral turpitude.

## Recommendations

The Moral Turpitude Working Group met several times. In addition, it held a joint meeting with the ENEC Working Group on July 8, 2022, to discuss topics of interest to both working groups and formulate recommendations.[24] The recommendations described below were developed and considered by members of both working groups. Working group members did not reach consensus on any of these recommendations. A staff memo with proposed recommendations and detailed discussions regarding the basis for these recommendations was distributed to the commission in preparation for its meeting on August 24, 2022, and is provided in Appendix F.

The recommendations focused on three topics: (1) creating a process so that respondents may present a response to moral turpitude allegations before OCTC transmits misdemeanor criminal conviction matters to the State Bar Court; (2) clarifying ambiguities in rules governing participation in the ADC; and (3) rule revisions to promote the use of ENECs as a mechanism for arriving at prefiling settlements of State Bar disciplinary proceedings.

---

[23] In contrast, only 5 percent of cases where the underlying charge was a felony resulted in nondisciplinary action.
[24] At this meeting, members agreed to submit their proposed recommendations to staff who, in turn, circulated them to members of both working groups to solicit agreement or disagreement and alternative recommendations.

## Pretransmittal Meeting for Misdemeanor Criminal Conviction Cases

Members who represent respondents in State Bar discipline matters argued that respondents and the system would be better served if the determination as to whether a misdemeanor criminal conviction matter involves moral turpitude was made before OCTC's transmittal of the case to State Bar Court. Currently, there is no rule that authorizes either an ENEC or other pretransmittal meeting in a misdemeanor criminal conviction proceeding, at which respondents or the State Bar Court could weigh in on whether a respondent's misdemeanor criminal conviction involves moral turpitude or other misconduct warranting discipline.

Arguments in favor of a pretransmittal process include:

- State Bar research that showed high rates of nondisciplinary action in misdemeanor cases and high rates of pretrial case dismissal initiated by OCTC suggests that both respondents and the system would be better served if a determination of whether a criminal conviction matter involves moral turpitude was made before transmittal to State Bar Court;
- The absence of a pretransmittal determination causes serious hardship to respondents where the ultimate disposition is dismissal because the disciplinary filing remains on the State Bar Court's public docket unless a motion to seal the record is made and granted;
- In matters where the appropriate disposition is a nondisciplinary one, such as an ALD or an admonition, or where a confidential private reproval is appropriate, the filing of the public proceeding requires the disposition of a criminal referral matter to be public. In contrast, nonpublic dispositions are possible in an original matter;
- Once OCTC transmits a misdemeanor conviction to the Review Department, the mandatory costs borne by respondents in State Bar proceedings increase. The Ad Hoc Commission has identified the current cost structure as a subject for reform. In addition, respondents represented by counsel typically incur much higher legal fees when formal disciplinary proceedings are filed in the State Bar Court; and
- The transmittal of a conviction to the Review Department also increases State Bar Court costs.

Opponents argue:

- Business and Professions Code section 6101(c) directs OCTC to transmit "the record of any conviction that involves or may involve moral turpitude." The discretion to make this determination and transmit is thus vested in OCTC. OCTC attorneys have prosecutorial discretion based on ethics and following the law to make appropriate decisions on whether to transmit criminal convictions;
- Adding a pretransmittal meeting to the criminal conviction transmittal process would be impractical given the relatively short statutory deadline (30 days from receipt of the

certified record of conviction) for OCTC to transmit convictions to the Review Department;[25]

- CORI cases have the highest nondisciplinary action rates, and these will soon become a small minority as OCTC works through the influx of cases the State Bar received in 2019 and 2020 as a result of the re-fingerprinting requirement and automated reporting of criminal convictions;

- A pretransmittal process would delay filing a notice of disciplinary action, thereby denying the public knowledge about the disciplinary action. Public protection (as evidenced by the statutory requirements imposed on OCTC, district attorneys, and courts) is served by public transmittal of convictions that are already a matter of public record whenever there is a possibility that they "may" involve moral turpitude, with subsequent resolution of that issue in a public forum. Processes that favor already convicted respondents over early public disclosure are inconsistent with the mission of the State Bar to protect the public; and

- Attorneys convicted of felonies and certain misdemeanors are required to self-report these convictions to the State Bar. OCTC can consider information submitted by attorneys or their counsel when reporting a misdemeanor conviction that outlines facts and circumstances they believe demonstrate that the conviction should not be transmitted.

The commission adopted the following recommendations on August 24, 2022.

The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340–5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter.

The vote was as follows:

Yes: 17
No: 2
Absent: 6

## ADP

Attorneys accepted into ADP are required to participate in treatment with the LAP for three years, which may be reduced to 18 months depending on incentives and performance. Upon

---

[25] Opponents also argued that although the Ad Hoc Commission adopted a recommendation to pursue statutory change to extend the criminal conviction transmittal timeline at its meeting on June 1, 2022, the legislature is unlikely to extend the timeline further because it extended the timeline from five to 30 days in 2019.

successful completion, respondents earn a lower level of discipline than would otherwise be imposed.

Members of the two working groups discussed State Bar rules associated with ADP. Under rule 5.382(C)(3), an attorney is ineligible to participate in ADP if the attorney's misconduct involves acts of moral turpitude, dishonesty, or corruption that have resulted in significant harm to one or more clients or the administration of justice. Participation in ADP is also contingent upon the court's approval of a stipulation of facts and conclusions of the law signed by the parties (rule 5.382(A)(2)). However, when the parties dispute whether there was moral turpitude committed resulting in significant harm or to the administration of justice, a stipulation cannot be reached.

Some members contend that rule 5.382(A)(2), in effect, disallows participation without the opportunity to litigate the issue. They asserted that the State Bar should amend rules to provide for an evidentiary hearing and judicial determination on the issues of moral turpitude, dishonesty, corruption, and harm before an attorney is precluded from the program. They argued that doing so would expand opportunities for rehabilitation under Business and Professions Code section 6230, which states, "It is the intent of the Legislature that the State Bar of California seek ways and means to identify and rehabilitate attorneys with impairment due to substance use or a mental health disorder affecting competency so that attorneys so afflicted may be treated and returned to the practice of law in a manner that will not endanger the public health and safety."

The main counterview to an evidentiary hearing is that it would create a burden for OCTC. A mandatory evidentiary hearing on moral turpitude issues may result in duplicated efforts and the need to potentially call witnesses again if the respondent does not enter the ADP and a trial in regular proceedings ensues.

The commission adopted the following recommendation on August 24, 2022:

> The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice.

The vote was as follows:

Yes: 20
No: 0
Absent: 5

### ENEC

Members who represent respondents shared how respondents they have represented experienced the ENEC process when faced with a moral turpitude charge. Although the full Ad

Hoc Commission adopted a recommendation on June 1, 2022, calling for expanding the deadline for transmittal of criminal conviction matters in misdemeanor cases to allow for an ENEC, these members asserted that the ENEC process needs to be revised for this recommendation to be effective. Examples of concerns include: (1) OCTC is not bound to follow judicial assessments, even those that raise concerns regarding a lack of evidence to support moral turpitude charges; and (2) OCTC attorneys are inconsistent in their response to judicial evaluations, with some willing to negotiate and others stating they have no authority to negotiate. They further argued that revising rules related to the ENEC would benefit respondents and the State Bar as follows:

- There would be an increase in prefiling settlements, which would conserve OCTC and State Bar Court resources;
- An increase in prefiling settlements will lead to more expeditious and less expensive resolutions for respondents whose cost obligations increase by going to trial; and
- Allowing respondents an opportunity to present a response to the allegation that a misdemeanor conviction involves moral turpitude before the case becoming public would increase the system's fairness.

Opponents of revising rules related to the ENEC argue the following:
- There is no way to know that revisions made to the rules associated with the ENEC will result in significant conservation of OCTC and State Bar Court resources;
- Respondents are incentivized to delay the discipline process to ensure they continue to practice. Prolonging the discipline process does not make sense when the misconduct will be a matter of public record under any scenario;
- No other regulatory agency in California provides for a process similar to the ENEC. The ENEC process is ultimately a detriment to public protection because it results in delays public notification of alleged misconduct violations. As a result, the public cannot consider these misconduct allegations when making decisions about which attorney to hire or not hire;
- The ENEC process also delays the filing of a notice of disciplinary action and in many cases, delays the ultimate resolution of the complaint; and
- The expansion of the ENEC process would shift the balance between a respondent's due process rights and public protection. As a result, the rights of respondent attorneys would be increased, and public protection decreased.

The commission adopted the following recommendation on August 24, 2022:

The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of State Bar disciplinary proceedings.

The vote was as follows:

Yes: 18
No: 2
Absent: 5

## PROGRESSIVE DISCIPLINE

At its first meeting, the Progressive Discipline Working Group confirmed that, out of concern for historical disparities in attorney discipline and lack of judicial discretion, its goal was to explore modifications to the State Bar's Rules of Procedure that outline discipline standards.

The working group reviewed standard 1.8, which states: "If a lawyer has a single prior record of discipline, the sanction must be greater than the previously imposed sanction unless the prior discipline was so remote in time and the previous misconduct was not serious enough that imposing greater discipline would be manifestly unjust." The working group also reviewed standard 1.5, which details aggravating circumstances, including a prior record of discipline, multiple acts of wrongdoing, and a pattern of misconduct, concealment, and significant harm to the client. Finally, the working group reviewed standard 1.6, which details mitigating circumstances, including the absence of any prior record of discipline over many years of practice coupled with present misconduct, which is not likely to reoccur, lack of harm to a client, extreme emotional difficulties, extraordinary good character, remoteness in time of the misconduct and subsequent rehabilitation, and restitution made without the threat of force or administrative action.

The working group discussed several potential modifications to the standards. One option was to modify the following clause in standard 1.8: "[...] the sanction must be greater than the previously imposed sanction." Specifically, working group members suggested changing "must" to "may," which would allow for greater discretion when considering prior discipline. The working group also discussed additions to the mitigating factors in standard 1.6.

Arguments in favor of amendments to standards 1.8 and 1.6 include:
- Prior discipline may be the result of disparities in the discipline system, and changes to the standards could help reduce the impact of previous discipline disparities on current outcomes[26]; and
- Changes to the standards will allow for greater judicial discretion and increase fairness in the system.

---

[26] The working group reviewed an analysis of attorneys who were disbarred between 2015 and 2021. Half had no prior formal discipline and 40 percent were previously on probation. Small sample sizes and lack of racial or ethnic data on disciplined attorneys prevented drawing conclusions about any racial disparities in previous discipline among disbarred attorneys.

Arguments against modification include:

- The Supreme Court has consistently expressed support for the standards and progressive discipline; and
- Increasing discretion may have the unintended impact of increasing discipline disparities due to implicit bias.

The working group met twice, and the full commission also discussed the topic at its meeting on January 25, 2022. Some commission members supported modifying standards, but the discussion did not lead to specific recommendations. Similarly, the working group did not generate recommendations due to the standards' complexity and the many issues involved.

## Recommendations

The full commission discussed progressive discipline at its meeting on June 1, 2022. A staff memo with detailed discussions about the standards and the working group's deliberations was distributed ahead of this meeting and is provided in Appendix G. There was widespread interest in modifying standards to allow for greater judicial discretion. However, there was also consensus that specific changes to the standards would require extensive and in-depth legal analyses beyond the commission's scope.

The commission adopted the following recommendation at its August 24, 2022, meeting:

> The Ad Hoc Commission recommends that the State Bar Board of Trustees analyze and consider modifying Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regards to progressive discipline.

The vote was as follows:

Yes: 16
No: 2
Absent: 7

## ATTORNEY REPRESENTATION

The Fairness Subcommittee discussed the impact of the lack of respondent representation has on discipline outcomes, as empirically demonstrated by the State Bar's research on racial disparities in discipline. The subcommittee requested that instead of a working group, staff update the full commission on the State Bar's efforts to increase respondent representation as recommended by Professor Robertson.

Staff developed two options for a counsel representation pilot program. Eligible participants (i.e., respondents) for both options include attorneys licensed in California who qualify for

reduced license fees and undergo a formal discipline investigation by OCTC.[27] Approximately 200 attorneys annually satisfy these criteria. Both options propose the use of $250,000 in State Bar resources to provide representation to low-income respondents as a pilot program that would remain active until funds are exhausted. The funding to provide this representation would come from the State Bar's General Fund, which supports the attorney discipline system overall.

## Option 1: State Bar-Appointed Counsel Program, Hourly Rate

Under this option, the State Bar would appoint a panel of defense counsel and compensate them at $300 per hour, equating to approximately 833 billable hours. The hourly rate is the same rate the State Bar pays attorneys appointed to represent mentally infirm respondents in State Bar Court proceedings under the State Bar Court Appointed Counsel Program.[28] Members of the Association of Discipline Defense Counsel estimate, on average, 10 billable hours are required for cases closed in an investigation, 35 hours for cases closed in prefiling, and 60 hours for cases closed in postfiling. The State Bar estimated that this option would serve approximately 83 attorneys annually.[29]

## Option 2: State Bar-Appointed Counsel Program, Flat Fee

Under this option, the State Bar would appoint a defense counsel panel. Participating defense counsel would offer a free one-hour consultation to eligible respondents. If a mutual agreement for representation is reached after that consultation, the State Bar would pay defense counsel a flat fee of $3,500 per matter for full services only up to and including the ENEC. The State Bar estimated that this option would serve approximately 71 attorneys.[30]

## Recommendations

The full commission discussed the two options for attorney representation at its meeting on June 1, 2022. A staff memo with detailed descriptions of each option was distributed ahead of this meeting and is provided in Appendix H. There was widespread interest among members in adopting one of the two options. However, one member dissented and noted that no other California regulatory agency maintains an appointed counsel program of this type. In addition,

---

[27] Approximately 200 attorneys who pay reduced license fees undergo a formal investigation per year. The 2022 reduced license fees threshold is approximately $60,500 in gross annual individual income from all sources.

[28] In 2020 the program, whose panel is appointed and maintained by the State Bar Court, provided counsel to 12 respondents. Appointments are limited to two case types: (1) when a licensee asserts a claim of insanity or mental incompetence (Business and Professions Code 6007, subdivision (b)(1)); and (2) when the State Bar Court finds the licensee unable to perform competently due to mental infirmity or illness, or the habitual use of intoxicants or drugs. (Business and Professions Code 6007, subdivision (b)(3)).

[29] This estimate was generated by assuming similar patterns of case closures among low-income respondents based on data from 2019, 2020, and 2021. On average, 90 percent of their cases across these three years closed in investigation, 3 percent closed in prefiling, and 7 percent closed in postfiling.

[30] The estimate of attorneys served (71) is lower than option 1 because cases closed in investigation would require approximately 10 billable hours, yet counsel would receive a flat fee of $3,500. The majority of investigations are closed in the investigation stage.

members discussed the State Bar Court Appointed Counsel Program (also referred to as "6007 Court Appointed Counsel Program"), which pays attorneys to represent mentally infirm respondents in proceedings, and the pros and cons of hourly rates versus flat-fee arrangements. As a result of these discussions, the commission generated and adopted the following recommendation:

> The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program.

The vote was as follows:

Yes: 13
No: 1
Absent: 11

## CLOSED COMPLAINTS

At its kickoff meeting on October 26, 2021, the Closed Complaints Working Group confirmed its focus on OCTC's practice of not notifying attorneys of complaints it closed without discipline.

Some members questioned the fairness of this practice, given that OCTC staff may consider closed complaints that are less than five years old when evaluating new complaints. Members also noted that 13 other states notified attorneys of closed complaints. OCTC members of the working group argued that the State Bar receives over 16,000 complaints per year and expressed concern about any proposed recommendation to mandate that OCTC notify attorneys of complaints received. No other state has a similar complaint volume, and significant resources would be required to inform attorneys and respond to the inevitable follow-up questions they may have. Some members expressed concern about the impact of such notifications on the attorney-client relationship. Finally, others expressed concern that attorneys would be required to report knowledge of closed complaints when applying for jobs or malpractice insurance. The meeting ended with a request for data on the complaint history of disciplined attorneys.

Due to scheduling conflicts, the working group was unable to meet again. Instead, staff presented the research requested to the entire commission at its meeting on January 25, 2022. A complaint history analysis of 373 respondents who received their first discipline for an original matter between 2018 and 2020 showed that 91 percent had at least one prior complaint closed without discipline, and 28 percent had more than 10. The vast majority (83 percent) were found culpable of an offense much like one alleged in a previously dismissed complaint. For example, among all attorneys disciplined for misconduct related to client neglect or abandonment, 87 percent had received a prior complaint related to client neglect or abandonment that OCTC closed without discipline. For seven categories of misconduct

analyzed, more than 50 percent of respondents had a previously closed complaint for the same misconduct for which they were disciplined.

In response to this analysis, some working group members expressed interest in exploring a recommendation for OCTC to develop a pilot program to send letters to respondents who received complaints about one of the seven misconduct categories. However, there was no consensus on the issue.

At the meeting on April 28, 2022, of the full commission, Executive Director Leah Wilson and Chief Trial Counsel George Cardona updated members on a recently published state audit report. They noted one recommendation called for the State Bar to send a letter with client account trust-accounting resources upon closing all reportable bank matters and that OCTC had initiated work to implement this recommendation. Commission members agreed with Ms. Wilson's suggestion that the working group not pursue recommendations related to closed complaints, given that the State Bar will be reaching out to a significant portion of all attorneys subject to complaints pursuant to the recommendations of the California State Auditor.

## DIVERSION

At its kickoff meeting on November 1, 2021, the Diversion Working Group confirmed its focus on understanding nondisciplinary actions. Concerned about equal access to these nonpublic measures, members requested data on participation and how this varies by race and ethnicity and gender. Unfortunately, due to scheduling conflicts, the Diversion Working Group did not meet a second time.

At the meeting on April 28, 2022, of the full commission, Executive Director Leah Wilson and Chief Trial Counsel George Cardona updated members on the recently published state audit report referenced above. They noted that the audit called for the State Bar to revise policies and procedures related to nonpublic alternatives to discipline, including developing specific eligibility criteria and guidance for staff discretion. OCTC had initiated work on implementing this recommendation. Commission members agreed with Ms. Wilson's suggestion that the working group not pursue recommendations related to diversion as the State Audit addressed this issue and recommended restricting the use of nonpublic measures.

## PUBLIC COMMENT

On September 22, 2022, the State Bar Board of Trustees formally received the final report of the Ad Hoc Commission on the Discipline System. It directed staff to issue the commission's recommendations for a 60-day public comment period. The public comment period closed on November 28, 2022, and 78 public comments were received. The majority of respondents (54) were attorneys.

Public comment respondents were asked to select one of three options for each recommendation:

1. Agree only if modified;
2. Agree with proposed recommendation; or
3. Disagree with the proposed recommendation.

Respondents were also offered the opportunity to submit written comments in response to each recommendation. Table 7 sets out the results for each recommendation disaggregated by total and attorney respondents.[31] All recommendations received a majority vote for "Agree with proposed recommendation." In general, attorneys were more likely to agree with the proposed recommendations than the total set of respondents.

**Table 7. Summary of Public Comments on Recommendations**

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| **Recommendation 1:** The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed. | | | |
| Total Respondents | 12% | 76% | 13% |
| Attorneys | 9% | 85% | 6% |
| **Recommendation 2:** The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions. | | | |
| Total Respondents | 10% | 69% | 21% |
| Attorneys | 9% | 81% | 9% |
| **Recommendation 3:** The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference. | | | |
| Total Respondents | 9% | 73% | 18% |
| Attorneys | 6% | 83% | 11% |
| **Recommendation 4A.** The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of the attorney discipline from the website attorney profile page: <br> • Private reproval:  1 year of when conditions are met <br> • Public reproval:  3 years <br> • Probation with stayed suspension:  3 years of conclusion of probation <br> • Probation with actual suspension:  5 years from reinstatement <br> • Disbarment:  Public indefinitely (no change) | | | |
| Total Respondents | 27% | 61% | 12% |
| Attorneys | 26% | 67% | 7% |

---

[31] The recommendation regarding the adoption of timelines for removal of discipline history from the State Bar website and expungement of discipline records was presented to the public in the form of two distinct recommendations. Recommendation 4A discussed removing discipline history and recommendation 4B discussed expungement of discipline records.

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| **Recommendation 4B.** The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for expungement of attorney discipline records:<br>• Private reproval:  1 year of when conditions are met<br>• Public reproval:  3 years<br>• Probation with stayed suspension:  3 years of conclusion of probation<br>• Probation with actual suspension:  5 years from reinstatement<br>• Disbarment:  Public indefinitely (no change) | | | |
| Total Respondents | 25% | 64% | 12% |
| Attorneys | 24% | 69% | 7% |
| **Recommendation 5.** The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340 – 5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter. | | | |
| Total Respondents | 9% | 79% | 12% |
| Attorneys | 6% | 87% | 7% |
| **Recommendation 6.** The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice. | | | |
| Total Respondents | 12% | 79% | 9% |
| Attorneys | 7% | 87% | 6% |
| **Recommendation 7.** The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of State Bar disciplinary proceedings. | | | |
| Total Respondents | 14% | 76% | 10% |
| Attorneys | 7% | 85% | 7% |
| **Recommendation 8.** The Ad Hoc Commission recommends to the State Bar Board of Trustees analyze and modify Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regards to progressive discipline. | | | |
| Total Respondents | 9% | 77% | 14% |
| Attorneys | 7% | 83% | 9% |
| **Recommendation 9.** The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program | | | |
| Total Respondents | 9% | 81% | 10% |
| Attorneys | 4% | 89% | 7% |

49

## COMMISSION REVIEW OF PUBLIC COMMENTS

The full commission reviewed public comments on December 5, 2022. A staff memo and a document capturing all written comments received were distributed ahead of this meeting and are provided as Appendix I and J, respectively. The staff memo contained five potential new recommendations based on public comments received. In addition, staff proposed clarifying text surrounding eligibility for removal of discipline history from the State Bar website and expungement of attorney discipline records based on public comments received. The commission expressed support for four of the five potential new recommendations and full support for the clarifying text. However, the commission did not vote on any of these items, which as a result are not reflected as commission-adopted recommendations in this final report. Instead, staff will address the four new recommendations in a staff memo that will accompany the commission's final report to the Board of Trustees.

### Potential New Recommendations

The commission reviewed the following potential new recommendations.

**Recommendation #1**: Allow attorneys to resign without charges pending after satisfying discipline requirements and remove discipline history from website and expunge discipline records.

This recommendation proposes a timeline for removing discipline history and expungement of discipline records for attorneys who resign without charges pending having satisfied all discipline requirements. Under this proposal, removal would occur upon resignation.

The recommendation was developed based on the following public comment: *It may be worth allowing disciplined attorneys to resign without charges pending after they satisfy all of their discipline requirements on the condition that their State Bar website profile is expunged. This would accomplish OCTC's goal of preventing disciplined attorneys from ever practicing again and the disciplined attorneys' privacy interests and their ability to succeed in a different career.*

Some commission members noted that the recommendation echoed the "retirement with dignity" paths many attorney regulation agencies across the country are pursuing.  Staff will explore the topic further and develop a recommendation for the Board of Trustees' consideration.

**Recommendation #2**: Develop a timeline for removing discipline history from attorney profiles on the State Bar website and expunging discipline records for attorneys who resign with charges pending but are reinstated.

This recommendation was based on the following public comment: *There need be a similar timeline for removal of the attorney discipline from the website attorney profile page of*

*"attorneys who submitted a voluntary resignation with charges pending," who have subsequently been reinstated on the active roster of the California State Bar. Note: I am such an attorney who resigned in 1994 "while charges were pending," and though my petition for reinstatement was granted in 2003, and though I've been practicing since without any discipline, my State Bar website profile, on many occasions has caused many hardships. Despite not having been disciplined, many who have viewed my profile on the bar's website, have incorrectly surmised that I was disciplined and consequently disbarred.*

Commission members agreed that staff should explore the topic further and develop a recommendation for the Board of Trustees.

**Recommendation #3:** Develop a timeline for removing administrative suspensions from attorney profiles on the State Bar website and expunging administrative suspensions from attorney discipline records.

This recommendation was based on the following public comment:  *I have been practicing for over 40 years. My first year my dues were late due to mailing address change from LA County to Orange County; thereafter from death in family due another move. Extreme upsets in my personal life. For the subsequent 39 or so years my Dues have been timely. I have committed no further wrongs in the sight of the State Bar. Although these Rule changes state they are intended to address "disciplinary" matters, There no discipline, no reproval, no probation, no disbarment, only briefly suspended until my dues were received. The Rules should address "suspensions for failure to pay dues in timely manner" in the same manner, but with a lesser consequence. And, last but not least, I hereby request my "suspensions" be expunged in full. I believe a 38-year penalty is sufficient, even if consecutive. Thank you.*

This recommendation received widespread support with no dissent. Staff will develop a comprehensive proposal that addresses administrative suspensions to present to the Board of Trustees.

**Recommendation #4:** Modify the State Bar website so that internet browsers cannot index attorney profile pages

This recommendation was based on the following public comment: *It may be worth considering a change to the State Bar website whereby Google cannot index attorney profile pages. This is consistent with every other licensed profession in California. This provides at least some measure of privacy for respondents.*

The commission discussed the pros and cons of this recommendation and reached a consensus that the issue should be explored further.  Staff will explore the State Bar's website configuration as compared with other California licensing agencies and develop a recommendation for the Board of Trustees.

**Recommendation #5:** Require attorneys to provide notice of regulation by the State Bar of California, similar to the California Code of Regulations, section 1355.4 that addresses medical doctors.

This recommendation was based on the following public comment received: *We would encourage the State Bar to find ways to inform more people of their abilities to file complaints. For example, the State Bar could look to the Medical Board's policy that requires all Medical Board licensees to have a physical notice in the office that provides information about how to file a complaint with the Medical Board. Something similar could be implemented for CA attorneys so that both clients and other staff who observe malpractice or other action that warrants discipline have information about and can feel empowered to make a complaint. This is of particular importance for complainants who are not traditionally empowered to speak up against people with more social and financial leverage, as attorneys often are.*

There was little commission support for this suggestion.

### Modifications to Existing Recommendations

In discussing its recommendation for the State Bar to adopt timelines for removing discipline history from online attorney profiles and expungement of attorney discipline records, the commission shared its guidance on eligibility requirements. Based on public comments, staff recommended the following modification to the report text to clarify eligibility requirements as follows:

> Eligibility for removal of discipline history and expungement of the attorney record would be based on no new discipline imposed during the relevant timeframe, or no current active investigations, and payment of all restitution.

This modification was proposed in response to the following two public comments:

1. *With respect to ATTORNEY DISCIPLINE ON STATE BAR WEBSITE/ EXPUNGEMENT, I am unclear at to the meaning of the statement "Both proposals recommend that eligibility for removal of discipline history from the website be conditioned upon no new discipline or active investigations during this period, and payment of all restitution." I am unclear as to what is meant by the phrase "during this period". What is the period? Also, I am unclear what the meaning of "Active" investigations means. What period of time? Would those include complaints that were investigated and closed by the Ca State Bar with no action?*
2. *What does active investigation mean? I think it should be clear only complaints that lead to filing of bar violation charges should stop eligibility.*

There was widespread support for the proposed modification, and the report's text was updated accordingly.

## DISSENTING OPINIONS

### ROSENBLATT

I dissent from any conclusion in the Final Report that because my proposed Amendment didn't pass (No—11, Yes—2, Abstain—7) that means it is off the table. I propose in this Dissent that the Board of Trustees note that there was no consensus -- on either the previously adopted recommendation regarding expungement of discipline records—nor on my proposed Amendment that specified the exclusion of domestic violence offenses.

The subject of domestic violence, perpetrators and survivors—is touchy and uncomfortable. Since 1 in 5 women is a victim of DV, that means, statistically, that there are women survivors sitting on this very Commission, and that men on the Commission and within the State Bar staff know of a woman who is a survivor—their own mother, sister, daughter, family member, neighbor, co-worker or a client. Some women who witnessed a dad or family member assert their authority and control have adopted the "power and control" dynamic themselves, and subject other women to it in a judicial, employment or same-sex relationship.

Domestic violence is also uncomfortable to talk about because, statistically, it means that some men on this Commission and at the State Bar itself are afflicted with the "power and control" dynamic at the heart of domestic violence offenses described in Fam. Code §6320, PC§ 274.5, and PC §243(e)(1)—a crime of moral turpitude. It's uncomfortable because, statistically, both men and women on this Commission know a man who is or was an offender—their own dad, a brother, an uncle, a son, a co-worker, a client.

