

# The State Bar of California

**OPEN SESSION
AGENDA ITEM
60-1 SEPTEMBER 2023**

| | |
|---|---|
| **DATE:** | **September 21, 2023** |
| **TO:** | **Members, Board of Trustees**<br>**Sitting as the Regulation and Discipline Committee** |
| **FROM:** | **Leah T. Wilson, Executive Director** |
| **SUBJECT:** | **Ad Hoc Commission on the Discipline System Recommendations: Status Update Regarding Board-Directed Follow-Up Work** |

## EXECUTIVE SUMMARY

The Board of Trustees received the recommendations of the Ad Hoc Commission on the Discipline System at its January 19, 2023, meeting, and directed staff to take a number of follow up actions. This agenda item updates the Board on staff's work in response to the Board's directives, and specifically solicits feedback regarding responsive proposals in each respective topical area.

## BACKGROUND

The Board established the Ad Hoc Commission on the Discipline System in November 2020 to assess reforms implemented by the State Bar to further the efficiency, effectiveness, and fairness of the discipline system and to identify any additional improvements needed. On September 22, 2022, the Board received the commission's final report and recommendations and directed staff to issue those recommendations for a 60-day public comment period.

The commission convened on December 5, 2022, to review public comments received. The commission modified certain recommendations, and asked staff to draft new recommendations, based on that public comment.

Staff also developed a new topically related recommendation separately from the commission's deliberations for the Board's consideration.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

The Board of Trustees received the commissions revised recommendations and staff's suggested amendments and additions at its January 19, 2023, meeting. The Board directed staff to:

1. Reevaluate the current discipline cost model with a focus on reducing costs, including, but not limited to, restructuring the costs structure so that attorneys are not penalized for going to trial or review, and scaling fees when charges are dismissed.
2. Assess the need for a statutory amendment to eliminate disciplinary sanctions, given the commission's concerns, and report its findings to the Board.
3. Propose revisions to all applicable rules to promote the use of Early Neutral Evaluation Conferences (ENECs) as a mechanism for arriving at settlements of State Bar disciplinary proceedings.
4. Propose timelines for the removal of discipline from attorney profile pages on the State Bar website that are consistent with the practices of California regulatory agencies and other state attorney licensing agencies that currently have policies in place for both the display and removal of discipline histories from their respective websites.
5. Propose a definition of expungement of attorney discipline and submit the proposal to the Board for approval.
6. Study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an ENEC in misdemeanor conviction matters subject to rule 5.340–5.347 that would determine whether the facts and circumstances underlying the misdemeanor conviction involve moral turpitude or other misconduct warranting discipline.
7. Study and clarify all applicable rules involving referrals to the Alternative Discipline Program (ADP), specifically concerning whether moral turpitude has resulted in significant harm to a client(s) or the administration of justice.
8. Analyze and consider modifications to Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regard to progressive discipline.
9. Develop a plan to implement a State Bar Appointed Counsel Program based on an hourly rate structure similar to the 6007 State Bar Court Appointed Counsel Program.
10. Develop a proposal that addresses the website posting of discipline history for attorneys who resign with or without charges pending and the implications of future reinstatement, and submit the proposal to the Board for approval.
11. Develop a timeline and procedure for removing administrative inactive enrollments from attorney profiles on the State Bar website, and submit the proposal to the Board for approval; and it is
12. Explore the removal of criminal conviction transmittals and discipline from the profile page where the sole underlying basis for discipline was a criminal conviction that was expunged pursuant to Penal Code section 1203.4.
13. Update the Board on the status of resolutions adopted at the September 2023 meeting of the Board of Trustees.

This agenda item comprises that update. Development of the proposals and status updates outlined in the item involved a collaborative effort between staff in the Division of Regulation, Mission Advancement & Accountability Division, Office of Chief Trial Counsel, Office of General Counsel, Programs Division, and staff and judges in the State Bar Court. Staff has, in many instances, sought inter-departmental feedback

as well as reached out to the Association of Disciplinary Defense Counsel (ADDC) to ascertain that body's views. Certain proposals have also been shared with the California Association of Black Lawyers (CABL) for review and feedback, given the commission's original focus on fairness and equity initiatives that might respond to or address racial disparities in the State Bar discipline system. Lastly, staff sought feedback from Board of Trustee members Ray Buenaventura and Sarah Good, both of whom served on the commission.

As is reflected in the narrative, a consensus position regarding all the proposals was not reached internally, nor are the external stakeholders solicited universally in favor of all the options presented. Staff believes additional engagement and conversation is needed prior to Board adoption of any of these proposals, and presents this agenda item solely as an update. The Board is asked to discuss and advise staff at its September meeting as to the desired next steps regarding each of the areas addressed in this update.

## DISCUSSION

### I.   REEVALUATION OF THE DISCIPLINE COST MODEL

This proposal addresses the Board's directive to reevaluate the current discipline cost model with a focus on reducing costs, including, but not limited to, restructuring the model so that attorneys are not penalized for going to trial or review and that fees are scaled when charges are dismissed.

### Background

Business and Professions Code section 6086.10 directs the State Bar to recover costs associated with disciplinary investigation and court proceedings (hereafter costs) for matters that result in discipline. The State Bar identifies costs according to a "disciplinary fee model" established in 2002 and last updated by external consultants in 2010. The model estimates direct labor costs and administrative overhead costs for different case types and settlement/disposition levels. These estimates are generated by considering the average time taken by staff to perform specific tasks associated with individual case types and the level at which cases are settled or disposed. The model includes annual inflationary adjustments.

Table 1 sets out 2023 discipline costs for original and criminal conviction matters.

**Table 1. 2023 Discipline Costs for Original and Criminal Conviction Matters**

| Matters that… | Original Matters ($) | Conviction Referrals ($) |
|---|---|---|
| Default | 5,609 | 3,784 |
| Settle prior to Filing a Notice of Disciplinary Charges | 3,864 | Not applicable |
| Settle during the First 120 days of Proceeding | 4,516 | 3,160 |
| Settle before Pretrial Statement is Filed | 7,158 | 6,778 |
| Settle before Trial but after Pretrial Statement is Filed | 9,365 | 8,897 |
| Proceed to a One-day Trial | 9,365 | 8,897 |
| Proceed to a Multi-day Trial | 21,119 | 16,199 |
| Proceed to the Review Department | 25,834 | 23,157 |

The commission argued that the current cost structure unfairly penalizes respondents for contesting charges. For instance, costs for matters that proceed to a one-day trial are more than double for those that settle before filing a Notice of Disciplinary Charges (NDC). Costs for original matters that proceed to multi-day trials or review exceed $20,000. The commission also noted that California's costs are higher than parallel costs assessed by other states' attorney regulatory bodies. Further, the commission noted that boards overseen by the California Department of Consumer Affairs (DCA) are not allowed to recoup costs for going to trial. Business and Professions Code 1253 (c) limits costs as follows: "The costs shall include the amount of investigative and enforcement costs up to the date of the hearing, including, but not limited to, charges imposed by the Attorney General."

The commission also noted the unfairness of subjecting disciplined respondents to a cost assessment without considering proportionality in relation to the specific charges for which they were disciplined. For example, if a respondent succeeds in getting multiple serious charges dismissed but is convicted of one minor charge, there is no corresponding reduction in the fees assessed. There are no rules that provide State Bar Court judges with the discretion to lower discipline costs in such matters. Respondents must pay total costs even if they successfully reduce the final level of discipline afforded. Other than fees for attorneys or experts. current law allows respondents to request reimbursement from the State Bar only when exonerated of all charges for expenses they incurred in preparing for the hearing. However, disciplined respondents are subject to a cost assessment without regard for proportionality for the final set of charges for which they were disciplined. For example, if a respondent succeeds in getting multiple serious charges dismissed but is convicted of one minor charge, there is no corresponding reduction in the fees assessed.

Business and Professions Code section 6086.10(c) states that: "A licensee may be granted relief, in whole or in part, from an order assessing costs under this section, or may be granted an extension of time to pay these costs, in the discretion of the State Bar, upon grounds of hardship, special circumstances, or other good cause." Most relief is offered as an extension with three-year payment plans, rather than reducing or eliminating costs. Eligible attorneys can practice while making payments. Failure to pay costs (either in entirety or in accordance with payment plans approved by the State Bar Court) results in license suspension.

**Responsive Proposal**

Staff proposes revising the State Bar Court rules of procedure so that discipline costs may be waived at the Court's discretion while retaining the Court's ability to impose full costs for trial and review in appropriate circumstances. Examples of appropriate circumstances would include, for example, evidence of a lack of candor or dishonesty on the part of the respondent.

In addition, the revised rules would provide the Court with discretion to reduce costs for trial and review to what the Court determines to be reasonable based on all the circumstances, including, but not limited to, the extent to which a respondent "substantially prevails." Examples of substantially prevailing include, but are not limited to:

- The State Bar failed to prove the most serious charges;
- The State Bar failed to prove most of its charges, and the proven charges do not involve moral turpitude or warrant suspension;
- The case resolves for the same or less discipline as proposed by the respondent at an ENEC or within 60 days of disciplinary proceedings in the Hearing Department; and
- Respondent appeals and the Review Department imposes discipline that is less than what was recommended by the Hearing Department, and equal to or less than was advocated by Respondent on appeal or in the Hearing Department.