The fact that Domestic Violence—in relation to the proposal to expunge misdemeanor records—needs further discussion—is indicated by essentially a split decision: No's 11, but 2 Yes and 7 Abstentions. This result contrasts with votes on all other proposals where there were there were clear majorities of Yes. This vote is unusual because of the high percentage of Abstentions. A reasonable conclusion is that this subject needs more discussion and interface with those advocating for expungement of misdemeanor DV records from attorney records of discipline on-line.

My observation is that is no consensus, either about the original proposal (where there wasn't a quorum) or for my Amendment itself.

The issue of DV as a "misdemeanor" and its consideration as a subject for expungement, creates a need for more exploration and discussion. I recommend that the Board direct staff to work with stakeholders to study possible revisions to ENEC rules in misdemeanor conviction matters involving DV, and clarifying policies for excluding DV-related misdemeanors from expungement of attorney records by State Bar staff.

In this Dissent, I ask that the full text of my Amendment and its rationale by transmitted to the entire Board of Directors herein, along with the most recent revision of Family Code §6320 that includes "coercive control" as a form of domestic abuse:

Amendment to Expungement Proposal by Eloise M. Rosenblatt

I make this motion to amend the expungement recommendation:

**Any record associated with an attorney's misdemeanor involving domestic violence, including the record of a restraining order, whether under PC 273.5 (battery as felony or misdemeanor); ( PC 243 (e)(1) (battery, crime of moral turpitude); or Fam. Code §6320 (as amended to include coercive control) shall be excluded from either an ENEC or expungement after 3 years, 5 years or 10 years. Rather, any record associated with domestic violence— misdemeanor or not-- remains on the State Bar disciplinary record of that attorney permanently in the interest of the State Bar's mission to protect the public, especially women. The State Bar does not initiate expungement of DV and restraining orders from attorney disciplinary records. Expungement of DV records is reserved to the procedures of a State court of proper jurisdiction.**

Arguments in Support:

1. Any record associated with domestic violence is the tip of the ice-berg. Domestic abuse is a pervasive offense that affects 1 in 5 women nationally; 95-98% of victims are women. It is under-reported, like rape. By the time a complaint reaches the court, the multiple forms of abuse expressing an offender's power and control over a spouse, domestic partner or girlfriend, have escalated over weeks, months and years.

2. A "misdemeanor" can be misleading. Domestic violence charges under <u>Penal Code§ 273.5</u>, <u>Penal Code §243(e)(1)</u> and <u>Family Code § 6203</u> are frequently pleaded down. For example, a serious battery would be breaking the nose or arm of a girlfriend or wife, meeting the standard of felonious infliction of physical injury under <u>Penal Code §273.5</u>. But it could have been reduced to a misdemeanor so the abuser wouldn't lose his job, be deported, or be prevented from owning or carrying a gun in military service or as a policeman. Same for a victim's petition for a restraining order. It is often modified as a "peaceful contact" order so the offender can still own a gun, or avoid a DV offense record on his application for employment.

3. A petition for a restraining order in Family Court under <u>Fam. Code § 6320</u> had included physical injury, sexual abuse, shoving, stalking, death threats, harassment by letter, phone, texts, threats to kidnap the children and injury to pets. Now the recently amended statute codifies "<u>coercive control</u>" as a DV offense—through destroying the peace of a victim, monitoring of phone or e-mail, financial exploitation, isolation from family or friends, or threats about a victim's immigration status. Is the State Bar going to independently over-ride a determination in Family Court that an attorney who got a DV Restraining Order, after being charged under "coercive control" with these "non-

physical" and "misdemeanor" offenses, is entitled to have this record expunged from his disciplinary record so he can attract more clients?

4. Men with domestic violence impulses are likely to repeat their offenses in new relationships and in different forms; these offenses are gender-targeted and gender-specific. Women as a gender are the victims.

5. Unintended consequences of the expungement proposal: Women of color and ethnicity are 3 times more likely to be victims of domestic violence than white women. Thus, to privilege Black men in the expungement of a domestic violence record re-victimizes Black women. This makes Black women 3 times more likely than white women that they will suffer repeated acts of abuse from Black men in a dating relationship or the attorney-client relationship.

6. White women as well as women of color have a right to know if an attorney has a record associated with domestic violence for their own physical safety and the integrity of the attorney-client relationship. While potential male clients may feel brotherhood with an attorney who has a DV record, potential female clients have a right protect themselves by avoiding any association with a male attorney who had a "peaceful contact" order, a restraining order, or a "misdemeanor" under PC §243 (e )(1). Women are alert to detect what these records imply. Women have a right to choose an attorney they can trust to be "safe."

7. Risk-management: The State Bar leaves itself open to individual and class action tort lawsuits for "failing to warn" if it expunges DV-associated "misdemeanors." What if a woman client is later physically injured by her attorney, sexually or financially exploited, threatened or harassed by him? What if she discovers that her recidivist attorney once had a record of DV "misdemeanors" but that these were expunged by the State Bar? She can claim she would never have chosen such an attorney to represent her if she'd known his DV-associated history.

8. Comparing expungement schedules to "large jurisdictions" like Texas and Florida is misleading and might be re-thought. Texas has the most rapes of any state in the nation, the most liberal gun-ownership provisions, onerous laws against abortion, restrictions on women's access to reproductive healthcare, lack of financial support for pre-natal care, high infant and maternal death rates, restrictive voting legislation which disproportionately affects voters of color and ethnicity, and hostility to immigrants. Why would the California State Bar justify its expungement time-table by comparison with states like Texas and Florida with their legislative histories that so contrast with the legal culture of California?

The full text of the new <u>Family Code</u> section 6320 now provides (with the new portions in italics below):

"(a) The court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating as described in Section 528.5 of the Penal Code, falsely personating as described in Section 529 of the Penal Code, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either

directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members.

(b) On a showing of good cause, the court may include in a protective order a grant to the petitioner of the exclusive care, possession, or control of any animal owned, possessed, leased, kept, or held by either the petitioner or the respondent or a minor child residing in the residence or household of either the petitioner or the respondent. The court may order the respondent to stay away from the animal and forbid the respondent from taking, transferring, encumbering, concealing, molesting, attacking, striking, threatening, harming, or otherwise disposing of the animal.

*(c) As used in this subdivision (a), "disturbing the peace of the other party" refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies. This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty. Examples of coercive control include, but are not limited to, unreasonably engaging in any of the following:*

*(1) Isolating the other party from friends, relatives, or other sources of support.*
*(2) Depriving the other party of basic necessities.*
*(3) Controlling, regulating, or monitoring the other party's movements, communications, daily behavior, finances, economic resources, or access to services.*
*(4) Compelling the other party by force, threat of force, or intimidation, including threats based on actual or suspected immigration status, to engage in conduct from which the other party has a right to abstain or to abstain from conduct in which the other party has a right to engage.*
*(d) This section does not limit any remedies available under this act or any other provision of law."*

56

**LAWRENCE**

1) I disagree with the recommendation regarding expungement. I was not present at the June 2022 Commission meeting and so, did not cast a vote. While I am not wholly opposed to the idea of expungement, in my opinion, the timeframes adopted by the Commission in June are too short and not balanced sufficiently against public protection.

2) I disagree with the recommendation to seek a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference. I was not present at the June 2022 Commission meeting and so, did not cast a vote.

I think the California legislature is interested in early public notice of attorneys who have been convicted of a crime that may involve moral turpitude given the statutory requirements imposed on OCTC *and others* such as courts and district attorneys and for that and other reasons below, I do not think this would be a good use of resources or political capital.

OCTC already sought an extension to the relevant statute a few short years ago. While OCTC sought an extension longer than 30-days, the 30-day period is all that the legislature would agree to. It seems very unlikely the legislature would now consider a longer extension just a few years later and particularly in the wake of very significant criticism and concern that the discipline system has not adequately prioritized protection of the public. In addition, concerned about the timing of conviction transmittals, the State Bar Court itself, *insisted* a few years ago that OCTC disclose on every conviction transmittal itself, whether the transmittal occurred within the statutory time period. Loosening that time period thus, seems contrary to a very recent State Bar Court concern.

Also, as I have said before, often times even within the 30-day period of time, OCTC does not have sufficient information to determine that a conviction clearly did not involve moral turpitude. Thus, any push to resolve cases earlier increases the likelihood that decisions are being made without sufficient information. That does not serve the public.

Criminal convictions are themselves a matter of public record. Thus, I do not think the State Bar should take the position that they should be treated in a way that delays public notice of convictions that may involve moral turpitude in attorney disciplinary matters even if in a few cases with more time, a determination is made that the conviction does not involve moral turpitude. Given the relatively small number of instances where cases are later dismissed (particularly after excepting the old fingerprinting cases) I think building more process that favors already convicted respondents over early public disclosure, is inconsistent with the mission of the Bar to protect the public. That said, I would be amendable to any recommendation that consistent with criminal statutes, allows an attorney to expunge the public notice of the misconduct at an appropriate time.

3) I also disagree with the recommendation to implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program. Again, I was not present at the June 2022 meeting at which time this recommendation was adopted and did not cast a vote.

I recognize that a portion of the respondent population is unrepresented due to financial reasons – although I think of the unrepresented population, we do not know how many of them are so because of financial reasons. I also recognize the data which suggests that representation matters in terms of outcome. So, my objection is not because I do not appreciate the value representation can have. Rather, I do not agree that using general fund dollars to fund such a program, is appropriate.

First, I do not think there has been sufficient exploration of the defense bar's willingness to provide pro-bono or low-bono services to respondents absent any Bar-funded program. Those counsel, some of whom command many hundreds of dollars per hour, should be encouraged to do more to impact this issue – or at least give us substantive information on what they have done thus far. To that end, while I understand an initiative to leverage pro or low-bono services was part of the Farkas/Roberston reports and recommendations, it is not clear to me that those efforts actually reached any conclusion. Second, I am not comfortable with the idea that all licensees, including those who never have contact with the discipline system, should fund representation of attorneys alleged to have committed misconduct.

## MOAWAD

**Expungement Recommendation**

I dissent from the recommendation made by the Ad Hoc Commission on the Discipline System regarding expungement of prior discipline. I was unable to attend the June 1, 2022, meeting of the Ad Hoc Commission and did not cast a vote. I concur with Melanie Lawrence's dissent in that the timeframes recommended by the Commission are too short and not balanced sufficiently against public protection.

I write separately to make three additional points:

1. Criminal "Expungement" does not Erase the Public Record of Conviction.

   In support of the recommendation on expungement, a parallel was drawn between the recommendation and criminal expungement. The primary method of expungement in California is the post-conviction relief found in Penal Code sections 1203.4, 1203.4a, and a few others. While post-conviction relief permits the defendant to tell some potential employers that they have not suffered a conviction, the use of the term expungement is misleading; the relief granted by these sections does not mean the records of conviction are erased or destroyed. A grant of relief pursuant to these sections simply results in an addition to the defendant's criminal history noting the charges were set aside and dismissed pursuant to the statute. The conviction – and the relief granted – remain public records.

   Expungement, as envisioned by the Ad Hoc Commission on the Discipline System on the other hand, would not mean that the discipline would be appended with a notation that the respondent earned relief following the prior discipline. Instead, all reference to the prior discipline would be removed from the attorney profile page. Further, the State Bar would be prevented from providing information about the prior discipline in response to a direct inquiry from a member of the public.

   The recommendation of the Ad Hoc Commission on the Discipline System permits the Office of Chief Trial Counsel to use expunged records for purposes of progressive discipline. Such use of expunged records parallels the criminal expungement statutes, is appropriate, and should not be changed. Nonetheless, this policy highlights a problem with concealing an attorney's prior record of discipline from the public. If a potential client checks with the State Bar to see if there is a record of prior discipline and the response is that there is no prior discipline, the client would be justified in their outrage upon finding out there was, in fact, a prior record of discipline. That outrage would be magnified if the client learns about the prior record of discipline after the attorney misappropriated that client's money.

2. The State Bar Should Not Expunge Attorney Discipline Information

Frequently, California takes bold, nation-leading action to protect the public, but California should not do so at the expense of the public. Of all the United States jurisdictions that display attorney discipline information on a public website, the Ad Hoc Commission on the Discipline System Report and Recommendations points out only two jurisdictions that limit the timeframe for website display of discipline information (10 years). These jurisdictions are cited in support of the Alternative Proposed Timeframes because those alternative timeframes fall "midway between what is in place for nurses and doctors, and practices in Texas and Florida." However, neither Florida nor Texas "expunge" records of prior discipline; both states provide the public with prior public discipline history when contacted directly (Florida via email and Texas by phone). Both Florida and Texas provide the public with prior public discipline history even when the record of discipline is older than 10 years and has been removed from the website. While not mentioned in the Ad Hoc Commission on the Discipline System Report and Recommendations, Idaho also limits the timeframe attorney discipline information is displayed on a public website. However, Idaho, like Florida and Texas, provides attorney discipline information to the public indefinitely, even when the record of discipline has been removed from the website.

3. Public Discipline Information for Attorneys Should be Available at Least as Long as Public Discipline Information for Doctors

As cited in Table 3 on page 22, the Medical Board of California removes public reprovals from their website after 10 years, but leaves more serious discipline on the website indefinitely. These more serious disciplines include probations, suspensions, and license revocations. The attorney discipline equivalents to these levels of discipline are probation (including stayed suspensions), actual suspensions, and disbarments. Members of the public should be as informed when seeking to hire a lawyer as they are when seeking to hire a doctor.

## Extension of Time to Transmit Criminal Conviction Matters to Allow an ENEC

I dissent from the recommendation made by the Ad Hoc Commission on the Discipline System regarding an extension of time to transmit criminal conviction matters to allow an Early Neutral Evaluation Conference. I was unable to attend the June 1, 2022, meeting of the Ad Hoc Commission and did not cast a vote. I concur with Melanie Lawrence's dissent.

# APPENDICES

## APPENDIX A. COMMISSION CHARTER

The Ad Hoc Commission on the Discipline System will take inventory of the changes that have been proposed and implemented in the Office of Chief Trial Counsel since 2016 and evaluate their impact on public protection. The evaluation will focus on the impact of these reforms on a number of key aspects of the discipline system, including:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

In particular, this body will:

- Review the full catalogue of reforms OCTC has implemented and identify one or more sets of processes, policies, and procedures to focus on;
- Evaluate if these processes, policies and procedures had their intended effect; and
- Based on this evaluation, recommend additional or revised reforms.

In so doing, the commission will review research studies that have been completed and determine whether additional research is needed. It will also review research studies in progress and generate policy recommendations as results become available.

Another key element of the State Bar's discipline system is the State Bar Court, which on its own initiative, also continually evaluates its processes to improve the adjudication of cases. With the participation of the State Bar Court, the commission may examine the structure of the court, principally issues involving its independence and autonomy.

As a guiding principle, the commission will focus on the dual goals of ensuring public protection and fairness in the discipline system.

## Composition

The Ad Hoc Commission will consist of 19 members appointed by the Board of Trustees. Members will represent key institutional entities that focus on public protection and reflect the state's diversity, both demographic and geographic. As a guideline, below are areas from which commission members will be sought and the recommended number of members from each:

- Council on Access and Fairness (2)
- California Medical Board (1)
- Department of Consumer Affairs (1)
- California Lawyers Association (1)
- Association of Discipline Defense Counsel (2)
- National Organization of Bar Counsel (1)

- California criminal justice system (prosecutor, defense counsel, judge) (3)
- State Bar Board of Trustees (2)
- Office of Chief Trial Counsel (2)
- State Bar Court (2)
- Affinity Bar Associations (2)

The commission will be staffed by the State Bar. It will begin its work in early 2021 and present a final report on its findings and recommendations no later than June 30, 2022, with periodic status updates to be provided to the Board of Trustees.

## APPENDIX B. INVENTORY OF DISCIPLINE SYSTEM INITIATIVES



# Inventory of Discipline System Initiatives

**Prepared for the
Ad Hoc Commission on the Discipline System**

**April 30, 2021**

# CONTENTS

Introduction ............................................................................................................. 1

Fairness .................................................................................................................... 1

    Improved Access to the Complaint Process ...................................................... 1

    Targeted Services and Outreach to Vulnerable Populations................................ 2

    Complaining Witness and Respondent Feedback .............................................. 3

    Addressing Racial Disparities in Attorney Discipline ........................................... 5

Effectiveness ........................................................................................................... 8

    Case Processing...................................................................................................8

## INTRODUCTION

The following inventory lists the dozens of discipline system initiatives, policies, and procedures the State Bar has implemented over the last several years. It is organized in the following categories:

- **Fairness:**  This includes initiatives that promote procedural justice, reduce disparate impact, prevent future attorney misconduct, and improve the experiences and perceptions of complaining witnesses and respondents.

- **Effectiveness:**  This includes initiatives that address workload and operational efficiency.

The majority of the initiatives outlined are focused on the Office of Chief Trial Counsel (OCTC). It is the single largest division in the State Bar, comprising about half of all State Bar employees. OCTC is also the lynchpin of the discipline system. OCTC processes approximately 16,000 complaints of misconduct each year and another roughly 4,000 notifications of potential ethical violations related to criminal cases, client trust accounting, and the unauthorized practice of law. Because of its centrality to the State Bar's mission of public protection, OCTC is also the most closely scrutinized of the State Bar's divisions.

Partially as a result of this scrutiny, in recent years, OCTC has undergone numerous and significant organizational changes. Approximately half of the recommendations contained in a 2015 Bureau of State Audit report focused directly on OCTC; and 17 recommendations contained in the legislatively mandated workforce planning report of 2016 were also directed toward OCTC.[1] A 2018 discipline system workload study estimated the amount of staff resources needed to process cases through different stages of the attorney discipline process. This provided support for the State Bar's proposed licensing fee increase of 2020 to fund, in part, additional staff level for OCTC. As of this writing, a 2020 Bureau of State Audit report focused on OCTC is scheduled to be published in late April 2021. Finally, it should be noted that some of the most significant changes in OCTC in recent years were initiated by OCTC leadership in their ongoing efforts to streamline operations and ensure that the State Bar fulfills its public protection mandate.

## FAIRNESS

### Improved Access to the Complaint Process

**Online Complaint Portal.** OCTC launched an online complaint portal, allowing complaining witnesses to file complaints electronically, rather than on paper via mail in both English and Spanish. For approximately 10 months afterwards, OCTC saw a significant increase in the number of complaints received overall. Four additional languages (Vietnamese, Korean,

---

[1] See California State Auditor Report, 2015-030, "State Bar of California: It Has Not Consistently Protected the Public Through Its Attorney Discipline Process and Lacks Accountability," https://www.bsa.ca.gov/pdfs/reports/2015-030.pdf; also see "State Bar of California Workforce Planning: Report to the Office of the Executive Director," May 10, 2016, http://www.calbar.ca.gov/Portals/0/documents/reports/2016_Workforce_Planning_Report_May_15.pdf

Russian, and Chinese) were added to the system in 2019 to further expand access to complaining witnesses in their preferred language. (2018)

**Multilingual Communication.** To increase access to the attorney discipline system and to avoid undue delay of cases involving people who would prefer to communicate in a language other than English, OCTC had the Complaint Acknowledgement Letter and several informational letters translated into the 10 most common languages spoken in California (English, Arabic, Chinese, Farsi, Hindi, Korean, Russian, Spanish, Tagalog, and Vietnamese). This change has eliminated a 10-day delay in each case requiring translation. OCTC translated several informational letters sent at the initial stage of the investigation and whenever a case is reassigned. OCTC also developed new procedures to ensure that complaining witnesses are communicated with in their preferred language. (2019-2020)

**Complaining Witnesses in Custody.** OCTC engaged with a third-party communications company to facilitate collect calls from complaining witnesses who are in custody. Doing so eliminates the need to interview complaining witnesses via written format, a process that caused delay because of the need to mail questions and responses. Interviews are now completed in a more expeditions manner. (2018)

**Complaint Review Unit.** In 2016, Rule 2603 of the Rules of Procedure of the State Bar of California was amended to delegate to Office of General Counsel the "second look" function that had previously been completed by OCTC staff. This amendment was sought upon the recommendation of the State Auditor in 2015. Complainants are entitled to request that the State Bar Office of General Counsel's (OGC) Complaint Review Unit (CRU) review OCTC's decisions to close a case. If CRU finds that the case was not closed properly, or if it the complaining witness presents new evidence, it will refer the complaint back to OCTC with a recommendation that it be reopened for investigation. While the recommendation to transfer this function to OGC was made in order to make the review process more independent, it also had the practical effect of freeing up OCTC resources to dedicate to case processing.

### Targeted Services and Outreach to Vulnerable Populations

**Unauthorized Practice of Law by Non Attorneys.** A nonattorney could be someone who has never been a licensed attorney, was formerly a California licensed attorney, or an attorney licensed in another state, but not in California. OCTC formed a specialized team dedicated to the investigation of complaints related to the unauthorized practice of law by nonattorneys (NA/UPL), a problem that often impacts vulnerable communities, includings immigrants. OCTC did so in response to concerns from stakeholders who expressed concern that the Office was not adequately addressing the issue. Since then, the team has streamlined its work and processes, including referring matters to law enforcement for criminal action early and prioritizing cases that pose the most significant public protection concerns. NA/UPL cases do not impact the count of statutory backlog; as such, additional resources to support the NA/UPL team were not included in the recent State Bar licensing fee increase. (2016)

2

**Immigration Law Cases**. OCTC established a team on a pilot basis to primarily handle cases implicating the practice of Immigration Law. Because Immigration Law is particularly complicated, OCTC hopes that dedicating staff with expertise in the area will improve efficiency in handling these cases. The pilotteam  consists of two attorneys whose caseloads comprise cases wherein the alleged misconduct in the context of an Immigration case or where the misconduct implicates the immigration status of a client. These attorneys will oversee the investigations of those complaints, prepare cases for filing and present cases at trial. (2020)

To speed up the process of obtaining the privacy waivers required to receive immigration records, in 2020 OCTC created an immigration-specific assignment letter, available in many languages, , which requests that complainants provide the waiver as soon as their case is assigned. Getting the privacy waivers out at the earliest opportunity reduces the time spent waiting for files from U.S. Citizenship and Immigration Services and the Executive Office for Immigration Review, a period which can sometimes be as long as six months or more.

## Complaining Witness and Respondent Feedback

**Complaining Witness Survey.** The State Bar offers complaining witnesses (CW) the opportunity to share information about their experience filing a complaint via an online survey. The purpose of this survey is to assess CW's views of the State Bar's discipline system's accessibility and fairness. Complaining witnesses are invited to participate in a survey via a letter they receive that describes the outcome of their complaint. Those with email addresses are invited to participate via email. CW are asked, "Please tell us about your experience with how the State Bar handled your complaint, by indicating how strongly you agree or disagree with each of the following statements" using a five point scale where 1=strongly disagree and 5 = strongly agree. Examples of questions pertaining to access include, (1) It was easy to find the complaint form on the State Bar's website, (2) The instructions and information on the website about filing a complaint were clear and easy to understand. Examples of questions pertaining to access include, (1) The communication from the State Bar addressed the issues raised in my complaint, even if I did not agree with the decision to close my case, (2) The communication from the State Bar addressed the issues raised in my complaint, even if I did not agree with the decision to close my case.  In 2020, over 1,200 CWs responded to the survey.

**Closing Calls to Complaining Witnesses**.  Prior to mid-2020, OCTC required that staff call a complaining witness upon closure of any investigation. That call was in addition to a required detailed closing letter staff draft and send to the complaining witness. Seeking to reduce a redundancy in order to more efficiently resolve cases, OCTC participated in an experiment in order to determine what, if any effect, eliminating the closing call had on a complaining witness' perception that OCTC was accessible and fair. At the conclusion of the experiment, results indicated that the perception was impacted, but not in a statistically significant manner such that the impact did not militate against adoption of a new policy. Thus, staff is no longer required to place calls in all cases. OCTC still requires calls in some cases, including those in which the complaining witness is in a vulnerable category and detailed closing letters are still required in all cases.

**Respondent Survey.**  In late 2019, the State Bar distributed a short survey to respondents who were recently disciplined by reproval or probation. The purpose of this survey is to assess respondents' views of the State Bar's discipline system's accessibility and fairness. Respondents were asked, "Please tell us about your experience with how the State Bar handled your case, with respect to the Office of Chief Trial Counsel and the State Bar Court separately, by indicating how strongly you agree or disagree with each of the following statements" using a five point scale where 1=strongly disagree and 5 = strongly agree. Examples of survey items include, (1) I was given the opportunity to provide or present the necessary information before decisions were made about the matter, (2) I was treated with courtesy and respect, (3) Communications about the process and outcome of the case were clear to me. (4) My case was resolved in a reasonable amount of time, (5) I understand the outcome of the case.

Following the advice from the Office of General Counsel, distribution of the survey was divided into two groups according to whether the respondents had been represented by counsel in their discipline proceedings. The survey was emailed directly to those without counsel; for those represented by counsel, the survey was emailed to their counsel, with the request that they forward the survey to their clients. A total of 46 surveys were distributed to respondents without counsel, and 11 responses were received, with a response rate of 24 percent. For those represented by counsel, 50 surveys were distributed and 3 responses were received, at a rate of 6 percent. Due to the small number of response cases, especially for those represented by counsel, this project was put on hold. The State Bar is currently exploring alternative ways to receive feedback from respondents including interviews and focus groups.

4

## Addressing Racial Disparities in Attorney Discipline

In 2019, the State Bar initiated a statistical analysis of complaints and discipline against attorneys admitted to the Bar between 1990 and 2009. Conducted by Professor George Farkas, Distinguished Professor in the School of Education at the University of California, Irvine, the analysis sought to determine whether there is disproportionate representation of nonwhite attorneys in the attorney discipline system and, if so, to understand its origins, and take corrective action. The findings, documented in a report to the Board of Trustees in November 2019, included the following

- Without controlling for any other factors, there was disproportionate discipline against Black, male attorneys, who were three times as likely to be placed on probation, and almost four times as likely to be disbarred as compared to their white, male, counterparts.[2]

- Using multiple regression analysis to introduce control variables into the evaluation, the study found that the factors that were correlated with race and were statistically significant predictors of discipline included:

  o Number of prior complaints. Discipline disparities between Black and white male attorneys are explained in part by a higher number of complaints against Black attorneys.

  o Rates of counsel representation. Black, male attorneys have a lower likelihood of being represented by defense counsel during the investigation stage and during State Bar Court discipline proceedings.

The State Bar invited Professor Christopher Robertson, N. Neal Pike Scholar and Professor at the School of Law of Boston University, and Visiting Scholar and Special Advisor at the James E. Rogers College of Law of the University of Arizona, to explore possible remedies to address these findings. Professor Robertson met with OCTC staff and leadership, conducted focus group interviews, and reviewed documents related to OCTC process and policy. In July 2020, Professor Robertson presented an interim report which focused on thirteen potential reforms across three broad areas: (1) client trust fund accounting, (2) the treatment of prior complaints and discipline history, and (3) securing legal representation for those facing discipline. Since then, the State Bar has implemented several of these reforms, summarized in table 1.

---

[2] The study also identified disparities between Hispanic and white and between Black and Hispanic females and their white counterparts, but the State Bar focused on the disparity between Black and white males as it was the largest.

**Table 1. Racial Disparities Study:  Results, Recommendation, and Implementation**

| Study Finding | Recommendation | Implementation |
|---|---|---|
| The number of prior complaints is a strong predictor of discipline. Almost half (46 percent) of all Black male attorneys had at least one complaint filed against them and 12 percent had 10 or more complaints. In contrast, 32 percent of white male attorneys had at least one complaint filed against them and 4 percent had 10 or more complaints. | Shield decision-makers from complaints more than five years old that were closed without discipline by expunging complaints or, alternatively, archiving complaints closed without discipline after five years. | In late 2020, the State Bar archived nearly 400,000 cases of all types and origins that were more than five years old and were closed without discipline (excluding the issuance of warning, directional, or resource letters). Archiving complaints removes them from the view of Intake staff when they assess the merits of a new complaint. |
| Among attorneys with a large number of complaints against them, Black male attorneys had, on average, 6.8 Reportable Action Bank cases while white male attorneys had 3.7.[3] | Explore proactive, preventive options for attorneys who experience low-level Reportable Action Bank matters that also ensure public protection is not compromised. | OCTC modified the four letters it sends attorneys in response to notices from banks of insufficient funds in a client trust account. The new letters provide a comprehensive list of resources and warning language regarding the risk of discipline. Approximately 800 attorneys will receive this letter annually. |

---

[3] Reportable Action Bank cases are initiated when a bank reports insufficient funds activity in an attorney's client trust account as required under Business and Professions Code section 6091.1.