This approach addresses in part the commission's first concern regarding penalizing respondents for going to trial, and fully addresses the second concern regarding proportionality.

**Stakeholder Feedback**

In response to the Board's directive to reevaluate the cost model so that attorneys are not penalized for going to trial or review, staff initially explored the implications of eliminating all discipline costs associated with trial and review. This would have aligned the State Bar with the discipline cost recovery requirements in place for DCA boards and bureaus.

Staff discussed this proposal with the State Bar Court (SBC) and Office of Chief Trial Counsel (OCTC) to discuss potential impacts. The State Bar Court expressed concern that eliminating all costs associated with hearing and review would result in an increased number of trials. Increased trials would result in the need for additional attorney and administrative staff and judicial resources and could also impact the California Supreme Court's caseload and disposition timelines. With these concerns in mind, SBC staff reports that the SBC would support an across-the-board cut in discipline costs but would advocate for continued assessment of costs for trial and review. OCTC shared the SBC's concerns regarding resource implications, caseloads, and disposition delays.

OCTC articulated an additional basis for its objection to a blanket elimination of the SBC's ability to impose costs for trial and review; in cases where, after trial, the SBC has determined that the evidence was overwhelming and that the respondent either lacked candor or lied, OCTC believes that SBC should retain the ability to impose costs for trial and review.[1] OCTC expressed support for rules revisions that retain the SBC's ability to impose costs in appropriate circumstances but also provide the SBC with greater discretion to reduce costs to what the SBC determines to be reasonable based on its consideration of all circumstances including those outlined in the proposal above.

Staff discussed stakeholder concerns about the initial proposal to eliminate costs associated with trial and review with Trustees Sarah Good and Ray Buenaventura. Both Trustees agreed with the alternative proposal presented here, which is to revise rules so that the Court has greater discretion in waiving costs.

---

[1] Two recent examples are: *In the Matter of Kelly Duford Williams*, SBC-22-O-30161 (Hearing Dept. Decision filed January 5, 2023) ("at one point during trial, Respondent lied about having an impeachment document and stalled proceedings while she created a false document"); and *In the Matter of Tyler Timothy Kieler*, SBC-21-O-30558 (Hearing Dept. Decision filed March 8, 2022) ("Here, the court found that Respondent lacked candor when he proffered a fabricated document as evidence during the disciplinary investigations and trial in this matter.").

With respect to the commission's concern that respondents are levied costs without regard for prevailing on some charges, the ADDC expressed support for the responsive proposal and offered the examples of "substantially prevailing" included in that proposal. ADDC also proposes exploring a process akin to the "998 settlement offer" that is used in California civil proceedings. The "998 settlement offer" pertains to section 998 of California's code of civil procedure, which provides for any party to an action to make an offer to settle. If the offer is not accepted and the rejecting party fails to achieve a trial outcome surpassing the offer's terms, cost-shifting measures come into effect. ADDC suggests that a comparable settlement offer procedure could involve a complete waiver of costs if the respondents' trial result is more favorable than the last written offer by OCTC.

**Rule and/or Statutory Changes Needed**

Providing the SBC with discretion to waive costs under certain circumstances will require amendments to Rules of Procedure 5.130 and 5.131.

**Fiscal Impact**

To understand the potential impact of providing the SBC with discretion to waive costs associated with trial and review, staff analyzed the discipline costs associated with cases disposed in SBC between 2019 and 2022.[2] Original and criminal conviction matters comprised 92 percent of cases disposed during this period. Among these cases, just 20 percent were resolved with a trial.

An analysis of cost certificates (the initial amount of disciplinary costs OCTC presents to the SBC upon conclusion of trial) found that nearly $6.5 million in costs was assessed for original and criminal conviction matters during this period, and nearly half ($2.9 million) was assessed for matters that went to trial or beyond. A simulation analysis was conducted to estimate the impact of waiving all costs associated with trial and review on this $2.9 million. To simulate the amount assessed costs would have been had the Court had discretion to waive costs between 2019–2022, discipline costs for matters that went to trial and beyond were recoded to the highest value in the proposed cost model outlined above (*Settle before trial but after a pre-trial statement is filed*). For example, if a respondent's discipline costs in 2022 were assessed at $20,188 due to a multi-day trial, their costs were recoded to $8,952[3] for the simulation analysis. The estimated impact is a nearly 50 percent decrease in costs assessed. Under the current cost model, $2.9 million costs were assessed for matters that proceeded to trial between 2019 and 2022, whereas that amount would have been $1.5 million had the proposed cost model been in place. The $1.4 million total difference translates to $350,000 annually in reduced cost assessment. The SBC is unlikely to waive all costs associated with trial and review within a given year; therefore, this estimate should be interpreted as the maximum estimated impact. This maximum estimated impact should also be considered against the State Bar's current discipline cost recovery rate, which is less than 5 percent for disbarred attorneys.

---

[2] Data is not available to support estimation of the impact of fee scaling using the "substantially prevail" test.
[3] 2022 cost; 2023 cost reflected in Table 1.

6

**Table 2. Certificated Costs and Estimated Costs under Proposed Cost Model
Original and Criminal Conviction Matters Disposed in 2019–2022**

| Type of Matter | Cost Certificate Amount ($) | Estimated Cost Certificate Amount under Proposed Model ($) |
|---|---|---|
| **Original Matters** | | |
| No trial held | 2,715,620 | 2,715,620 |
| Trial held | 2,528,888 | 1,295,805 |
| **Criminal Conviction Referrals** | | |
| No trial held | 760,552 | 760,552 |
| Trial held | 426,194 | 246,053 |
| **Total Original and Criminal Conviction Referrals** | | |
| No trial held | 3,476,172 | 3,476,172 |
| Trial held | **2,955,082** | **1,541,858** |
| Total Costs | 6,431,254 | 5,024,120 |

## II.  MONETARY SANCTIONS

### Background

Business and Professions Code (BPC) section 6086.13 permits the imposition of monetary sanctions against licensees who are disbarred, suspended, or resign with charges pending. Section 6086.13 grants discretion to the Supreme Court to impose sanctions in these instances in the amount up to $5,000 per violation and $50,000 total. The section also requires the State Bar to adopt rules setting guidelines for the imposition of monetary sanctions on disciplined attorneys Pursuant to this statutory directive, the Board approved State Bar Rule of Procedure, rule 5.137, in April 2020.

The rule provides guidelines for the imposition of monetary sanctions, stating that the SBC shall consider all facts and circumstances of the discipline case and be guided by the following amounts as a total sanction:
- up to $5,000 for disbarment;
- up to $2,500 for actual suspension; and
- up to $1,000 for resignation with charges pending.

The SBC can deviate from the recommended total sanctions above and increase sanctions to the statutory maximum limit of $5,000 per violation and $50,000 per disciplinary order based on the facts and circumstances of each discipline case. The rule also provides the SBC with discretion to recommend that monetary sanctions be waived, in whole or in part, based on a number of circumstances, including "for good cause, or in the interests of justice."

Among 16 jurisdictions surveyed during the pendency of the commission, none reported imposing monetary sanctions in addition to disciplinary costs.

The commission recommended that the State Bar seek a statutory amendment to eliminate disciplinary sanctions because no other state bar appears to assess such sanctions, and the State Bar's discipline costs alone are high relative to those imposed by comparable agencies.

7

The Board directed staff to assess the need for a statutory amendment to effectuate the commission's recommendations. Staff has determined that a statutory amendment would be needed to completely eliminate sanctions, but the State Bar's implementing rule could be modified to substantially achieve the commission's objectives.

**Responsive Proposal**

Proposed amendments to rule 5.137 would reduce the SBC's recommendation for monetary sanctions to $0 except in cases of disbarment and significantly reduce the recommended sanctions amount for disbarment from up to $5,000 to up to $1,000. Because of the requirements of section 6068.13(a), the proposed amendments to rule 5.137 should not disturb the Supreme Court's discretion to impose monetary sanctions.

The current rule permits the SBC to recommend monetary sanctions in disciplinary proceedings resulting in actual suspension, disbarment, or resignation with charges pending, with recommended ranges up to $5,000 per violation or $50,000 total depending on the type of proceeding. The amendments would allow the SBC to recommend monetary sanctions up to $1,000 in connection with disbarment proceedings only. The SBC would still be authorized to deviate from the recommended range of up to $1,000 and impose the statutory maximum of $5,000 for each violation or $50,000 per disbarment order, based on the specific facts and circumstances of each case.

**Stakeholder Feedback**

The SBC agrees that Section 6086.13 should be repealed. Should the statute not be repealed, the SBC is supportive of the proposed amendments. ADDC also expressed support for the proposal as drafted. OCTC believes that monetary sanctions can be part of an overall package of discipline that appropriately serves the purposes of general and specific deterrence and also, because sanctions are deposited in the Client Security Fund (CSF), which reimburses client losses, furthers restorative justice. As a result, OCTC does not favor the repeal of Section 6086.13, does not favor the elimination of the State Bar Court's discretion to impose sanctions cases involving suspensions or resignations with charges pending, but agrees that the rules should be modified to make more clear that the imposition of sanctions is discretionary (consistent with the statute's language that discipline orders "may" include sanctions) and resetting/reducing the guideline amounts as determined appropriate while retaining the SBC's discretion to impose sanctions above or below the guideline amounts based on its consideration of all the circumstances.