**Table 1. Racial Disparities Study:  Results, Recommendation, and Implementation (continued)**

| Study Finding | Recommendation | Implementation |
|---|---|---|
| The proportion of investigations in which attorneys were not represented by counsel is a strong predictor of discipline. Black respondents were less likely to be represented by counsel when facing a disciplinary investigation by the State Bar compared with white attorneys. | (1) Track and report rates of representation in the discipline system as a key performance indicator. (2) Inform attorneys facing discipline about the statistical likelihood of probation or disbarment if they fail to secure counsel. | Staff operationalized a metric "Percent of Respondents that Retain Representation" that will be based on closed cases of all types that reached the investigation stage or a later stage. Staff will report this metric quarterly, beginning in March 2021 with the 2019 value (14 percent) serving as its baseline.

Staff developed a one-page flyer for respondents that includes a link to the membership directory of the Association of Discipline Defense Counsel Association (ADDC) and advises them of the importance of securing counsel. To test whether receiving this flyer has an impact on respondents securing counsel, respondents have been randomly assigned to two groups and only one receives the flyer when they are notified that OCTC has opened an investigation. Staff will evaluate the impact of the flyer on counsel retention approximately three to five months following the program's launch, depending on the sample size available; the flyer may be adjusted accordingly, based on the findings, and distributed to all respondents. |

## EFFECTIVENESS

### Case Processing

**Case Prioritization System.** In 2018 OCTC implemented a case prioritization system with Board of Trustees approval. Instead of just working the oldest cases first, regardless of the public protection risk, OCTC now prioritizes the cases posing the most significant public protection risks first, regardless of age. In addition, OCTC identifies cases that likely, with a little work, can resolve quickly. Those cases are assigned to expeditor teams, who work only those cases. In these "expedited" cases, OCTC has eliminated a number of processes required in other cases (for example, no investigation plan is necessary), to expedite case processing. The practical effect of expediting teams is the movement of some cases faster, and the reduction of caseloads for others working higher priority cases.

**Modernized Case Management System and Online Complaint Portal**. In 2019 OCTC converted from a years-old DOS based case record system to a new case management system, "Odyssey." Odyssey has allowed OCTC to move from maintaining paper files to maintaining and utilizing files electronically. Doing so has increased efficiencies in that multiple staff members can work files at the same time and tasks are "moved" electronically to staff without the added need to wait for the receipt of a paper file. Some efficiency has been lost, however, in that moving within the electronic file is slowed because doing so requires multiple "clicks." In addition, OCTC is capturing significantly more data per file, requiring more staff resources tfor data input. In August 2020, OCTC integrated the online complaint portal with the case management system so that, after verification, complaints submitted, including attachments, are automatically uploaded to the case management system and a new case is opened. This eliminates the need for staff to manually enter data for complaints submitted on-line.

### Changes in OCTC Supervisors, Teams, and Administrative Functions

- In 2016 OCTC moved the "worker-team" from Intake to Enforcement. That team, which had been assigned to Intake for years, was comprised of attorneys and complaint analysts (a classification no longer used), who would "work" lower-level complaints with the goal of resolving them before having to send them to Enforcement. While a number of those complaints were able to be resolved without moving them to Enforcement, in some instances, the cases were not resolved and were then forwarded to Enforcement. However, by the time the cases were moved to Enforcement, they were already aged—some so much so they were already nearing backlog. The change meant that cases were not held and "worked" in Intake but rather, assigned like all other cases, to the team in Enforcement. In implementing Workforce Planning recommendations, OCTC dissolved the specialized "worker-team" entirely and deployed the staff among the Enforcement teams. Doing so did slow the movement of lower-level cases in Intake because they became subject to many of the same processes as other cases that moved to investigations. The adoption of the case prioritization system in 2018 eliminated many of those processes in lower-level cases and has brought greater efficiency to handling those cases. (2016)

8

- OCTC re-organized into a vertical team structure with supervising attorneys, a newly created classification, responsible for a team of attorneys, investigators, and support staff, de-centralizing previoulsy centralized investigative and administrative functions. Supervising attorneys were empowered to approve charging and resolution decisions. While making this change improved efficiencies in some respects, the change necessarily required OCTC to move senior staff into supervisor positions and away from carrying full-caseloads thereby reducing resources for case processing. The downside to this change was the need to divert staff that otherwise would be processing cases to new supervisory roles. (2017)

- In 2017 OCTC fully staffed a training and calibration team in order to formalize and improve training for all levels of staff. By doing so, OCTC was able to streamline the onboarding of new staff and improve the quality and consistency of the work of existing staff. (2017)

**Policies and Procedures that Improve Efficiency**

- OCTC began requesting that financial records be provided in an electronic format when subpoenaed during an investigation, and in 2018, purchased software to scan paper and electronic financial records to pull out transactions and expedite fund tracing exercises involving voluminous records. Prior to this, financial records were catalogued by staff manually. (2017-2018)

- OCTC sought approval from the Board of Trustees to update the Rules of Procedure of the State Bar to permit electronic service, the use of electronic signatures, and the exchange and lodging of electronic trial exhibits. This proposed rule was approved in September 2020.

- OCTC sought amendments to Rule 2409 of the Rules of Procedure of the State Bar of California to eliminate delays caused by mailing letters to respondents which describe allegations and requests a response, to allow posting of those letters to the My State Bar Profile page of the respondent attorney. This reduces the amount of time OCTC staff would otherwise wait, due to communication via the U.S. Postal service. (2018)

- OCTC sought a change to Rule 5.140 of the Rules of Procedure of the State Bar of California allowing the court to take judicial notice of noncertified court records. Prior to the rule change, OCTC secured certified court records to ensure admissibility at trial. OCTC was charged for doing so and at times, the cost would be significant. In addition, cases could be delayed from moving forward, while staff waited for receipt of those records. The rule now expressly authorizes the court to take judicial notice of noncertified records, which are often times, easily accessible online. (2018)

- In 2018 OCTC sought amendments to Rule 5.21 of the Rules of Procedure of the State Bar of California to toll the rule of limitations when an attorney is on inactive status

9

pursuant to Business and Professions Code section 6007(a) or (b). Many of these attorneys are unlikely to return to practice, but prior to the amendment, OCTC policy required quarterly written status reports on each case in the inventory that was suspended due to the attorney's incapacity. Similarly, State Bar Court conducted periodic status conferences on filed cases that were suspended due to the attorney's incapacity. The practical effect of the amendment is to allow OCTC to move to dismiss filed matters and to close suspended matters, where attorneys are enrolled under one of these subsections, and where it is more likely than not that the attorney will never return to practice. At the same time, if the attorney does return to practice, OCTC is not limited by the rule of limitations, to re-file charges. Many of the cases that were in OCTC's inventory because of the inactive enrollments, were in backlog. (2018)

- OCTC eliminated an office policy prohibiting nolo contendere pleas—often cited by members of the defense bar as a barrier to the efficient resolution of cases. (2018)

**Discipline System Metrics.** The Board of Trustees adopted discipline system metrics in September 2018. These metrics were developed, in part, in response to the State Auditor's recommendation in its 2017 report that the State Bar "identify key goals and metrics to measure how well its attorney discipline system is meeting the State Bar's core mission to protect the public from attorney misconduct."[4] In support of this recommendation, the State Bar's initial five-year strategic plan for 2017-2022 included the following goal: "Develop and implement transparent and accurate reporting and tracking of the health and efficacy of the discipline system," which specifically includes the "development of new metrics for measuring the effectiveness of the discipline system including any needed revisions to the statutory backlog metric." Specific metrics were developed for each operational area of the discipline system, which include:

- Office of Chief Trial Counsel;
- State Bar Court;
- Office of Probation;
- Alternative Discipline Program (ADP) of the Lawyer Assistance Program (LAP); and
- Client Security Fund (CSF).

Most metrics include targets for accountability purposes. All metrics are tracked regularly; depending on the metric, reporting frequency varies between monthly, quarterly, semiannually, or annually. Metric results are reported to the Board of Trustees at each of their bimonthly meetings.

**Recidivism.** The State Bar regularly analyzes post-disposition recidivism among respondents who receive one of four types of dispositions: resource letter, warning letter, reproval (both public or private), and probation. Four outcomes are analyzed: (1) new complaint received, (2) new complaint investigated, (3) new case filed with State Bar Court, and, (4) discipline imposed.

---

[4] California State Auditor. *Report 2017-30, The State Bar of California: It Needs Additional Revisions to its Expense Policies to Ensure That it Uses Funds Prudently.* June 2017. https://www.bsa.ca.gov/pdfs/reports/2017-030.pdf

Disciplines include:  participation in the Alternative Discipline Program, reproval, probation, or disbarment.  All complaint types are considered, including probation violations.  Finally, recidivsim is analyzed at 6, 12, 24, and 36 months post-disposition.

**APPENDIX C. STAFF MEMO ON DISCIPLINE COSTS AND SANCTIONS**

**The State Bar**
*of California*

**AD HOC COMMISSION ON THE
DISCIPLINE SYSTEM**

Date:      June 1, 2022

To:        Members, Ad Hoc Commission on the Discipline System

From:      Justin Ewert, Principal Program Analyst
           Lisa Chavez, Director

Subject:   Adoption of Discipline Costs and Sanctions Recommendations

## EXECUTIVE SUMMARY

The Ad Hoc Commission on the Discipline System (AHCDS) was created to review the changes that have been proposed and implemented in the Office of Chief Trial Counsel since 2016 and evaluate their impact on public protection. The AHCDS focused on the impact of these reforms on a number of key aspects of the discipline system, including:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

The AHCDS divided into two subcommittees, fairness and effectiveness, and then further into working groups to review specific areas of focus and develop recommendations to be reviewed by the full commission. The four-member Discipline Costs Working Group reviewed discipline costs and sanctions currently collected by the State Bar and examined their fairness and impact on respondents. Due to scheduling conflicts, the working group did not develop recommendations. Instead, the full AHCDS discussed the topic on April 28, 2022. At that time members expressed concern about the high discipline costs respondents incur. The recommendations that follow are reflective of that discussion.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 2

## RECOMMENDATIONS

The working group and AHCDS discussed two types of costs imposed on respondents: discipline costs and monetary sanctions. The narrative below provides background on each and proposed recommendations for the Ad Hoc Commission's consideration.

### COSTS ASSOCIATED WITH DISCIPLINE

In 1986, the Legislature authorized the State Bar to collect costs associated with disciplinary investigation and proceedings. Business and Professions Code Section 6086.10 requires the State Bar to impose costs on disciplined attorneys for various expenses including the "reasonable costs" of investigation, hearing, and review. The Board of Trustees has the authority to define "reasonable costs"; it is not defined in statute. The State Bar's current cost structure is based on a discipline costs study conducted in 2010 by consulting firm Hilton, Farnkopf & Hobson. Costs are updated annually to increase with inflation as recommended by this study.

The current disciplinary cost structure can be found on the State Bar Court's website. Discipline costs range from $3,693 for original matters that settle prior to the filing of disciplinary charges to $24,695 for original matters that proceed to the review department after trial. Costs recovered reimburse the general fund to offset the cost of discipline and the 2022 budget for discipline costs to be collected was $1.5 million. 2022 budgeted expenses for the Office of Chief Trial Counsel and State Bar Court totaled $75.8 million; discipline costs recovered comprise 1.9 percent of budgeted expenses.

Attorneys who do not pay their discipline costs have their license to practice suspended until the outstanding costs are paid. Statute allows for relief of costs in very narrow circumstances, with most of the relief resulting in an extension of time to pay rather than a reduction in costs. An analysis of 870 attorneys who were suspended or received a public or private reproval between 2014 and 2016 found that 11 percent failed to pay fees and/or filed a petition for relief within the original disciplinary period. The median disciplinary cost associated with this group of attorneys was $12,800.

A survey of 16 other states found that most states assessed minimal costs, $3,000 or less, and two states collected no costs at all. Business and Professions Code section 125.3 allows boards within the Department of Consumer Affairs to recoup costs for investigation and minimal prefiling charges but not for costs related to going to trial. The purpose of excluding trial costs is to avoid discouraging licensees from pursing their right to a hearing.

The AHCDS expressed support for lowering discipline costs at its April 28, 2022, meeting, based on the following:

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 3

- State Bar discipline costs are much higher than those assessed by other state bars, comparable California regulatory boards, and other state attorney regulatory agencies;
- High costs can impact the ability of an attorney to return to practice;
- Costs for matters that proceed to a multi-day trial are more than two times higher than costs for matters that end with a one-day trial;
- Respondents are subject to all costs regardless of outcome. For example, if a respondent gets multiple serious charges dismissed but is convicted of one minor charge, there is no corresponding reduction in the fees assessed; State Bar Court judges do not have the discretion to lower discipline costs in matters where the respondent is successful in getting most charges dismissed; and
- Costs associated with matters that proceed to the Review Department are the highest among all proceedings ($24,695 for original matters and $22,136 for criminal referrals in 2022). Respondents must pay full costs even if they are successful at reducing the final level discipline during the review process.

With the foregoing in mind, the Ad Hoc Commission is asked to consider the following recommendation:

**The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial and scaling fees when charges are dismissed.**


**MONETARY SANCTIONS**

Business and Professions Code section 6086.13 requires the State Bar to adopt rules setting for the guidelines for the imposition of monetary sanctions on disciplined attorneys. These rules were adopted and enacted in April 2020. Monetary sanctions collected go directly to the Client Security Fund (CSF), a fund that reimburses clients who have lost money or property due to attorney misconduct. CSF received $17,000 in sanctions related revenue in 2021 and $25,000 through the first quarter of 2022; the 2022 CSF budget totals $8.5 million. Based on projected revenue of $100,000, the amount received through sanctions will be equivalent to 1.1 percent of the 2022 CSF budget.

The rules provide for sanction recommendations in the follow amounts:
- $5,000 sanction for disbarment;
- $2,500 for actual suspension; and
- $1,000 for resignation with charges pending.

The State Bar Court can increase these recommended amounts up to the statutory limit of $5,000 per violation and $50,000 per disciplinary order based on the facts and circumstances of

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 4

each discipline case. Eliminating sanctions altogether would require a statutory change. No other state bar appears to assess sanctions in addition to disciplinary costs.

Given that discipline costs alone are high relative to those imposed by comparable agencies, the imposition of sanctions may compound an already overly burdensome set of financial penalties levied on respondents. As such the Ad Hoc Commission is asked to consider the following recommendation:

**The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions.**

## APPENDIX D. STAFF MEMO ON EXPUNGEMENT

**The State Bar**
*of California*

**AD HOC COMMISSION ON THE
DISCIPLINE SYSTEM**

Date:        June 1, 2022

To:          Members, Ad Hoc Commission on the Discipline System

From:        Justin Ewert, Principal Program Analyst
             Lisa Chavez, Director

Subject:     Adoption of Expungement Recommendations

## EXECUTIVE SUMMARY

The Ad Hoc Commission on the Discipline System (AHCDS) was created to review the changes that have been proposed and implemented in the Office of Chief Trial Counsel since 2016 and evaluate their impact on public protection. The 26 member AHCDS focused on the impact of these reforms on a number of key aspects of the discipline system, including:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

The AHCDS divided into two subcommittees, fairness and effectiveness, and then further into working groups to review specific areas of focus and develop recommendations to be reviewed by the full commission. The six-member expungement working group addressed two issues: (1) removal of discipline information from the attorney profile page on the State Bar website, and (2) expungement of the discipline record. The working group developed recommendations that addressed both issues although the recommendations did not receive unanimous support. At the AHCDS' April 28, 2022, meeting, one member of the working group volunteered to work with staff to develop alternative recommendations for consideration.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 2

## BACKGROUND

Prior to the formation of the expungement working group, the fairness subcommittee reviewed the findings of the State Bar study on racial disparities in the discipline system. The goals of the study were to determine if there were disparities in discipline and identify the factors that contribute to those disparities. The study analyzed attorneys that were admitted to practice from 1990 to 2009 and found that without controlling for other factors, there was disproportionate discipline against black male attorneys. Black male attorneys were three times as likely to be place on probation, and almost four times as likely to be disbarred as compared to their white male counterparts.

The study identified several factors that contributed to disparities. Prior complaints had a large impact on future discipline. Counsel representation, firm size, and rates of complaints all contributed to the disparities in the system.[1]

The study findings motivated an interest in exploring expungement of attorney discipline records as a remedy to historical disparities in discipline. Following recent trends in criminal justice, the working group first explored expungement of the discipline record and, in the process, took up the issue of removal of discipline history from the attorney profile page.

## RECOMMENDATIONS

The narrative below summarizes each issue considered by the working group, the working group's recommendations, and the alternate recommendations developed after the Ad Hoc Commission's April 28, 2022, meeting.

### REMOVAL OF DISCIPLINE HISTORY FROM ATTORNEY PROFILE PAGE

Each licensed attorney in California has a profile page which can be found on the State Bar website; profile pages include an attorney's public discipline history, where applicable. Business and Professions Code section 6094.5(f) states, "The State Bar… shall respond within a reasonable time to inquiries… as to public discipline that has been imposed upon an attorney in California". Although the statute does not specifically require the State Bar to post public discipline on its website, the State Bar has chosen to facilitate the public's right of access to attorney disciplinary records as prescribed by statute through posting public disciplinary history on the State Bar website. Examples of public discipline posted include public reprovals,

---

[1] The State Bar followed up this study by contracting with Professor Christopher Robertson of the University of Boston to come up with potential reforms to address disparities in the discipline system. The follow-up report identified 12 potential reforms to the discipline system. The fairness subcommittee received a presentation on the report's findings and reform implementation.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 3

probation, suspension, and disbarment. Private reprovals and non-disciplinary actions such as agreements in lieu of discipline and warning letters, are not published on the attorney profile page.

There is currently no time delimitation on the website posting meaning that once public discipline is published on an attorney's profile page it remains in perpetuity.

The working group reviewed parallel practices in other state. Most other states had discipline information available on their websites. Only two states, Mississippi and South Dakota, do not make any attorney discipline history available online. Two of the larger states, Texas and Florida, limit public information on the website to 10 years. In addition to other state attorney regulatory agencies, the working group reviewed the practices of other professional regulatory agencies within California, with a significant focus on the Medical Board of California and the California Board of Registered Nursing. Table 1 outlines the current website publishing practices for the State Bar of California, the Medical Board of California, and the California Board of Registered Nursing.

**Table 1. Length of Time Discipline History Remains on Website:  California Professions**

| Intervention or Type of Discipline | Attorneys (State Bar of California) | Doctors (Medical Board of California) | Nurses (California Board of Registered Nursing) |
|---|---|---|---|
| Private Reproval | Private | N/A | N/A |
| Public Reproval | Public indefinitely | 10 years from the effective date | 3 years from the effective date |
| Alternative Discipline Program Participation | Public indefinitely (De Facto) | N/A | Private |
| Probation | Public indefinitely | Public indefinitely | 10 years from the effective date |
| Suspension | Public indefinitely | Public indefinitely (if this suspension is part of an interim suspension order or similar type order, public indefinitely but only posted on the website while in place) | 10 years from the effective date |
| Disbarment/Revocation | Public indefinitely | Public indefinitely | Public indefinitely |

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 4

In addition to reviewing information from other jurisdictions and entities, the working group considered public comment received. The AHCDS received public comment from an attorney who had a public reproval that impacted his ability to get a job sixteen years after the infraction.

In light of the findings of the study on racial disparities in the discipline system and the information gleaned from other states and California licensing agencies, and public comment received, the working group adopted a recommendation to establish timeframes for attorney discipline history website posting as described in Table 2.

**Table 2. Working Group's Recommendations for Attorney Discipline History Website Posting Timeframes**

| Type of Discipline | Proposed Timeframes |
|---|---|
| Private Reproval | 1 year or when conditions are met |
| Public Reproval | 3 years |
| Probation with Stayed Suspension | 3 years of conclusion of probation |
| Probation with Actual Suspension | 5 years from reinstatement |
| Disbarment | Public indefinitely (no change) |

Proponents of the working group's time standards argue that the proposed standards would:
- Begin to redress the findings in the racial disparities study;
- Align the approach with current criminal justice trends in California;
- Align the approach with other states and other California regulatory agencies; and
- Balance the public's right to know with the attorney's ability to move past already fulfilled discipline.

Although discipline would be removed from the website, it would continue to be available upon request.

As noted above, the working group's adoption of these recommended timeframes was not unanimous. Opponents argued that:
- The time periods proposed were too short; and
- Two different standards for the reporting of discipline history (one available on the website and the other available up verbal or written request) may potentially be confusing to the public.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 5

In consideration of these concerns, one member of the working group recommended alternative timeframes, as outlined below.

**Table 3. Alternative Recommendation for Attorney Discipline History
Website Posting Timeframes**

| Type of Discipline | Proposed Timeframes |
|---|---|
| Private Reproval | 1 year after conditions are met |
| Public Reproval | 6 years after conditions are met |
| Probation with Stayed Suspension | 10 years from the conclusion of probation |
| Probation with Actual Suspension | 10 years from the conclusion of probation |
| Disbarment | Public indefinitely (no change) |

Proponents of the alternative timeframes argue that they better align with other California regulatory boards, falling midway between what is in place for nurses and doctors, and practices in Texas and Florida.

Both proposals recommend that eligibility for removal of discipline history from the State Bar website be conditioned upon no re-offenses during the time period, no active investigations, and full payment of restitution.

The Ad Hoc Commission will be presented with two alternative recommendations for consideration and action at its June 1, 2022, meeting. One will reflect the working group's recommended timeframes and the other will reflect the alternative recommended set of timelines.

**EXPUNGEMENT OF THE DISCIPLINE RECORD**

Business and Professions Code section 6092.5(e) states the State Bar shall "Expunge the records of the State Bar as directed by the California Supreme Court." There is no formal process to petition the Supreme Court for expungement and only two petitions have been filed in recent years, neither successful. Staff was unable to identify any other state attorney regulatory boards that expunge discipline records. Three states do not consider very low levels of discipline—informal admonitions or private reprimands being two examples—for subsequent discipline after certain time periods.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 6

Currently, there is an avenue for attorneys to have administrative discipline expunged if certain conditions are met. The administrative expungement is for short term Minimum Continuing Legal Education (MCLE) non-compliance or failure to pay fees.  Administrative suspension can be expunged from the attorney discipline record if the following conditions are met:

- The licensee has not on any previous occasion obtained an expungement;
- The suspension was for 90 days or fewer; and
- The suspension ended at least seven years prior to the date the expungement is sought
- The licensee has no other record of suspension or involuntary inactive enrollment for discipline or otherwise.

The Bar must continue to maintain internal records and report administrative suspensions to the Commission on Judicial Nominees Evaluation upon request.

Rule 5.12 of the State Bar Rules of Procedure allows for the sealing of portions of the record. The motion must be supported by specific facts showing that a statutory privilege or constitutionally protected interest exits that outweighs the public interest in the proceeding. This requirement severely limits record sealing in practice.

The working group reviewed California's criminal expungement laws. Penal Code section 1203.4 allows for the expungement of a criminal record for certain misdemeanors and felonies and eligibility requires satisfaction of several conditions and eligibility criteria. There are several exemptions to the reach of criminal expungement, including when applying to be a peace officer, running for public office, or applying for a licensing agency. Advocates for criminal record expungement argue this removes barriers to securing employment and housing.

The working group also reviewed AB 1076 – the Clean Slate Act. This act automatically authorizes relief in the form of set aside and/or sealing of convictions and arrest on or after January 1, 1973.  This change supplements the current petition-based system. In July 2022, the Department of Justice will be required to conduct a monthly review of the statewide criminal justice database to identify persons with arrest records that are eligible for relief, and "shall grant relief" if such information is present in the records.

Based on the foregoing the working group developed recommended timelines for expungement of attorney discipline records as outlined in Table 4.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 7

**Table 4. Working Group's Recommendations for Expungement of Attorney
Discipline Record Timeframes**

| Type of Discipline | Proposed Timeframes |
|---|---|
| Private Reproval | 1 year or when conditions are met |
| Public Reproval | 3 years |
| Probation with Stayed Suspension | 3 years of conclusion of probation |
| Probation with Actual Suspension | 5 years from reinstatement |
| Disbarment | Public indefinitely (no change) |

Proponents of the working group's time standards for expunging the discipline record state that doing so would:

- Meaningfully address the findings of the study on racial disparities in the discipline system; and
- Eliminate confusion that could result from only removing discipline from the website by aligning these timeframes with those proposed for discipline removal from website (see Table 2).

Opposition to the working group's recommendations is summarized as follows:

- Removing the discipline record completely is not aligned with the State Bar's mission to protect the public; and
- The recommended timelines for low levels of discipline are too short and not in the public's interest.

One working group member developed an alternative set of expungement timelines as outlined in Table 5.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 8

**Table 5. Alternative Recommendations for Expungement of Attorney
Discipline Record Timeframes**

| Type of Discipline | Proposed Timeframes |
|---|---|
| Private Reproval | 5 years |
| Public Reproval | 6 years after conditions are met |
| Probation with Stayed Suspension | Public indefinitely (no change) |
| Probation with Actual Suspension | Public indefinitely (no change) |
| Disbarment | Public indefinitely (no change) |

Both proposals recommend that eligibility for expungement of the attorney record be based on no re-offenses during the time period, no active investigations, and all restitution being paid.

The Ad Hoc Commission will be presented with two alternative recommendations for consideration and action at its June 1, 2022, meeting.  One will reflect the working group's recommended timeframes and the other will reflect the alternative recommended set of timelines.

## APPENDIX E. STAFF MEMO ON EARLY NEUTRAL EVALUATION CONFERENCE



**THE STATE BAR of California**

**AD HOC COMMISSION ON THE DISCIPLINE SYSTEM**

Date:       June 1, 2022

To:         Members, Ad Hoc Commission on the Discipline System

From:       Justin Ewert, Principal Program Analyst
            Lisa Chavez, Director

Subject:    Adoption of Early Neutral Evaluation Conference Recommendations

## EXECUTIVE SUMMARY

The Ad Hoc Commission on the Discipline System (AHCDS) was created to review the changes that have been proposed and implemented in the Office of Chief Trial Counsel since 2016 and evaluate their impact on public protection. The 26 member AHCDS focused on the impact of these reforms on a number of key aspects of the discipline system, including:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

The AHCDS divided into two subcommittees, fairness and effectiveness, and then further into working groups to review specific areas of focus and come up with recommendations to be reviewed by the full commission. The four-member Early Neutral Evaluation Conference (ENEC) Working Group was tasked with reviewing the ENEC process and determining whether changes in that process could be made to improve fairness or efficiency. With respect to fairness, the working group looked at whether changes could be made to allow for an ENEC in criminal conviction cases. With respect to efficiency, the working group examined whether there should be time standards established between the first and subsequent ENECs. No consensus was reached among working group members regarding these issues.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 2

## BACKGROUND

The narrative below gives background information on topics explored by the working group.

**EARLY NEUTRAL EVALUATION CONFERENCE**

The Early Neutral Evaluation Conference (ENEC) is a settlement conference held prior to the Office of Chief Trial's (OCTC) filing of Notice of Disciplinary Charges (NDC). State Bar Rule of Procedure 5.30(B) states that "At the conference, the judge must give the parties an oral evaluation of the facts and charges and the potential for imposing discipline." Prior to filing an NDC, OCTC notifies a respondent of their right to request an ENEC and the respondent must respond to the notice within 10 days with a request to exercise this right. The conference is to take place within 15 days of the request. Judges may order multiple ENECs.

An analysis of 442 cases filed in State Bar Court between March 2019 through October 2021 found that cases that had an ENECs took, on average, 659 days to file compared with 485 days for cases that did not have an ENEC.  Around one third of cases that had an ENEC required two sessions and 24 percent required three or more.[1]

More information on ENECs can be found here .

**CRIMINAL CONVICTION MATTERS**

OCTC receives notices of criminal conviction matters from attorneys (Business and Professions code 6068(o)(4), (5)), prosecutors (Business and Professions code 6101(b), and courts (Business and Professions code 6101(c)).[2] OCTC also learns of criminal conviction through Criminal Offender Record Information (CORI). These cases, referred to as "CORI cases" are the result of Rule of Court, rule 9.9.5, requiring all licensed attorneys to be re-fingerprinted by December 2019. The State Bar now regularly receives Subsequent Arrest Notification and Records of Arrest and Prosecution sheets from the Department of Justice. State Bar staff evaluate these RAP sheets to ensure that OCTC is made aware of any criminal charges and convictions against attorneys that had not been previously reported.