**Rule and/or Statutory Changes Needed**

As noted above, elimination of sanctions altogether would require amendment of Business and Professions Code section 6086.13. The responsive proposal, however, could be effectuated solely through amendment of rule 5.137.

**Fiscal Impact**

Monetary sanctions collected are deposited in the CSF. The CSF received $17,000 in sanctions related revenue in 2021.

## III. EARLY NEUTRAL EVALUATION CONFERENCE

**Background**

Currently, rule 5.30 of the State Bar Rules of Procedure requires OCTC, prior to the filing of disciplinary charges, to inform the attorney in writing of the right to request an ENEC. Either side may request an ENEC within 10 days of the service of the notice, and the SBC is required to conduct the conference within 15 days of the request. OCTC is required to submit a copy of the draft NDC or a written summary of the proposed charges to the court at least three court days before the conference. Documentation must include the rules and statutes alleged to have been violated, a summary of the facts supporting each alleged violation, and OCTC's settlement position. At the conference, the judge must give the parties an oral evaluation of the facts and charges and the potential for imposing discipline.

To develop a responsive proposal on this topic, the SBC established a working group. Working group members noted that in their experience, ENECs are valuable in helping the parties to reach settlement and that this is often true even in cases where settlement is not reached prior to the filing of the NDC. By giving each side the opportunity to learn more about the other side's position regarding the case and educating respondents about the disciplinary process and potential sanctions, ENECs often bring the parties closer to settlement, even if agreement cannot be reached before an NDC is filed.

**Responsive Proposal**

The SBC working group focused on how the procedures for ENECs could be changed to make the ENEC a more meaningful discussion. To make it clear to the parties that the purpose of the conference is to help the parties determine if a settlement can be reached, the working group proposes that the ENECs be renamed as "Prefiling Settlement Conferences" or PSCs.

The working group further proposes several changes that will make PSCs more like other settlement conferences held in State Bar Court, changes that will ensure that both sides come to the conference better prepared with the information they need to determine if a settlement can be reached. The proposed changes to rule 5.30 will require the parties to meet and confer prior to the PSC, as they would prior to a post-filing settlement conference. Pursuant to rule 1206 of the Rules of Practice, each party will be required to lodge a settlement conference statement that gives a brief statement of the case, states the party's settlement position, and summarizes the evidence the party intends to submit regarding aggravating or mitigating circumstances. Although these statements will not be required to be served on the other party, the hope is that the parties will exchange information prior to the PSC. If both sides come to the PSC with a fully informed understanding of the strengths and weaknesses on both sides of the case, a discussion targeted toward settlement is more likely to occur.

Finally, the SBC working group proposes eliminating the requirement that the court provide an oral evaluation of the facts and charges and the potential for imposing discipline. The SBC working group found that this is not generally useful in helping the parties reach settlement and noted that the requirement often calls upon the ENEC judge to make determinations without having sufficient information.

The proposed changes to rule 5.30 will specifically:
- Change the name of the conference from "Early Neutral Evaluation Conference" to "Prefiling Settlement Conference;"
- Expressly allow the PSC to be held more than 15 days after the request is made, if both parties agree to a specific later date;
- Eliminate the requirement for the judge to give an oral evaluation of the facts and charges and the potential for imposing discipline;
- Require the parties to meet and confer prior to the PSC;
- Require each party to lodge with the court a settlement conference statement, pursuant to the existing requirement in rule 1206 of the Rules of Practice; and
- Allows the court to reschedule a PSC if either party fails to timely submit the settlement conference statement and other documentation.

**Stakeholder Feedback**

The SBC working group's initial draft of proposed changes to rule 5.30 was circulated to OCTC and ADDC for their input. OCTC suggested that the attorney be required to submit a summary of the attorney's mitigation evidence, and suggested new procedures to apply when either side failed to submit the required documentation within the specified time. OCTC further suggested that the requirement for the judge to provide an evaluation be retained, noting that these evaluations are valuable and assist settlement. ADDC suggested that OCTC be required to provide additional documentation and support for its draft NDC.

The SBC working group reconvened to consider the comments and suggestions received and made several revisions to the proposed language of the rule. The SBC working group's revised proposal is summarized above.

**Rule and/or Statutory Changes Needed**

The proposal would require changes to rule 5.30 of the Rules of Procedure. If those changes are made, corresponding changes will also need to be made in the Rules of Practice of the SBC and in the Guidelines for Scheduling and Conducting Early Neutral Evaluation Conferences posted on the SBC website.

**Fiscal/Operational Impact**

The proposed change is intended to encourage settlement of more cases at the prefiling stage. If it is effective in getting more cases to settle early, it will reduce the workload of OCTC and the SBC by resolving more cases at an early stage, reducing the number of cases that go to trial. The new procedures for PSCs will require some additional work on the part of OCTC, as the

parties will have to meet and confer, and additional information will be required to be submitted in preparation for the PSC. However, the expected overall reduction in workload should more than offset the increased time required for preparation for and participation in the PSC.

## IV. ATTORNEY DISCIPLINE ON STATE BAR WEBSITE AND EXPUNGEMENT OF ATTORNEY DISCIPLINE

**Background**

The commission explored policy issues relating to public access to attorney discipline history. Although there is no statutory or rule requirement that the State Bar display public discipline history on the licensee's attorney profile page on the State Bar's website, the State Bar has chosen to facilitate the public's right of access to attorney disciplinary records, as prescribed by Business and Professions Code section 6094.5(f), by posting discipline records online. There is currently no time limit on how long such information is posted, contrary to the practice of other similarly situated state agencies, such as the Medical Board of California.

Business and Professions Code section 6092.5(e) states the State Bar shall "Expunge the records of the State Bar as directed by the California Supreme Court." The Supreme Court accepts original writ petitions for matters within its sole jurisdiction, including expungement of discipline. However, the expungement process may not be readily accessible; the State Bar was only able to find two instances where expungement petitions were filed. Further, there is no definition of expungement or an articulation of its consequences, in statute, the California Rules of Court, or the State Bar rules.

The commission's final recommendations included timelines for removing discipline history from attorney profile pages and expungement of discipline records. Addressing both website removal and the expungement process were viewed by the commission as a means of redressing historical racial disparities in discipline and aligning the State Bar with California's current criminal justice trends and the practices of other regulatory agencies. To avoid public confusion, the commission recommended the same timeframes for website removal and expungement:

- Private reproval: one year from when conditions are met[4]
- Public reproval: three years
- Probation with stayed suspension: three years of conclusion of probation
- Probation with actual suspension: five years from reinstatement
- Disbarment: public indefinitely (no change)

The commission did not clearly define expungement, and its recommended timeframes for website removal were considerably shorter and more expansive than any comparator agency

---

[4] If private a reproval is imposed before formal charges are filed, the discipline is part of the attorney's record but is not made available to the public unless as part of evidence in a subsequent discipline case. If the private reproval is imposed after formal charges are filed, the reproval is reported on the State Bar's website and is disclosed to the public upon request.

identified during the commission's deliberative process. The Board, in recognition of these facts, directed staff to propose timelines for the removal of discipline from attorney profile pages on the State Bar website that are consistent with the practices of California regulatory agencies and other state attorney licensing agencies and to propose a definition of expungement.

Public comments to the commission recommendations raised two other situations in which removal of information from an attorney's profile page may be appropriate: (1) removing discipline history when an attorney resigns with or without charges pending, and (2) removing administrative inactive enrollments. The commission asked staff to develop proposals for website removal in these situations.

At its January 2023 meeting, the Board directed staff to develop a proposal for website removal that was not contemplated by the commission: the removal of criminal conviction transmittals and discipline from the profile page where the sole underlying basis for discipline was a criminal conviction that was expunged pursuant to Penal Code section 1203.4.

**Responsive Proposals**

### A. Definition of Expungement

To differentiate expungement from the removal of discipline history from the attorney's profile page on the State Bar website, below, staff chose to define expungement broadly. The proposed definition of expungement is:

The disposition of an expunged disciplinary case will be updated to reflect that the discipline was expunged and the discipline will be removed from the licensee's public discipline history, including removal from the attorney's profile page on the State Bar website and, with very few exceptions, outlined below, the discipline will be deemed not to have occurred and the licensee may answer accordingly any question relating to their discipline history. This means that the expunged discipline cannot be used either as an aggravating circumstance or prior discipline pursuant to Standards 1.5 and 1.8 of the Standards for Attorney Sanctions for Professional Misconduct in a future disciplinary prosecution. Expunged records also could not be used by OCTC to identify patterns of misconduct.