OCTC has 30 days to transmit criminal conviction cases to the State Bar Court Review Department if it determines that the case may or does involve moral turpitude.[3] Transmittal to the Review Department makes the case public. In criminal conviction cases with a misdemeanor conviction involving moral turpitude the Review Department, on its own motion or on the motion of any party, may direct the Hearing Department to conduct a hearing to resolve whether the case involves moral turpitude.

---

[1] Data limitations prevented an analysis of the impact of multiple ENECs on case age.

[2] For example, Business and Professions code 6101(c) instructs clerks of courts in which an attorney is convicted of a crime to send the conviction to OCTC within 48 hours of the conviction.

[3] SB 176, Jackson (2019) extended the amount of time OCTC has to transmit criminal conviction cases that involve or may involve moral turpitude from 5 days to 30 days.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 3

An analysis of criminal conviction cases transmitted to State Bar Court between March 3, 2019, and February 28, 2022, found that the majority of cases transmitted were CORI cases and nearly all of these cases were based on misdemeanor convictions. In contrast, 29 percent of non-CORI criminal conviction cases were based on felony convictions. The analysis also found that 45 percent of cases where the underlying charge was a misdemeanor resulted in non-disciplinary action and nearly all of those cases were dismissed pre-trial. Of those dismissed pretrial, more than half were dismissed by OCTC.[4]

## RECOMMENDATIONS

The working group met several times to explore the ENEC process. Their discussions settled on two topics:  1) extending the deadline to transmit criminal conviction matters in misdemeanor case to allow for an ENEC and, 2) establishing timelines between subsequent ENECS. No consensus was reached among working group members regarding the following recommendations.

**The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference.**

Proponents of offering an ENEC to respondents in criminal conviction cases state that doing so would have many benefits for the respondent and the State Bar including:
- The current process does not allow for criminal conviction cases to be resolved prior to the notification of the public, even in cases where the case ultimately results in non-disciplinary action or the ultimate discipline is a private reproval. Allowing respondents an opportunity to present a response to the allegation that a misdemeanor conviction involves moral turpitude prior to the case becoming public would increase fairness in the system and save resources;
- The ENEC process provides the respondent with an early assessment of the matter and can alert them to its seriousness; and
- Research found that nearly half of all criminal conviction cases where the underlying charge was a misdemeanor resulted in non-disciplinary action and nearly all were dismissed pre-trial.

The counter view is based on the following arguments:
- CORI cases comprise the majority of criminal conviction matters transmitted to the State Bar Court in recent years and will soon become a small minority as OCTC works through the influx of cases the State Bar received in 2019 and 2020 as a result of the refingerprinting requirement and automated reporting of criminal convictions;

---

[4] In contrast, only 5 percent of cases where the underlying charge was a felony resulted in non-disciplinary action.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 4

- The analysis described above found that 80 percent of non-CORI cases result in public discipline. Allowing respondents to resolve criminal conviction cases with an ENEC would delay public notification of attorney criminal convictions, thus compromising public protection;
- Criminal convictions are already a matter of public record and there are opportunities to settle cases during pre-trial and even the trial phase;
- Offering ENECs in criminal conviction cases would overburden an already strained resource; and
- Modifying the criminal conviction transmittal timeline would require a legislative change. Given the 2019 extension of time to transmit criminal conviction cases from 5 to 30 days, the legislature is unlikely to extend this timeline further.

**The Ad Hoc Commission on the Discipline System recommends that the State Bar establish timelines for subsequent Early Neutral Evaluation Conferences.**

Proponents for establishing timelines between the initial and subsequent ENEC's seek to address the lack of time constraints between multiple conferences. They assert:

- The lack of time constraints delays the public notification of the pending charges against respondents;
- Rule 5.30 calls for the first ENEC to be held within 25 days of the notice to the respondent. This shows Board intent to conduct the process quickly; and
- Multiple ENECS do not increase the likelihood of settlement.  Overall, 26 percent of all ENECs result in settlement; this does not vary much by the number of conferences held.

The counterview is that multiple ENECs occur when the judge believes settlement is possible and is in the best interests of all parties. Therefore, judicial discretion in the ENEC process must be maintained.

## APPENDIX F. STAFF MEMO ON MORAL TURPITUDE



AD HOC COMMISSION ON THE
DISCIPLINE SYSTEM

Date:       August 24, 2022

To:         Members, Ad Hoc Commission on the Discipline System

From:       Lisa Chavez, Director, Office of Research and Institutional Accountability

Subject:    Adoption of Moral Turpitude Recommendations

## EXECUTIVE SUMMARY

The Ad Hoc Commission on the Discipline System (commission) was created to review the changes that have been proposed and implemented in the Office of Chief Trial Counsel since 2016 and evaluate their impact on public protection. The 26-member commission focused on the impact of these reforms on a number of key aspects of the discipline system, including:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

The commission divided into two subcommittees, fairness and effectiveness, and then further into working groups to review specific areas of focus and come up with recommendations to be reviewed by the full commission. The three-member Moral Turpitude Working Group reviewed issues related to discipline cases involving moral turpitude. The working group also held a joint meeting with the Early Neutral Evaluation Conference Working Group to discuss topics of mutual interest and form recommendations. Members of these two working groups proposed recommendations related to the following issues:  (1) creating a process so that respondents may present a response to moral turpitude allegations before OCTC transmits misdemeanor criminal conviction matters to the State Bar Court, (2) clarifying ambiguities in rules governing participation in the Alternative Discipline Program, and (3) rule revisions to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of disciplinary proceedings. Members did not reach a consensus regarding these recommendations, which are presented to the full commission for review, discussion, and potential adoption.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 2

## BACKGROUND

The Moral Turpitude Working Group (working group) was formed to explore the experiences of respondents who are charged with moral turpitude. Business and Professions Code section 6016 aims to protect the public against unsuitable practitioners. It states:  "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."

Staff from the Office of Chief Trial Counsel (OCTC) gave an overview of moral turpitude to the Effectiveness Subcommittee, which, in turn, formed the working group. OCTC charges attorneys with moral turpitude due to a wide range of behavior deemed contrary to the rules of morality and the duties owed between people or society in general, and such standards are continuously evolving. Staff shared that case law has established that moral turpitude cannot be defined with precision but that the most common allegations involving moral turpitude are misrepresentation, misappropriation, and intentional culpability through gross negligence. Under State Bar Rules of Procedure, rule 5.382(c), attorneys disciplined for acts of moral turpitude, dishonesty, or corruption that have resulted in significant harm to a client or the administration of justice are ineligible for participation in the Alternative Discipline Program (ADP). OCTC staff explained that cases involving moral turpitude are some of the more challenging and contested cases the State Bar deals with.

Attorneys can be charged with moral turpitude as an original matter.[1] An analysis of 442 original matters that reached disposition in State Bar Court's Hearing Department between March 1, 2019, and May 31, 2021, found that 37 percent had at least one moral turpitude charge during the matter's pendency.

Attorneys can also be charged with moral turpitude when OCTC seeks discipline for a criminal conviction. Business and Professions Code section 6101(c) states the following:  "Within 30 days of receipt, the Office of Chief Trial Counsel shall transmit the record of any conviction which involves or may involve moral turpitude to the Supreme Court with such other records and information as may be appropriate to establish the Supreme Court's Jurisdiction." [2]  OCTC receives notices of criminal conviction matters from attorneys (Business and Professions Code sections 6068(o)(4), (5)), prosecutors (Business and Professions Code section 6101(b), and

---

[1] An "original matter" is a case that stems from one or more complaints from various sources (complaining witness, court, bank, media, or other source, or a State Bar initiated investigation).

[2] If the conviction is not final at the time of the original transmission (because it remains subject to appeal or a petition for certiorari in the United States Supreme Court, see California Rule of Court 9.10(a)), OCTC "must file a supplemental record of conviction containing sufficient proof that the conviction is final" as directed by State Bar rule 5.341.

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 3

courts ([Business and Professions Code section 6101(c)](#)). OCTC also learns of criminal convictions through Criminal Offender Record Information (CORI).[3]

OCTC's initial transmission of the certified conviction record is to the State Bar Court's Review Department.[4] In some misdemeanor cases, if sufficient information regarding particular facts and circumstances is available to OCTC within the 30-days within which it must make its initial transmittal determination, OCTC may determine that the facts and circumstances underlying the conviction neither involved moral turpitude nor other misconduct warranting discipline. When OCTC so concludes, it has the discretion to refrain from transmitting the record of the misdemeanor conviction for further proceedings. Records of misdemeanor convictions are public, as are OCTC's transmittals of the records of misdemeanor convictions to the Review Department. The State Bar Court Review Department, on its own motion or the motion of any party, may direct the Hearing Department to conduct a hearing to resolve whether the case involves moral turpitude.

## ISSUES DISCUSSED

The Moral Turpitude working group was formed to address issues and concerns raised by commission members who represent respondents in State Bar discipline matters. Examples of these concerns include:

- The perception that OCTC overcharges moral turpitude;
- Respondents experience moral turpitude allegations akin to a "scarlet letter" and are hesitant to settle original matters during an Early Neutral Evaluation Conference (ENEC) without having an opportunity to defend themselves thoroughly;[5]
- The perception that OCTC is inconsistent in its willingness to settle cases involving moral turpitude;
- Concern that OCTC does not sufficiently utilize its discretion when evaluating criminal conviction cases to transmit to the State Bar Court;

---

[3] These cases, referred to as "CORI cases" are the result of Rule of Court, rule 9.9.5, requiring all licensed attorneys to be re-fingerprinted by December 2019. The State Bar now regularly receives Subsequent Arrest Notification and Records of Arrest and Prosecution (RAP) sheets from the Department of Justice. State Bar staff evaluate these RAP sheets to ensure that OCTC is made aware of any criminal charges and convictions against attorneys that had not been previously reported.

[4] California Rule of Court 9.10(a) authorizes the State Bar Court to exercise "statutory powers under Business and Professions Code sections 6101 and 6102 with respect to the discipline of attorneys convicted of crimes." As a result, pursuant to State Bar Rule of Procedure 5.341, OCTC's initial transmission of the certified record of conviction (whether or not final) is to the Review Department of the State Bar Court.

[5] The ENEC is a settlement conference held prior the OCTC filing of Notice of Disciplinary Charges (NDC). State Bar rule 5.30(B) states that "At the conference, the judge must give the parties an oral evaluation of the facts and charges and the potential for imposing discipline." Prior to filing an NDC, OCTC notifies a respondent of their right to request an ENEC and the respondent must respond to the notice within 10 days with a request to exercise this right. The conference is to take place within 15 days of the request. Judges may order multiple ENECs. More information on ENECs can be found [here](#).

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 4

- The perception that the State Bar Court dismisses many criminal conviction matters based on misdemeanors, particularly old cases OCTC receives through CORI, thus wasting resources and subjecting respondents to unfair treatment because criminal conviction matters become public once transmitted to State Bar Court; and
- The perception of ambiguity within the State Bar rules involving referrals to ADP.

The following narrative describes the empirical research the working group reviewed and the discussions that resulted from this review.

**MORAL TURPITUDE IN ORIGINAL MATTERS**

Staff analyzed 442 original matters that reached disposition in the State Bar Court's Hearing Department between March 1, 2019, and May 31, 2021.[6] To explore whether OCTC overcharges moral turpitude, staff examined outcomes among matters with at least one moral turpitude charge. As noted above, 37 percent had at least one moral turpitude charge during the matter's pendency. Key findings include the following:

- The vast majority (93 percent) of matters that involved moral turpitude resulted in the respondent being found culpable of moral turpitude.
- Nearly half of matters analyzed were disposed of by stipulation, one-third by trial, and one in five by default. This pattern is the same for matters with and without moral turpitude charges.
- Respondents charged with moral turpitude had similar attorney representation rates in State Bar Court compared with respondents who were not charged with moral turpitude (45 percent versus 42 percent).
- Among matters with at least one moral turpitude charge, attorney representation during proceedings was not significantly related to whether the moral turpitude charge was dismissed or disposition outcome (disbarment, probation/suspension, or reproval).

Two out of the three Moral Turpitude Working Group members agreed the results showing a high conviction rate among matters that involved moral turpitude disproved the claim that OCTC overcharged moral turpitude.[7] However, one working group member expressed concern that the analysis excluded criminal convictions. Staff conducted an analysis focused on criminal conviction matters in response to this concern, described below.

**MORAL TURPITUDE IN CRIMINAL CONVICTION MATTERS**

Staff analyzed 397 criminal conviction cases that reached disposition in State Bar Court between March 3, 2019, and February 28, 2022. Issues explored include the relationship between disposition outcomes and case characteristics such as case origin (CORI vs. non-CORI),

---

[6] These 442 matters represent 429 individual respondents and 670 complaints.
[7] The rationale was that if OCTC "overcharged" moral turpitude, the State Bar Court would have dismissed matters involving moral turpitude at a much higher rate than seven percent.

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 5

type of criminal conviction (misdemeanor vs. felony), and length of time since conviction. Key findings include the following:

- Most cases transmitted during the time analyzed were CORI cases, and nearly all of these cases were based on misdemeanor convictions;
- Among all cases where the underlying charge was a misdemeanor, 43 percent resulted in non-disciplinary action, and nearly all of those cases were dismissed pretrial. Of those dismissed pretrial, more than half were dismissed by OCTC.[8]
- Over two-thirds (76 percent) of cases based on misdemeanors convictions more than 10 years old were disposed of with no disciplinary action.

All three working group members agreed the results addressed concerns raised by the member who requested analyses on criminal convictions. However, there was no consensus on the results' implications. One member argued that the high rates of non-disciplinary action in misdemeanor cases show and the high share that is dismissed by OCTC pretrial suggests that both respondents and the system would be better served if a determination of whether a criminal conviction matter involves moral turpitude can be conducted before transmittal to State Bar Court in a venue like the ENEC. In response, one member asserted that the system works as it should. Statute does not require OCTC to determine whether a criminal conviction matter involves moral turpitude, only to transmit the case if it "may" involve moral turpitude. In turn, the State Bar Court's Review Department directs the Hearing Department to conduct a hearing to resolve whether misdemeanor cases involve moral turpitude.

## RECOMMENDATIONS

The Moral Turpitude Working Group met several times. In addition, it held a joint meeting with the Early Neutral Evaluation Conference Working Group on July 8, 2022, to discuss topics of interest to both working groups and formulate recommendations.[9] As a result, the recommendations described below were developed and considered by members of both working groups.

The recommendations focused on three topics: (1) creating a process so that respondents may present a response to moral turpitude allegations before OCTC transmits misdemeanor criminal conviction matters to the State Bar Court, (2) clarifying ambiguities in rules governing participation in the Alternative Discipline Program, and (3) rule revisions to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of State Bar disciplinary proceedings. Working group members did not reach a consensus regarding these recommendations, which are presented to the full commission for review, discussion, and potential adoption.

---

[8] In contrast, only 5 percent of cases where the underlying charge was a felony resulted in non-disciplinary action.
[9] At this meeting, members agreed to submit their proposed recommendations to staff who, in turn, circulated them to members of both working groups to solicit agreement/disagreement and alternative recommendations.

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 6

**PRE-TRANSMITTAL MEETING FOR MISDEMEANOR CRIMINAL CONVICTION CASES**

Members who represent respondents in State Bar discipline matters argued that respondents and the system would be better served if determining whether a criminal conviction matter based on a misdemeanor involves moral turpitude was conducted before OCTC's transmittal of the case to State Bar Court. Currently, there is no rule which authorizes either an ENEC or other pre-transmittal meeting in a misdemeanor criminal conviction proceeding, at which respondents or the State Bar Court could weigh in on whether a respondent's misdemeanor criminal conviction involves moral turpitude or other misconduct warranting discipline.

One member proposed the following recommendation:

**The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340 – 5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter.**

Arguments in favor of this recommendation include:

- State Bar research that showed high rates of non-disciplinary action in misdemeanor cases and high rates of pretrial case dismissal initiated by OCTC suggests that both respondents and the system would be better served if a determination of whether a criminal conviction matter involves moral turpitude was conducted before transmittal to State Bar Court;
- The absence of pre-transmittal determination causes serious hardship to respondents where the ultimate disposition is dismissal because the disciplinary filing remains on the State Bar Court's public docket unless a motion to seal the record is made and granted;
- In matters where the appropriate disposition is a non-disciplinary one, such as an Agreement In Lieu of Discipline (ALD) or an admonition, or where a confidential private reproval is appropriate, the filing of the public proceeding requires the disposition of a criminal referral matter to be public. In contrast, non-public dispositions are possible in an original matters;
- Once OCTC transmits a misdemeanor conviction to the Review Department, the mandatory costs borne by respondents in State Bar proceedings increase. The Ad Hoc Commission has identified the current cost structure as a subject for reform. In addition, respondents represented by counsel typically incur much higher legal fees when formal disciplinary proceedings are filed in the State Bar Court; and
- The transmittal of a conviction to the Review Department also causes the court to incur the burdens associated with filing an action with the State Bar Court.

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 7

Opponents of the recommendation argue:

- Business and Professions Code section 6101(c) directs OCTC to transmit "the record of any conviction that involves or may involve moral turpitude." The discretion to make this determination and transmit is thus vested in and directed to OCTC. OCTC attorneys have prosecutorial discretion based on ethics and following the law to make appropriate decisions on whether to transmit criminal convictions;
- Adding a pre-transmittal meeting to the criminal conviction transmittal process is impractical given the relatively short statutory deadline (30 days from receipt of the certified record of conviction) for OCTC to transmit convictions to the Review Department;[10]
- A pre-transmittal process delays filing a notice of disciplinary action, thereby denying the public knowledge about the disciplinary action. Public protection (as evidenced by the statutory requirements imposed on OCTC, district attorneys, and courts) is served by public transmittal of convictions that are already a matter of public record whenever there is a possibility that they "may" involve moral turpitude, with subsequent resolution of that issue in a public forum. Processes that favor already convicted respondents over early public disclosure are inconsistent with the mission of the Bar to protect the public; and
- Attorneys convicted of felonies and certain misdemeanors are required to self-report these convictions to the State Bar. Nothing would prevent an attorney, or their counsel, from reporting a misdemeanor conviction and, at the same time, outlining the facts and circumstances that they believe demonstrate that the conviction should not be transmitted.

One member disagreed with the recommendation to create a pre-transmittal meeting to determine whether a misdemeanor conviction involves moral turpitude or other misconduct warranting discipline. However, she agreed that the State Bar should study possible changes to the disciplinary system for cases based on criminal convictions, but only if this focus is limited to the following:

- Exploration of whether notice of disciplinary filings should be removed from the State Bar Court's public docket when disciplinary actions are dismissed or result in an admonition or private reproval; and
- Exploration of policy changes where respondents would not be obligated to pay costs in matters where disciplinary actions are dismissed.[11]

Another member who disagreed with the recommendation noted she would be amenable to a recommendation consistent with criminal statutes that allow an attorney to expunge the public notice of criminal misconduct at an appropriate time.

---

[10] At its June 1, 2022, meeting, the Ad Hoc Commission adopted a recommendation to pursue statutory change to extend the criminal conviction transmittal timeline would require a legislative change. The timeline was extended from 5 to 30 days in 2019 and members believe that the legislature is unlikely to extend this timeline further.

[11] This member notes that these changes should be explored for all matters, not just criminal conviction matters.

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 8

**ALTERNATIVE DISCIPLINE PROGRAM (ADP)**

Attorneys accepted into ADP are required to participate in treatment with the Lawyers
Assistance Program (LAP) for three years (which may be reduced to 18 months depending on
incentives and performance). Upon successful completion, respondents earn a lower level of
discipline than would otherwise be imposed.

Members of the two working groups discussed State Bar rules associated with ADP. Under rule
5.382(C)(3), an attorney is ineligible to participate in ADP if the attorney's misconduct involves
acts of moral turpitude, dishonesty, or corruption that have resulted in significant harm to one
or more clients or the administration of justice. Participation in ADP is also contingent upon the
court's approval of a stipulation of facts and conclusions of the law signed by the parties (rule
5.382(A)(2). However, when the parties dispute whether there was moral turpitude committed
resulting in significant harm or to the administration of justice—by virtue of the impasse, a
stipulation cannot be reached.

Some members contend that rule 5.382(A)(2), in effect, disallows participation without the
opportunity to litigate the issue. They asserted that the State Bar should amend rules to
provide for an evidentiary hearing and judicial determination on the issues of moral
turpitude/dishonestly/corruption and harm before an attorney is precluded from the program.
They proposed the following recommendation:

**The Ad Hoc Commission on the Discipline System recommends that the rule involving
referrals to the Alternative Discipline Program (ADP) be clarified to allow for judicial
determination of eligibility following an evidentiary hearing.**

Proponents of this recommendation argue that it would expand opportunities for rehabilitation
under Business and Professions Code section 6230, which states, "It is the intent of the
Legislature that the State Bar of California seek ways and means to identify and rehabilitate
attorneys with impairment due to substance use or a mental health disorder affecting
competency so that attorneys so afflicted may be treated and returned to the practice of law in
a manner that will not endanger the public health and safety."

The main counterview is that an evidentiary hearing would create a burden for OCTC. A
mandatory evidentiary hearing on moral turpitude issues may result in duplicated efforts and
the need to potentially call witnesses again if the respondent does not enter the ADP and a trial
in regular proceedings ensues. One member proposed an alternative recommendation that
stresses an evidentiary hearing would not be needed in every instance and is provided below:

**The Ad Hoc Commission on the Discipline System recommends that the rule involving
referrals to the Alternative Discipline Program (ADP) be modified to make clear that eligibility
is subject to judicial determination following, if necessary, an evidentiary hearing.**

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 9

A third alternative recommendation makes explicit that an evidentiary hearing would be part of the disciplinary hearing.

**The Ad Hoc Commission on the Discipline System recommends that the rules involving referrals to the Alternative Discipline Program (ADP) be amended to allow for judicial determination of eligibility and suitability of a respondent attorney as part of the disciplinary hearing on the merits in cases where the parties are unable to agree.**

Staff propose the following recommendation. It states that staff will work with stakeholders, removes the reference to an evidentiary hearing to widen the scope of possible solutions, and narrows the focus on moral turpitude issues.

**The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice.**

**EARLY NEUTRAL EVALUATION CONFERENCE**

Members who represent respondents shared how respondents they have represented experienced the ENEC process when faced with a moral turpitude charge. Although the full Ad Hoc Commission adopted a recommendation on June 1, 2022, calling for expanding the deadline for transmittal of criminal conviction matters in misdemeanor cases to allow for an ENEC, these members asserted that ENEC process needs to be revised for this recommendation to be effective. Examples of concerns they raised include: (1) OCTC is not bound to follow judges' judicial evaluations, even those that raise concerns regarding a lack of evidence to support moral turpitude charges, and (2) OCTC attorneys are inconsistent in their response to judicial evaluations, with some willing to negotiate and others stating they have no authority to negotiate.

The State Bar's Chief Trial Counsel, George Cardona, participated in the July 8, 2022, joint meeting of the two working groups as a staff panelist and expressed interest in learning more about the concerns raised. Ellen Pansky discussed her concerns with Mr. Cardona after the meeting and offered the following recommendation with Mr. Cardona's support:

**The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of State Bar disciplinary proceedings.**

Proponents of this recommendation note the following benefits:

- Adoption of this recommendation would result in an increase in pre-filing settlements, which would conserve OCTC and State Bar Court resources;

Ad Hoc Commission on the Discipline System
August 24, 2022
Page 10

- An increase in pre-filing settlements will lead to more expeditious and less expensive resolutions for respondents whose cost obligations increase by going to trial; and
- Allowing respondents an opportunity to present a response to the allegation that a misdemeanor conviction involves moral turpitude before the case becoming public would increase the system's fairness.

One opponent of this recommendation argues the following:

- No other regulatory agency in California provides for an ENEC similar to what the State Bar offers. The ENEC process is ultimately a detriment to public protection because it results in delays public notification of alleged misconduct violations; as a result, the public cannot consider these misconduct allegations when making decisions about which attorney to hire or not hire;
- The ENEC process also delays the filing of a notice of disciplinary action and in many cases, delays the ultimate resolution of the complaint; and
- The expansion of the ENEC process would shift the balance between a respondent's due process rights and public protection. As a result, the rights of respondent attorneys would be increased, and public protection decreased.

Another member asserted that there is no way to know that revisions made to the rules associated with the ENEC will result in significant conservation of OCTC and State Bar Court resources. This member also expressed concern that respondents are incentivized to delay the discipline process to ensure they continue to practice. Prolonging the discipline process does not make sense when the misconduct will be a matter of public record under any scenario. Finally, this member requested that the State Bar publish metrics on the number of ENECs currently held outside of the time outlined in State Bar rules (15 days), the number of ENECs held per case, and the average amount of time from request for an ENEC to resolution.

**APPENDIX G. STAFF MEMO ON PROGRESSIVE DISCIPLINE**

The State Bar
of California

**AD HOC COMMISSION ON THE
DISCIPLINE SYSTEM**

Date:       June 1, 2022

To:         Members, Ad Hoc Commission on the Discipline System

From:       Justin Ewert, Principal Program Analyst
            Lisa Chavez, Director

Subject:    Adoption of Progressive Discipline Recommendations

## EXECUTIVE SUMMARY

The Ad Hoc Commission on the Discipline System (AHCDS) was created to review the changes that have been proposed and implemented in the Office of Chief Trial Counsel since 2016 and evaluate their impact on public protection. The 26 member AHCDS focused on the impact of these reforms on a number of key aspects of the discipline system, including:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

The AHCDS divided into two subcommittees, fairness and effectiveness, and then further into working groups to review specific areas of focus and come up with recommendations to be reviewed by the full commission. The fairness subcommittee reviewed the **Standards for Attorney Sanctions** ("progressive discipline") and recommended the formation of the progressive discipline working group to review discipline standards and the impact of prior discipline. The six-member working group did not develop any recommendations.

## BACKGROUND

Prior to the progressive discipline working group's formation, the fairness subcommittee reviewed the findings of the State Bar study on racial disparities in the discipline system. The

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 2

goals of the study were to determine if there were disparities in discipline and identify the factors that contribute to those disparities. The study analyzed attorneys that were admitted to practice from 1990 to 2009. The study found that without controlling for other factors, there was disproportionate discipline against black male attorneys. Black male attorneys were three times as likely to be placed on probation, and almost four times as likely to be disbarred as compared to their white male counterparts.

The study found several factors that contributed to disparities. Prior complaints had a large impact on future discipline. Counsel representation, firm size, and rates of complaints all contributed to the disparities in the system.[1]

This research motivated the interest in exploring modification of the Standards for Attorney Sanctions (referred to as "progressive discipline" informally) as a remedy to historical disparities in attorney discipline.

**PROGRESSIVE DISCIPLINE**

Standard 1.8 of the State Bar California Rules of Procedure states that "If a lawyer has a single prior record of discipline, the sanction must be greater than the previously imposed sanction unless the prior discipline was so remote in time and the previous misconduct was not serious enough that imposing greater discipline would be manifestly unjust." The rationale for progressive discipline is that a prior record of discipline is a significant aggravating factor in determining the appropriate level of discipline. The Supreme Court has held that the degree of discipline imposed must be sufficient to deter future wrongdoing by the respondent.[2] These standards were adopted by the Board of Trustees to establish the means to determine the level of discipline and ensure consistency in discipline proceedings.[3]

The working group reviewed standard 1.5 which details aggravating circumstances; these circumstances include a prior record of discipline, multiple acts of wrongdoing, a pattern of misconduct, concealment, and significant harm to the client. Standard 1.6 details mitigating circumstances, which include absence of any prior record of discipline over many years of practice coupled with present misconduct, which is not likely to reoccur, lack of harm to a client, extreme emotional difficulties, extraordinary good character, remoteness in time of the misconduct and subsequent rehabilitation, and restitution was made without threat of force or administrative action.

---

[1] The State Bar followed up this study by contracting with Professor Christopher Robertson of the University of Boston to come up with potential reforms to address disparities in the discipline system. The follow-up report identified 12 potential reforms to the discipline system. The fairness subcommittee received a presentation on the report's findings and reform implementation.