The proposed definition of expungement does not relieve the licensee of their duty to disclose the discipline for purpose of determining the licensee's eligibility for a judgeship under the California Constitution, article VI, section 15. Consistent with the licensee's duty, the State Bar would continue to maintain a record of expunged discipline to report to the Commission on Judicial Nominees Evaluation or appropriate governmental entities involved in judicial elections the licensee's eligibility for a judgeship under the California Constitution, article VI, section 15. Questions that remain to be resolved include:
- Whether the SBC and OCTC would seal or otherwise remove expunged discipline from their records (including from the SBC docket search function) or whether the records would be maintained and updated to show that the matter had been expunged;
- Whether there is an applicable exception to statutory obligations to provide discipline

history or whether the discipline would be provided but with a caveat that the discipline has been expunged;

- Whether expunged matters would be available to law enforcement or other governmental agencies, including other professional licensing agencies; and
  - If not, whether the State Bar has the authority to withhold expunged records from law enforcement or other governmental agencies, including other professional licensing agencies.

*Timeline and Process for Expungement*

The Board directed staff to develop a proposed definition of expungement; that definition is outlined above.

The definition of expungement should also be considered in light of the mechanism for expungement. Currently, the Supreme Court has the sole authority to expunge records of the State Bar pursuant to the Supreme Court's primary and inherent power to regulate the profession and Business and Professions Code section 6092.5(e). The commission recommended timelines for record expungement equivalent to those of website removal, and recommended an automatic, versus petition-based, expungement process.

Staff has identified to options for expungement timelines and processes:

## Option A1. Status Quo

The Supreme Court maintains the sole authority to expunge disciplinary and administrative records of licensees. Given the expansive definition of expungement proposed, Option A1 proposes maintaining that structure and requiring that petitions for expungement be submitted to the Supreme Court.

## Option A2. Automatic Expungement

Under this option records meeting specified criteria would be automatically expunged.

## Stakeholder Feedback

In discussing this proposal with the ADDC, they expressed a desire that the language be mandatory rather than permissive (i.e., the Supreme Court should be required to grant the petition if the licensee meets the specified circumstances). Following staff discussion with ADDC, staff met with former Ad Hoc Commission members and current Board members Good and Buenaventura. Trustees Good and Buenaventura felt the process should not be discretionary and should instead be automatic without the need for filing a petition.

OCTC believes that the Supreme Court should retain discretion to grant or deny petitions for expungement based on all the circumstances. OCTC also believes that expungement should not prevent OCTC from considering the expunged discipline for internal investigatory purposes, including assessments of whether a particular respondent has a pattern of prior conduct warranting heightened scrutiny of a current complaint. OCTC believes this is consistent with the treatment of criminal records that are subject to the most common form of criminal

"expungement," that is the dismissal of an accusation or information pursuant to Penal Code section 1203.4(a)(1). Moreover, this approach would be more consistent with other regulatory agencies that discipline professionals; to OCTC's knowledge, no other such regulatory agency has any similarly broad approach to expungement of discipline.

**Rule or Statutory Changes Needed**

The adoption of a new definition of expungement may require the adoption or modification of a Rule of Court. Altering the process by which expungements occur would require the adoption of a new Rule of Court. Statutory amendments to protect the information from a CPRA request may also be needed.

**Fiscal Impact**

No significant ongoing fiscal impact identified though initial information technology investment would be needed to effectuate automatic expungement.

### B. Timelines for Removal of Discipline History from Attorney Profile Pages

After consideration of the Ad Hoc Commission's recommendation regarding timelines for removal of discipline from attorney profile pages on the State Bar website, the Board directed staff to propose timelines for removal that are consistent with the practices of California regulatory agencies and other state attorney licensing agencies that currently have policies in place for the removal of discipline histories from their respective websites.

The commission considered the length of time that discipline history remains on the profile page of the Medical Board of California, the California Board of Registered Nursing, and earlier research about other state attorney licensing agencies. Staff has identified two states, Florida[5] and Idaho[6], that limit website display of discipline.

The website removal policies for the Medical Board of California and the California Board of Registered Nursing are as follows:

| Intervention or Type of Discipline | Doctors<br><br>(Medical Board of California) | Nurses<br><br>(California Board of Registered Nursing) |
|---|---|---|
| Private Reproval | Not applicable | Not applicable |
| Public Reproval | 10 years from the effective date | 3 years from effective date |

---

[5] Florida only posts to their website discipline that occurred in the last 10 years. The section of the attorney profile page is called the "10-Year Discipline History."
[6] In Idaho, discipline information is public forever and is provided upon inquiry, but is posted for one to five years depending on the level of discipline.

| Intervention or Type of Discipline | Doctors (Medical Board of California) | Nurses (California Board of Registered Nursing) |
|---|---|---|
| Discipline including probation or probation with a stayed suspension | Indefinitely | 10 years from effective date |
| Discipline including probation with an actual suspension | Indefinitely (if this suspension is part of an interim suspension order or similar type order, indefinitely but only posted on the website while in place) | 10 years from effective date |
| Disbarment or Revocation | Indefinitely | Indefinitely |

With this context in mind, three options have been developed for the Board's consideration:

**Option B1: Align Removal from the Profile Page with the Medical Board of California**
The Medical Board's public disclosure information policy specifies that public reprimands are removed from the physician's profile 10 years from the effective date of the decision, and all other discipline is available on the physician's public profile indefinitely. This policy is based on Business and Professions Code section 2027. All other discipline remains on a physician's profile permanently.

Option B1 would specifically authorize removal of discipline from the attorney's profile page on the State Bar website, as follows:

| Intervention or Type of Discipline | Option B1 Removal from the Attorney Profile Page |
|---|---|
| Private Reproval | Not applicable |
| Public Reproval (including "public-private reprovals" that are imposed after formal charges are filed, making the matter public in the public) | 10 years from the effective date |
| Discipline including probation or probation with a stayed suspension | Indefinitely |

15

| Intervention or Type of Discipline | Option B1 Removal from the Attorney Profile Page |
|---|---|
| Discipline including probation with an actual suspension | Indefinitely |
| Disbarment | Indefinitely |

Public reprovals would be removed from the licensee's profile page 10 years from the effective date of the reproval, but information about public reprovals older than 10 years from the effective date would be available when the licensee's discipline history is requested other than through the website, and information about discipline other than public reprovals would be available indefinitely on the licensee's profile page.

*Impact of Website Removal*
The removal of discipline from the licensee's profile page would not constitute an expungement and would not relieve the licensee of an obligation to disclose the discipline in response to any question relating to their license status or discipline history, including on applications for other professional licenses. The removal from the licensee profile page also would not remove documents from other locations, including the State Bar Court online docket search, and would not change the fact that discipline history is a public record and would be available upon request.

**Option B2: Align Removal from the Profile Page with the Nursing Board of California**
The California Board of Registered Nursing's Policy on Internet Discipline Document Retention specifies that a decision resulting in a public reprimand will remain posted for three years from the date the action was final and, with the exception of license revocations, matters resulting in greater discipline remain posted for 10 years. License revocations remain posted indefinitely.

Similar to the Medical Board, even if documents are no longer posted to the website, the documents are considered a public record and are provided upon request.

Option B2 would specifically authorize removal of discipline from the attorney's profile page on the State Bar website, as follows:

| Intervention or Type of Discipline | Option B2 Removal from the Attorney Profile Page |
|---|---|
| Private Reproval | Not applicable |
| Public Reproval (including "public-private reprovals" that are imposed after formal charges are filed, making the matter public) | 3 years from the effective date |
| Discipline including probation or probation with a stayed suspension | 10 years from effective date |

| Intervention or Type of Discipline | Option B2 Removal from the Attorney Profile Page |
|---|---|
| Discipline including probation with an actual suspension | 10 years from effective date |
| Disbarment | Indefinitely |

Information about public reprovals older than three years from the effective date would be available when the licensee's discipline history is requested other than through the website. Information about stayed and actual suspensions 10 years from the effective date would also be available when requested other than through the website. Information about disbarments would be available indefinitely on the licensee's profile page.

*Impact of Website Removal*
The impact of website removal provisions outlined in Option B1 would apply to this alternative.

**Option B3: Independent State Bar Policy for Removal from the Profile Page**
The California Board of Registered Nursing's document retention policy was also thought to be too lengthy for some stakeholders. Therefore, staff offers a third option that potentially provides for website removal of more discipline types and on a potentially accelerated timeline. Option B3 is that staff develop proposed timelines based on recidivism data. While significant analysis is needed to refine this model and identify timelines, a preliminary review shows that for each of two recidivism metrics (new complaints filed with OCTC and new complaints investigated), the cumulative recidivism rates begins to flatten noticeably after five years.

For example, for new complaints investigated, the recidivism rate increased by 25 percent from 39 percent in year 1 to 64 percent in year 5; in the second five-year period it increased by only 5 percent, from 66 percent in year 6 to 71 percent in year 10. There is a similar pattern in the recidivism rate as measured by new complaints filed with OCTC, except the curve flattens earlier over same the 10-year period.