[2] *In re Morse* (1995) 11 Cal.4th 184, 210

[3] Standard 1.1 states "The Standards are based on the State Bar Act, the published opinions of the Review Department of the State Bar Court, and the longstanding decisions of the California Supreme Court, which maintains inherent and plenary authority over the practice of law in California."

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 3

## RECOMMENDATIONS

The working group discussed modifying the standards. One suggestion was to change the language in standard 1.8 in the following clause: "must be greater than the previously imposed sanction". Specifically, working group members suggested changing "must" to "may" to allow for discretion when considering prior discipline. The working group also discussed additions to standard 1.6 mitigating factors.

Arguments in favor of amendments to standards 1.8 and 1.6 include:

- Prior discipline may be the result of disparities in the discipline system and changes to the standards could help reduce the impact of prior disparities on current outcomes[4]; and
- Changes to the standards will allow for greater judicial discretion and increase fairness in the system.

Arguments against modification include:

- The Supreme Court has consistently expressed support for the standards and progressive discipline; and
- Increasing discretion as to whether or not to consider prior discipline may have the unintended impact of increasing disparities in the system due to implicit bias.

The working group met twice, and the full AHCDS also discussed the topic at its January 25, 2022, meeting. Some members of the full commission supported modifying standards, but the discussion did not lead to specific recommendations. Due to the standards' complexity and the multitude of issues involved, the working group did not generate recommendations.

---

[4] The working group reviewed an analysis of attorneys who were disbarred between 2015 and 2021. Half had no prior formal discipline and 40 percent were previously on probation. Small sample sizes and lack of racial-ethnic data on disciplined attorneys prevented drawing conclusions about any racial disparities in previous discipline among disbarred attorneys.

**APPENDIX H. STAFF MEMO ON ATTORNEY REPRESENTATION**

**The State Bar**
*of California*

**AD HOC COMMISSION ON THE
DISCIPLINE SYSTEM**

Date:       June 1, 2022

To:         Members, Ad Hoc Commission on the Discipline System

From:       Justin Ewert, Principal Program Analyst
            Lisa Chavez, Director
            Kelsey Lyles, Principal Program Analyst

Subject:    Discussion and Adoption of Attorney Representation Recommendations

---

<h1 style="text-align:center">EXECUTIVE SUMMARY</h1>

The Ad Hoc Commission on the Discipline System (AHCDS or Commission) was created to review the changes that have been proposed and implemented in the Office of Chief Trial Counsel since 2016 and evaluate their impact on public protection. The 26 member AHCDS focused on the impact of these reforms on a number of key aspects of the discipline system, including:

- Procedural justice and the experiences and perceptions of the system by complaining witnesses and respondents;
- Workload and operational efficiency of case processing;
- Case prioritization and differentiated case-flow management; and
- The efficacy of the system for preventing future attorney misconduct.

The AHCDS divided into two subcommittees, fairness and effectiveness, and then further into working groups to review specific areas of focus and come up with recommendations to be reviewed by the full commission.  The fairness subcommittee reviewed the issue of respondent representation in attorney discipline proceedings and the impact of representation, or lack thereof, on discipline outcomes. The AHCDS requested staff update the full commission on the State Bar's efforts to increase respondent representation. The following narrative describes two options for providing attorney representation for licensees undergoing the attorney discipline process for the AHCDS to consider.

Both options contemplate the use of State Bar resources to provide representation to low-income respondents. The funding used to provide this representation would come from the

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 2

State Bar's General Fund, which supports the attorney discipline system overall. In light of structural underfunding in the General Fund, widespread concern about the attorney discipline system being too "lax" (see recently issued report by the California State Auditor), and, related, the optics of the State Bar funding respondent's counsel, the AHCDS may decide that neither of the recommendations outlined in this memorandum are viable. In that case staff would draft a pro bono-based model for the Commission's consideration.

## BACKGROUND

The fairness subcommittee reviewed the findings of the State Bar study on racial disparities in the discipline system. The goals of the study were to determine if there were disparities in discipline and identify the factors that contribute to those disparities.  The study analyzed attorneys that were admitted to practice from 1990 to 2009. The study found that without controlling for other factors, there was disproportionate discipline against black male attorneys. Black male attorneys were three times as likely to be place on probation, and almost four times as likely to be disbarred as compared to their white male counterparts.

The study found several factors that contributed to disparities. Prior complaints had a large impact on future discipline. In addition, respondent representation, firm size, and rates of complaints all contributed to the disparities identified in the system.

The State Bar followed up this study by commissioning Professor Christopher Robertson of the University of Boston to draft recommendations designed to address the specific causal factors identified in the racial disparities study. Professor Robertson's report identified 12 potential reforms to the discipline system, five of which were related to attorney representation. The five reforms were as follows:

1. Track and report the proportion of discipline cases with attorney representation;
2. Inform attorneys facing discipline about the increased statistical likelihood of discipline without counsel;
3. Develop a roster of attorneys who agree to provide low cost and pro bono consultations;
4. Facilitate sliding-scale fee representation by members of the Association of Discipline Defense Counsel; and
5. Create a Discipline Equity Office to minimize disparities and support unrepresented attorneys.

The State Bar implemented the first two reforms and deferred the creation of a Discipline Equity Office for lack of resources. With respect to the third and fourth reforms, two options have been developed and will be presented to the AHCDS for consideration, as described below.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 3

## OPTION 1:  STATE BAR APPOINTED COUNSEL PROGRAM, HOURLY RATE

This $250,000 pilot program would provide representation for low-income licensees undergoing the attorney discipline process. Eligible participants (i.e., respondents) of the program would include attorneys who are licensed in the state of California, qualify for reduced license fees, and are undergoing a formal discipline investigation by the Office of Chief Trial Counsel (OCTC).[1]

To implement the program the State Bar would contract with two respondents' counsel firms for outside counsel to provide representation to low-income attorneys facing discipline. The selected would be compensated at a rate of $300 per hour which equates to approximately 833 billable hours.  The hourly rate is the same rate the State Bar pays attorneys appointed to represent mentally infirm respondents in State Bar Court proceedings.

The program would remain active until $250,000 in funds is exhausted. Approximately 200 low-income attorneys undergo a formal investigation each year and the number of attorneys served will depend on case closure stage. Members of the Association of Discipline Defense Counsel estimate, on average, 10 billable hours are required for cases closed in investigation, 35 hours for cases closed in prefiling, 60 hours for cases closed in postfiling. The State Bar estimates that approximately 83 attorneys would be served under this program annually.[2]

Licensees would not be eligible to participate in the program if (1) the complaint filed against them is based on conviction monitoring for a felony where summary disbarment is appropriate; or (2) the case is deemed a highly sensitive or high-profile case that is unlikely to be resolved with limited funds.

## OPTION 2: STATE BAR APPOINTED COUNSEL PROGRAM, FLAT FEE

Under this model the State Bar would appoint a panel of defense counsel who apply to participate and who are willing to work under specified terms of the program. Eligibility and exclusion criteria would be the same as the program described in option one above.

Under this program defense counsel would offer a free one-hour consultation to eligible respondents. If a mutual agreement for representation is reached, the defense counsel would be paid by the State Bar a flat fee of $3,500 for full services (e.g., research, letters, calls, appearance) within the limited scope of (a) eliminating jeopardy for suspension and disbarment, and (b) only up to and including the Early Neutral Evaluation Conference.  The program would remain active until $250,000 in funds is exhausted. The State Bar estimates that approximately 71 attorneys would be served under this program.

[1] The 2022 threshold for reduced fees is $60,478.35 in gross annual individual income from all sources for 2021.
[2] This estimate was generated by assuming similar patterns of case closure stage among low-income respondents based on data from 2019, 2020, and 2021. On average, 90 percent of their cases across these three years closed in investigation, three percent closed in prefiling, and seven percent closed in postfiling.

Ad Hoc Commission on the Discipline System
June 1, 2022
Page 4

## RECOMMENDATIONS

The AHCDS will be asked to adopt one of the following recommendations:

**The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement the State Bar Attorney Representation Program.**

**The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement the State Bar Appointed Counsel Program.**

## APPENDIX I. STAFF MEMO ON PUBLIC COMMENTS



**AD HOC COMMISSION ON THE
DISCIPLINE SYSTEM**

Date:       December 2, 2022

To:         Members, Ad Hoc Commission on the Discipline System

From:       Lisa Chavez, Director

Subject:    Potential New Recommendations and Modification to Existing Recommendations
            Based on Public Comment Received

This memo contains information for agenda items Business II.A and Business II.B of Ad Hoc
Commission on the Discipline System meeting scheduled for December 5, 2022.

On September 22, 2022, the State Bar Board of Trustees formally received the final report of
the Ad Hoc Commission on the Discipline System and directed staff to issue the report
recommendations for a 60-day public comment period.

The State Bar engaged in several strategies to encourage public comment. A public-friendly
miniwebsite was launched in English on September 28 and a Spanish miniwebsite launched
October 6. Social media posts and paid ads in English and Spanish were regularly placed on
Facebook, Instagram, LinkedIn, and Twitter. Finally, staff emailed approximately 80 community-
based organizations to encourage their review and comment.

The public comment period closed on November 28, 2022, and 78 public comments were
received. Respondents were allowed to submit comments anonymously or provide their names
and email addresses and to submit comments on behalf of an organization. The majority (54) of
respondents were attorneys who self-identified as such. In addition, a small number of
respondents who included their names and email addresses were determined to be California
attorneys and considered attorneys for analyses conducted on the results presented in table 1
below.

All recommendations received a majority vote for "Agree with proposed recommendation." In
general, attorneys were more likely to agree with the proposed recommendations than the
total set of respondents.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Ad Hoc Commission on the Discipline System
December 2, 2022
Page 2

Public commenters are also allowed to submit a written comment for each recommendation and submit a single attachment. All written comments and attachments received are provided in the report "Ad Hoc Commission on the Discipline System:  Public Comments Received."

Written comments yielded five potential new recommendations for the Ad Hoc Commission on the Discipline System (commission) to consider given previously adopted recommendations. Two written comments revealed the need to modify eligibility rules surrounding the recommendation to remove attorney discipline history from the website and expunge discipline records.

## SUMMARY OF RESULTS

Respondents were asked to select one of three options for each recommendation:

1. Agree only if modified;
2. Agree with proposed recommendation; or
3. Disagree with the proposed recommendation.

Table 1 sets out the results for each recommendation disaggregated by total and attorney respondents. The recommendation regarding the adoption of timelines for removal of discipline history from the State Bar website and expungement of discipline records was presented to the public in the form of two distinct recommendations. Recommendation 4A focused on removing discipline history and recommendation 4B focused on the expungement of discipline records.

### Table 1:  Public Comment Results

|  | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| **Recommendation 1:**  The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed. | | | |
| Total Respondents | 12% | 76% | 13% |
| Attorneys | 9% | 85% | 6% |
| **Recommendation 2:**  The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions. | | | |
| Total Respondents | 10% | 69% | 21% |
| Attorneys | 9% | 81% | 9% |
| **Recommendation 3:**  The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference. | | | |
| Total Respondents | 9% | 73% | 18% |

Ad Hoc Commission on the Discipline System
December 2, 2022
Page 3

| | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| Attorneys | 6% | 83% | 11% |

**Recommendation 4A.** The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of the attorney discipline from the website attorney profile page:
- Private reproval:  1 year of when conditions are met
- Public reproval:  3 years
- Probation with stayed suspension:  3 years of conclusion of probation
- Probation with actual suspension:  5 years from reinstatement
- Disbarment:  Public indefinitely (no change)

| | | | |
|---|---|---|---|
| Total Respondents | 27% | 61% | 12% |
| Attorneys | 26% | 67% | 7% |

**Recommendation 4B.** The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for expungement of attorney discipline records:
- Private reproval:  1 year of when conditions are met
- Public reproval:  3 years
- Probation with stayed suspension:  3 years of conclusion of probation
- Probation with actual suspension:  5 years from reinstatement
- Disbarment:  Public indefinitely (no change)

| | | | |
|---|---|---|---|
| Total Respondents | 25% | 64% | 12% |
| Attorneys | 24% | 69% | 7% |

**Recommendation 5.** The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340 – 5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter.

| | | | |
|---|---|---|---|
| Total Respondents | 9% | 79% | 12% |
| Attorneys | 6% | 87% | 7% |

**Recommendation 6.** The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice.

| | | | |
|---|---|---|---|
| Total Respondents | 12% | 79% | 9% |
| Attorneys | 7% | 87% | 6% |

Ad Hoc Commission on the Discipline System
December 2, 2022
Page 4

|  | Agree only if modified | Agree with the proposed recommendations | Disagree with the proposed recommendations |
|---|---|---|---|
| **Recommendation 7.** The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of State Bar disciplinary proceedings. | | | |
| Total Respondents | 14% | 76% | 10% |
| Attorneys | 7% | 85% | 7% |
| **Recommendation 8.** The Ad Hoc Commission recommends to the State Bar Board of Trustees analyze and modify Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regards to progressive discipline. | | | |
| Total Respondents | 9% | 77% | 14% |
| Attorneys | 7% | 83% | 9% |
| **Recommendation 9.** The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program | | | |
| Total Respondents | 9% | 81% | 10% |
| Attorneys | 4% | 89% | 7% |

## POTENTIAL NEW RECOMMENDATIONS BASED ON PUBLIC COMMENT RECEIVED

Respondents were offered the opportunity to submit written comments in response to each recommendation. Staff reviewed all comments and identified five for the commission to consider for new recommendations. Options for new recommendations are also provided. In cases where written comments were lengthy and addressed several topics, only relevant text are provided for the purpose of brevity. For all comments, see the report, "Ad Hoc Commission on the Discipline System:  Public Comments Received."

1.  **Allow attorneys to resign without charges pending after satisfying discipline requirements and remove discipline history from website and expunge discipline records**

In response to recommendations 4A ("The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of discipline history from the website attorney profile page") and 4B ("The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for expungement of attorney discipline records"), a respondent submitted the following comment:

> *It may be worth allowing disciplined attorneys to resign without charges pending after they satisfy all of their discipline requirements on the condition that their State Bar*

Ad Hoc Commission on the Discipline System
December 2, 2022
Page 5

> *website profile is expunged. This would accomplish OCTC's goal of preventing disciplined attorneys from ever practicing again and the disciplined attorneys' privacy interests and their ability to succeed in a different career*

Options for recommendations include:

Option 1. Allow attorneys to resign without charges after satisfying discipline requirements and remove discipline history from the website attorney profile page and expunge attorney discipline records upon resignation;

Option 2. Direct staff to explore the implications of allowing attorneys to resign without charges after satisfying discipline requirements, removing discipline history from website attorney profile page, and expunging attorney discipline records upon resignation.

**2.  Modify State Bar website so that internet browsers cannot index attorney profile pages**

In response to recommendations 4A and 4B ("The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for expungement of attorney discipline records"), a respondent submitted the following comment:

*It may be worth considering a change to the State Bar website whereby Google cannot index attorney profile pages. This is consistent with every other licensed profession in California. This provides at least some measure of privacy for respondents.*

The Medical Board of California's (MBC) webpage "License Verification" allows the public to search for physician profiles and other health care providers licensed/registered in the state. Staff explored whether a physician's profile appeared when using Google to search for a known California medical licensee. The licensee's physician profile did not appear in the Google search.

The MBC Licensee Profile search page is managed by the Department of Consumer Affairs (DCA). DCA staff shared that the "DCA search has been actively configured and designed for performance, security, and status integrity. These configuration choices may preclude search engines from indexing the platform."

An option for a new recommendation is:

Option 1. Configure the State Bar attorney profile search function to preclude internet search engines from indexing attorney profiles.

**3.  Create timelines for removal of discipline history from website and expungement of discipline records for attorneys who voluntarily resign with charges pending and are reinstated**

Ad Hoc Commission on the Discipline System
December 2, 2022
Page 6

In response to recommendation 4A ("The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of discipline history from the website attorney profile page") a respondent submitted the following comment:

*There need be a similar timeline for removal of the attorney discipline from the website attorney profile page of "attorneys who submitted a voluntary resignation with charges pending," who have subsequently been reinstated on the active roster of the California State Bar. Note: I am such an attorney who resigned in 1994 "while charges were pending," and though my petition for reinstatement was granted in 2003, and though I've been practicing since without any discipline, my State Bar website profile, on many occasions has caused many hardships. Despite not having been disciplined, many who have viewed my profile on the bar's website, have incorrectly surmised that I was disciplined and consequently disbarred. For context, you may view my profile (Cal. Bar #152790). Thank you.*

In response to recommendation 4B ("The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for expungement of attorney discipline records"), a respondent submitted the following comment:

*There need be a category for "voluntary resignation with charges pending," who have subsequently been reinstated on the active roster of the California, and attorneys who have maintained a discipline free law practice of five (5) or more years after reinstatement should be eligible to have their "attorney discipline record" expunged.*

An option for a recommendation is:

Option 1. Direct staff to propose timelines for removal of discipline history from attorney profile pages and expungement of discipline history for licensees who resigned voluntarily with charges pending and were subsequently reinstated as active licensees.

**4.  Create timelines for removal of administrative suspension history from website and expungement of administrative suspensions**

In response to recommendation 4A ("The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of discipline history from the website attorney profile page") a respondent submitted the following comment:

*I believe they may be inadequate. I have been practicing for over 40 years. My first year my dues were late due to mailing address change from LA County to Orange County; thereafter from death in family due another move. Extreme upsets in my personal life. For the subsequent 39 or so years my Dues have been timely. I have committed no further wrongs in the sight of the State Bar. Although these Rule changes state they are intended to address*

Ad Hoc Commission on the Discipline System
December 2, 2022
Page 7

*"disciplinary" matters, There no discipline, no reproval, no probation, no disbarment, only briefly suspended until my dues were received. The Rules should address "suspensions for failure to pay dues in timely manner" in the same manner, but with a lesser consequence. And, last but not least, I hereby request my "suspensions" be expunged in full. I believe a 38-year penalty is sufficient, even if consecutive. Thank you.*

An option for a recommendation is:

Option 1. Direct staff to propose timelines for the removal of administrative suspensions from attorney profile pages and the expungement of administrative suspensions from attorney records.

**5.  Require attorneys to provide notice of regulation by the State Bar of California, similar to the California Code of Regulations, section 1355.4 that addresses medical doctors.**

In response to recommendation 4A ("The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of discipline history from the website attorney profile page"), a respondent submitted the following comment:

> *We would encourage the State Bar to find ways to inform more people of their abilities to file complaints. For example, the State Bar could look to the Medical Board's policy that requires all Medical Board licensees to have a physical notice in the office that provides information about how to file a complaint with the Medical Board. Something similar could be implemented for CA attorneys so that both clients and other staff who observe malpractice or other action that warrants discipline have information about and can feel empowered to make a complaint. This is of particular importance for complainants who are not traditionally empowered to speak up against people with more social and financial leverage, as attorneys often are.*

As noted on the MBC website, California Code of Regulations, section 1355.4 requires that all medical licensees "shall provide notice to each patient of the fact that the licensee is licensed and regulated by the Board."  Other requirements include:

"The notice shall be provided either by posting the notice in an area on the premises that is visible to the patient, a written statement that is signed by the patient, or including the statement on letterhead. The notice shall include the following:

NOTICE
Medical doctors are licensed and regulated by the Medical Board of California
(800) 633-2322
www.mbc.ca.gov"

Options for recommendations include:

Ad Hoc Commission on the Discipline System
December 2, 2022
Page 8

Option 1. Require attorneys to provide notice of regulation by the State Bar of California similar to what is required of California medical licensees.

Option 2. Direct staff to explore implications of requiring attorneys to provide notice of regulation by the State Bar of California similar to what is required of medical licensees and explore additional options for notification (including notice on professional websites) given the legal profession's modes of service.

## POTENTIAL MODIFICATIONS TO EXISTING RECOMMENDATIONS BASED ON PUBLIC COMMENT RECEIVED

1. **Clarify Eligibility for Recommendation Regarding Adopting Timelines for Removal of Attorney Discipline from Website and Expungement of Attorney Discipline Recommendations**

In response to recommendations 4A and 4B, a respondent submitted the following comment:

> *With respect to ATTORNEY DISCIPLINE ON STATE BAR WEBSITE/ EXPUNGEMENT, I am unclear at to the meaning of the statement "Both proposals recommend that eligibility for removal of discipline history from the website be conditioned  upon no new discipline or active investigations during this period, and payment of all restitution." I am unclear as to what is meant by the phrase "during this period". What is the period? Also, I am unclear what the meaning of "Active" investigations means. What period of time? Would those include complaints that were investigated and closed by the Ca State Bar with no action?*

In response to recommendations 4A,  a respondent submitted the following comment:

> *What does active investigation mean? I think it should be clear only complaints that lead to filing of bar violation charges should stop eligibility.*

The comments pertains to text surrounding eligibility, not the recommendations. Staff recommends clarifying the report text as follows:

> **Eligibility for removal of discipline history and expungement of the attorney record would be based on no new discipline imposed during the relevant timeframe, ~~or~~ no current active investigations, and payment of all restitution.**

# APPENDIX J. SUMMARY OF PUBLIC COMMENTS RECEIVED



# Ad Hoc Commission on the Discipline System
**Public Comments Received**

**December 2, 2022**

# CONTENTS

INTRODUCTION .................................................................................................................. 4

RECOMMENDATION 1. DISCIPLINE COSTS .............................................................. 4

    Agree Only if Modified ................................................................................................. 4

    Agree with Proposed Recommendation ..................................................................... 9

    Disagree with Proposed Recommendation ............................................................... 11

RECOMMENDATION 2. DISCIPLINARY SANCTIONS .............................................. 14

    Agree Only if Modified ............................................................................................... 14

    Agree with Proposed Recommendation ................................................................... 17

    Disagree with Proposed Recommendation ............................................................... 18

RECOMMENDATION 3. EXTEND DEADLINE FOR TRANSMITTAL OF CRIMINAL CONVICTION
MATTERS .......................................................................................................................... 20

    Agree Only if Modified ............................................................................................... 20

    Agree with Proposed Recommendation ................................................................... 20

    Disagree with Proposed Recommendation ............................................................... 21

RECOMMENDATION 4A.  ATTORNEY DISCIPLINE ON STATE BAR WEBSITE ................................. 23

    Agree Only if Modified ............................................................................................... 23

    Agree with Proposed Recommendation ................................................................... 27

    Disagree with Proposed Recommendation ............................................................... 32

RECOMMENDATION 4B.  EXPUNGEMENT OF ATTORNEY DISCIPLINE RECORDS ........................ 33

    Agree Only if Modified ............................................................................................... 33

    Agree with Proposed Recommendation ................................................................... 36

    Disagree with Proposed Recommendation ............................................................... 38

RECOMMENDATION 5.  PRE-TRANSMITTAL MEETING FOR MISDEMEANOR CONVICTION
MATTERS .......................................................................................................................... 40

    Agree Only if Modified ............................................................................................... 40

    Agree with Proposed Recommendation ................................................................... 40

    Disagree with Proposed Recommendation ............................................................... 42

RECOMMENDATION 6.  ALTERNATIVE DISCIPLINE PROGRAM .................................................. 43

    Agree Only if Modified ............................................................................................... 43

    Agree with Proposed Recommendation ................................................................... 43

    Disagree with Proposed Recommendation ............................................................... 44

RECOMMENDATION 7.  EARLY NEUTRAL EVALUATION CONFRENCE RULES .............................. 45

    Agree Only if Modified ...................................................................................... 45

    Agree with Proposed Recommendation ................................................................ 45

    Disagree with Proposed Recommendation ............................................................ 46

RECOMMENDATION 8.  PROGRESSIVE DISCIPLINE ...................................................... 47

    Agree Only if Modified ...................................................................................... 47

    Agree with Proposed Recommendation ................................................................ 47

    Disagree with Proposed Recommendation ............................................................ 48

RECOMMENDATION 9.  ATTORNEY REPRESENTATION .................................................. 50

    Agree Only if Modified ...................................................................................... 50

    Agree with Proposed Recommendation ................................................................ 50

    Disagree with Proposed Recommendation ............................................................ 51

## INTRODUCTION

On September 22, 2022, the State Bar Board of Trustees formally received the final report of the Ad Hoc Commission on the Discipline System. It directed staff to issue the report recommendations for a 60-day public comment period. The public was invited to comment on their agreement/disagreement with the recommendations, submit written comments, and provide supporting attachment materials. Attachments submitted are provided as links.

All comments received online as of November 28, 2022, are provided below without modification with the following exceptions. One participant submitted the text of a news article as a public comment for all recommendations and provided the article as an attachment as well; in this case, only the attachment was provided. In other cases, a few sentences and phrases were redacted because they contained obscenities and did not concern the recommendations or any State Bar business function. Non-redacted comments are available upon request.

## RECOMMENDATION 1. DISCIPLINE COSTS

*The Ad Hoc Commission on the Discipline System recommends the Board of Trustees reevaluate its current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed.*

### AGREE ONLY IF MODIFIED

**Anonymous** the current discipline cost and sanction structure greatly favors St. Bar and unduly pressures attorneys to settle it is inconsistent with due process

**Barbara Beard** i believe they may be inadequate.  I have been practicing for over 40 years. My first year my dues were late due to mailing address change from LA County to Orange County; thereafter from death in family due another move. Extreme upsets in my personal life. For the subsequent 39 or so years my Dues have been timely. I have committed no further wrongs in the sight of the State Bar. Although these Rule changes state they are intended to address "disciplinary" matters, I was never disciplined, only briefly suspended until my dues were received.  The Rules should address "suspensions" in the same manner, but with an even lesser consequence.  And, last but not least, I hereby request my "suspensions" be expunged in full.  I believe a 38-year penalty is sufficient.  Thank you.

**Cynthia** It has systemic racism structured right into it and homophobia. From the beginning to the end of a complaint the system is flawed because the people deciding to complain are using racism and homophobia whether they realize it or not. And then the decision on who to prosecute by letting the big firms off as systemic racism and systemic home will phobia built in. Then during the prosecution when the judge is looking and listening at you and evaluating Who

You are and whether you're lying or not. There's all kinds of systemic racism and homophobia there. This includes the appellate judges within your system. When I take into consideration if you've had priors, well why do you have priors? You have prayers because it was even more systemic racism and homophobia in the past than there is now. And then so you are denied employment. Our leaders and governing people who we depend on to get rid of the systemic racism and homophobia often come from lawyers. And so by prosecuting and harming with systemic racism you're making it so the system can never change. You'll never be able to see it and weed it out. So you need to just make some way for there to be an expungement procedure. So that later if the person draws attention to where there could have been systemic racism and homophobia along the way you can at least correct your mistakes when you listen to Why. Recently I ran into Lesbian Judges I'd known for a while, stated Oh you can get a job. With a vocational expert said. She said with my record nobody would ever hire me. I believe she had a reputation as a defense hack and was set to come in with the opposite opinion and hold me to making an assessed 250,000 a year. That was one of our best vocational experts in the entire Bay Area and she said the reason was because of the bar discipline on my record. It was a $5,000 opinion and you know they call around and check real hard before they say something like that So I'm sure she's correct. I know you're thinking I did this to myself but really? I suppose this depends on how badly you want more lesbian Latino attorneys from ABA schools helping our community. I'm sorry I couldn't edit this but I'm dictating onto my phone sitting in my truck. I feel my view is important enough to share with you regardless of syntax and grammar. 133915. Have a look at the very first referral to the bar after a car accident from a white commissioner named Shapiro in Marin on my first family law case because I wrote a motion for reconsideration. Apparently, that was inappropriate to do. Since it was my first case, I didn't realize that you bend over backwards in family law to cooperate. I was thinking that zealously advocating for your client, and believing her, should take precedent.  I wasn't used to hearing begging and crying in my office and I responded to it. The commissioner and family judges were later reprimanded I don't know if secretly or publicly for having a Golden boy network and not letting new lawyers in to the rich Marin divorces. I wonder how much this had to do with my referral to you, and getting a monetary sanction over the limit. In hindsight, it was a racist, very racist thing to do to a fledgling Latino lawyer, and probably had something to do with me being a lesbian, as well. That should be reversed for racism, or at least have some way to expunge it now 25 or 30 years later.  I think the Injustice is absolutely obvious. I have no way of knowing how many others, who are  Latino this has happened to. However, I did have a bar prosecutor friend Andrea, that told me that shhhh,  there was a memo to target minority firms. You know this memo was there, and you need to go back through and reverse your decisions for unlawful profiling. You should especially do it where there was no stealing. I don't want to minimize my imperfections because I definitely have my flaws. But I do not believe that I am so bad as to have the community denied my services and for me to never be able to get a job. That's just a hideous result of what the bar is doing. If you have an expungement procedure you can apply Equity to that process and help to get the diversity that you need so desperately in the bar.