17

| | New Complaints Investigated | | | | New Complaints Filed | | | |
|---|---|---|---|---|---|---|---|---|
| Year | # Attorneys at Each Period | # Recidivating | Recidivism Rate at Each Period | Cumulative Recidivism Rate | # Attorneys at Each Period | # Recidivating | Recidivism Rate at Each Period | Cumulative Recidivism Rate |
| 1 | 862 | 332 | 38.5% | 38.5% | 862 | 186 | 21.6% | 21.6% |
| 2 | 530 | 109 | 20.6% | 51.2% | 676 | 87 | 12.9% | 31.7% |
| 3 | 421 | 55 | 13.1% | 57.5% | 589 | 46 | 7.8% | 37.0% |
| 4 | 366 | 34 | 9.3% | 61.5% | 543 | 16 | 2.9% | 38.9% |
| 5 | 332 | 25 | 7.5% | 64.4% | 527 | 12 | 2.3% | 40.3% |
| 6 | 307 | 18 | 5.9% | 66.5% | 515 | 11 | 2.1% | 41.5% |
| 7 | 289 | 15 | 5.2% | 68.2% | 504 | 5 | 1.0% | 42.1% |
| 8 | 274 | 12 | 4.4% | 69.6% | 499 | 3 | 0.6% | 42.5% |
| 9 | 262 | 7 | 2.7% | 70.4% | 496 | 3 | 0.6% | 42.8% |
| 10 | 255 | 6 | 2.4% | 71.1% | 493 | 2 | 0.4% | 43.0% |



Additional study would be required to identify the appropriate recidivism metric (complaints filed with OCTC, complaints investigated, complaints filed in State Bar Court, etc.) and to what extent the recidivism data is impacted by different initial levels of discipline. For example, upon initial review, the recidivism trend for those disciplined by reproval appears different than those disciplined with probation.

The impact of website removal provisions outlined in Option B1 would apply to this alternative.

**Stakeholder Feedback**

When staff discussed these options with both the ADDC and Trustees Good and Buenaventura, they felt that the timeframes were too long. The ADDC suggested five years (public reproval), eight years (probation (including stayed suspensions), and 10 years (discipline including an actual suspension), and indefinitely (disbarment). Trustees Good and Buenaventura preferred the timeframes recommended by the Ad Hoc Commission. CABL similarly suggested the timelines for removal from the profile page were too long. CABL recommended that the timeline in rules 9.8 and 9.31 of the Rules of Court could serve as a guide for the removal of any discipline from the attorneys' profile page. Rule 9.8(b)(3) and rule 9.31(f)(3) require that at least seven years pass between the end of an administrative suspension for nonpayment of fees or an inactive enrollment for MCLE noncompliance and the removal of those administrative actions from the attorneys' public profile.

**Rule and/or Statutory Changes Needed**

No statutory changes required. Other needed changes unclear.

**Fiscal Impact**

Options B1–B3 would result in both initial and ongoing fiscal impacts. Initially, information technology investment would be needed to effectuate automatic website removal. There may be additional ongoing costs associated with receipt and processing of requests for records that remain public but have been removed from the attorney profile page. The impact of these ongoing costs would depend on the volume of requests received.

### C.  Timeline for Removing Administrative Inactive Enrollments from Attorney Profile Pages

The Rules of Court, State Bar Act, and the Rules of the State Bar impose several obligations on State Bar licensees. If attorneys fail to comply with certain obligations, they may be involuntarily enrolled as inactive (e.g., MCLE compliance (Rule of Court 9.31(d)), fingerprinting (Rule of Court 9.9.5)), etc.). This enrollment is administrative, and no hearing is required. Currently, Rule of Court 9.8(b) (nonpayment of fees) and Rule of Court 9.31(f) (MCLE) permit the removal of a period of inactive enrollment from an attorney's public record.

Under the current rules, once an attorney has availed themselves of the procedure to remove an administrative inactive enrollment, they cannot have subsequent inactive enrollments removed from their public record. Further, other administrative inactive enrollments (e.g., CTAPP, fingerprinting, etc.) cannot be removed under current rules that only apply to nonpayment of fees and MCLE.

In response to public comments to the Ad Hoc Commission recommendations, the Board directed staff to develop a timeline and procedure for removing administrative inactive enrollments from attorney profiles on the State Bar website.

In developing the proposal, staff examined the criteria for one-time removal of the suspension for nonpayment of fees under Rule of Court 9.8(b) and the one-time removal of the inactive enrollment for failure to comply with MCLE pursuant to Rule of Court 9.31(f). To facilitate the removal of more nonpayment suspensions and administrative inactive enrollments, staff proposes the first administrative inactive enrollment be removed from both the licensee's profile page and their public record as soon as the administrative inactive enrollment ends.

In light of the criteria limiting removal of inactive enrollments in the current versions of rules 9.8 and 9.31, staff proposes that subsequent inactive enrollments should not be removed at the conclusion of the inactive enrollment. Instead, staff proposes the second through fifth subsequent inactive enrollments be removed from both the licensee's profile page and their public record three years from the date the inactive enrollment or nonpayment suspension ends. As with the first removal, for purposes of counting the second through fifth inactive

19

enrollments, all contemporaneously served inactive enrollments and nonpayment suspensions would count as one inactive enrollment.

Starting with the sixth separate administrative inactive enrollment, the licensee would no longer be eligible to have inactive enrollments removed from the profile page. The rationale for the graduated timeframes is an attempt to balance the ability of the attorney to have administrative actions removed from both their profile page and their public record with the public's ability to check the attorney's profile to evaluate whether there are potential practice management issues.

Proposal C:

| # of Inactive Enrollments | Profile Page Duration |
|---|---|
| 1 | Inactive enrollment period. |
| 2-5 | 3 years from the date the suspension ends |
| 6+ | Indefinitely |

While this proposal envisions removal of the administrative inactive enrollments and nonpayment suspensions from the licensee's public record, the proposal does not relieve the licensee of their duty to disclose the inactive enrollment or nonpayment suspension for purpose of determining the licensee's eligibility for a judgeship under the California Constitution, article VI, section 15. Further, the State Bar would maintain internal records as are necessary to determine the number of prior administrative inactive enrollments and nonpayment suspensions and to report to the Commission on Judicial Nominees Evaluation or appropriate governmental entities involved in judicial elections the licensee's eligibility for a judgeship under the California Constitution, article VI, section 15.

**Stakeholder Feedback**

ADDC has expressed support for a modified proposal that would remove administrative inactive enrollments and nonpayment suspensions from the attorney's public profile upon termination of the inactive enrollment.

**Rule and/or Statutory Changes Needed**

Implementation of Proposal C would require changes to rule 9.8 and rule 9.31 of the Rules of Court and a new Rule of Court which would authorize establish the criteria for removal of all administrative inactive enrollments from the licensee's public history consistent with the policy adopted by the Board.

**Fiscal Impact**

Proposal C would not likely result in significant ongoing fiscal impact identified though initial information technology investment would be needed to effectuate automatic website removal.

### D. Removal of Criminal Conviction Transmittals and Discipline from the Attorney Profile Page in Specified Circumstances

Conviction proceedings are initiated in the Review Department of the State Bar Court generally when the Office of Chief Trial Counsel transmits, or files, a certified copy of the record of conviction. While not raised by the Ad Hoc Commission or the public comments received on the commission's report, the Board directed staff to explore the removal of criminal conviction transmittals and discipline from the attorney profile page where the sole underlying basis for discipline was a conviction for which relief was granted pursuant to Penal Code section 1203.4.

An open question based on the Board's directive is whether "the sole underlying basis for discipline" limits this relief to licensee with no other discipline on their record or whether this relief would be available to licensees with prior discipline.

Three options have been developed for the Board's consideration. Under all options discipline imposed as a result of the conviction can be used as a prior record of discipline, including pursuant to Standards 1.5 and 1.8 of the Standards For Attorney Sanctions For Professional Misconduct. In addition, the impact of website removal provisions outlined in Option B1 would apply to this proposal.

**Option D1: Align with the Medical Board of California**

Business and Professions Code section 2027(b)(4) and (b)(5) provides that upon receipt of a certified copy of an order granting relief pursuant to Section 1203.4 of the Penal Code from a licensee, the Medical Board shall, within six months of receipt of the order granting relief, post notification of the order and the date thereof on its website.

Under Option D1, convictions resulting in transmittals to State Bar Court that are not subsequently dismissed would generally be available on the licensee's profile page indefinitely; however, within six months of receipt from a licensee of a certified copy of an order granting relief pursuant to sections 1203.4, 1203.4a, 1203.41, 1203.42, or 1203.425 of the Penal Code, the State Bar would post an additional notification stating that such relief was granted in the underlying criminal action and the date thereof on the licensee's profile page. Notwithstanding the limitation of relief to the notification, the transmittal and any discipline imposed would be removed from the attorney's profile page in accordance with the timelines for removal of discipline history from attorney profile page**s** adopted by the Board.

**Option D2: Removal of the Transmittal Only**

Generally, convictions resulting in transmittals to SBC that are not subsequently dismissed are available on the licensee's profile page indefinitely. However, if the disciplinary proceeding based on the transmitted conviction has concluded, within six months of receipt from a licensee of a certified copy of an order granting relief pursuant to sections 1203.4, 1203.4a, 1203.41, 1203.42, or 1203.425 of the Penal Code, the State Bar would remove the transmittal from the licensee's public profile page.

If the certified copy of an order granting relief pursuant to sections 1203.4, 1203.4a, 1203.41, 1203.42, or 1203.425 of the Penal Code is received before the disciplinary proceeding is concluded, the transmittal would not be removed until the proceeding is concluded.