5

**David Griffin** There should be no sanctions in Nolo disposition. These matters, at least in my case, are extortionate. My settlement Judge was former adversary counsel who told me that I would lose, that Bar costs would likely exceed 50,000.oo and that a similar amount would be paid to my counsel. As a senior atty at age 70 with pre Judgement and post Judgment condemnation on the website, I was out of business, had no income and huge costs due.My case was one where I became ill with transient ischemia and referred my cases to other counsel. All of the mistakes by these counsel were attributed to me and were baseless claims except for a couple of missed appearance by these other counsel.I practiced law for over forty years without a single claim and then had a short suspension on a false claim that I put my personal funds in the trust acount when it was a gross check for all costs and associated attorneys experts etc. The balance was mine only after every one else was paid. The balance was properly then moved to the operating account.But for these I was drummed out of the corps and rendered penniless dues to the costs I couldn't pay for a settled charge.This has literally ruined my life.

[**Jacqueline Anguiano**](), on behalf of Consumer Attorneys of California [See attached letter from the Consumer Attorneys of California in link provided.]

**Mya** Dear Bar This what's happening in courts. I am a member of a coalition of thousands of parents whose children were separated for years without advisement of rights to cross examine the social worker at the jurisdiction and disposition hearings that we now know after months of research, was a violation of WIC 317(e) and California Rule of Court Rule 5.674.We now know that unless we waived our rights under CRC Rule 5.674, you, as the lawyer and pursuant to the Contract with the Judicial Council, must cross examine the preparer of each status review report, each ex parte application, and each last minute information filed in court in compliance with WIC 317 (e) and CRC 5.674.And you also know from the minute orders in the first case that the social worker did not testify and the court sustained a petition based on false statements that would not have been sustained had I been afforded my statutory under CRC 5.674 to cross examine the CSW. Most shocking, I was not even advised that I had a right to cross examine the CSW by you or the court, nor was I asked if I waived CRC 5.674, nor did I waive CRC 5.674, nor did I sign the JV 190 Waiver of Rights, nor did the court follow CRC Rule 5. 682 (e) and (f) by failing to find on the record that I understood the nature of the allegations and the consequences of not examining the CSW. The court did not make this determination, sustained the petition, no CSW testified during the life of my case for four years.Instead of due process, I was shamed, embarrassed, lied about, laughed at, cursed at, drug tested while being closely observed, not allowed to speak in court, not allowed to present a defense, not allowed to cross examine the social worker. The court terminated my right to reunify with my children and approved a Guardianship because I drug tested at a facility other than Pacific Toxicology even though all my test results were negative and there are claims that Pac Tox was conducing screens which is inadmissible junk science that were also falsified and that Pac tox also falsely accused parents of missing "tests" that were considered "positive". I had no knowledge, until now, that I had due process rights at each hearing, to cross examine the government agents who continued to separate my children from me for four years and I want to know why the

CSW never testified.Based on the above due process violations by this court, the Guardianship should be terminated immediately on the grounds that it is the interest of justice and welfare of my children to protect their liberty interest to be with their parents, their family, long recognized by the U.S. Supreme Court.As to the merits of the allegations, there wer none. The sustained marijuana abuse allegation was a mockery of justice and should have been dismissed, not sustained. The definition of marijuana abuse for child welfare purposes is set forth in the Structured Decision Making Protocol (SDM) and requires a medical professional's opinion that I am a substance abuser as defined in the DSM 5th ed and that I am rendered unable to provide regular care, i.e. adequate shelter, food, clothing, and medical care for my children, that we in the coalition now know is the "nexus".If I had cross examined the CSW I would have proved that she had no evidence that met the SDM definition mandating dismissal of the WIC 300 (b) Petition. In my case and in all the substance abuse cases in the coalition, the shelter was more than adequate, our children were well fed, well cared for, including food, clothing, and medical care. Bottom line, there was no "nexus".The cross examination of the CSW, that takes about 5-15 minutes, would have proved there was no evidence to support the "conclusion" that I was rendered unable to provide regular care for my children, no nexus – case dismissed. No evidence at all. Any decent lawyer would ask the CSW on the witness stand what was the nexus?  What regular care did I fail to provide that put my children at risk of future harm? The fact that my three year old was clever enough to get out of the house three times and was unharmed, shows a fierce curiosity that could have been remedied by securing our home. And, DCFS was obligated to provide reasonable efforts to prevent removal to preserve the family and to prevent "separation trauma" and PTSD. In addition, the quality of my care is best judged by the fact that all my children were well cared for proving I am perfectly capable of securing my home from a precocious three year old.      Also, reunification was terminated and my children are in Guardianship because I drug tested at a different facility than Pacific Toxicology even though all my tests were false. In addition, I provided my children excellent care and there was no medical evidence that I abused marijuana as defined in the DSM 5th ed. That said, there was no evidence to meet the definition of marijuana abuse in the SDM definitions and DCFS Assessment of Drug Alcohol Abuse 0070.521.10.   I should not lose my children because I refused to test at Pac Tox considering that DCFS is currently auditing Pac Tox for falsifying test (screen) results causing termination of reunification and parental rights. According, I intend to notify the Board of Supervisors that I lost my children because I refused to go to corrupt Pac Tox and ask the Board to take appropriate action to return my children and terminate the fraudulent Guardianship. I also want an explanation as to why the Board has not terminated the Pac Tox 1.5 million dollar contract given the massive number of children separated from their parents due to Pac Tox's corrupt operation and why are all the parents forced to go to corrupt Pac Tox or lose their children?We also reviewed the Maternal Substance Act, Penal Code section 11165.13 that states a positive drug screen at the time of delivery of an infant, in itself, is not child abuse or neglect and cannot be reported as such to the hotline. Yet, the hospitals violated section 11165.13 in all our cases, reported us to the DCFS hotline for drug abuse based on inadmissible drug screens when our children were full term, no withdrawal, between 4 and 9 pounds. DCFS takes the children based on inadmissible positive drug screens that the hospitals were forbidden to report as child abuse under section 11165.13 in the first place

7

because drug screens are inherently unreliable as documented in the Legislative Digest from two years of legislative hearings on whether to remove children based on an inherently unreliable drug screens and the legislature said No but that's happened in my case and thousands of other cases.DCFS also filed a petition on my new baby based on a substance abuse with no medical diagnosis consistent with the DSM 5th ed and no nexus and would have been dismissed at a contested hearing. There was no probability that my baby would be under the court's jurisdiction because there was no nexus. Again, if I had been offered the opportunity to cross examine the CSW, I would have shown that there was no diagnosis and no nexus and, hence, the allegations did not meet the SDM Definitions mandating dismissal. Accordingly, the WIC 301 should be dismissed.        I want to work with LADL and CLC to return my children and end mass separation that is much worse that the border crisis. We all have the grounds for a WIC 390 motion to dismiss in the interest of justice and the welfare of the children. None of our children were abused or neglected as defined in the SDM Definitions. That said, had we been afforded our rights under CRC we would have our children. Instead, we were denied due process by the court that never advised us of our rights, never asked us if we waived our rights, never gave us the Judicial Council JV 190 Waiver of Rights, we never signed the JV 190, never waived our rights under CRC 5.674 to cross examine the preparer of each report filed in court, the CSW never testified, and, the court sustained the petition under WIC 355.Our coalition is also conducting an in depth review of the CLC and LADL contracts and discovered that under the payment section, monthly invoices on each case must be provided to the Judicial Council including who performed the work, how long did it take, what was the purpose, and the name of the hearing. I am requesting all the monthly invoices that CLC and LADL submitted to the Judicial Council on my case pursuant to the express terms of the Contract that totals 12 per year for more than four years, roughly 100 invoices from both CLC and LADL. As you know, under the Revenue Enhancement Statutes, I have to reimburse the state for LADL legal fees and CLC legal fees and I am entitled to and demand these invoices immediately.  We are planning Legislative hearings similar to the hearings in 1994 that documented social workers were filing petitions that were false, that lawyers were not cross examining the social workers, and false petitions were rubber stamped by court hearing officers. This is still going on for almost forty years and must end now. No more mass separation based on due process violations.We want our children back to end the separation trauma and unbearable suffering. Some of the mothers have gone insane and others have taken their own lives… we are united in our mission to return our children and preserve our families…the soul of America.        Please email my estimated 100 invoices as soon as possible. The coalition members will each be requesting their monthly invoices. Also, please advise by email why you never cross examined the CSW and never informed me of my rights to cross examine the CSW and how can the court sustain a petition with no CSW testimony and no waiver? Also, I intend to file a Motion to Dismiss the petition filed on my baby in the interest of justice based on due process violations and the welfare of my child.

**NC CARLSON** Public Dissent re Attorney Discipline System

1. Case Prioritizations  -  Complex cases and complaints against High Profile Attorneys and Professional Litigators     OCTC routinely assigns to inexperienced lay investigators who simply closed cases..

2. Supporting Evidence - OCTC charges and places burden of evidence on complainants who must bear that expense    including for all records demanded by OCTC which some lay complainants may not possess, know how to secure,    and which Respondents failed & refused to provide.

3. Communications with Complaining Witness - OCTC has a record of not communicating with complaining witnesses    during intake, often during the investigation process, before issuing a case closure letter.

4. Investigations - The OCTC investigations does not provide Claimant  "Responses" and opportunity to    impeach Respondents response, claims or evidence .

5. Complaint Review Unit -  There is NO State Bar nor OGC portal, description, instructions nor procedure for complaint    review program. OGC makes no effort to contact complainants. Tests proved OGC sent unsigned form letters within    days requesting review of complex cases with conclusive evidence verifying bias and failure to protect the public.

**Terry Smith** 1. Attorney fees should not allowed to defer such cost to clients as " court cost" or additional fees.

### AGREE WITH PROPOSED RECOMMENDATION

**Anonymous**    A reasonable recommendation is to give trial judges more discretion when imposing disciplinary costs.  In my case, I suffered from a severe methamphetamine addiction and had literally no money.  I had four driving on a suspended license violations and a misdemeanor petty theft.  Under the schedule, the State Bar imposed about $20,000 in costs.  Besides recovering from methamphetamine, the primary obstacle I faced was to financially support myself.  I was suspended from practice and could not locate a regular job.  I was in no condition to work a steady regular job since it was necessary to focus on my recovery.  I was also saddled with Lawyers Assistance Program fees, drug testing costs, rehabilitation, and housing costs.  I owed the IRS and the Franchise Tax Board among other obligations.  I no longer owe the IRS and am making payments to the Franchise Tax Board.  It would have been helpful if the Trial Judge would have had some discretion in setting disciplinary costs.  I rented a two-bedroom apartment and at one time had three other roommates to lower my housing costs.  I now am down to three persons in the same two-bedroom apartment.

**Benjamin Pavone** Please see attachment for criticisms of the State Bar system.

**Carmen Garcia** Agree that people should not be penalized for going to trial or defending themselves against the accusations.

**Chad pratt** Reduce and eliminate all costs. Assess more costs on site bar for frivolous trials."

**darryl genis**    Until 'profit' is taken out of the equation, State Bar Disciplinary proceedings will never be fair or just. The easiest way to make thing fair if costs are to be allowed at all is to get rid of the illegal cost statute which is a veiled 'attorney's fees' statute that violates Equal Protection and Due Process (because it has a lower standard for the OCTC and a much much higher standartd for repsondents) and replace it with a legal 'reciprocal' attorney's fees statute that provides for reasonable fees to 'the prevailing party'.

**David C. Carr**   Recommendation 1 Discipline Costs and Sanctions. Reevaluate the current discipline cost model with a focus on reducing costs. This includes, but is not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review and scaling fees when charges are dismissed.

The unfairness of the discipline cost structure has been apparent to practitioners in State Bar Court for many years.   It encourages overcharging and poor pre-filing analysis by the Office of Chief Trial Counsel (OCTC) and gives OCTC undue leverage in the settlement process.  Costs should be awarded by a State Bar Court judge through a motion process, as exists in some disciplinary jurisdictions.  The rigid cost structure was adopted in part because OCTC did not want to adopt a system for accounting for time.  Adopting a motion procedure would make OCTC more accountable and more efficient.  Respondents who are completely exonerated of all charges following trial should be awarded attorneys fees and costs.

**Edward O'Reilly** In my case, the cost of going to trial was prohibitive. The adversarial nature of disciplinary proceedings was very unsettling. I expected it to be a forum where peers can work together, and truth can be found. It is a system where those with means escape justice and those without means get treated harshly.

The costs should be reduced so that there is an even playing field. By the time an attorney reaches trial the costs already paid are exorbitant. Some estimates claim that an attorney will lose 70% of their business. The losses start mounting as soon as the State Bar posts online that a complaint has been filed. It is a financial penalty.  It's not reasonable to expect an attorney to have the resources to go to trial after having their practice is disrupted, time and resources drained.  Those with resources to withstand a prosecution are less likely to be disciplined. That is unfair.

In my case the judge opined in court that I should receive a private reproval, but the prosecutors insisted on taking the case to trial if I didn't stipulate.  I believe that was partially because I was unrepresented. The prosecutors leaned on me heavily to stipulate.

**Edward Tabash**  There should not be a trial penalty. Attorneys have a right to seek a full trial in matters that could be career ending. This should not be penalized
Erika Roman   The costs of defense are cost prohibitive and to defend yourself as a solo practitioner or for many practitioners, it comes down to defending your name weighed against the exorbitant cost of litigating the matter.

**Erika Roman**   The costs of defense are cost prohibitive and to defend yourself as a solo practitioner or for many practitioners, it comes down to defending your name weighed against the exorbitant cost of litigating the matter.

**Lenore Albert** It is unconstitutional and anticompetitive behavior. It also is a way to disbar attorneys you don't like. They are the highest in the nation.

Golden children get offers to stipulate to some lesser charge. However, the employees at OCTC trading ""favors"" with those outside the Bar to target a person do not get that opportunity to pay off the Bar at a lower rate."

**Mathew Higbee** I believe the State Bar should pay the opposing party's attorneys fees in any were a verdict is returned in favor of a defendant.   An individual member should not be forced to incur the costs of defending themselves against charges that could not be proven.

**Melinda C Romines** The sanctions of $2,500 on top of the court fees of over $7,000 are obscene.With the suspension posting on my profile, and the allegations (not conviction) of a felony in a large red box have made my employment opportunities nill.  I am about to lose my car to repossession and my home to eviction. I have nowhere to go! i never stole from any client and committed no moral turpitude. Do I have to be a rich old white man and buy the State Bar, Like Gird to find any sympathy?"

**Robert Kavianian** I feel that an Attorneys should have a set a market value per case
2001 under personal stress my Attorney' charged me $5,000 per a misdemeanor DUI playing off my shame and embarrassment. 2003 I had a 2nd DUI and a more professional more organized Attorney charged me $2,300."

**Robert Louis Ray** Attorneys need to be held accountable for their misdeeds

## DISAGREE WITH PROPOSED RECOMMENDATION

**Jack Woods** Greater  emphasis should be placed on attorney interaction with potential jurors during the selections  process. Attorneys should be dissuaded from I staging aggressive and insightful commentary with the potential juror..

Disciplinary sanctions should not be eliminated as this serves as a detergent  to improper beheavior  in the court room.  It is natural that an individual knowing there is no definitive and

11

anticipated corrective action to be concerned with will continue his/her improper actions without remorse.

**Jeremy Auslander** You don't reduce costs or award attorney's fees for a defendant when they are the prevailing party. Why should a lawyer have different rules?

Why don't you make the losing party pay opposing parties attorney's fees?
That would limit the number of frivolous lawsuits. I bet lawyers and plaintiff's would think twice before suing if there was a possibility of them having to pay legal fees and more if they lose.

They should not only pay for the costs associated with them having to defend the violations they are accused of, but they should be liable for any and all damages caused to their clients. Missed filing dates, missed court dates, failure to act as a reasonable attorney should, basic knowledge of the law and legal proceedings.

They only one hurt is the individual who trusted a lawyer who passed your BAR exam but was never taught how to be a lawyer.

**Maria cardenas** If a debt buying firm sue an individual  that is far away thinking default judgement  is very likely, there should be a rule that they have to be phisically present at trial. Chances are they will not show up because the amount owed isn't worth the trip.  If they are aloud to submit 1000s of claims and show up remotely than they will always be at an advantage and garnish people's money when they paid  a cent and demand full smount plus court fees

**Nadia heshmati**  "There are so many cooked, charlatan psychopath attorneys stealing money from innocent clients and victimizing them over & over again.
There must be a HARSH discipline system to punish them and suspend their licenses and sanction them to pay for cost of investigations & restitution to their victims.
Look at Tom Girardi and that's only one caught after years of getting away with so many criminal actions against innocent victims!
You must get tough on these thieves and crooks using the law to rip off & destroy clients lives! Enough is enough, a wolf shouldn't watch another wolf so get public involved in investigating these psychopaths and crooks that abuse the due process, abuse their law license and commit perjury & intimidate witnesses and steal from clients!  Make an example out of them! "

**Paul Dougherty** Lawyers convicted of financial crimes and misdeeds should be disbarred for life.

**Stephanie Orourke**    No need to reevaluate current discipline cost model, the costs should be increased.  If the State Bar decides to a  disciplinary investigation and court proceedings as directed by Business and Professions Code section 6086.10 then there are grounds for it, and the State Bar needs to recover its costs.   Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

12

[Message from staff: in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment. Please refer to the attachment in the link provided.]

**Steven** You are attorneys protecting Attorneys. Unless they are arrested and convicted. No disciplinary actions ever take place. They lie cheat steal and cover up. How about punishing Mary Elizabeth Cooper Mailibu CA for her repeated corruption
Attorneys should be made to pay for trial and review. It's their criminal actions resulting in formal punishment. As of right now Attorneys can do and say whatever no punishment

## RECOMMENDATION 2. DISCIPLINARY SANCTIONS

*The Ad Hoc Commission on the Discipline System recommends that the State Bar seek a statutory amendment to eliminate disciplinary sanctions.*

### AGREE ONLY IF MODIFIED

**Mya**

Dear   Bar fire judges and lawyers they are apart of this

This is to advise that I am a member of a coalition of thousands of parents whose children were separated for years without advisement of rights to cross examine the social worker at the jurisdiction and disposition hearings that we now know after months of research, was a violation of WIC 317(e) and California Rule of Court Rule 5.674.
We now know that unless we waived our rights under CRC Rule 5.674, you, as the lawyer and pursuant to the Contract with the Judicial Council, must cross examine the preparer of each status review report, each ex parte application, and each last minute information filed in court in compliance with WIC 317 (e) and CRC 5.674.

And you also know from the minute orders in the first case that the social worker did not testify and the court sustained a petition based on false statements that would not have been sustained had I been afforded my statutory under CRC 5.674 to cross examine the CSW. Most shocking, I was not even advised that I had a right to cross examine the CSW by you or the court, nor was I asked if I waived CRC 5.674, nor did I waive CRC 5.674, nor did I sign the JV 190 Waiver of Rights, nor did the court follow CRC Rule 5. 682 (e) and (f) by failing to find on the record that I understood the nature of the allegations and the consequences of not examining the CSW. The court did not make this determination, sustained the petition, no CSW testified during the life of my case for four years.

Instead of due process, I was shamed, embarrassed, lied about, laughed at, cursed at, drug tested while being closely observed, not allowed to speak in court, not allowed to present a defense, not allowed to cross examine the social worker. The court terminated my right to reunify with my children and approved a Guardianship because I drug tested at a facility other than Pacific Toxicology even though all my test results were negative and there are claims that Pac Tox was conducing screens which is inadmissible junk science that were also falsified and that Pac tox also falsely accused parents of missing "tests" that were considered "positive". I had no knowledge, until now, that I had due process rights at each hearing, to cross examine the government agents who continued to separate my children from me for four years and I want to know why the CSW never testified.

Based on the above due process violations by this court, the Guardianship should be terminated immediately on the grounds that it is the interest of justice and welfare of my

14

children to protect their liberty interest to be with their parents, their family, long recognized by the U.S. Supreme Court.

As to the merits of the allegations, there wer none. The sustained marijuana abuse allegation was a mockery of justice and should have been dismissed, not sustained. The definition of marijuana abuse for child welfare purposes is set forth in the Structured Decision Making Protocol (SDM) and requires a medical professional's opinion that I am a substance abuser as defined in the DSM 5th ed and that I am rendered unable to provide regular care, i.e. adequate shelter, food, clothing, and medical care for my children, that we in the coalition now know is the "nexus".

If I had cross examined the CSW I would have proved that she had no evidence that met the SDM definition mandating dismissal of the WIC 300 (b) Petition. In my case and in all the substance abuse cases in the coalition, the shelter was more than adequate, our children were well fed, well cared for, including food, clothing, and medical care. Bottom line, there was no "nexus".

The cross examination of the CSW, that takes about 5-15 minutes, would have proved there was no evidence to support the "conclusion" that I was rendered unable to provide regular care for my children, no nexus – case dismissed. No evidence at all. Any decent lawyer would ask the CSW on the witness stand what was the nexus?  What regular care did I fail to provide that put my children at risk of future harm? The fact that my three year old was clever enough to get out of the house three times and was unharmed, shows a fierce curiosity that could have been remedied by securing our home. And, DCFS was obligated to provide reasonable efforts to prevent removal to preserve the family and to prevent "separation trauma" and PTSD. In addition, the quality of my care is best judged by the fact that all my children were well cared for proving I am perfectly capable of securing my home from a precocious three year old. Also, reunification was terminated and my children are in Guardianship because I drug tested at a different facility than Pacific Toxicology even though all my tests were false. In addition, I provided my children excellent care and there was no medical evidence that I abused marijuana as defined in the DSM 5th ed. That said, there was no evidence to meet the definition of marijuana abuse in the SDM definitions and DCFS Assessment of Drug Alcohol Abuse 0070.521.10.

I should not lose my children because I refused to test at Pac Tox considering that DCFS is currently auditing Pac Tox for falsifying test (screen) results causing termination of reunification and parental rights. According, I intend to notify the Board of Supervisors that I lost my children because I refused to go to corrupt Pac Tox and ask the Board to take appropriate action to return my children and terminate the fraudulent Guardianship. I also want an explanation as to why the Board has not terminated the Pac Tox 1.5 million dollar contract given the massive number of children separated from their parents due to Pac Tox's corrupt operation and why are all the parents forced to go to corrupt Pac Tox or lose their children?

15

We also reviewed the Maternal Substance Act, Penal Code section 11165.13 that states a positive drug screen at the time of delivery of an infant, in itself, is not child abuse or neglect and cannot be reported as such to the hotline. Yet, the hospitals violated section 11165.13 in all our cases, reported us to the DCFS hotline for drug abuse based on inadmissible drug screens when our children were full term, no withdrawal, between 4 and 9 pounds. DCFS takes the children based on inadmissible positive drug screens that the hospitals were forbidden to report as child abuse under section 11165.13 in the first place because drug screens are inherently unreliable as documented in the Legislative Digest from two years of legislative hearings on whether to remove children based on an inherently unreliable drug screens and the legislature said No but that's happened in my case and thousands of other cases.

DCFS also filed a petition on my new baby based on a substance abuse with no medical diagnosis consistent with the DSM 5th ed and no nexus and would have been dismissed at a contested hearing. There was no probability that my baby would be under the court's jurisdiction because there was no nexus. Again, if I had been offered the opportunity to cross examine the CSW, I would have shown that there was no diagnosis and no nexus and, hence, the allegations did not meet the SDM Definitions mandating dismissal. Accordingly, the WIC 301 should be dismissed.

I want to work with LADL and CLC to return my children and end mass separation that is much worse that the border crisis. We all have the grounds for a WIC 390 motion to dismiss in the interest of justice and the welfare of the children. None of our children were abused or neglected as defined in the SDM Definitions. That said, had we been afforded our rights under CRC we would have our children. Instead, we were denied due process by the court that never advised us of our rights, never asked us if we waived our rights, never gave us the Judicial Council JV 190 Waiver of Rights, we never signed the JV 190, never waived our rights under CRC 5.674 to cross examine the preparer of each report filed in court, the CSW never testified, and, the court sustained the petition under WIC 355.

Our coalition is also conducting an in depth review of the CLC and LADL contracts and discovered that under the payment section, monthly invoices on each case must be provided to the Judicial Council including who performed the work, how long did it take, what was the purpose, and the name of the hearing. I am requesting all the monthly invoices that CLC and LADL submitted to the Judicial Council on my case pursuant to the express terms of the Contract that totals 12 per year for more than four years, roughly 100 invoices from both CLC and LADL. As you know, under the Revenue Enhancement Statutes, I have to reimburse the state for LADL legal fees and CLC legal fees and I am entitled to and demand these invoices immediately.

We are planning Legislative hearings similar to the hearings in 1994 that documented social workers were filing petitions that were false, that lawyers were not cross examining the social workers, and false petitions were rubber stamped by court hearing officers. This is still going on for almost forty years and must end now. No more mass separation based on due process violations.

16

We want our children back to end the separation trauma and unbearable suffering. Some of the mothers have gone insane and others have taken their own lives… we are united in our mission to return our children and preserve our families…the soul of America.

Please email my estimated 100 invoices as soon as possible. The coalition members will each be requesting their monthly invoices. Also, please advise by email why you never cross examined the CSW and never informed me of my rights to cross examine the CSW and how can the court sustain a petition with no CSW testimony and no waiver? Also, I intend to file a Motion to Dismiss the petition filed on my baby in the interest of justice based on due process violations and the welfare of my child.

**Terry Smith**  Sanctions such only be allowed/ applied when "legitimately applicable " and legally warranted.

**Daniel Geoulla** They should not be eliminated altogether. Instead, they can be reduced, or discretion should be given so they are proportionate to the violations.

### AGREE WITH PROPOSED RECOMMENDATION

**Robert Louis Ray**  I know of two attorney who ran for the position of City Attorney for the City of Compton, and neither of them lived in the City which is a violation of the City Charter.

**Chad pratt**  Waive all costs

**darryl genis**  This makes sense. Especially for misdemeanor conviction referrals that do not involve moral turpitude and did not result from the practice of law. The State Bar Court and OCTC do not follow their own rules anyway Attorney J. Tony Serra was convicted of 26 USC section 7203 three times in 31 years. His first in 1978 went unpunished. His second resulted in a 30 day suspension, and his third resulted in a 6 month suspension which he served concurrent with his prison sentence. Tax litigator James Patrick Kleier was convicted once and suspended for 3 months. I was convicted once and suspended for 24 months and not given credit for the 21 months I was in Federal Prison where it was illegal to practice law. That is a 300% greater punishment than Serra who pursuant to 1.8 should have been disbarred, and a 700% greater punishment than Kleier who the public should have been given the greatest protection from since he gives tax advice and violated tax laws.

**Lenore Albert**  no comment

**David Speckman** Prolonged publication of prior discipline, when there has been no repeat offence, results in a continued punishment of the attorney. This, in turn, may result in severe financial loss, embarrassment, and loss of competent legal talent.  I know of several instances in which an attorney has lost clients do to published discipline records having no reflection on the

17

attorney's skills, knowledge, ethics or competence.  I have seen opposing attorney use prior discipline records to undermine the integrity of an attorney in the eyes of the court or even the attorney's own client.  The continued unending publication of discipline records works to punish the attorney for the remainder of his/her legal career and often causes otherwise very good lawyers to seek an alternative profession.

**Melinda C Romines** I was required to pay the $2,500 sanction after my 6-month suspension. I hadn't worked all year, and as a single mother of four children, from a poor drug-addicted family, I had no one. I had to sell all of my jewelry just to make it.

**Edward Tabash**  Disciplinary sanctions should be eliminated. Most important of all, attorneys cleared of any charge should not have to pay the cost of State Bar prosecution of that charge. The practice of making lawyers pay costs of their prosecution  even if they are acquitted is grossly unfair.

In fact, it should be the opposite. Attorneys who undergo State Bar prosecutions and are acquitted should have their costs and expenses of defending themselves fully reimbursed by the State Bar.

**Anonymous**    if other states not require restitution then CA should also
or pay in accordance with revenue.

**Erika Roman**   The costs of defense are cost prohibitive and to defend yourself as a solo practitioner or for many practitioners, it comes down to defending your name weighed against the exorbitant cost of litigating the matter.