If a transmittal results in discipline, the discipline shall remain posted to the licensee's profile page for the timeframe established by the Board for removal of discipline from the licensee's profile page.

**Option D3: Removal of Transmittal and Discipline History**

Generally, convictions resulting in transmittals to State Bar Court that are not subsequently dismissed are available on the licensee's profile page indefinitely. However, if the disciplinary proceeding based on the transmitted conviction has concluded, within six months of receipt from a licensee of a certified copy of an order granting relief pursuant to sections 1203.4, 1203.4a, 1203.41, 1203.42, or 1203.425 of the Penal Code, the State Bar would remove the transmittal and any resulting discipline from the licensee's public profile page.

If the certified copy of an order granting relief pursuant to sections 1203.4, 1203.4a, 1203.41, 1203.42, or 1203.425 of the Penal Code is received before the disciplinary proceeding is concluded, the transmittal and discipline would not be removed until the proceeding is concluded.

Option D3 will likely result in discipline based on criminal convictions being removed significantly faster than the timeframes for removal of discipline history from attorney profile page**s** adopted by the Board.

**Stakeholder Feedback**

During staff discussions with ADDC, ADDC expressed a preference for Option D3. During discussions with CABL, the preference was Option D2.

OCTC does not agree with this third option. Business and Professions Code section 6102(c), (e) specifically authorizes the State Bar to pursue discipline based on a criminal conviction irrespective of any order for "expungement" under Penal Code section 1203.4 or any similar statutory provision. This is because discipline based on a determination that the conduct underlying a criminal conviction involves moral turpitude or other facts and circumstances warranting discipline is distinct from the criminal conviction itself. Expungement of the criminal conviction does not alter the determination that the attorney's conduct warranted discipline. Removing from the licensee's public profile page the fact of the discipline based solely on expungement would disregard the public protection rationales underlying the timeframes otherwise set for removal of particular types of discipline. For example, if an attorney is convicted of spousal abuse in violation of Penal Code 273.5 and subsequently disbarred based on a recommendation by the SBC and determination by the Supreme Court that the underlying conduct involved moral turpitude, the expungement of the underlying conviction would under this third option mandate the removal of the disbarment from the attorney's profile within six months of the expungement, despite the recognition that in circumstances not involving a

criminal conviction, a disbarment based on moral turpitude would remain on the attorney's posted profile indefinitely. There is no basis for such differential treatment. Moreover, as outlined in the expungement section above (A), such an approach to expungement would be significantly out of step with the treatment of expungements for doctors and other professionals.

**Rule and/or Statutory Changes Needed**

No statutory changes required. Other needed changes unclear.

**Fiscal Impact**

Options D1–D3 would not likely result in significant ongoing fiscal impact identified though initial information technology investment would be needed to effectuate outlined automatic removal or "relief granted" provisions. There may be additional, ongoing costs associated with receipt and processing of requests for records that remain public but have been removed from the attorney profile page. The impact of these costs would depend on the volume of requests received.

### E. Proposal for Attorney Profile Page Display for Attorneys who Resign with or without Charges Pending

Attorneys may resign with no prior or pending discipline[7]; with prior discipline but without charges pending; or with charges pending.

The below would apply to both resignation with prior discipline, but without charges pending (i.e., all pending charges have been resolved & licensee is no longer on supervision) and resignations with charges pending.

- Remove all discipline from the website.
- Post a disclaimer on the licensee profile page of all resigned attorneys that states if the resigned attorney was disciplined, State Bar policy prohibits discipline history from being displayed on the profile page of a resigned attorney.
- Any discipline history remains a public record and is available upon request.
- If the licensee is ever reinstated, the discipline history would be reposted to the licensee's profile page.

The impact of website removal provisions outlined in Option B1 would apply to this alternative.

**Stakeholder Feedback**

The ADDC had no objection to Proposal E. In discussions with CABL, CABL suggested that we differentiate between people who resigned without charges pending and with no history of

---

[7] To voluntarily resign without charges pending, attorneys must submit a Voluntary Resignation form. The State Bar forwards the completed resignation form to State Bar Court, which, in turn, transmits these to the Supreme Court. Upon acceptance of the request by the Supreme Court, the Supreme Court issues a resignation order. This process is the same whether the licensee has prior discipline or not.

discipline, people who resigned with charges pending, and people who resigned with prior discipline as follows:

- The profile page of people who resigned without charges pending and with no discipline should say that they had no history of discipline;
- The profile page of people who resigned with charges pending should say that they had charges pending, but there was no adjudication of the charges; and
- The profile page of people who resigned with a prior history of discipline should include their prior discipline history.

**Rule and/or Statutory Changes Needed**

No statutory changes required. Other needed changes unclear.

**Fiscal Impact**

Proposal E would not likely result in significant ongoing fiscal impact identified though initial information technology investment would be needed to effectuate outlined automatic removal provisions.

## V.  PRE-TRANSMISSION SETTLEMENT CONFERENCES IN CRIMINAL CONVICTION MATTERS

Business and Professions Code section 6101 requires OCTC to transmit criminal conviction cases to the State Bar Court Review Department within 30 days of receipt if it determines that the case" involves or may involve" moral turpitude.

The 30-day time limit for transmittal of conviction records was the result of a 2019 amendment that extended the time limit from the previous five days. The rationale for this strict 30-day time limit is made clear by Business and Professions Code section 6094.5(d), which requires reporting on compliance with the time limit "to ensure that criminal conviction matters are handled competently, accurately, and timely."

The rules governing conviction proceedings are set out in the State Bar Rules of Procedure, rules 5.340 to 5.347. In particular, with respect to transmission, rule 5.341 provides as follows (emphasis added):

Conviction proceedings are initiated in the Review Department of the State Bar Court when the Office of Chief Trial Counsel files a certified copy of the record of conviction or sentence of incarceration for 90 days or more. If the conviction is not final as defined in California Rules of Court, rule 9.10(a), but becomes final later, the Office of Chief Trial Counsel must file a supplemental record of conviction containing sufficient proof that the conviction is final. Any record of conviction or sentence of incarceration for 90 days or more filed must be served on the attorney under rule 5.25.

The Early Neutral Evaluation Conference (ENEC) is held before filing an NDC. As discussed above, it is proposed that the rule governing ENECs be modified to rename ENECs as "Prefiling Settlement Conferences" (PSCs) and make PSCs more like other settlement conferences conducted by the State Bar Court. The current rule regarding ENECs, rule 5.30, applies only to

"the filing of disciplinary charges" and so does not apply to OCTC's transmittal of misdemeanor conviction records to the review department pursuant to rule 5.341.

The commission established an ENEC working group that met several times to explore the ENEC process, with discussions settling on two topics, one of which was the possibility of extending the deadline to transmit criminal conviction matters to allow for an ENEC. Working group members were divided on this point. Following discussion, however, the commission adopted the following recommendation regarding criminal conviction cases:

> The Ad Hoc Commission on the Discipline System recommends seeking a statutory amendment to extend the deadline for the transmission of criminal conviction matters in misdemeanor cases to allow for an ENEC.

This recommendation was presented to the Board of Trustees at its January 2023 meeting; after discussion, the Board did not adopt it.

The commission also established a Moral Turpitude working group, which met several times and also held a joint meeting with the ENEC working group. Working group members did not reach a consensus on any recommendations.

At the Board's January 2023 meeting, the Board directed staff to work with stakeholders to study possible revisions to all applicable rules to determine the feasibility of conducting a pre-transmittal meeting similar to an ENEC in misdemeanor conviction matters subject to rule 5.340–5.347.

**Responsive Proposals**

Because no change is being sought to the strict 30-day time limit for transmittal by OCTC of any conviction that "involves or may involve" moral turpitude, any modification to the rules must be such that any pre-transmittal meeting is completed in time to permit transmittal within the 30 days. With this in mind, two options are presented for consideration.

**Option 1: Optional OCTC Request for Pre-Transmittal Conference**

Amend rule 5.341 to provide that, prior to its filing of the record of conviction with the review department*, OCTC **may***, if it believes such a conference may affect its determination as to whether a misdemeanor conviction involves or may involve moral turpitude or other conduct warranting discipline, within three calendar days of its receipt of the record of conviction, request, with the request (and the attached record of conviction) served via email on the respondent, the scheduling of a pre-transmittal conference. If the respondent joins in the request within three calendar days of receipt of the notice, the court will schedule a pre-transmittal conference to be conducted within 14 calendar days of the date of respondent's notice of joinder. If a requested conference cannot be scheduled or conducted within the mandatory time frames, OCTC may proceed with transmittal.

**Option 2: Mandatory OCTC Request for Pre-Transmittal Conference**

Amend rule 5.341 to provide that, prior to its filing of the record of conviction with the review department, OCTC *must*, within three days of its receipt of the record of conviction request, with the request (and the attached record of conviction) served via email on the respondent, the scheduling of a pre-transmittal conference. If the respondent joins in the request within three calendar days of receipt of the notice, the court will schedule a pre-transmittal conference to be conducted within 14 calendar days of the date of respondent's notice of joinder. If a requested conference cannot be scheduled or conducted within the mandatory time frames, OCTC may proceed with transmittal.