**David C. Carr**   "Recommendation 2 Seek a statutory amendment to eliminate disciplinary sanctions.

Sanctions are punitive by nature and antithetical to the purposes of discipline, which is not punishment, but protection of the public, the courts and the legal profession, maintenance of the highest professional standards; and preservation of public confidence in the legal profession (Standard 1.1)  Eliminating sanctions is essential to combat the inherent drift in the discipline system toward punishment and restore fairness.

### DISAGREE WITH PROPOSED RECOMMENDATION

**Stephanie Orourke** Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff: in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided.]

18

**Robert Kavianian**  I've gone to College and have had friends that are Attorney's (2 of them disbarred) One thing I've noticed is there quality suffered and they seemed to go for more lucrative cases also there follow up with clients where terrible."

**Paul Dougherty**  Disciplined lawyers should pay full costs before being allowed to practice law again.

**Jeremy Auslander** "I wasn't able to find the information on amending the statute regarding the elimination of disciplinary actions.  However, if you are considering reducing statues to report violations made by an attorney I oppose that! It takes time to formulate the argument and research the violations a lawyer has broken.

As a victim of a malicious lawyer who filed frivolous charges against me, it took me a very long time to formulate my response. I tried to hire an attorney to help me but in this field only lawyers representing lawyers exist! Lawyers helping individuals who have been wronged are few and far between. Most likely because the courts are very lenient to lawyers and the monetary damages awarded are not worth hiring an attorney.

It's a terrible cycle of individuals getting harmed by lawyers with those individuals having little to no recourse and/or remedies."

**Maria cardenas** There should be disciplinary sanctions  to protect  fair practices .

**Jack Woods** I agree,with the valuation conference without modification

**Steven** I disagree you protect Attorneys no matter how sick or perverted

**Anonymous**    It is easy to agree with eliminating disciplinary costs since the benefits to one group would be concentrated while the increased costs to other stakeholders would be widespread and hardly noticed.  It seems the better recommendation is to give trial judges discretion.

**Carmen Garcia**  Root & Rebound works with people who have been marginalized and are often in desperate situations, with very few financial resources. Many people who are taken advantage of by attorneys who have committed sanctionable conduct do not have the resources to hire an attorney to pursue a civil suit to obtain monetary damages. The Client Security Fund allows for clients to be reimbursed if they have lost money or property due to theft of dishonest conduct by a California attorney, without going through the court system, which, again, requires resources to hire an attorney or the ability to navigate the system on their own, which is unlikely. Although sanctions do not exist in other states, the model itself is not unprecedented - for example, this is the purpose of Victim's Compensation Funds.

19

## RECOMMENDATION 3. EXTEND DEADLINE FOR TRANSMITTAL OF CRIMINAL CONVICTION MATTERS

*The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an Early Neutral Evaluation Conference.*

### AGREE ONLY IF MODIFIED

**Cynthia**  I have no idea what an ENC is. There is no way for me to submit this form without checking boxes on things I don't even understand. I don't think you need any deadlines extended unless they help the defendant for instance by giving them enough time to get a felony off their record and get it changed to a misdemeanor and get it expunged and criminal Court so that you don't have to address it. The less prosecuting the bar does the better. We all know that tough on crime means tough on minorities. If lawyers really commit crimes we have the criminal courts to deal with it we don't need the bar.

**Anonymous** I don't know enough about the situation.  Is there a delay in transmitting the conviction due to a delay in the courts?

**Jeremy Auslander** "Is an individual convicted of a crime afforded the same opportunity?
If so, then yes, a lawyer should be treated the same way.
If no, then NO!
Again, a lawyer should not receive special treatment.  "

**Jack Woods**    Agree, provided the reviewing committee be properly balanced through a selection committee comprised of  Lay persons and Established professionals who have a background and have exhibited ttheor understanding of the true nature of Discipline and its relative importance in maintaining an accepted level not only in conformity but in respect of the court.

### AGREE WITH PROPOSED RECOMMENDATION

**Lenore Albert**  no comment

**Edward Tabash** Yes, give lawyers a chance to explain or clarify a situation at the outset prior to a full blown trial or intermediate hearing.

**Anonymous** Early Neutral Evaluation Conferences are always helpful.  I have attached a law review article that touches on issues related to addiction and also relevant to this recommendation. My petty theft incident occurred before the zero-bail movement.  The judge would not release me unless I entered a plea.  I was not in good condition.  So, I pleaded as

charged.  I assumed that since the violation was a misdemeanor it would not trigger disbarment or other serious State Bar consequences.

I could not afford an attorney and was unaware that a misdemeanor involving moral turpitude presumptively triggers disbarment.  If I had been of sound mind and had the resources, I would have made bail with the opportunity fully explain the circumstances surrounding the petty theft incident.  If I had been placed in sober living and come back six months later, I probably would have been eligible for a diversion program.

If there had been an Early Neutral Evaluation Conference, I would have been able to explain these circumstances to the Trial Counsel.  The only caveat is that had I received a lesser punishment I may not have worked as hard at my recovery.

I was unaware at the time, but a methamphetamine addiction is much more serious than a cocaine or alcohol problem.  Methamphetamine damages the self-control center of the brain. Holley, Mary (2006) ""How Reversible is Methamphetamine-Related Brain Damage?,"" North Dakota Law Review: Vol. 82 : No. 4 .  Available at: https://commons.und.edu/ndlr/vol82/iss4/2. I have uploaded a copy of the referenced article by Dr. Holley with the key points highlighted.  I relate to everything in the article."

**David C. Carr**   "Recommendation 3: Early Neutral Evaluation Conferences Seek a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an ENEC.

Early resolution of discipline cases should be a goal of the system.  The Early Neutral Evaluation (ENEC) protocol needs to improved but it is not available for criminal conviction cases, which are significant part of the discipline caseload. ENEC should be available in all discipline cases.

### DISAGREE WITH PROPOSED RECOMMENDATION

**Stephanie Orourke**     Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff: in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided]

**Robert Kavianian** Extended a dead line is just more Legal Paperwork.

**Paul Dougherty**  No transmission of criminal matters should ever be allowed.

**David Griffin** There should be a reasonable statute of limitation and a short period.

21

**Maria cardenas** If its a misdesminor  allow to be spunged  within  3 years

**Steven**  They have a right to trial that's it. [sentence redacted]

## RECOMMENDATION 4A.  ATTORNEY DISCIPLINE ON STATE BAR WEBSITE

*The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the following timelines for removal of the attorney discipline from the website attorney profile page:*
- *Private reproval:  1 year of when conditions are met*
- *Public reproval:  3 years*
- *Probation with stayed suspension:  3 years of conclusion of probation*
- *Probation with actual suspension:  5 years from reinstatement*
- *Disbarment:  Public indefinitely (no change)*

### AGREE ONLY IF MODIFIED

**Nadia heshmati**  Every disciplinary action against any attorhey must be public info and they should be fully prosecuted!   The ca bar must PROTECT the public from these wolves!

**Patricia Rodriguez, on behalf of Rodriguez Law Group, Inc.**  Eligibility for expungement of the attorney discipline record would be based on no new discipline or active investigations during the period, and payment of all restitution.

What does active investigation mean? I think it should be clear only complaints that lead to filing of bar violation charges should stop eligibility. If someone has a complaint that is filed against them that is investigated and closed it should not impede removal or expungment od the disciplinary action. "

**Garo Ghazarian** REC4A_ There need be a similar timeline for removal of the attorney discipline from the website attorney profile page of "attorneys who submitted a voluntary resignation with charges pending," who have subsequently been reinstated on the active roster of the California State Bar. Note: I am such an attorney who resigned in 1994 "while charges were pending," and though my petition for reinstatement was granted in 2003, and though I've been practicing since without any discipline, my State Bar website profile, on many occasions has caused many hardships. Despite not having been disciplined, many who have viewed my profile on the bar's website, have incorrectly surmised that I was disciplined and consequently disbarred. For context, you may view my profile (Cal. Bar #152790).  Thank you.  Garo Ghazarian"

**Mya**    Help stop this mass separation fire judges and lawyers they are committing crimes against the public jail is all I see that's how parents feel with out their children stop ignoring the problem  return Children to parents all case files paperwork are  all false

**Melinda C Romines** FIVE years is far too long! It extends the punishment and unemployment of attorneys.

23

**David Griffin**   There should be no publication of past charges settled and suspension served. These matters, at least in my case, are extortionate.  My settlement Judge was former adversary counsel who told me that I would lose, that Bar costs would likely exceed 50,000.oo and that a similar amount would be paid to my counsel.  As a senior atty at age 70 with pre Judgement and post Judgment condemnation on the website, I was out of business, had no income and huge costs due.

My case was one where I became ill with transient ischemia and referred my cases to other counsel.  All of the mistakes by these counsel were attributed to me and were baseless claims except for a couple of missed appearance by these other counsel.

I practicd law for over forty years without a single claim and then had a short suspension on a false claim that I put my personal funds in the trust account when it was a gross check for all costs and associated attorneys experts etc.  The balance was mine only after every one else was paid.  The balance was properly then moved to the operating account.

But for these I was drummed out of the corps and rendered penniless dues to the costs I couldn't pay for a settled charge.

This has literally ruined my life.  It not only defames me unjustly but is devastatingly punitive which is not the objective of the structure.  If a lawyer is incompetent or commits moral turpitude that is one thing.  But the micromanagement by Bar Bureaucrats who announce their conclusions and condemn decent practitioners with overwhelming negative ""finding"" to which the condemned is required to agree in this extortion is simply wrong."

**Ainhan Mina Tran**There should be some process for attorneys to request removal and/or expungement of disciplinary records based on the severity of the misconduct.  Factors that could be considered are:

1. Level of harm to the client if any
2. Pattern of misconduct given the number of years in practice
3. ""Good behavior"" or other types of equities or extenuating circumstances

For solo or small firms, even three years can have a gross adverse impact on the attorney's ability to practice and make a living.

Thank you for the consideration.

**Cory Nikolaus** I agree that attorney discipline should be removed from the website attorney profile page.  In the case of a probation with stayed suspension, I believe that the attorney discipline should be removed when the probation period ends so long as all of the terms of probation were met.  It is overly punitive to keep the information public for three years if an attorney agreed to a stayed suspension and complied with all terms of their probation.

24

**Anonymous** Public reproval 2 years instead of 3 years

**MICHAEL J. BARSI** With respect to ATTORNEY DISCIPLINE ON STATE BAR WEBSITE/ EXPUNGEMENT, I am unclear at to the meaning of the statement ""Both proposals recommend that eligibility for removal of discipline history from the website be conditioned upon no new discipline or active investigations during this period, and payment of all restitution.""

I am unclear as to what is meant by the phrase ""during this period"". What is the period?

Also, I am unclear what the meaning of ""Active"" investigations means. What period of time? Would those include complaints that were investigated and closed by the Ca State Bar with no action?

I believe the committee's recommendations of removal of discipline history from the state website should be solely based upon expiration of time with respect to ""non client"" related bar discipline which results in actual suspension for 30 days. Such Ca State Bar discipline based upon criminal misdemeanor convictions should be removed from the website within 5 years from reinstatement and expunged. I am a sole practitioner who had two misdemeanor convictions (not related to the practice of law or my clients) in 2008 and 2010 due to alcoholism (a recognized medical condition). I have not had a disciplinary action in over 10 years and I have been admitted to the Ca State Bar bar for 30 years. The disciplinary information on the Ca State Bar website regarding me has nothing to do with my practice or my service to my clients but rather my personal trials due to alcoholism over ten years ago. I don't believe I should have a lifetime sentence of disciplinary information on the Ca State Bar website. I have practiced law honestly and with integrity and I have never harmed a client's interests. I have no client related discipline in my 30 years of practice. As it stands now my Ca State Bar website discipline information will remain until the time of my death. I request that the recommendations be adopted with the caveat/modification that the disciplinary information on the website will not be eligible for removal ONLY if there is a current active investigation (not to include closed investigations without action) or disciplinary action occurred in the 5 years prior to the request for expungement or removal of disciplinary action from the website. Closed investigations without action should not be a basis for denial of removal or expungement. On a personal note, i want to say that this his possible change to state bar regulations is the first light I have seen for hope of restoring my reputation in over ten years. My past personal failures over ten years ago haunt me everyday and I ask that removal of disciplinary actions from the website and expungement be based upon rehabilitation and a reasonable period of time of a history without Stare Bar discipline. Thank you for your consideration

**Barbara Beard** REC4A_   I believe they may be inadequate.  I have been practicing for over 40 years. My first year my dues were late due to mailing address change from LA County to Orange County; thereafter from death in family due another move. Extreme upsets in my personal life. For the subsequent 39 or so years my Dues have been timely. I have committed no further

wrongs in the sight of the State Bar. Although these Rule changes state they are intended to address "disciplinary" matters, There no discipline, no reproval, no probation, no disbarment, only briefly suspended until my dues were received.  The Rules should address "suspensions for failure to pay dues in timely manner" in the same manner, but with a lesser consequence.  And, last but not least, I hereby request my "suspensions" be expunged in full.  I believe a 38-year penalty is sufficient, even if consecutive.  Thank you.

**George J, Gliaudys** Public reprovall should be removed after two years rather than as proposed three years.

**Anonymous** Private reproval should not be on the publicly available attorney profile page.

Bad-faith clients use the threat of ""reporting to the Bar"" to shake down the attorney for a variety of reasons of which the attorney is not at fault and has done nothing wrong. Anything posted publicly on the attorney's profile DOES affect business and will scare away potential clients. Therefore, if something is resolved through the Bar's non-public conflict resolution steps, it should NOT be listed on the attorney's public profile. If it is listed, the attorney will pay the cost in lost potential clients even if the attorney reaches a settlement with the bad-faith client through the non-public conflict resolution.

**Cristina Najarro** I think there should be a longer time if you are actually suspended, likely 7-10 years.

**Anonymous**    the timeframes should be shortened

**Jacqueline Anguiano**, on behalf of Consumer Attorneys of California [See attached letter from the Consumer Attorneys of California in link provided.]

**Carmen Garcia**  Agree that there should be a removal process so people do not have their disciplinary histories follow them through the entirety of their careers. However, perhaps there should be a petition process for at least some of the categories, rather than automatic removal. Also want to highlight that it is important that the State Bar consider who is empowered to make complaints. We would encourage the State Bar to find ways to inform more people of their abilities to file complaints. For example, the State Bar could look to the Medical Board's policy that requires all Medical Board licensees to have a physical notice in the office that provides information about how to file a complaint with the Medical Board. Something similar could be implemented for CA attorneys so that both clients and other staff who observe malpractice or other action that warrants discipline have information about and can feel empowered to make a complaint. This is of particular importance for complainants who are not traditionally empowered to speak up against people with more social and financial leverage, as attorneys often are.

**AGREE WITH PROPOSED RECOMMENDATION**

**Anonymous**    I am writing to provide some feedback and commentary on your deliberations regarding expunging disciplined attorneys' State Bar online profiles.

I believe the proposed time periods presented on the slide during your 04/28/2022 meeting, which I recall were capped at 5 years after a period of actual suspension, are appropriate with one caveat; I think it may be appropriate to require respondents to file a motion for the expungement and make a showing that they are unlikely to reoffend in the future. I think this strikes a fair balance between the interests of the respondents and the interests of the public. This all assumes that the Commission wants disciplined attorneys to learn from their mistakes and go on to a successful legal career and a life of dignity and privacy. If, like the OCTC members of the Commission, the Commission doesn't care about the interests of disciplined attorneys, then the existing policy works very well.

A few points you may wish to consider:

1) It may be worth studying data on recidivism rates for disciplined attorneys who do not reoffend within 5 years of the conclusion of their discipline conditions. It seems that the longer a disciplined attorney goes without subsequent discipline, the less likely they are to reoffend.

2) It may be worth treating conviction matters differently than original matters, insofar as convictions that are unrelated to the practice of law and do not involve moral turpitude.

3) It may be worth allowing disciplined attorneys to resign without charges pending after they satisfy all of their discipline requirements on the condition that their State Bar website profile is expunged. This would accomplish OCTC's goal of preventing disciplined attorneys from ever practicing again and the disciplined attorneys' privacy interests and their ability to succeed in a different career.

4) It may be worth considering a change to the State Bar website whereby Google cannot index attorney profile pages. This is consistent with every other licensed profession in California. This provides at least some measure of privacy for respondents.

5) Arguments that because conviction matters are already public record, it doesn't matter if the State Bar makes them public on its website are absurd and made in bad faith. Take as an example that the LAPD arrests someone for some crime, the district attorney files charges, and finally a conviction results. None of this information is on the internet in any form whatsoever, with one exception: the LA Superior Court has the charges and dispositions on its website, but in order to find this information, one would have to go to the LASC website, provide a credit card, search for the defendant and pay a few dollars. No reasonable person would do this unless they were conducting a focused investigation of the defendant. Furthermore, once the defendant has satisfied all conditions of the conviction, they can easily get the conviction expunged in which case the LASC information is revised to state that the charges were

27

dismissed. When the State Bar puts conviction information on an attorney's profile on its website, the information is returned with a simple Google search of the person's name and the information remains unchanged for all time.

In closing, the comments by the OCTC commission members should be viewed with a healthy degree of skepticism. The fact that OCTC has a vote in this matter is no different than having members of the Westboro Baptist Church sit and vote on a committee making recommendations on LGBT+ rights and inclusion; in other words, they are not going grant concessions to a category of people they have utter, unwaivering contempt for. To the rest of the commission, I hope you have some compassion and I urge you to make a fair decision.

Thank you for taking the time to read and consider these thoughts.    "

**Lenore Albert** The length should be parallel to the length of probation imposed. The suspension should be deleted upon completion of probation. Beyond that, there is no protection of the public being served and the Scarlet Letter is there only to punish or leave the attorney open to extortion and blackmail.

All members should be treated equally. Right now, they are not treated equally. If you are going to give your Scarlet Letter, give it to the State Bar golden children and post their NDCs and Opinions, too."

**David Speckman** See comments above.

**Scott W.**  This seems like a fair timeline for removal of attorney discipline from the attorney profile and would be consistent with other state licensing boards.

**Matthew Abbasi, on behalf of Abbasi Law Corporation**  I strongly believe that the proposed changes are fair and equitable for all concerned. Unfortunately, online an attorney's disciplinary records has become a weapon for rating companies which use such records to essentially black-mail lawyers into paying monthly protection money so that they will not look a criminal online for matters that took place many years ago. Also, clients are sometimes scared away from an attorney whom can help them for reasonable rates due to the manner an attorney's past records are posted on the website.

In sum, I believe that unscrupulous attorneys need to disciplined and the public should know about it. However, an attorney that has gone through the system, paid all fines and clients, and satisfied all requirements for a probation should not be tarred and feathered for life. "

**Lubarsky,  Alexander** I am a disciplined attorney. I was disciplined for making four errors on four different cases within a span of a few years after I had been practicing without any issues for over twenty years.  I admitted the errors - I had practiced over twenty years without errors but was going through a difficult time personally due to extenuating family issues and lost

28

focus.  I regret the errors that I made and how they negatively impacted my clients.   I was not disciplined for or charged with anything related to moral turpitude/ethical violations. I have never been arrested or charged with any type of criminal offense beyond some traffic tickets.

Pursuant to a negotiated plea with counsel for the Bar, I was suspended for 90 days and given two years of probation.  I am reinstated to practice now.  I made restitution to my clients, attended ethics classes and took and passed the MPRE in addition to other conditions. It is an honor to continue in my practice and I strive to do well for my clients and my community.  I regularly volunteer as a pro bono attorney for ALRP and other organizations and have done so for over twenty years.

My discipline has been nothing short of a scarlet letter ever since imposed and made public.  A Google search quickly reveals it and this has caused problems with my ability to find outside non lawyering employment and lawyering employment alike.  Some of my clients left me and others have stated they would not hire me given my discipline record.  I have been unable to obtain insurance coverage and the several referral programs with which I participated for decades no longer will accept me as a member.   Other attorneys who consult with prospective clients that are considering retaining me have told those prospective to steer clear of me.  Even when friends socially 'Google' me to see what I've been up to in general, they are met with my discipline case/status and I am forced to have to explain myself.  It is embarrassing and stressful.

It is very difficult to overcome the stigma of my suspension.  Although it was a ninety-day suspension, its effects will hinder me for life.  I do believe it is in the public interest to be able to learn about an attorney's discipline record but perhaps there is a less draconian 'middle ground' whereby it is not plastered over the internet for the world to see and judge on a permanent basis.

I am happy to provide additional feedback and perspective if asked to do so.

Thank you.

**kulvinder singh** It appears that a probation period is to complete certain responsibilities and pay fees.  After that requirement is completed, probation should end and the expungement take place immediately.   For that reason, this comment requests no 3 year or 5 year waiting period for removal of probation with stayed or actual suspension once the member has completed probation.

**Thomas E. Beck** These changes are long overdue. No legitimate purpose is served by continuing to post discipline that is 30 years old as has been my personal  baggage  since 1990. Police officers disciplinary records are required to be kept for only 5 years. Penal Code sec 1045. The public threat by a racist, vicious or dishonest cop is far greater than attorneys who don't have police powers and firearms at their immediate disposal. This is a welcome change.

29

**Cynthia**  It's a good start.

**Jack Woods** I have no recomendations to add to item 4.A .

**Edward Tabash**  Lawyers who rehabilitate themselves and who have "served their time" or in any way have completed the disciplinary process, should have a chance to have a clean record. For any violation, regardless of its severity or lack thereof to stay on a lawyer's record forever will hamper that attorney's ability to attract future clients. Lawyers who have taken steps to improve themselves shouldn't be forever hobbled like this.

**Josi Swonetz, on behalf of California Association of Black Lawyers** CABL advises the State Bar Board of Trustee to prioritize and implement Prof. Robertson's recommendations regarding expungement of five year old closed complaints and dismissed disciplinary proceedings.

**Richard Oberto** This is a much needed reform. I have attorney friends who have discipline records for minor infractions from decades ago that are publicly available on the Cal Bar website.

**Anonymous**   This recommendation is long overdue.  I suffered a misdemeanor conviction directly related a substance abuse problem.  I successfully completed probation and the Superior Court granted my petition to expunge the conviction.  If you Google my name, the first hit is my State Bar profile showing a criminal conviction.  I am almost unemployable due to my State Bar profile even though I am in a better mental and emotional state than at any time in my life.

Under present practice, my history will remain forever even though I am almost ten years sober.  I never suffered any criminal convictions before my methamphetamine addiction.  I have had no traffic tickets or even police contacts since becoming sober.  The State of California has expunged and dismissed my conviction.  The State Bar should coordinate its policies with the California law.  The legislature has authorized the expungement at the discretion of the State Bar and that discretion should be exercised.  This is particularly true regarding substance abuse related offenses unrelated to the practice of law.  The recommendation of the Ad Hoc Commission is well reasoned and should be adopted."

**Erika Roman**  [see attached letter for comment]

**David C. Carr**  The publication of attorney discipline of any degree on the State Bar's discipline inflicts substantial repuational damage on the discipline lawyer.  The assumption that public protection public has a right to know about until the lawyer dies is questionable in most cases. This proposal is a reasonable one that addresses both the public's right to know and the punitive nature of undue reputational damage.

30

**Edward O'Reilly** This is very important. Indeed, to have your record on display permanently is an unfairly harsh punishment, especially in today's social environment is a modern version of the ""Scarlet Letter"". It is also a financial penalty because of lost business and that should be considered.

The attorney who lodged the complaint against me, Duane Westrup, was a bankrupt, convicted felon who went to jail at least twice. At the time he was making false allegations about me, he was being held in contempt in a case filed by his ex-wife's estate for fraud. He concealed that information from the State Bar while he was attacking my character through his State Bar complaint.

Westrup, who is deceased, was called out by numerous Judges throughout the state for fraudulent conduct connected to his work on class action lawsuits. However, he had the resources and right ""pedigree"" to escape any discipline over the years. Obviously, if I knew his background, I would not have worked with him. His State Bar record was impeccable.

As soon as the State Bar posts online that a case has been filed against an attorney, their practice and reputation will be irreparably harmed. Because of my bar record I have been subjected to harassment, threats, shunned, lied about and humiliated by bad actors misrepresenting the information they obtained from the State Bar website. It has affected me professionally and socially. Rumors have been spread about me.

Except for my relationship with Westrup, I have never had a single complaint against me from anyone. Not a client, member of the public or fellow attorney in almost 17 years. I have over 120 5-Star reviews on Google and Facebook a single negative remark or grade. Yet I carry the burden of my record being exploited online. It is
reasonable to remove the attorney discipline information after a time.

After the closing of my case, and after years of avoiding it, Westrup provided his fingerprints to the State Bar. That is when negative information about Westrup's criminal record came to light, and after gaming the system for over 50 years he was suspended.

A record of discipline on the State Bar Website has a chilling effect on pro-bono work. I've always made it a point to give back to the community by providing people in need with help. Now, bad actors look me up online and use my record of discipline against me and the people I am trying to help.

For example, in a pro bono case, I am currently representing a single mother who is in fear of her life. Her violent ex-husband kidnapped their son and has turned him against her. On the same day my client received a bag of excrement in the mail, her ex-husband sent me an email me stating my "" professional record reflects you being discredited..."". This type of thing is a regular occurrence, and it feels like a slap in the face each and every time.

31

It's not only bad actors in the public. I have had opposing counsel in some cases try to use my record to their advantage, including sharing it with my clients. It's not fair.

The State Bar website is not friendly to lay people and can be a source of confusion.  As soon as the State Bar posts online that a case has been filed against an attorney, their practice and reputation will be irreparably harmed. Because of my record I have been subjected to harassment, threats, shunned, lied about and humiliated by bad actors misrepresenting the information they obtained from the State Bar website.

### DISAGREE WITH PROPOSED RECOMMENDATION

Stephanie Orourke Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff: in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided.]

**Paul Dougherty** Only persons of stalwart behavior should be allowed the extreme trust necessary to be allowed to practice law.

**Anonymous** "Private should not be on the website at all. Hence, ""private.""
Public reproval one year. It is low level. 3 years is excessive.
Probation, stayed, should be one year.
Probation, actual, should be three years."

**Jeremy Auslander** This is a public safety issue. An individual must know if the individual they're hiring has been disciplined in the past and for what reason. The attorney has every opportunity to state their side of the case if they so choose."

**Steven** Disagree empowering corrupt attorneys with even more non punishment. There are consequences for bad behavior.  We all see you protecting your best interests your corrupt low life attorneys [phrase redacted].

## RECOMMENDATION 4B.  EXPUNGEMENT OF ATTORNEY DISCIPLINE RECORDS

*The Ad Hoc Commission on the Discipline System recommends the Board of Trustees adopt the*
*following timelines for expungement of attorney discipline records:*
- *Private reproval:  1 year of when conditions are met*
- *Public reproval:  3 years*
- *Probation with stayed suspension:  3 years of conclusion of probation*
- *Probation with actual suspension:  5 years from reinstatement*
- *Disbarment:  Public indefinitely (no change)*

### AGREE ONLY IF MODIFIED

**Patricia Rodriguez**, **on behalf of Rodriguez Law Group, Inc.**   Eligibility for expungement of the
attorney discipline record would be based on no new discipline or active investigations during
the period, and payment of all restitution.

What does active investigation mean? I think it should be clear only complaints that lead to
filing of bar violation charges should stop eligibility. If someone has a complaint that is filed
against them that is investigated and closed it should not impede removal or expungment od
the disciplinary action.

**Garo Ghazarian** REC4B_ There need be a category for "voluntary resignation with charges
pending," who have subsequently been reinstated on the active roster of the California, and
attorneys who have maintained a discipline free law practice of five (5) or more years after
reinstatement should be eligible to have their "attorney discipline record" expunged.
Thank you.
Garo Ghazarian
Cal. Bar #152790"

**Melinda C Romines**    FIVE years is far too long! It extends the punishment and unemployment
of attorneys.

**David Griffin** Periods are too long.  They should be expunged one year at most after completion
of suspension not considering payments of costs and fees and certainly coincident with the
term of probation.
**Ainhan Mina Tran** There should be some process for attorneys to request removal and/or
expungement of disciplinary records based on the severity of the misconduct.  Factors that
could be considered are:

1. Level of harm to the client if any
2. Pattern of misconduct given the number of years in practice
3. ""Good behavior"" or other types of equities or extenuating circumstances

For solo or small firms, even three years can have a gross adverse impact on the attorney's ability to practice and make a living.