Under either option, given the 30-day time limit for transmittals, the amended rules will not mandate additional subsequent pre-transmittal conferences, whether with the assistance of the court or between the parties, but such additional conferences will not be precluded by the rules, leaving OCTC the discretion to defer transmittal and participate in additional conferences if appropriate. Similarly, if the parties arrive at a settlement at a pre-transmittal conference but are unable to fully document the settlement through a stipulation within the 30 days, OCTC will retain discretion to defer transmittal to complete the stipulation if appropriate. Under the mandatory option, if OCTC failed to serve the required notice, OCTC would be precluded from transmitting until it served the required notice and a pre-transmittal conference was conducted within the timeframe set forth in Option 2 above.

**Stakeholder Feedback**

1. ADDC is in favor of pre-transmittal conferences and has strongly expressed its preference for Option 2, making such conferences mandatory. The State Bar Court is in favor of pre-transmittal conferences but some State Bar Court staff members expressed several concerns with the proposal, as follows: (1) generally, it is not realistic to expect the parties and the court to be able to routinely hold a pre-transmittal meeting within 30 days—and trying to do so may put unnecessary stress on the parties and the court; (2) even if the conference could be held within 30 days, the parties would find it difficult to complete the stipulation in the remaining time, which could create a disincentive for OCTC to enter into stipulations; and (3) if the pre-transmittal meeting is optional, as in Option 1, OCTC will rarely if ever request a pre-transmittal conference.

**Rule and/or Statutory Changes Needed**

Amendments to rule 5.341 and adoption of new rule 5.31 to specify procedures for pre-transmittal conferences, including time limits for OCTC to submit additional information regarding the conviction and for respondent to submit mitigating evidence to the court for consideration at the pre-transmittal conference. The amended rules will make clear that if a requested conference cannot be scheduled or conducted within the mandatory time frames, OCTC may proceed with transmittal.

**Fiscal/Operational Impact**

The proposed change is intended to encourage settlement/resolution of more criminal conviction matters prior to transmittal. If it is effective in getting more cases to settle/resolve prior to transmittal, it will reduce the workload of OCTC and the SBC by resolving more cases at an early stage, reducing the number of cases that are transmitted and subsequently go to trial. As noted by the SBC, however, the strict time frames proposed for pre-transmittal conferences may require additional work on the part of both OCTC and the SBC that could result in dedication of additional resources during the pre-transmittal period. If the proposal succeeds in resolving more cases prior to transmittal, however, the overall reduction in post-transmittal workload should offset the increased pre-transmittal workload.

## VI. STUDY AND CLARIFY ALL APPLICABLE RULES INVOLVING REFERRALS TO THE ALTERNATIVE DISCIPLINE PROGRAM

**Background**

In 2002, following the Legislature's establishment of the Attorney Diversion and Assistance Program, Business and Professions Code section 6230, *et seq,* the State Bar established two programs to implement the legislation: the Alternative Discipline Program (ADP), a State Bar Court-run program that addresses the substance abuse and mental health problems of attorneys against whom formal disciplinary proceedings have been initiated in the SBC; and the Lawyer Assistance Program (LAP), which helps attorneys, State Bar applicants, and law students who are struggling with stress, anxiety, depression, substance use issues, or personal and career concerns, was also established to implement the legislation. ADP participants must also be enrolled and participating in the LAP program, but the two programs otherwise operate independently with the SBC operating the ADP program, and the State Bar operating the LAP program. Decisions as to an ADP participant's progress, completion, or termination are made by SBC judges.

In 2007, the Supreme Court raised a number of concerns about the ADP program, including: (1) the amount of time and State Bar resources expended on ADP cases; (2) the lack of eligibility criteria for participation in the ADP; (3) the lack of any opportunity to seek de novo review of State Bar Court Hearing Department decisions and orders in ADP proceedings; and (4) the lack of timely public access to approved stipulations as to facts and conclusions of law.
In response to these concerns, in 2008 the Board considered a revised set of rules governing the operations of the ADP program which remain in effect today.[1] The memo to the Board summarizing the changes provided the following rationale for adding a moral turpitude eligibility requirement: "The failure of the State Bar and the Supreme Court to impose significant discipline upon attorneys who have committed serious acts of misconduct which has resulted in significant harm to the attorneys' clients and/or to the administration of justice not only undermines the public's confidence in the legal profession but also erodes the high professional standards rightfully expected of attorneys."

In 2022, the commission considered feedback from respondents' counsel regarding Rule of Procedure 5.382(C)(3), which provides that an attorney is ineligible to participate in ADP if the attorney's misconduct involves acts of moral turpitude, dishonesty, or corruption that have

resulted in significant harm to one or more clients or the administration of justice; and rule 5.382(A)(2), which makes participation in ADP contingent upon the court's approval of a stipulation of facts and conclusions of the law signed by the parties. Specifically, some members of the commission were concerned that when the parties dispute whether there was moral turpitude committed resulting in significant harm to a client or to the administration of justice, a stipulation cannot be reached thereby precluding participation without the opportunity to litigate the moral turpitude issue. Others were concerned that adding any kind of prerequisite for an evidentiary hearing and judicial determination of eligibility would be time and resource intensive for OCTC and SBC, and cause significant delay in the discipline process to the detriment of public protection.

Accordingly, the commission's recommendation, which the Board adopted, directed staff to work with stakeholders in studying and clarifying all applicable rules regarding referral to the ADP program.

**Responsive Proposal**

The ADP program has been operating for over 20 years and its rules have not been substantially changed in 15 years. It is staff's view that the program as a whole deserves a comprehensive review, with stakeholder feedback and input before any specific clarifying rule changes are made.

Staff recommends that the LAP Oversight Committee be tasked with this comprehensive review, given its expertise in the field. This work should be informed by data including demographic data, recidivism rates of program participants, and best practices in other settings, including the collaborative court model.

**Stakeholder Feedback**

Staff held a series of discussions and received input from the State Bar Court, the Office of Chief Trial Counsel, the ADDC, and the Lawyer Assistance Program and the leadership of the Lawyer Assistance Program Oversight Committee regarding the ADP program and the existing rules. Generally speaking, the various stakeholders appear to be in agreement that the existing eligibility requirements—particularly regarding moral turpitude determination—have caused considerable confusion and difficulty over the years and require clarification.

**Rule and/or Statutory Changes Needed**

Unknown at this time.

**Fiscal/Operational Impact**

Unknown at this time.

## VII. PROGRESSIVE DISCIPLINE

**Background**

The State Bar Standards for Attorney Sanctions for Professional Misconduct apply a policy of progressive discipline, generally requiring that each successive disciplinary proceeding in which culpability is found should result in more severe sanctions than the last. In accordance with this policy, Standard 1.8 (a) states, "If a lawyer has a single prior record of discipline, the sanction must be greater than the previously imposed sanction unless the prior discipline was so remote in time and the previous misconduct was not serious enough that imposing greater discipline would be manifestly unjust."

The commission's Progressive Discipline Working Group explored modifications to the discipline standards as a means of preventing the perpetuation of historical disparities in attorney discipline. Because prior discipline may reflect disparities in treatment, inflexible requirements to apply more severe sanctions to those with prior disciplinary histories can exacerbate those patters.

The Ad Hoc Commission Report concludes its description of the work of the working group by noting that "[t]here was widespread interest in modifying standards to allow for greater judicial discretion. However, there was also consensus that specific changes to the standards would require extensive and in-depth legal analyses beyond the commission's scope." The Board directed staff to engage in this additional analysis at its January 2023 meeting, specifically directing that staff analyze and consider modifications to Standards 1.6 and 1.8 to permit the greater exercise of judicial discretion with regard to progressive discipline.

The SBC working group established to take up the Board's charge started its work by looking at the history of how the Supreme Court has applied Standard 1.8 and its mandate for the imposition of progressive discipline. There has been a long history of the Supreme Court finding that progressive discipline is appropriate because a failure to reform behavior, after previous discipline, means that more severe sanctions are needed to affect future behavior. The Supreme Court has been clear in its direction that the SBC should follow the requirements of Standard 1.8. as written and should rarely allow exceptions beyond the narrow exceptions set forth in the Standard. *See, e.g., In Re Silverton*. ((2005) 36 Cal.4th 81.) However, in examining the history of the interplay between the language of Standard 1.8 and the Supreme Court's jurisprudence on progressive discipline, the working group found that the Supreme Court's strict application of progressive discipline is based on the language of the Standard. Thus, a change to the language of the Standard can be effective in allowing greater discretion in the imposition of progressive discipline.

The SBC working group then looked at several specific aspects of the language of Standard 1.8 that limit the SBC's flexibility in cases where there has been prior misconduct. First, the Standard is mandatory: if a lawyer has a prior record of discipline, the sanction must be greater than the previously imposed sanction, unless certain factors apply. Second, for an exception to be made to the requirement for progressive discipline to be applied, the prior misconduct must be both remote in time and not serious enough so as to make the imposition of progressive

discipline manifestly unjust. Third, the Standard does not allow for consideration of the seriousness of the current misconduct. Finally, Standard 1.8 does not allow for consideration of any other factors that might make imposition of progressive discipline unjust.