Thank you for the consideration. "

**Cory Nikolaus** I agree that attorney discipline should be expunged.  In the case of a probation with stayed suspension, I believe that the attorney discipline should be removed when the probation period ends so long as all of the terms of probation were met.  It is overly punitive to keep the information public for three years if an attorney agreed to a stayed suspension and complied with all terms of their probation.

**Cynthia**  The quicker you can give a person an opportunity to expunge something on their record the better. Just like early termination of probation in a criminal matter, you should allow early  expungement request.

**MICHAEL J. BARSI**    AGREE ONLY if Modified    "With respect to ATTORNEY DISCIPLINE ON STATE BAR WEBSITE/ EXPUNGEMENT, I am unclear at to the meaning of the statement ""Both proposals recommend that eligibility for removal of discipline history from the website be conditioned  upon no new discipline or active investigations during this period, and payment of all restitution.""

I am unclear as to what is meant by the phrase ""during this period"". What is the period?

Also, I am unclear what the meaning of ""Active"" investigations means. What period of time? Would those include complaints that were investigated and closed by the Ca State Bar with no action?

I believe the committee's recommendations of removal of discipline history from the state website should be solely based upon expiration of time with respect to ""non client"" related bar discipline which results in actual suspension for 30 days. Such Ca State Bar discipline based upon criminal misdemeanor convictions should be removed from the website within 5 years from reinstatement and expunged. I am a sole practitioner who had two misdemeanor convictions (not related to the practice of law or my clients) in 2008 and 2010 due to alcoholism (a recognized medical condition). I have not had a disciplinary action in over 10 years and I have been admitted to the Ca State Bar bar for 30 years. The disciplinary information on the Ca State Bar website regarding me has nothing to do with my practice or my service to my clients but rather my personal trials due to alcoholism over ten years ago. I don't believe I should have a lifetime sentence of disciplinary information on the Ca State Bar website. I have practiced law honestly and with integrity and I have never harmed a client's interests. I have no client related discipline in my 30 years of practice. As it stands now my Ca State Bar website discipline information will remain until the time of my death. I request that the recommendations be adopted with the caveat/modification that the disciplinary information on the website will not be eligible for removal ONLY if there is a current active investigation (not to include closed

34

investigations without action) or disciplinary action within the 5 years prior to the request for expungement or removal of disciplinary action from the website. Closed investigations without action should not be a basis for denial of removal disciplinary action from the website or expungement. On a personal note, i want to say that this his possible change to state bar regulations is the first light I have seen for hope of restoring my reputation in over ten years. My past personal failures over ten years ago haunt me everyday due to the information on the Ca State website (opposing attorneys have referred to it in litigation) and I ask that removal of disciplinary actions from the website and expungement be based upon rehabilitation and a reasonable period of time of a history of without State Bar discipline. Thank you for your consideration"

**Barbara Beard** REC4B_    I believe they may be inadequate.  I have been practicing for over 40 years. My first year my dues were late due to mailing address change from LA County to Orange County; thereafter from death in family due another move. Extreme upsets in my personal life. For the subsequent 39 or so years my Dues have been timely. I have committed no further wrongs in the sight of the State Bar. Although these Rule changes state they are intended to address "disciplinary" matters, There no discipline, no reproval, no probation, no disbarment, only briefly suspended until my dues were received.  The Rules should address "suspensions for failure to pay dues in timely manner" in the same manner, but with a lesser consequence.  And, last but not least, I hereby request my "suspensions" be expunged in full.  I believe a 38-year penalty is sufficient, even if consecutive.  Thank you.

**George J, Gliaudys**    Public reproval should be removed after two years rather than as proposed three years.

**Anonymous**    Private reproval should not be on the publicly available attorney profile page.

Bad-faith clients use the threat of ""reporting to the Bar"" to shake down the attorney for a variety of reasons of which the attorney is not at fault and has done nothing wrong. Anything posted publicly on the attorney's profile DOES affect business and will scare away potential clients. Therefore, if something is resolved through the Bar's non-public conflict resolution steps, it should NOT be listed on the attorney's public profile. If it is listed, the attorney will pay the cost in lost potential clients even if the attorney reaches a settlement with the bad-faith client through the non-public conflict resolution."

**Cristina Najarro** I think there should be a longer time if you are actually suspended, likely 7-10 years.

**Anonymous**    the timeframes should be shortened

**Carmen Garcia**  Agree with providing people with an opportunity with a second chance. There seems to be a need to create a formalized system for expungement, with a standard that

people must meet, and have that formalized system widely shared so there is less room for disparities based on social groups.

## AGREE WITH PROPOSED RECOMMENDATION

**Anonymous**    I am writing to provide some feedback and commentary on your deliberations regarding expunging disciplined attorneys' State Bar online profiles.

I believe the proposed time periods presented on the slide during your 04/28/2022 meeting, which I recall were capped at 5 years after a period of actual suspension, are appropriate with one caveat; I think it may be appropriate to require respondents to file a motion for the expungement and make a showing that they are unlikely to reoffend in the future. I think this strikes a fair balance between the interests of the respondents and the interests of the public. This all assumes that the Commission wants disciplined attorneys to learn from their mistakes and go on to a successful legal career and a life of dignity and privacy. If, like the OCTC members of the Commission, the Commission doesn't care about the interests of disciplined attorneys, then the existing policy works very well.

A few points you may wish to consider:

1) It may be worth studying data on recidivism rates for disciplined attorneys who do not reoffend within 5 years of the conclusion of their discipline conditions. It seems that the longer a disciplined attorney goes without subsequent discipline, the less likely they are to reoffend.

2) It may be worth treating conviction matters differently than original matters, insofar as convictions that are unrelated to the practice of law and do not involve moral turpitude.

3) It may be worth allowing disciplined attorneys to resign without charges pending after they satisfy all of their discipline requirements on the condition that their State Bar website profile is expunged. This would accomplish OCTC's goal of preventing disciplined attorneys from ever practicing again and the disciplined attorneys' privacy interests and their ability to succeed in a different career.

4) It may be worth considering a change to the State Bar website whereby Google cannot index attorney profile pages. This is consistent with every other licensed profession in California. This provides at least some measure of privacy for respondents.

5) Arguments that because conviction matters are already public record, it doesn't matter if the State Bar makes them public on its website are absurd and made in bad faith. Take as an example that the LAPD arrests someone for some crime, the district attorney files charges, and finally a conviction results. None of this information is on the internet in any form whatsoever, with one exception: the LA Superior Court has the charges and dispositions on its website, but in order to find this information, one would have to go to the LASC website, provide a credit

36

card, search for the defendant and pay a few dollars. No reasonable person would do this unless they were conducting a focused investigation of the defendant. Furthermore, once the defendant has satisfied all conditions of the conviction, they can easily get the conviction expunged in which case the LASC information is revised to state that the charges were dismissed. When the State Bar puts conviction information on an attorney's profile on its website, the information is returned with a simple Google search of the person's name and the information remains unchanged for all time.

In closing, the comments by the OCTC commission members should be viewed with a healthy degree of skepticism. The fact that OCTC has a vote in this matter is no different than having members of the Westboro Baptist Church sit and vote on a committee making recommendations on LGBT+ rights and inclusion; in other words, they are not going grant concessions to a category of people they have utter, unwavering contempt for. To the rest of the commission, I hope you have some compassion and I urge you to make a fair decision.

Thank you for taking the time to read and consider these thoughts.  "

**Lenore Albert**  The suspension should be deleted upon completion of probation. Beyond that, there is no protection of the public being served and the Scarlet Letter is there only to punish or leave the attorney open to extortion and blackmail.

Some attorneys in the OCTC withhold charges so that they can file successive Notice of Disciplinary charges. As such, there should not be any hold time for the later filed Notice of Disciplinary charges and Orders. If the State Bar does not add this section, the Orders will remain on the records that the State Bar OCTC office chooses indefinitely  mooting out the policy reason to make this change.

**Scott W.**  This seems like a fair timeline for expungement of attorney discipline and would be consistent with other state licensing boards.

**Matthew Abbasi, on behalf of Abbasi Law Corporation**    I strongly believe that the proposed changes are fair and equitable for all concerned. Unfortunately, online an attorney's disciplinary records has become a weapon for rating companies which use such records to essentially black-mail lawyers into paying monthly protection money so that they will not look a criminal online for matters that took place many years ago. Also, clients are sometimes scared away from an attorney whom can help them for reasonable rates due to the manner an attorney's past records are posted on the website.

In sum, I believe that unscrupulous attorneys need to disciplined and the public should know about it. However, an attorney that has gone through the system, paid all fines and clients, and satisfied all requirements for a probation should not be tarred and feathered for life. "

**kulvinder singh**  It appears that a probation period is to complete certain responsibilities and pay fees.  After that requirement is completed, probation should end and the expungement take place immediately.   For that reason, this comment requests no 3 year or 5 year waiting period for removal of probation with stayed or actual suspension once the member has completed probation.

**anonymous**    I agree if there is some consistency in determining private reproval, public reproval, etc.

**Jack Woods**    I have no recommendations above the currently listed recomendations in item 4.B

**Edward Tabash** This seems fair and apportions the length of time for expungement to the seriousness of the violation prompting the discipline.

**Josi Swonetz, on behalf of California Association of Black Lawyers**  CABL advises the State Bar Board of Trustee to prioritize and implement Prof. Robertson's recommendations regarding expungement of five year old closed complaints and dismissed disciplinary proceedings.

**Richard Oberto** This is a much needed reform. People should have a chance to clear their name after a reasonable period of time.

**Anonymous** I agree with this recommendation for the same reasons I agree with Recommendation 4A.

**Erika Roman**    [See attached letter for comment]

**David C. Carr**   The publication of attorney discipline of any degree on the State Bar's discipline inflicts substantial repuational damage on the discipline lawyer.  The assumption that public protection public has a right to know about until the lawyer dies is questionable in most cases. This proposal is a reasonable one that addresses both the public's right to know and the punitive nature of undue reputational damage.

**Edward O'Reilly**  I believe attorney records should be expunged.

**DISAGREE WITH PROPOSED RECOMMENDATION**

**Stephanie Orourke** "Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff: in addition to the text above, Stephanie Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided.]

**Paul Dougherty**  Disbarred them.

**Anonymous**  "Private should not be on the website at all. Hence, ""private.""
Public reproval one year. It is low level. 3 years is excessive.
Probation, stayed, should be one year.
Probation, actual, should be three years."

**Jeremy Auslander**  Disciplinary actions and violations should remain.
Your job is to protct the public, not a lawyer who failed to meet the standards of the license
they were given.

## RECOMMENDATION 5.  PRE-TRANSMITTAL MEETING FOR MISDEMEANOR CONVICTION MATTERS

*The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an Early Neutral Evaluation Conference in misdemeanor conviction matters subject to Rule 5.340 – 5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline, and if appropriate, evaluate a potential disposition of the matter.*

### AGREE ONLY IF MODIFIED

**Cynthia**  It's awful going through bar processes and very expensive. Make it better than it is for litigants.

**Anonymous** I would like the stakeholders to be stated.

**Jack Woods**    I believe public involvement would be a proper accent that would gain the trust of the public as lawyers have a reputation  which brings into question they're trustworthiness, honesty, proficentcy, and competence. The over-all goal is to increase the publics perception of those working in the field of Law.

### AGREE WITH PROPOSED RECOMMENDATION

**Chad pratt**  Enec with superior court judges !

**Benjamin Pavone**  See attachment for information about the problem with the limitless universe of ethical violations.

**Edward Tabash**  It's important not to be to quick to pull the trigger on a charge of moral turpitude. The more safeguards there are the greater the fairness to the accused attorney.

**Anonymous**    I will give the short, abbreviated version of my experience.  I suspect that others have experienced similar experiences.  My case is one example of how the State Bar's policy regarding misdemeanor convictions can at times be unduly harsh.

My arrest occurred on July 2, 2013, the last day to pay my State Bar dues.  I appeared at the 1945 Hill Street with sufficient cash but was five minutes late.  The cashier came down and told me it was too late to pay.  (I signed the check-in sheet and if it is still available you will see my name.)  I traveled to Los Alamitos to meet a friend at the Starbucks where I was planning to use my laptop to pay the fees online.  I had very little sleep in two prior days and was in a rush to get my fees paid and avoid an administrative suspension.

40

I did not have a credit or ATM card, so I arranged to meet a friend in Los Alamitos at the Starbucks to use his credit card to pay my fees online. While at the Starbucks, my laptop ran out of power, and I did not have the charging cord. I saw a Target across the parking lot so I went over in a panic and grabbed an after-market charging cord that turned out would not have worked. As I was leaving the store, security approached me in the parking lot, and I returned the cord.

I thought that the incident was resolved. I saw a chain motel and the end of the long parking lot and knew from experience they probably had a computer in the lobby. While I was in the lobby logging onto the computer, the police pulled up and came into the motel lobby and arrested me.

I had completely forgotten about the bags covering my license plates and oblivious that a homeless person in a car with bags over the license plates might arouse suspicion. I did not travel to Los Alamitos to take-down a Target in Orange County! Unaware of what was in the police report, I pleaded guilty to a misdemeanor so I could get out of jail since the judge would not release me OR. I never imagined that a misdemeanor conviction could lead to disbarment or even a lengthy suspension. At the time I pleaded, I thought the State Bar would give me a drug program. I could not afford an attorney for my State Bar proceedings.

Still another revealing fact as to my condition is that I did not go into rehabilitation until September 20, 2013. In retrospect, I was almost in a psychotic state. It was only after the State Bar Trial Counsel called to inform me that they would seek disbarment that I went into sober living. I have been sober for over nine years. I am just very grateful that I have regained my mental health. If I had received lesser punishment, I may not have worked so hard to regain my mental health.

If I had not come to the attention of the State Bar and the Target security had not called the police, I might be dead. The law review article uploaded in response to Recommendation 3 describes the challenges a person faces recovering from methamphetamine addiction.

When the State Bar charges were brought, there was no opportunity to delve into the facts surrounding my conviction. When an attorney is convicted of a felony involving moral turpitude, disbarment is automatic. My experience was the Trial Counsel was trained to treat misdemeanor convictions in the same manner. I was told I was lucky to avoid disbarment, so I jumped at the opportunity to take a deal with a two-year suspension. There was no opportunity to discuss the facts surrounding my conviction and it was true that I committed the offense. The only caveat is that a kinder, gentler approach may not have given me the motivation to work as hard as I have."

**David C. Carr**  Recommendation 5: Direct staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pretransmittal

meeting similar to an ENEC in misdemeanor conviction matters subject to rule 5.340–5.347 that would determine whether or not the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline and if appropriate, evaluate a potential disposition of the matter.

See comments to Recommendation 3.  The concept of moral turpitude is the problem child of disciplinary jurisprudence.  Our system would be better off discarding it, as the American Bar Association did when it approved the Model Rules in 1983, and specifically Rule 8.4(d). Unfortunately we are bound by opaque and obsolete 19th century statutes in the State Bar Act that exercise pernicious effect both in our rulemaking process and the prosecution of misconduct. The time and zeal that the discipline system spends in chasing the question of whether specfied conduct consitutes moral turpitude might inspire comparison with the Spanish Inquisition's tireless pursuit of heresy, except the this inquisition is expected and unfortunately necessary under current law. Moral turpitude is naturally confused with morality. Public protection seems to require retribution for some.  If we must have a moral turipitude inquiry, let it be at an early stage of the proceeding and coupled with a good faith effort to resolve the matter.

**Carmen Garcia**  Agree that it is very important to get stakeholder input throughout the process.

### DISAGREE WITH PROPOSED RECOMMENDATION

**Stephanie Orourke**    DISAGREE with the proposed recommendations    "Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff: in addition to the text above, Stephanie Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided.]

**Paul Dougherty**  Disbarred only.

**Steven**  Love how u waited until Thomas Giraldi was arrested and convicted with over 200 complaints in a 40 year period

## RECOMMENDATION 6.  ALTERNATIVE DISCIPLINE PROGRAM

*The Ad Hoc Commission on the Discipline System recommends that the Board direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether or not moral turpitude has resulted in significant harm to a client(s) or the administration of justice.*

### AGREE ONLY IF MODIFIED

**anonymous**    I would like the stakeholders to be stated.

**Anonymous**    Non-public alternative conflict resolution should be expanded.

The base assumption of the Bar should not be that attorneys are criminals or potential thieves or bad actors that must be proactively regulated, audited, and met with severe consequences if they make a mistake. The vast majority of attorneys practice ethically and in the best interests of their clients.

The overhead of running a law firm is complicated, and if something negative occurs, it is far more likely to be a result of mistake or misunderstanding rather than a will act of malfeasance.

**Cynthia**    See above

**Jack Woods** I completely concour with item 6

**NC CARLSON**    Moral Turpitude should remain in the file and be considered in the event of future misconduct in determining punishments

### AGREE WITH PROPOSED RECOMMENDATION

**Anonymous**    I have uploaded my comments to Recommendation 5 which describe facts unique to me and equally applicable to Recommendation 8.  Although my experience is a special case, it is illustrative of the potential problems with State Bar discipline as it relates to misdemeanor convictions related to substance abuse.  I suspect that other attorneys have experienced similar issues.

**Carmen Garcia** Agree that it is very important to get stakeholder input throughout the process.

**Chad pratt** Moral Turpitude too loosely defined. State bar can argue every case (eg you took $) is moral turpitude.

**David C. Carr**    Recommendation 6:   Direct staff to work with stakeholders to study and clarify all applicable rules involving referrals to the Alternative Discipline Program, specifically

43

concerning whether or not moral turpitude has resulted in significant harm to a clients or the administration of justice.

Current rules prevent participation in the Alternative Discipline Program for misconduct that is both moral turpitude, corruption or dishonesty and results in harm to clients or to the administration of justice.  This recommendation suggests confusion between these two independent requirements.

**Edward Tabash** The purpose of attorney discipline is to protect the public and to ensure the delivery of competent and honest legal services. Punishing just for the sake of punishing is not in keeping with this goal. So, explorations of the alternative discipline systems and ways in which it might be expanded give a greater chance for accused lawyers to improve themselves, make amends, and to not jeopardize public safety

## DISAGREE WITH PROPOSED RECOMMENDATION

**Stephanie Orourke**    DISAGREE with the proposed recommendations      "Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff:  in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in the link provided.]

44

## RECOMMENDATION 7.  EARLY NEUTRAL EVALUATION CONFRENCE RULES

*The Ad Hoc Commission on Discipline System recommends that the Board direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences as a mechanism for arriving at pre-filing settlements of State Bar disciplinary proceedings.*

### AGREE ONLY IF MODIFIED

**Jack Woods**   The individuals assigned to oversite review committee should have some degree of awareness that will show their Non Bias progressive direction and authority standings in the community the represent.

**Cynthia**  See above

**Mya**   Fire all that don't follow the law

**anonymous**    depends on who the stakeholders are

### AGREE WITH PROPOSED RECOMMENDATION

**Edward Tabash** the option for trying to find a prefiling settlements should always be there. However, again, lawyers who wish to vail themselves of a full trial should not be disciplined.

**David C. Carr**  Recommendation 7:  Direct staff to work with stakeholders to propose revisions to all applicable rules to promote the use of ENECs as a mechanism for arriving at prefiling settlements of State Bar disciplinary proceedings.  See Comments on Recommendations 3 and 5.  The ENEC process was created in 1999 to deal the backlog of cases generated by the shutdown of the discipline sytem in 1998.  It was such a good idea that it has continued to part of the State Bar Court since then.  One  problem is the short timelines that do not give judges sufficient time to evaluate the matter.  OCTC should be required to file an opening statement with the draft notice of discipline charges at least 20 days before the conference with a reply from Respondent 15 days later.  The exisiting Bench-Bar Committee could study the ENEC process and suggest more changes.

**Anonymous**    I have uploaded my comments to Recommendation 5 which describe facts unique to me and equally applicable to Recommendation 7.  Although my experience is a special case, it is illustrative of the potential problems with State Bar discipline as it relates to misdemeanor convictions related to substance abuse.  I suspect that other attorneys have experienced similar issues.

**Carmen Garcia**  Agree that it is very important to get stakeholder input throughout the process.

**DISAGREE WITH PROPOSED RECOMMENDATION**

**Stephanie Orourke**  Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.  [Message from staff:  in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided.]

## RECOMMENDATION 8.  PROGRESSIVE DISCIPLINE

*The Ad Hoc Commission recommends to the State Bar Board of Trustees analyze and modify Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regards to progressive discipline.*

### AGREE ONLY IF MODIFIED

**Jack Woods**    There must be a system implemented that will Preserve the Separation Of all committees as it relates political  Separation And/or involvement and relationship.

**Cynthia**  See above. I have no idea what you're talking about but the judges are not immune from racism either. Any judge at the State Bar is going to be really pinched-faced. I would just dread giving them any more discretion unless it is only to move in the more lenient direction.

**Mya**    Follow the law

**Carmen Garcia**  Agree with the goal of reducing racial disparities in discipline. We would recommend engaging with experts to ensure that judicial discretion would actually be likely to address racial disparities as providing more discretion by humans who are vulnerable to biases could result in the opposite. We would also like to posit that any disparity also is a result of who feels comfortable and knowledgeable about making complaints, so it is also important to disseminate information widely about how to make complaints and the discipline process to stakeholders, including clients and attorneys' administrative staff. There can often be a culture of silence, especially around the actions of financially powerful white attorneys, which needs to be addressed.

**Anonymous**    It should not be an ""automatic"" assumption that a prior complaint is an aggravating factor for determining discipline in the current complaint.

For example, there IS a difference between acts of malfeasance, acts of negligence that resulted in harm, harmless acts of negligence, and acts of ignorance or acts that are a result of an overwhelmed solo attorney or small firm without any ill-intent or obvious carelessness. "

### AGREE WITH PROPOSED RECOMMENDATION

**Edward Tabash** There should be increased discretion in meting out progressive discipline. The discipline should, as best as possible, always be apportioned to the violation. This will help avoid what I call the "death penalty for jaywalking syndrome."

**David C. Carr**   Recommendation 8: Progressive Discipline Analyze and modify sta ndards 1.6 and 1.8 to permit the greater exercise of judicial discretion regarding progressive discipline.

47

The Standards are ""mere guidelines"" and tempered by strong Supreme Court authority that the ultimate disposition in a discipline case should depend ""on a balanced consideration of the unique factors in each case""  (In the Matter of Van Sickle (Review Dept. 2006) 4 Cal. State Bar Ct. Rptr. 980, 994 (petition for review denied.) This important Supreme Court principle states in concrete terms the imporant role that judicial discretion plays in the discipline process and should be incorporated verbatim somewhere in the standards, possibly 1.7.  The standards as a whole should be looked at from the viewpoint of allowing appropriate judicial discretion consistent with Supreme Court decisions.

**Anonymous**    One overriding issue that runs throughout the issues presented by the Ad Hoc Committee is that the guidelines are too inflexible.  Judges should have more discretion.

**Lenore Albert**  Right now OCTC splits the NDCs and refuses to bring all charges so that they can take advantage of the progressive discipline. Moreover, Judges jump from the 30 day to 6 months skipping the other steps that other judges do not skip over making the punishment disparate (it is a punishment).

Attorneys beat the scandalous charges and like a Southern Cop knocks out a tail light and then rights the attorney a ticket for a technical infraction that ends up in suspension."

**Raymond Scott Hayden** There is one item I have seen in attorneys going through ""corrective actions"" when they go awry, and this is the retaking of the MPRE exam.

I did not see any discussion in the suggestions above, but wherever it might be, the MPRE should not even exist in the corrective action, or the admission of a California Attorney.

Logically, the passing score of 86 is, in reality, a 36 as the MPRE range is 50 to 150, an 86 is a laughable failure, and it is the highest score required to ""pass"" it.

The California Bar is far superior in their efforts to correct bad actions by attorneys, and the process should stay there, with CalBar."

### DISAGREE WITH PROPOSED RECOMMENDATION

**darryl genis**    unclear how this is phrased. From my experience, the court does not exercise any discretion to give downward variances only upward.

**Stephanie Orourke**    Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff: in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided.]

**Paul Dougherty** Disbarred,  never allowed again to practice

**Steven**  You need a civilian committee with non attorneys to expose all your corruption tyrants. [sentence redacted]

## RECOMMENDATION 9. ATTORNEY REPRESENTATION

*The Ad Hoc Commission on the Discipline System recommends the Board of Trustees implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 Court Appointed Counsel Program.*

### AGREE ONLY IF MODIFIED

**Jack Woods**    I would like to see a review of the advantages and disadvantages of this the current process colpaited to a  Salary payment position no further modification .

**Cynthia**  You need to make it more like the public defender system criminal law. I'm sure we can afford it.

**Mya**    Fire lawyers that violated our rights

**Carmen Garcia**   Agree that this could help alleviate racial and socioeconomic discrepancies in discipline orders, but would want the State Bar to ensure this is financially feasible for the Bar based on the fiscal impact that will be reported in the final recommendations.

### AGREE WITH PROPOSED RECOMMENDATION

**Edward Tabash** Definitely. Administrative proceedings that affect one's very livelihood can be seen as quasi criminal proceedings. Accordingly, a somewhat similar process to providing attorneys to criminal defendants, who can't otherwise afford counsel, is fair when dealing with lawyers facing discipline charges who are unable to afford effective defense counsel.

**David C. Carr**   Recommendation 9: Attorney Representation Implement a State Bar-Appointed Counsel Program based on an hourly rate structure similar to the State Bar Court's Appointed Counsel Program.

The discipline system is an adversarial system. It works better with knowledgeable advocates on both sides.  The most important decision on due process in the discipline system describes discipline as ""quasi-criminal"" (In Re Ruffalo (1968) 390 U.S. 544, 551.)  This is an administrative proceeding in the judicial branch concerning an important component of the justice system, lawyers, who are the key to access to justice.  Inability to afford counsel is factor in many, if not most lawyers, self-representing in discipline proceedings.  Appointed counsel would effectively address any disparate treatment of these litigants.

**Anonymous** I might be a special case, but I would have benefited greatly from representation.  I would refer to my comments on Recommendations 5, 6 and 7.  This recommendation might be costly.  If Trial Counsel are trained to recognize cases with mitigating circumstances at an Early

Evaluation Conference, it might go a long ways towards addressing potential inequities in the disciplinary system.

**Melinda C Romines**    ABSOLUTELY!   A HUGE majority of the State Bar's targets are sole proprietors who are often the ones working for a discount and pro bono.  To add a frivolous complaint, and take a convict at their word, but make the attorney prove innocence is absurd and the lawyers are SO expensive.
1-attorney firms are bullied.

**Cristina Najarro**  I strongly agree with this.

**Anonymous**    St Bar should do more to ensure that complainant is actually the one that is filing complaint.  Current scheme allows for too much ghost writing.  Complaining party must generally understand what he/she is complaining about instead of being the tool of a 3rd party.

Just as State bar enforces rules on attorney conduct and UPL it should also not ignore the rule against frivolous complaints.  It is a misdemeanor to file a frivolous complaint to the St. Bar. The misdemeanor language at end of complaint form should have meaning instead of being boilerplate.  BPC and Rules are not boilerplate therefore admonition/ /warning should not be boilerplate.

Also since St Bar classifies certain groups as vulnerable such as the elderly or the undocumented for the sake of implementing harsher punishment, the St. Bar should warn attorneys at large that the breach of the ethics with respect to the vulnerable will result in harsher punishment.  This warning may serve to dissuade attorneys without enough experience to confidently and competently tackle fields of law involving vulnerable groups. Otherwise the St Bar should not mete out harsher punishment for the breach of ethics involving representation of vulnerable groups.

If is unduly unfair to punish an attorney for attempting to represent a vulnerable group if he/she did not know that that increased punishment would arise in the event of an ethics breach.

**Erika Roman**   It would balance the playing field so that attorneys would not be left without counsel and could afford to prepare a defense. Most attorneys especially solo practitioners cannot afford to hire represenatation.

## DISAGREE WITH PROPOSED RECOMMENDATION

**Stephanie Orourke**  Attorneys should not self govern themselves, and the State Bar should have 90% public on State Bar Discipline Board.

[Message from staff: in addition to the text above, Orourke submitted the text of the attached news item. Given its length, the text has been redacted from this comment.  Please refer to the attachment in link provided]

**Paul Dougherty** Only represent themselves.

**Steven**  All your recommendations do nothing for the public. All your initiatives are self serving to further protect you spineless cowards. [sentence redacted]