The working group developed draft language modifying these aspects of the rule, and adding a requirement that in any case where the SBC does not recommend or impose a sanction greater than the previously imposed sanction, the court must state its reasons for the lesser sanction. The working group also considered whether a corresponding change should be made to Standard 1.6, to include as a mitigating factor that the current misconduct is not serious, but decided that the existing language in Standards 1.6 and 1.7, coupled with the proposed changes to Standard 1.8, was adequate to provide greater flexibility and clear guidance as to how the seriousness of the misconduct should be considered.

**Responsive Proposal**

This proposal, drafted by the SBC working group and revised following the working group's consideration of stakeholder feedback, makes changes to Standard 1.8 to allow the greater exercise of judicial discretion in determining whether to recommend or impose progressive discipline as follows:

**1.8 Effect of Prior Discipline**

(a) If a lawyer has a single prior record of discipline, the sanction should ~~must~~ be greater than the previously imposed sanction unless the prior discipline was ~~so~~ remote in time, ~~and~~ the previous or current misconduct was not sufficiently serious to warrant greater discipline, ~~enough~~ or there are other circumstances that would make imposing greater discipline ~~that imposing greater discipline would be manifestly~~ unjust. In matters in which a lawyer has a single prior record of discipline and the court is not recommending or imposing a sanction greater than the previously imposed sanction, the court must set forth its reason(s) for not imposing a greater sanction.

(b) If a lawyer has two or more prior records of discipline, disbarment is appropriate in the following circumstances, unless the most compelling mitigating circumstances clearly predominate or the misconduct underlying the prior discipline occurred during the same time period as the current misconduct:

    1. Actual suspension was ordered in any one of the prior disciplinary matters;
    2. The prior disciplinary matters coupled with the current record demonstrate a pattern of misconduct; or
    3. The prior disciplinary matters coupled with the current record demonstrate the lawyer's unwillingness or inability to conform to ethical responsibilities.

(c) Sanctions may be imposed, including disbarment, even if a lawyer has no prior record of discipline.

**Stakeholder Feedback**

The SBC working group's initial draft of changes to Standard 1.8 was circulated to OCTC and ADDC for their input. ADDC stated its support for the SBC proposal. OCTC suggested a number of changes to the court's language, including the use of the word "should" to make it clear that the presumption is that progressive discipline will be applied unless one of the specified reasons for an exception is applicable. Upon consideration of OCTC's proposed changes, the SBC working group revised the language of the proposal, resulting in the language set forth above.

**Rule and/or Statutory Changes Needed**

As noted above, the proposed response will require changes to the language of Standard 1.8.

**Fiscal/Operational Impact**

The proposed change, giving State Bar Court judges greater discretion in determining the appropriate sanction when a lawyer has a prior record of discipline, is not expected to have a fiscal or operational impact.

## VIII. PLAN TO IMPLEMENT A STATE BAR APPOINTED COUNSEL PROGRAM

**Background**

The commission examined the impact that lack of respondent representation has on discipline outcomes, as empirically demonstrated by the State Bar's research on racial disparities in discipline and recommended that the State Bar develop a program that served attorneys who qualify for reduced license fees and undergo a formal discipline investigation by OCTC.

At its January 2023 meeting, the Board directed staff to develop a plan to implement a State Bar court-appointed counsel program based on an hourly rate structure.[8] To develop this plan, staff reviewed alternative attorney representation models, including the SBC Appointed Counsel (6007 program), the State Bar's 2201 OCTC conflict program, and the Alameda County Bar Association's criminal conflict-counsel programs. Key components of these programs are outlined in the table below and described more fully in the following sections.

|  | 6007 | 2201 | ACBA | State Bar Attorney Representation Program |
|---|---|---|---|---|
| Recruitment | State Bar Court/Internal | Contract Administrator | Contract Administrator | Provided by the contracted organization(s) |
| Professional Liability Insurance | Required | Not required | Provided under program contract | *TBD* |

---

[8] Given concerns regarding the State Bar's financial condition, the Board was explicit in not committing to funding separate and apart from 2023 midyear budget adjustments. The Board approved midyear adjustments at a specially set August meeting, too early for consideration of the proposed appointed-counsel program design. If the Board chooses to advance this idea, funding will be addressed as part of the 2024 budget development process.

| Administrative Tasks: Appointment, Case Assignment, Billing Review, and Compensation | State Bar Court | Contract Administrator | Contract Administrator | Contracted organization(s) are required to have administrative staff |
|---|---|---|---|---|
| Rate | $300/hour | $250/hour | $75–$150/hour | $300/hour |
| Cap on Billable Hours | Yes | No* | Yes | *TBD* |

\* Expenses exceeding $50,000 or more must be approved by the Board.

**6007 Program**

The 6007 Program appoints counsel free of charge when a licensee under investigation asserts a claim or SBC finds the licensee insane or mentally incompetent and is not represented by counsel during disciplinary proceedings in the SBC. Rule 1106 and rule 1107 of the Rules of Practice govern the operations for appointing, removing, and compensating the panel attorneys who take appointments in Business and Professions Code section 6007 (b)(1) and (b)(3) cases.

A team of SBC staff screens attorneys who apply to be placed on the panel to determine if they are qualified. All 6007 program-appointed attorneys are required to have active professional liability insurance. There are no limits to the time a panel attorney can remain on the panel. 6007 appointed counsel are compensated at an hourly rate of $300.

**Conflict-Counsel Programs**

The Office of Chief Trial Counsel (OCTC) recuses itself from cases where respondents are closely tied to the State Bar or pose other potential conflicts. These cases are referred to an external Special Deputy Trial Counsel (SDTC) under State Bar Rules of Procedure, rule 2201 (Rule 2201 program). The SDTC program is managed by an Administrator who is responsible for the assignment of cases to individual SDTCs. The hourly rate for 2201 counsel is $250. Unlike 6007 program panel attorneys, 2201 counsel are provided contractual indemnity by the State Bar.

The Alameda County Bar Association's (ACBA) Criminal Court Appointed Attorneys Program (CAAP) handles conflict criminal cases in Alameda County. ACBA is responsible for recruiting, appointing, and compensating participating attorneys and arranging for liability insurance coverage for all panel attorneys. ACBA has a tiered hourly rate model based on the type of case ranging between $75 to $150 per hour.

**Responsive Proposal**

Staff recommends developing a program like conflict counsel programs utilized by OCTC and administered by the ACBA. There is no logical "home" for such a program within the State Bar. As such, staff believes that, if the Board decides to support development of a new court-appointed counsel program, the administration of that panel should be outsourced via a

Request for Proposals. It is likely that this new panel could combine with the existing 6007, with both being managed by a contract administrator. Staff discussed this idea with the Association of Discipline Defense Counsel to gauge its interest in administering a conflict counsel program, but leadership shared the organization does not have paid administrative staff, and has concerns about the lack of liability insurance provided by the State Bar given program requirements to have it.

**Stakeholder Feedback**

As noted above, staff discussed the proposal with the Association of Discipline Defense Counsel. In general, ADDC was supportive, notwithstanding their concerns described above. Leaders from the California Association of Black Lawyers (CABL) were also supportive of the proposal.

**Statutory and/or Rule Changes Needed**

The Office of General Counsel has advised that a funded attorney representation program would require a statutory amendment or a California Rule of Court in order to be implemented. OGC further advises that it would be necessary to assess the potential risks associated with implementing a program featuring eligibility criteria that necessarily means that not all respondents have access to paid representation.

**Fiscal/Operational Impact**

Staff provided the Ad Hoc Commission with an analysis on the number of attorneys that would be served under a $250,000 pilot attorney representation program. The program would remain active until $250,000 in funds is exhausted an eligibility would be limited to attorneys who are undergoing a formal discipline investigation and whose incomes qualified for a 25 percent reduction in annual licensing fees ($60,478.35 in 2023 from all sources) or a 50 percent reduction in fees ($20,000 or less in 2023). The analysis has been updated here. Compensation rates of $300 per hour (the same rate attorneys are paid under the 6007 program) would result in 833 billable hours; however, the number of billable hours per case would vary by case closure stage. In 2022, 241 respondents who qualified for one of the two fee reductions described above underwent a formal investigation. The vast majority of these cases (91 percent) were closed in investigation while five percent were closed in prefiling and four percent were closed in postfiling. Members of the Association of Discipline Defense Counsel estimate that 20 billable hours are required, on average, for cases closed in investigation, 35 hours for cases closed in prefiling, and 60 hours for cases closed in postfiling. Staff estimates that approximately 37 attorneys would be served annually by a $250,000 pilot program.

## FISCAL/PERSONNEL IMPACT

Outlined in each Responsive Proposal section above.

## AMENDMENTS TO RULES

Rule amendments are outlined in each responsive proposal section above.

**AMENDMENTS TO BOARD OF TRUSTEES POLICY MANUAL**

None

**STRATEGIC PLAN GOALS & IMPLEMENTATION STEPS**

Goal 1. Protect the Public by Strengthening the Attorney Discipline System

d. 1. Align and implement recommendations of the Special Discipline Case Audit Committee and the Ad Hoc Commission on the Discipline System.

**RECOMMENDATIONS**

None

**ATTACHMENT LIST**

None