1

```
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
 1
                      FOR THE COUNTY OF ORANGE
 2
    DEPARTMENT C-53              HONORABLE ELAINE STREGER, JUDGE
 3

 4
    10675 SOUTH ORANGE PARK          )
 5
    BOULEVARD, LLC,                  )
                                     )
 6
                 PLAINTIFF,          ) CASE NO.
                                     ) 30-2012-00568954
 7
            VS.                      ) CL-UD-CJC
                                     )
 8
    NORMAN KOSHAK, HELEN KOSHAK,     )
                                     )
 9
                 DEFENDANTS.         )
10  _____)

11
                 REPORTER'S TRANSCRIPT OF PROCEEDINGS
12
                      FRIDAY, MARCH 1, 2013
13

14
15  APPEARANCES:
16  FOR PLAINTIFF:
17        SAMUELS GREEN & STEEL, LLP
          BY:  PHILLIP W. GREEN, ATTORNEY-AT-LAW
18        19800 MACARTHUR BOULEVARD, #1000
          IRVINE, CALFORNIA  92612-2433
19        (949) 263-0004
20
    FOR DEFENDANTS:
21
          LAW OFFICES OF LENORE ALBERT
22        BY:  LENORE ALBERT, ATTORNEY-AT-LAW
          7755 CENTER AVENUE, SUITE 1100
23        HUNTINGTON BEACH, CALIFORNIA 92647
          (714) 372-2264
24
25                                          ORIGINAL
26
27  JOANNE MIO, CSR NO. 10871
    OFFICIAL COURT REPORTER PRO TEMPORE
28
```

```
                         I N D E X


                          WITNESSES

PLAINTIFF'S          DIRECT    CROSS    REDIRECT    RECROSS
ELIZABETH KNIGHT      131       148



DEFENDANTS'          DIRECT    CROSS    REDIRECT    RECROSS

NORMAN KOSHAK          48        75        92

HELEN KOSHAK          105       174       177         178




                          EXHIBITS


                                           WITHDRAWN
PLAINTIFF'S         FOR I.D.  IN EVIDENCE  OR REJECTED
37-40 PLM DOCUMENTS   130        147



                                            WITHDRAWN
DEFENDANTS'         FOR I.D.  IN EVIDENCE   OR REJECTED
D   PHOTOGRAPH                   171
E   MODIFICATION      126        171
    AGREEMENT
```

1

CASE NUMBER:          30-2012-00568954-CL-UD-CJC

CASE NAME:            10675 S. ORANGE PARK
                      BOULEVARD, LLC, VS. KOSHAK


SANTA ANA, CALIFORNIA           FRIDAY, MARCH 1, 2013


DEPARTMENT C-53                 JUDGE ELAINE STREGER


APPEARANCES:                    (AS HERETOFORE NOTED.)


REPORTER:                       JOANNE MIO, CSR NO. 10871


TIME:                           (A.M. SESSION)


                - - O - -


1    THE COURT:  GOOD MORNING.  WE ARE HERE TO RESUME
2  THE TRIAL IN THE MATTER OF 10675 SOUTH ORANGE PARK
3  BOULEVARD VERSUS KOSHAK.  LET'S JUST PUT YOUR
4  APPEARANCES ON THE RECORD
5    MR. GREEN:  THANK YOU, YOUR HONOR.  PHIL GREEN
6  FOR THE PLAINTIFFS.
7    MS. ALBERT:  GOOD MORNING.  LENORE ALBERT ON
8  BEHALF OF OF THE DEFENDANTS, WHO ARE HERE TODAY.
9    THE COURT:  MISS ALBERT, YOU HAVE SUBMITTED TO
10  THE COURT A LOT OF PAGES.  BUT ONE THAT I'M MOST
11  INTERESTED IN AT THIS MOMENT IS YOUR LIST OF
12  WITNESSES.  THIS IS IN THE DOCUMENT THAT IS TITLED
13  "DEFENDANTS' AMENDED WITNESS LIST."
14    MS. ALBERT:  YES.
15    THE COURT:  I SEE YOU HAVE QUITE A FEW NAMES
16  HERE.  I WOULD LIKE TO KNOW SOMETHING -- BEFORE WE
17  START WITH THESE WITNESSES, I WOULD LIKE TO KNOW
18  BRIEFLY WHO THEY ARE AND WHAT YOU HOPE TO ESTABLISH

7

```
 1              I ANTICIPATE THAT HE WILL TESTIFY THAT HE
 2   WAS CONFIDENT IN MR. SCHNEIDER'S ABILITY TO CREATE
 3   THIS WHOLE LOAN PACKAGE AND MONITOR IT, KNOWING THINGS
 4   WENT INTO DEFAULT AND WHOM HE DEPENDED ON.  THAT'S
 5   WHAT I ANTICIPATE.  SO I ANTICIPATE IT TO BE VERY
 6   SHORT.
 7        THE COURT:  ALL RIGHT.  GOING ALONG, WHAT'S
 8   NEXT?
 9        MS. ALBERT:  THIS IS A HICCUP.  AND I IMAGINE,
10   IF I WERE OPPOSING COUNSEL, I WOULD BE STANDING UP
11   SCREAMING AT THIS POINT, WHICH WOULD BE THE PERSON
12   MOST KNOWLEDGEABLE FOR SAMUELS, GREEN & STEEL.
13        THE COURT:  WHICH IS A LAW FIRM?
14        MS. ALBERT:  YES.  THE ONLY REASON WHY I LISTED
15   THEM OUT OF AN ABUNDANCE OF CAUTION, WHEN THE PERSON
16   MOST KNOWLEDGEABLE FOR PLM LENDERS WAS ON THE STAND,
17   SHE STATED SHE DID NOT DRAFT THE TRUSTEE'S DEED UPON
18   SALE AND THE ASSIGNMENT AND DEED OF TRUST, WHICH IS
19   WHAT THEY'RE USING TO PERFECT THEIR STANDING FOR
20   POSSESSION IN THIS CASE.  IN FACT, THE TESTIMONY WOULD
21   PROVE THAT IT WAS SAMUELS, GREEN & STEEL.
22              SO THEIR WITNESS DID NOT HAVE ANY PERSONAL
23   KNOWLEDGE OR ANY KNOWLEDGE BECAUSE SHE COULDN'T
24   REMEMBER FROM THE RECORDS WHEN THAT ASSIGNMENT
25   OCCURRED.  IT IS OUR POSITION THAT THAT ASSIGNMENT DID
26   NOT OCCUR UNTIL AFTER THIS SALE, WHICH WOULD BE AN
27   INDEPENDENT BASIS FOR HAVING THE TRUSTEE'S DEED UPON
28   SALE BECOME VOID.
```

1    THE COURT:  OKAY.

2    MS. ALBERT:  OKAY.  IF WE GET THIS DONE IN

3 MAXIMUM TIME, AS I PLAN IT, I THINK THAT WOULD BE OUR

4 LUNCH.

5    THE COURT:  WHAT ARE YOU, A COMEDIAN?

6    MS. ALBERT:  THEN I WOULD PLAN ON HAVING THE

7 KOSHAKS TESTIFY NEXT.

8    THE COURT:  SO THAT WOULD BE YOUR DEFENDANTS?

9    MS. ALBERT:  YES.

10    THE COURT:  THAT'S YOUR LIST?

11    MS. ALBERT:  I DO HAVE MICHAEL KOSHAK, WHO'S ON

12 THE LIST.  HE'S ACTUALLY NORMAN KOSHAK'S BROTHER.

13    THE COURT:  WHAT DOES HE BRING TO THE TABLE?

14    MS. ALBERT:  HE IS A DOCTOR.  THERE WAS AN

15 INSTANCE LAST FRIDAY WHERE PART OF MR. KOSHAK'S

16 DEPOSITION WAS READ.  AND I THINK THAT, AFTER

17 MR. KOSHAK'S TESTIMONY IS EXPLORED TODAY, THERE WILL

18 BE NEED FOR A DOCTOR.  HE'S ACTUALLY A PHYSICIAN.

19    I TEND TO OFFER TO PROVE THAT MR. KOSHAK

20 HAS A BRAIN INJURY.  HE HAD A BRAIN TUMOR.  THEREFORE,

21 WHEN HE SAYS HE DOESN'T REMEMBER SOMETHING, HE JUST

22 HONESTLY MEANS, BECAUSE OF HIS MEDICAL CONDITION, HE

23 DOESN'T REMEMBER SOMETHING, AND IT HAD --

24    THE COURT:  WELL, WE'RE HARDLY GOING TO

25 CHALLENGE ANYBODY THAT SAYS HE DOESN'T REMEMBER.

26    MS. ALBERT:  HE MIGHT NOT BE A NECESSARY

27 WITNESS, BUT HE IS THERE JUST IN CASE --

28    THE COURT:  OKAY.

1    MR. GREEN:  YES, THAT, THE SAME THING THAT I'M

2  SORRY IF THE COURT HAD TO DO THE SAME.

3    THE COURT:  I JUST RECEIVED THEM THIS MORNING,

4  SO I HAVEN'T READ THIS MATERIAL.

5    MR. GREEN:  AND I HOPE YOU DON'T HAVE TO, YOUR

6  HONOR.  WHAT REALLY BOTHERS ME IS THE COURT GAVE A

7  SPECIFIC ADMONITION LAST FRIDAY, "MISS ALBERT, DON'T

8  INCLUDE THINGS THAT I HAVE ALREADY RULED

9  INADMISSIBLE," I.E. ANYTHING BEYOND 1161 AND 2924.

10    I WENT THROUGH ALL THOSE THINGS, YOUR

11  HONOR.  I HAVE TO REPRESENT TO THE COURT THAT AT LEAST

12  95 PERCENT OF IT ARE THINGS THAT THE COURT

13  SPECIFICALLY RULED ARE NOT ISSUES IN THIS CASE

14  ANYMORE, WHEN THE COURT FRIDAY MORNING MADE THE

15  SPECIFIC FINDING AT THE BEGINNING OF THE TRIAL, THAT

16  OUR MOTION IN LIMINE WAS GRANTED, THAT IN FACT THINGS

17  THAT ARE PROFFERED IN THIS SUMMARY PROCEEDING ARE TWO

18  VERY SPECIFIC ITEMS.  SO WE OBJECT TO ANY ATTEMPT TO

19  INTRODUCE THIS DEPOSITION TESTIMONY FOR THOSE REASONS.

20    THE COURT:  ARE YOU REFERRING TO ALL THE

21  DEPOSITION -- ALL OF THEM?  OR ARE YOU FOCUSING ON

22  ONE?

23    MR. GREEN:  WELL, WITH RESPECT TO THE PROCEDURAL

24  PROBLEM, IT'S ALL OF THEM BECAUSE THEY WERE NOT

25  PROPERLY PRODUCED.  IF WE GET BEYOND THE PROCEDURAL

26  PROBLEM, AGAIN, I THINK 95 PERCENT IS -- ACTUALLY,

27  THERE WERE THREE OR FOUR OR FIVE EXPERTS I DIDN'T HAVE

28  ANY OBJECTION TO BECAUSE THEY WEREN'T OBJECTIONABLE.

1   THEY'RE THINGS THAT THEY MAY HAVE ALREADY TESTIFIED TO

2   ANYWAY.

3            BUT I CAREFULLY WENT THROUGH IT ALL.  BUT

4   THE VAST MAJORITY OF ALL OF IT ARE THINGS THAT DON'T

5   RELATE TO WHAT THIS COURT HAS RULED ARE ISSUES TO THE

6   SUMMARYM PROCEEDINGS FOR EVICTION.

7         THE COURT:  DO YOU HAVE ANY OPINION OF HOW FAR

8   BACK CALENDAR-WISE, TIMEWISE EVIDENCE SHOULD BE

9   CONSIDERED RELEVANT?

10        MR. GREEN:  I DO, YOUR HONOR.

11        THE COURT:  WHAT IS YOUR OPINION?

12        MR. GREEN:  MY OPINION IS THAT CERTAINLY

13   ANYTHING BEFORE THE RECORDATION OF NOTICE OF DEFAULT.

14   IN FACT, I'LL GO BACK.  LET'S SAY FROM APPROXIMATELY

15   AUGUST 2008 FORWARD, BECAUSE ON THE NOTICE OF DEFAULT

16   ARGUABLY THERE ARE THINGS THAT NEED TO HAPPEN ON ANY

17   PARTICULAR STATUTE BEFORE YOU CAN DO THAT.

18            SO IF THAT IS PART OF 1161, BASICALLY FROM

19   AUGUST 2008 GOING BACKWARDS, NONE OF THAT IS

20   ADMISSIBLE ACCORDING TO THE COURT'S RULING.

21            EVEN THEN, WITH REPSECT TO THE NOTICE OF

22   DEFAULT -- THAT'S ADMISSIBLE.  AND IN FACT, NONE OF

23   THAT IS ADMISSIBLE UNTIL WE GET TO THE NOTICE OF SALE.

24   AND FROM THAT POINT FORWARD, THE NOTICE, THE TRUST

25   DEED SALE DOCUMENT.  THIS RELATES TO WHAT I'M GOING TO

26   OBJECT TO WITH RESPECT TO A LOT OF THE OFFERS OF

27   PROOF.

28            THIS IS A SUMMARY PROCEEDING.  WHAT WE

Case 8:18-bk-10548-ES Doc 700 Filed 03/03/22 Entered 03/03/22 22:00:47 Desc
Main Document Page 151 of 191
Doc 700 Filed 03/03/22 Entered 03/03/22 22:00:47 Desc
Doc#:6722

14

1  HAVE TO SHOW IS BASICALLY, WHICH WE HAVE -- AND NOW
2  WE'RE THEY'RE TO REBUT IT, IS COMPLIANCE WITH 1161 AND
3  2924.  AND IT'S SIMPLE.  1161 SAYS YOU HAVE TO DO A
4  THREE-DAY NOTICE.
5          AND 2924, ALTHOUGH IT LOOKS COMPLICATED,
6  IT ACTUALLY SAYS YOU HAVE TO SHOW YOU DID THE NOTICE
7  OF DEFAULT.  YOU HAVE TO SHOW YOU DID THE NOTICE OF
8  SALE.  YOU HAVE TO THE SHOW TRUST DEED WAS RECORDED.
9  AND YOU HAVE TO SHOW THAT THAT WAS PERFECTED, AND
10  THAT'S IT.
11          I BELIEVE THAT'S WHAT THE COURT RULED.  SO
12  THE COURT PROPERLY SAID, IF IN FACT YOU SHOW
13  SUBSTANTIAL PREJUDICE BECAUSE OF ANY PROCEDURAL
14  IRREGULARITIES IN THOSE FOUR THINGS, THEN BRING IT ON.
15  BUT OTHERWISE, YOU'RE NOT GONNA BE ABLE TO STATE A
16  CLAIM.  WITH THAT, I CAN KIND OF SEGUE INTO, IF THE
17  COURT DOESN'T MIND, THE OFFERS OF PROOF THAT HAVE BEEN
18  PROVIDED WITH REGARD TO THESE WITNESSES.
19          THE COURT:  ALL RIGHT.  WELL, LET'S TALK ABOUT
20  MR. GRYZIK.
21          MR. GREEN:  SURE.
22          THE COURT:  WELL, HE'S GOING TO SHOW THAT THIS
23  INVOLVES THE TWO NOTES --
24          MR. GREEN:  RIGHT.
25          THE COURT:  -- THAT WE TALKED ABOUT EXTENSIVELY
26  LAST TIME WHERE ONE WAS ERRONEOUS OR, AS YOU SAY, A
27  "TYPO," AND SHE SAYS IS NEFARIOUS.
28          MR. GREEN:  OKAY.  WE HAVE TWO MAJOR INDEPENDENT

1    PROBLEMS WITH ANY ATTEMPT TO OFFER THE TESTIMONY OF
2    THIS PURPORTED HANDWRITING EXPERT.
3             THE FIRST PROBLEM IS THAT THE COURT HAS
4    ALREADY RULED ON THE ISSUE FOR WHICH THEY ARE
5    ATTEMPTING TO OFFER HIM.  IN OTHER WORDS, THERE WERE
6    TWO NOTES.  THERE AREN'T TWO NOTES.  THERE IS AN
7    EXHIBIT 7 AND AN EXHIBIT 7A.
8             EXHIBIT 7, ORIGINALLY INTRODUCED, SHOWED
9    AN INCORRECT PRINCIPAL AMOUNT THAT WAS DUE AND A
10   SLIGHTLY INCORRECT MONTHLY PAYMENT THAT WAS DUE.  SO
11   WE OFFERED AND THE COURT ACCEPTED INTO EVIDENCE
12   EXHIBIT 7, WHICH IS THE CORRECTED FIRST PAGE THAT
13   SHOWS $863,000 DUE AS THE LAST PAYMENT AND THE MONTHLY
14   PAYMENTS WERE APPROXIMATELY 8,900 BEFORE THAT.
15            WE WENT THROUGH THE FACTS AND THE ISSUES
16   ON THIS.  IN FACT, I POINTED OUT TO THE COURT THAT
17   MR. KOSHAK HAD ADMITTED THAT THOSE AMOUNTS WERE
18   CORRECT.  THEN I ALSO SHOWED TWO DOCUMENTS MARKED AS
19   EXHIBIT 35 AND 36 THAT SHOW THE TRUTH IN LENDING
20   STATEMENT AS WELL AS CLOSING STATEMENT WHERE THOSE
21   WERE ADMITTED.  THEY HAVE HIS SIGNATURE.  HE ADMITTED
22   SIGNING THEM, AND THEY ALSO SHOW THESE AMOUNTS DUE.
23   SO WE WENT THROUGH ALL THIS.
24            AND PARENTHETICALLY, IF NEED BE, I CAN
25   READ DEPOSITION TESTIMONY FROM MR. KOSHAK WHERE HE
26   ADMITS TO SIGNING THE DOCUMENT.
27        THE COURT:  YOU DON'T NEED TO GO THERE.
28        MR. GREEN:  YEAH.  AND SO WE WENT THROUGH ALL

Case 8:20-cv-01087-ES-DCN Document 700 Filed 03/02/22 Entered 03/02/22 22:00:47 Desc
Main Document Page ID #:2204 Page 153 of 191

16

1　THIS, AND THE COURT SAID -- AND ALSO THE FACT THAT

2　THERE WAS A COUPON BOOK THAT HE GOT THAT THE WITNESS

3　TESTIFIED TO WHEREBY HE MAKES PAYMENTS.

4　　　　　　AND THE COURT MADE A RULING AND SAID, "I

5　FIND EXHIBIT 7A IS CORRECT." WITH RESPECT TO EXHIBIT

6　7, I DON'T KNOW HOW THE COURT PHRASED IT, AN

7　"INACCURACY," OR WORDS TO THAT EFFECT, AND SO WE WON'T

8　BE GOING INTO THAT AREA.

9　　　　　THE COURT: MY OWN NOTES SAY THAT I MADE A

10　FINDING THAT THE EVIDENCE SUBSTANTIALLY PROVES EXHIBIT

11　7 WAS A TYPO.

12　　　　　MR. GREEN: THAT'S RIGHT.

13　　　　　THE COURT: OKAY.

14　　　　　MR. GREEN: ANY ATTEMPT BY MR. GRYZIK TO OFFER

15　EVIDENCE ABOUT WHETHER OR NOT IT'S ACTUALLY HIS

16　SIGNATURE ON THE DOCUMENT IS MOOT AT THIS POINT

17　BECAUSE AT THIS POINT BECAUSE HE HAS SHOWN,

18　MR. KOSHAK, THROUGH ALL THE DOCUMENTS AND EXHIBITS

19　THAT HE TREATED IT AS VALID. SO THAT'S ONE PROBLEM I

20　HAVE WITH RESPECT TO MR. GRYZIK.

21　　　　　THE COURT: BEFORE YOU GO ON, EXHIBIT 7 WAS THE

22　TYPO. AND WHICH ONE WAS THE CORRECT ONE? IS THAT 7A?

23　　　　　MR. GREEN: 7A, YES. SO THAT'S PROBLEM ONE I

24　THAT I HAD IN ATTEMPT TO OFFER MR. GRYZIK. BUT THE

25　OTHER ONE IS A HUGE PROBLEM IN DUE PROCESS.

26　　　　　THE COURT: BEFORE YOU GO THERE, THIS WAS DONE

27　IN '05?

28　　　　　MR. GREEN: '05.

Case 8:05-cv-00487-ELS-DOC Document 700 Filed 03/02/22 Entered 03/02/22 22:00:41 Desc
Main Document Page ID #:20154 of 191

24

1   EXTREMELY LATE DISCLOSURE OF SOMEBODY WHO MAY OR MAY
2   NOT BE AN EXPERT BASED ON THEIR CPA STATUS.
3            SO IN SUMMARY, BUT FOR THE KOSHAKS, I'M
4   NOT HEARING AN OFFER OF PROOF RELATED TO THE ISSUES IN
5   DISPUTE IN THIS EVICTION ACTION FOR ANYBODY.  AND WE
6   WOULD OBJECT TO THEIR BEING CALLED TO TESTIFY.  WE
7   THINK IT'S A WASTE OF TIME.
8        THE COURT:  OKAY.
9        MS. ALBERT:  MAY I RESPOND, YOUR HONOR?
10       THE COURT:  YES, I'LL GIVE YOU A CHANCE.  WITH
11  THE -- I'LL KEEP MY MOUTH SHUT.  YES, YOU MAY RESPOND.
12  MR. GREEN HAS STATED WHY HE FEELS THAT ALL THIS
13  TESTIMONY IS UNNECESSARY, SO YOU MAY RESPOND.
14       MS. ALBERT:  THANK YOU, YOUR HONOR.  FIRST, WITH
15  REGARD TO THE BINDING FACTS THAT -- AS OPPOSING
16  COUNSEL HAS VIEWED THE CASE.  OPPOSING COUNSEL JUST
17  RESTED THEIR CASE AT THE END OF LAST FRIDAY.  DEFENSE
18  HAS NOT BEEN GIVEN THE OPPORTUNITY OR DUE PROCESS TO
19  PUT ON THEIR CASE YET.
20       THE COURT:  WHY DO YOU SAY THAT?
21       MS. ALBERT:  BECAUSE OUR CASE IS JUST OPENING.
22  THE DEFENSE'S CASE IS JUST OPENING.  THIS IS THE FIRST
23  TIME WE GET TO CALL A WITNESS.  SO IF THERE'S GONNA BE
24  FINDINGS OF FACT THAT ARE BINDING IN THE PLAINTIFF'S
25  CASE-IN-CHIEF, THEN OUR DUE PROCESS RIGHTS HAVE BEEN
26  CUT OFF BECAUSE WE HAVEN'T BEEN GIVEN ANY NOTICE OR
27  OPPORTUNITY TO BE HEARD ON OUR DEFENSES.
28            AS I UNDERSTAND, AS A TRIER-OF-FACT,

CONFUSION.

      THE COURT:  THAT'S WHAT YOU SAID.

      MR. GREEN:  THAT'S WHAT I SAID.

      MS. ALBERT:  SECOND, YOUR HONOR, WITH REGARD TO HAVING THE WITNESSES THAT WE HAVE IN THIS CASE, ALTHOUGH OPPOSING COUNSEL MARKED THEIR EXHIBIT NEXT IN ORDER, WHICH WOULD HAVE BEEN 35 OR 36, AS EXHIBIT 7A, IT DID NOT COME INTO THIS CASE UNTIL LAST FRIDAY.

      UP TO THAT TIME THEY WERE USING A NOTE OF $222,000, WHERE THE NOTE DID NOT MATCH WHAT THEIR NOTICE OF DEFAULT AMOUNT WAS.  SO WE WOULD NOT KNOW THAT WE WOULD HAVE TO CALL MR. GRYZIK.

      IN ANY EVENT, IN SEPTEMBER OF 2012 THAT NOTE WASN'T KNOWN TO THE DEFENSE.  AND YOUR HONOR MIGHT RECALL WE HAD PUT IN OUR NEW BRIEF, WHICH WE HAD SUBMITTED TO YOUR HONOR BEFORE SEPTEMBER 22ND, THAT NOW TWO NOTES APPEARED AT MR. KOSHAK'S DEPOSITION, WHICH WAS TAKEN ON OCTOBER 8TH, 2012.  THAT WAS THE FIRST TIME WE SAW THAT THERE WERE TWO NOTES.

      THEREFORE, THERE'S NO WAY, WHEN THIS TRIAL STARTED ON SEPTEMBER 6TH, THAT WE COULD HAVE KNOWN THAT WE WOULD NEED A FORENSIC DOCUMENT EXAMINER BECAUSE THERE WOULD BE A MANUFACTURING OF EVIDENCE IN THIS CASE BASICALLY.

      THE COURT:  SO IT'S YOUR THEORY THAT THIS SECOND NOTE THAT WAS PRODUCED WAY AFTER THE FIRST NOTE WAS SIGNED AND THAT IT WAS JUST KIND OF PIECED TOGETHER?

1   IS THAT YOUR THEORY?

2           MS. ALBERT:  WELL, IT WAS DEFINITELY DISCOVERED

3   IN OCTOBER OF 2012.  SO IT WAS DEFINITELY DISCOVERED

4   THEN.  IT WASN'T EVEN IN THEIR TRIAL EXHIBITS.

5           THE COURT:  HOW DO YOU RECONCILE THE FIRST NOTE

6   WITH THE OTHER TWO DOCUMENTS, WHICH WAS THE CLOSING

7   STATEMENT AND WHAT WAS THE OTHER THING?

8           MR. GREEN:  TRUTH IN LENDING.

9           THE COURT:  YEAH.

10          MS. ALBERT:  WELL, THE TRUTH IN LENDING, YOUR

11  HONOR -- YOU WILL HEAR EVIDENCE THAT THOSE ARE NOT

12  THEIR SIGNATURES.  THEY DON'T MATCH.  AND THERE ARE

13  TWO CLOSING STATEMENTS IN THIS CASE, YOUR HONOR.  ONE

14  IS WITH NORTH AMERICAN TITLE, AND ONE IS WITH FIRST

15  COASTAL MORTGAGE.  I DON'T KNOW HOW TO EXPLAIN SOME OF

16  THESE THINGS.

17          WHAT I CAN TELL THIS COURT -- NO ONE HAS A

18  FULL PACKAGE OF DOCUMENTS THAT IS CONSISTENT.  IT

19  DOESN'T MAKE SENSE.  IT'S ALMOST AS IF THE PLAINTIFFS

20  CAME IN AND SAID, "WE'RE GONNA FORECLOSE ON THIS

21  HOME," AND EVERY TIME THERE WAS A LITTLE BIT OF

22  DEFENSE GOING, "THIS DOESN'T LOOK RIGHT," ALL OF A

23  SUDDEN SOMETHING NEW COMES UP.  THERE'S ALWAYS THIS

24  MIRACULOUS DISCOVERY OF SOME OTHER KIND OF DOCUMENT

25  THAT SEEMS TO PROVEI IT.

26          THE COURT:  IS IT YOUR POSITION THAT THERE WAS

27  NO DEFAULT ON ANY NOTE?

28          MS. ALBERT:  IT IS OUR POSITION THAT THE

ORIGINAL DEFAULT DID NOT EXIST.

1          THE COURT:  THAT THERE WAS NO DEFAULT?

2          MS. ALBERT:  CORRECT, NOT UNTIL AFTER A BREACH

3     THAT PUT THEM INTO DEFAULT.

4          THE COURT:  IS IT YOUR POSITION THAT PAYMENTS

5     THAT HAD TO BE MADE WERE MADE?

6

7          MS. ALBERT:  YES.

8          THE COURT:  OKAY.

9          MS. ALBERT:  PAYMENTS WERE MADE.  THEY WOULD GET

10    CAUGHT UP, AND THEN THEY'D GO BACK.  THEN THEY WOULD

11    GET CAUGHT UP, AND THEN THEY'D GO BACK.  THE PROBLEM

12    WAS BECAUSE THERE WAS THIS MADE-UP TRUST TO BEGIN

13    WITH -- IT WASN'T LIKE THERE WERE MONETARY STATEMENTS

14    TO EVEN ALERT THE KOSHAKS.

15         THE COURT:  I THOUGHT I HEARD FROM SOMEONE THAT

16    THEY WERE ISSUED A PAYMENT BOOK.

17         MS. ALBERT:  A PAYMENT BOOK WHICH HAS NEVER BEEN

18    PRODUCED.  NO ONE'S EVER BEEN ABLE TO BRING IT UP TO

19    THE SURFACE.  IT HASN'T BEEN PRODUCED.  IT'S THIS

20    THING THAT'S OUT THERE THAT NO ONE HAS SHOWN ANYONE A

21    COPY OF.

22         THE COURT:  SO IT'S YOUR POSITION THAT THEY WERE

23    NEVER IN DEFAULT AND THAT THE NOTICE OF DEFAULT WAS

24    ERRONEOUS?

25         MS. ALBERT:  WELL, THE PROBLEM WITH THAT --

26    ACCORDING TO PLAINTIFF'S THEORY, THERE WERE A SERIES

27    OF NOTICES OF DEFAULT.  THIS WAS NOT THE FIRST ONE.

28    ONCE YOU GET TO THE THIRD DEFAULT, THE KOSHAKS SAID,

1    837, 1958.  THEN THERE'S -- OF COURSE THERE'S THE CASE

2    THAT THEY WERE ARGUING IN THE OTHER COURT, WHICH IS AN

3    UNLAWFUL DETAINER CASE, WHICH IS THE ASUNCION CASE,

4    ASUNCTION VS. SUPERIOR COURT, WHICH WAS IN SAN DIEGO.

5            THAT CASE WAS SIMILAR TO THIS CASE WHERE

6    YOU HAD LONGSTANDING HOMEOWNERS.  THEY GOT INTO SOME

7    TROUBLE WITH THEIR OTHER BILLS.  THEY WENT AND HAD THE

8    SECOND LOAN, SECOND DEED TRUST.  IT WAS A HARD MONEY

9    LENDER.  WHAT THEY DID WAS THEY CREATED THESE REALLY

10   HIGH PAYMENTS.

11           AND OF COURSE THEY DEFAULTED BECAUSE THE

12   OBLIGATION WAS HIGHER THAN WHAT THE ORIGINAL

13   OBLIGATION WAS.  THERE THE COURT OF APPEAL SAID --

14   THESE CASES, BECAUSE THEY HAVE IT'S A VIOLATION OF DUE

15   PROCESS RIGHTS NOT TO BE ABLE TO HAVE THE VALID

16   DEFENSE OF FRAUD AND --

17        THE COURT:  LET ME INTERRUPT FOR JUST A MOMENT

18   TO GET BACKGROUND.  THIS IS ALL ABOUT A SECOND TRUST

19   DEED?

20        MS. ALBERT:  RIGHT.

21        THE COURT:  WHAT'S THE STATUS OF THE FIRST TRUST

22   DEED?  I'M JUST CURIOUS.

23        MR. GREEN:  THE FIRST REMAINS IN DEFAULT.

24        THE COURT:  IT'S IN DEFAULT?

25        MR. GREEN:  RIGHT.

26        MS. ALBERT:  THE FIRST WANTS TO MODIFY.  THEY

27   MADE A LOAN MODIFICATION OFFER IN 2009.  THEY STILL

28   WANT TO MODIFY.  WE CHECKED WITH U.S. BANK AS OF

Case 8:18-cv-01487-JLS-DFM Document 237 Filed 03/02/22 Page 476 of Desc
Main Document Page ID #:3801 59 of 191

1   YESTERDAY, AND THEY'RE STILL WILLING TO MODIFY.
2   THEY'RE UNDER THE NATIONAL LOAN REASSIGNMENT PROGRAM.
3   THEY'RE STILL WILLING TO MODIFY.
4            THE LOAN AMOUNT THERE IS A LITTLE OVER
5   $300,000 TOTAL.  AND THE INTEREST RATE CURRENTLY IS AT
6   SEVEN PERCENT.  SO THEY HAVE A LOT OF ROOM TO MOVE
7   DOWN.
8       MR. GREEN:  YOUR HONOR, COUNSEL IS JUST
9   TESTIFYING.
10      THE COURT:  I JUST ASKED HER SOME BACKGROUND.
11      MR. GREEN:  AT SOME POINT I JUST HAVE TO --
12      THE COURT:  IT'S ACTUALLY NOT PART OF THIS CASE.
13  I WAS JUST CURIOUS ABOUT LEARNING A LITTLE BIT ABOUT
14  THE BACKGROUND.  YOU TWO HAVE BEEN WITH THIS CASE SO
15  LONG AND KNOW SO MUCH MORE THAN I DO, SO OCCASIONALLY
16  I WANT A LITTLE ABOUT THE BACKGROUND INFORMATION.
17      MS. ALBERT:  THEY HAVE NOT BEEN NOTIFIED OF THE
18  FORECLOSURE.  THEY HAVE NOT BEEN PAID OFF BY THE
19  JUNIOR ON THE CASE.  SO THEY'RE STILL UNDER THE
20  ASSUMPTION THAT THERE'S STILL GOOD TITLE AND THEY CAN
21  MODIFY THIS LOAN.
22      THE COURT:  ALL RIGHT.  WHAT ELSE DID YOU WANT
23  TO SAY?  NOW, WHY DO YOU THINK YOU NEED TO HAVE
24  SCHNEIDER AND MISS LEVENTHAL -- WHAT DO YOU NEED THEM
25  FOR?
26      MS. ALBERT:  MISS SCHNEIDER -- ACTUALLY, SHE
27  SEEMED TO BE THE MOST HONEST.  SHE SEEMED TO BE THE
28  MOST -- I MEAN, THE MOST FORTHRIGHT.  YOU GOT

THE COURT: OKAY.

MS. ALBERT. IT PROBABLY SHOULD. I AGREE WITH YOUR HONOR.

THE COURT: AND ONE OF THE REASONS WE CONTINUED THIS TRIAL FOR SUCH A LONG TIME WAS IN THE HOPES THAT YOU WOULD FINISH YOUR TRIAL IN THE TOWER AND THAT THE IMPORTANT ISSUES THERE WOULD BE SETTLED AND THIS WOULD BECOME MUCH SIMPLER, BUT SOMEHOW THAT DIDN'T HAPPEN.

MS. ALBERT: I APOLOGIZE TO YOUR HONOR. THEY FILED A MOTION IN LIMINE WITH REGARD TO THE BANKRUPTCY CASE. SO I FILED A MOTION LAST SUMMER WITH THE BANKRUPTCY COURT TO REOPEN THE CASE. THAT WASN'T HEARD UNTIL MID-FEBRUARY, AND I COULDN'T GET A STIPULATION TO REHEAR THAT TRIAL UNTIL LAST JANUARY. SO WE DISMISSED IT.

THE COURT: WAIT. YOU DISMISSED THE CASE THAT WAS IN THE TOWER OR THE BANKRUPTCY CASE?

MS. ALBERT: THE CASE THAT WAS IN THE TOWER, AND IT'S BEING REFILED IN THE U.S. --

THE COURT: SO AT THE MOMENT THERE'S NO CASE PENDING IN THE TOWER? HAVE BOTH CASES BEEN DISMISSED?

MR. GREEN: NO.

THE COURT: I WAS UNDER THE IMPRESSION THAT MR. KOSHAK'S CASE WAS DISMISSED WITHOUT PREJUDICE ON HIS OWN VOLITION AND THAT MRS. KOSHAK'S CASE WAS STILL PENDING. BUT HAS THAT ONE ALSO BEEN DISMISSED?

MS. ALBERT: NO. THAT ONE IS STILL PENDING.

THE COURT: HERS IS PENDING.

1    MS. ALBERT: YOUR HONOR, I'M HEARING MORE OF A

2    WILLINGNESS FROM OPPOSING COUNSEL THAN WE HAD LAST

3    YEAR. LAST YEAR EVERY TIME I TRIED TO CONSOLIDATE OR

4    COORDINATE THE CASES, I WAS ALWAYS VEHEMENTLY OPPOSED.

5    BUT IT SOUNDS LIKE I HAVE MORE OF A WILLINGNESS FROM

6    OPPOSING COUNSEL NOW.

7        THE COURT: IT'S NOT YOUR DECISION TO

8    CONSOLIDATE. YOU CAN REQUEST IN THE TOWER THAT THEY

9    CONSOLIDATE. IT'S NOT MY PLACE TO CONSOLIDATE EITHER.

10   IT'S UP TO THE JUDGE IN THE TOWER TO CONSOLIDATE. AND

11   I CAN TELL YOU, AS A GENERAL RULE, THEY DO NOT WANT TO

12   DO THAT.

13       MR. GREEN: AND IT'S ALREADY BEEN REJECTED ONCE.

14       THE COURT: SO IT'S NOT GOING TO BE CONSOLIDATED

15   UNLESS SOMEBODY CHANGES THEIR MIND.

16       MS. ALBERT: I ATTEMPTED IT IN MOBLEY. I NEVER

17   ATTEMPTED BEFORE MRS. HELEN KOSHAK'S JUDGE, JUDGE

18   ADAMS. EVERY TIME I ATTEMPTED, THEY OPPOSED, SO I

19   FELT LIKE I WAS WASTING MY CLIENT'S MONEY.

20       THE COURT: PROBABLY SO.

21       MS. ALBERT: SO I STOPPED.

22       THE COURT: ALL RIGHT. NOW, SKIPPING AHEAD, I

23   SEE NO REASON FOR BRINGING IN A DOCTOR. UNLESS SOME

24   MEDICAL QUESTION ARISES, I SEE NO REASON TO BRING IN A

25   DOCTOR. THAT SEEMS IN THE AREA OF IRRELEVANCY AND

26   352. NOW, LET'S TALK ABOUT MR. CUSACK, THE CPA. WHAT

27   IS HE GOING TO DO? IS HE AN EXPERT?

28       MS. ALBERT: HE WOULD BE CLASSIFIED AS AN

1   ME TO RESTATE THE LAST QUESTION.  LOOKING SPECIFICALLY

2   AT -- LET'S GO TO THE TRIAL EXHIBIT 7A, WHICH HAS BEEN

3   TUCKED BEHIND EXHIBIT 7 ON THE WITNESS BOOK.

4           THE COURT:  I DON'T SEE 7A.

5           MS. ALBERT:  IT MIGHT BE 35 OR 36 FOR YOU.

6   THAT'S WHEN IT ACTUALLY CAME IN.

7           MR. GREEN:  YOUR HONOR, THE COURT SHOULD HAVE

8   THAT.

9           THE COURT:  OKAY.  HERE IT IS.

10          MR. GREEN:  IT'S AFTER 7.

11          THE COURT:  7A.  OKAY.  GOT IT.

12          Q       BY MS. ALBERT:  LOOKING AT WHAT'S BEEN

13  MARKED AS EXHIBIT 7A, DO YOU HAVE REASON TO BELIEVE

14  YOU DID NOT SIGN THAT DOCUMENT SHOWING A MONTHLY

15  MORTGAGE PAYMENT OF $8,906.25 PER MONTH?

16          A       YES.

17          Q       OKAY.

18          A       I DON'T THINK I SIGNED IT.

19          Q       OKAY.

20          A       YOU KNOW WHAT I DON'T UNDERSTAND?

21          Q       NO QUESTION IS PENDING.

22          A       OKAY.

23          Q       AT SOME POINT IN TIME DID YOU ASK FOR AN

24  ACCOUNTING FROM YOUR LENDER?

25          A       YES.  PLM.

26          MR. GREEN:  OBJECTION.  IRRELEVANT.  THE

27  ACCOUNTING CAUSE OF ACTION IS PART OF THE OTHER

28  LAWSUIT, AND IT'S NOT RELEVANT TO WHETHER OR NOT THERE

Case 8:18-cv-01467-ES-DN Document 700 Filed 03/02/22 Entered 03/02/22 22:00:47 Desc
Main Document Page ID #:30463 163 of 191

59

1 WAS ANY VIOLATION OF 2924.

2       THE COURT: I'M VERY RELUCTANT TO HEAR A LOT OF

3 TESTIMONY THAT PRECEDES '08. IF YOU'RE TALKING ABOUT

4 DATES PRIOR TO THAT, I'M NOT INCLINED TO LET THAT IN

5 BECAUSE IT DOES NOT APPEAR TO BE WITHIN THE PARAMETERS

6 I SET FOR THE UNLAWFUL DETAINER CASE.

7       Q     BY MS. ALBERT: AFTER NOTICE OF DEFAULT --

8 DID YOU AT SOME POINT IN TIME RECEIVE A NOTICE OF

9 DEFAULT?

10       A     YES.

11       Q     AFTER THE NOTICE OF DEFAULT, DID YOU EVER

12 REQUEST AN ACCOUNTING BEFORE YOUR HOME WAS SOLD AT THE

13 FORECLOSURE AUCTION?

14       A     YES.

15       MR. GREEN: OBJECTION, YOUR HONOR. VAGUE AND

16 AMBIGUOUS. THERE ARE MULTIPLE NOTICES OF DEFAULT.

17 IT'S ALSO IRRELEVANT TOO.

18       THE COURT: I'M GIVING HER SOME LEEWAY WITH THE

19 DEFENDANT HERE. BUT YOU DO NEED TO SPECIFY THE TIME,

20 WHICH NOTE.

21       Q     BY MS. ALBERT: MR. KOSHAK, AFTER THE 2005

22 NOTE, WHEN YOU RECEIVED A NOTICE OF DEFAULT IN 2008

23 BUT BEFORE YOUR HOME WAS ACTUALLY SOLD AT FORECLOSURE

24 AUCTION ON DECEMBER 23RD, 2011, DID YOU REQUEST AN

25 ACCOUNTING?

26       A     YES.

27       Q     DID YOU RECEIVE THAT ACCOUNTING BEFORE

28 YOUR HOME WAS ACTUALLY SOLD AT FORECLOSURE AUCTION ON

1 THIS CASE.

2      THE COURT: I AGREE.

3      Q    BY MS. ALBERT: DID YOU GO TO U.S. BANK TO

4 FIND OUT THE STATUS OF YOUR LOAN WITH THEM IN

5 ANTICIPATION OF YOUR TESTIMONY TODAY?

6      A    YES.

7      MR. GREEN: OBJECTION. IRRELEVANT.

8      THE COURT: YOU CAN ALLOW IT. OKAY.

9      Q    BY MS. ALBERT: DID U.S. BANK SHOW THAT

10 THE LENDER IN THIS CASE PAID OFF YOUR U.S. BANK LOAN

11 AFTER TAKING THE PROPERTY BY FORECLOSURE SALE?

12      MR. GREEN: OBJECTION. IRRELEVANT, LACKS

13 FOUNDATION, HEARSAY.

14      THE COURT: GRANTED. DO THEY HAVE TO PAY OFF

15 THE FIRST BEFORE THEY HAVE THE RIGHT TO FORECLOSE?

16      MS. ALBERT: NO. AFTER THEY FORECLOSE, THEY

17 MUST PAY OFF THE FIRST --

18      THE COURT: HOWEVER --

19      MS. ALBERT: -- IN ORDER TO PERFECT TITLE.

20      MR. GREEN: YOUR HONOR, THEY FORECLOSED. WHAT

21 DIFFERENCE DOES IT MAKE?

22      THE COURT: OKAY. CONTINUE. DO YOU HAVE MANY

23 MORE QUESTIONS?

24      MS. ALBERT: JUST A FEW.

25      THE COURT: ALL RIGHT. MAYBE WE CAN FINISH WITH

26 YOUR DIRECT EXAM BEFORE 12:00.

27      Q    BY MS. ALBERT: OKAY. DID YOU EVER OFFER

28 TO MAKE A MONTHLY PAYMENT TO THE PLAINTIFF LENDER

AT THE DEPOSITION.

1      THE WITNESS: LINE 11; CORRECT?

2      MS. ALBERT: CORRECT. YOUR HONOR, DO YOU WANT

3 ME TO READ THE STATEMENT AND ASK HIM?

4      THE COURT: YOU GO AHEAD AND READ THE STATEMENT.

5      Q     BY MS. ALBERT: 131, LINE 11. THE

6 QUESTION IS, "WERE YOU EVER ASKED TO RE-EXECUTE ANY

7 DOCUMENTS IN ORDER TO CORRECT ANY MISTAKES IN ANY OF

8 THE DOCUMENTS? ANSWER: NO."

9      A     "NO."

10      Q     IS THAT HOW YOU TESTIFIED AT YOUR

11 DEPOSITION?

12      A     YES.

13      Q     NOW, I'D LIKE YOU TO GO TO PAGE 163, AND

14 WE'RE AT LINE 4, MY QUESTION TO YOU, "WERE YOU LOOKING

15 AT EXHIBIT 3 AND I BELIEVE IT WAS EXHIBIT 20? YOU

16 WERE LOOKING AT THIS EARLIER TODAY, AND THEY BOTH SAY

17 THAT THEY'RE NOTES SECURED BY A DEED OF TRUST."

18      THE COURT: WAIT A MINUTE. WHY DO WE NEED IT?

19 HE ALREADY TESTIFIED ABOUT THOSE SHALL WE SAY "TWO

20 NOTES" WHILE LOOKING AT THEM HERE IN COURT. WHY DO WE

21 HAVE TO GO TO HIS DEPOSITION TESTIMONY?

22      MR. GREEN: IT'S ALSO LEADING, YOUR HONOR.

23 SHE'S JUST READING OFF WHAT SHE SAID INSTEAD OF SAYING

24 WHAT HE SAID AND ASKING HIM ABOUT IT.

25      THE COURT: IT SOUNDS CUMULATIVE TO ME.

26      MS. ALBERT: YOUR HONOR, THE RECORD WILL READ

27 DIFFERENTLY, BECAUSE MY CLIENT LAST FRIDAY -- WELL,

65

1  OPPOSING COUNSEL LAST FRIDAY READ ONE LITTLE SNIPPET

2  OF MR. KOSHAK'S DEPOSITION, WHICH WAS TAKEN OUT OF

3  CONTEXT.

4          HE DID THE SAME THING AGAIN THIS MORNING

5  WITHOUT GIVING ME THE OPPORTUNITY TO REBUT WITH

6  SEVERAL SECTIONS IN THIS DEPOSITION.  THEREFORE, IF

7  THE RECORD WERE LEFT SILENT, IT WOULD APPEAR THAT

8  MR. KOSHAK CHANGED HIS TESTIMONY LATER.  AND IF I WERE

9  OPPOSING COUNSEL, I WOULD MAKE THE SAGE ARGUMENT AT

10  CLOSING, "WELL, THE EARLIER TESTIMONY IS PROBABLY, YOU

11  KNOW, THE ONE TO RELY ON IN THIS CASE."

12          AND IF THE TESTIMONY IS LEFT TO LIE THAT

13  PLAINTIFF'S COUNSEL HAS MADE, IT WILL MAKE IT SOUND

14  LIKE MY CLIENT WAS MADE TO BELIEVE THAT THE SECOND

15  NOTE, THE $8,906 WAS THE PAYMENT HE BELIEVED.

16  HOWEVER, HE PULLED THE ONE LITTLE COMMENT OUT OF

17  CONTEXT OUT OF THAT WHOLE DEPOSITION.

18          IN FACT, THERE ARE APPROXIMATELY SEVEN

19  DIFFERENT PAGES THAT I COULD CITE THIS COURT WHERE

20  MR. KOSHAK IS CONSISTENTLY TELLING OPPOSING COUNSEL,

21  "I DO NOT BELIEVE THESE FIGURES.  I DO NOT BELIEVE

22  THESE NUMBERS.  I DO NOT BELIEVE I SIGNED BOTH THESE

23  NOTES."

24          THE COURT:  WE'VE ALREADY ESTABLISHED THAT

25  THERE'S ONE SIGNATURE PAGE.  HE SIGNED ONCE.  OKAY.

26          MR. GREEN:  I'LL STIPULATE THAT HE -- WHAT HE'S

27  ALREADY TESTIFIED TO, WHICH IS JUST REDUNDANT, THAT HE

28  DOESN'T CLAIM TO HAVE AGREED TO THE FIRST PAGE ON 7A.

1    AGREEMENT DATED JANUARY -- WELL, FEBRUARY

2    1ST, 2009, SO IT'S AFTER THE NOTICE OF DEFAULT FROM

3    U.S. BANK.

4              MY QUESTION WAS DID SHE BELIEVE THAT THEY

5    COULD CURE THE DEFAULT ON THIS LOAN IF THEY WERE ABLE

6    TO OBTAIN A LOAN MODIFICATION WITH U.S. BANK.

7         MR. GREEN:  AND THE OBJECTION IS IT VIOLATES THE

8    MOTION IN LIMINE, AND IT'S IRRELEVANT.  IT'S 352.  IT

9    HAS NOTHING TO DO WITH -- FOR ALL THE REASONS --

10        THE COURT:  IT'S NOT A QUESTION OF WHAT SHE

11   BELIEVED.  IT'S A QUESTION OF WHAT SHE DID OR

12   ATTEMPTED TO DO.

13        MR. GREEN:  IT'S ALSO IRRELEVANT, YOUR HONOR,

14   BECAUSE MR. KOSHAK TESTIFIED THAT LOAN WAS NEVER

15   MODIFIED.  BUT WE NEVER EVEN GET TO THAT BECAUSE THIS

16   COURT HAS CORRECTLY ALREADY RULED THAT ISSUES OF

17   MODIFICATIONS ARE IRRELEVANT AND NOT TO BE ALLOWED.

18   THERE IS NO DUTY OF A LENDER TO MODIFY A LOAN.

19             BEYOND THAT, WHAT THEY'RE TALKING ABOUT

20   HERE IS NOT EVEN MODIFICATION FROM US.  THEY'RE

21   TALKING ABOUT MODIFICATION FROM U.S. BANK, WHICH IS

22   ALL THE MORE IRRELEVANT.

23        MS. ALBERT:  YOUR HONOR, THAT'S A GROSS

24   MISCHARACTERIZATION OF WHAT WE'RE ATTEMPTING TO DO

25   HERE.  THE PRADA ACT UNDER 2923.5 IS COMPLETELY

26   INCORPORATED INTO 2924, AND THEY ARE REQUIRED.  AND

27   IT'S WITH REGARD TO WHETHER NOTICE OF DEFAULT WAS

28   RIGHTLY OR FRAUDULENTLY RECORDED WITH THE COUNTY

1  RECORDER'S OFFICE.

2  THIS LOAN MODIFICATION IS NOT A PIE IN THE

3  SKY.  IT ACTUALLY DOES EXIST.  IT IS AFTER THE DEFAULT

4  IN THIS CASE.  IT IS 2009.  AND I THINK IT'S VERY

5  RELEVANT BECAUSE THEY'RE TALKING ABOUT AN ABILITY TO

6  CURE.  IF YOU DO INCREASE YOUR FIRST LOAN, THEN IT

7  MAKES YOUR ABILITY TO PAY OFF THE SECOND LOAN BECAUSE

8  NOW YOU HAVE EXTRA FUNDS, IT IS MATERIAL TO BEING ABLE

9  TO CURE.  SO I THINK THAT IS MATERIAL.  AND IF THERE'S

10 A HINDRANCE OF AN ABILITY BY A LENDER WHO IS THWARTING

11 THE ABILITY TO MODIFY A FIRST LOAN --

12 THE COURT:  HOW DO YOU ALLEGE THAT THIS LENDER

13 THWARTED HER ABILITY TO GET ANOTHER LOAN?

14 MS. ALBERT:  BECAUSE A LOT OF TIMES THE FIRST

15 REQUIRES THE SECOND TO AGREE.

16 THE COURT:  WELL, MY QUESTION THEN BECOMES DID

17 THIS OTHER LENDER -- WAS THAT U.S. BANK?

18 MS. ALBERT:  UH-HUH.

19 THE COURT:  EVER ASK THE PLAINTIFFS TO HOLD OFF?

20 MS. ALBERT:  THERE'S DOCUMENTS IN MR. KOSHAK'S

21 DEPOSITION OUTLINING -- BETWEEN PLM LENDERS AND TO

22 MR. KOSHAK -- THE DISCUSSIONS WHICH WERE IN 2011.  LET

23 ME FIND THEM FOR YOUR HONOR.

24 THE COURT:  IF YOU HAVE A SITUATION WHERE THE

25 DEFENDANTS CAME UP WITH, "HERE'S OUR PLAN.  HERE'S THE

26 MONEY.  THIS BANK'S GONNA FINANCE IT, AND HERE'S YOUR

27 PAY-OFF," I ASSUME THEY WOULD HAVE TAKEN IT.

28 MS. ALBERT:  THIS IS A LETTER FROM PLM LENDERS.

Case 8:15-cv-01047-ES-DFM Document 700 Filed 03/02/22 Entered 03/02/22 22:09:46 Desc
Main Document Page ID #:30169 of 191

123

1   PROPOSAL" AND THEY SAID, "SEND ME THIS, THAT AND THE

2   OTHER THING, AND WE'LL SEE."  THERE'S NO INDICATION

3   THAT THEY SENT THIS, THAT AND THE OTHER THING AND THAT

4   PLM REFUSED TO REVIEW IT.

5        MR. GREEN:  BUT THEY HAVE NOTHING OTHER THAN

6   THIS LETTER.  A MODIFICATION NEVER HAPPENED.  THIS IS

7   TWO OR THREE YEARS AFTER THEY FIRST DEFAULTED.  AND IT

8   DOESN'T LEAD ANYWHERE BECAUSE, YOUR HONOR, UNDER 2924,

9   ALL WE HAVE TO SHOW IS WE'VE COMPLIED WITH THOSE

10  PROCEDURAL REQUIREMENTS.

11            AND THERE'S NOTHING IN 2924 ABOUT

12  NEGOTIATING IN GOOD FAITH FOR A MODIFICATION.  THERE

13  IS A CIVIL CODE SECTION 2923 THAT SETS FORTH A

14  REQUIREMENT THAT IN THE NOTICE OF DEFAULT YOU SET

15  FORTH THAT YOU ATTEMPTED TO CONTACT THE BORROWER AND

16  SO FORTH.  AND WE WENT INTO THAT ON FRIDAY, AND THEY

17  BROUGHT IN SOME EVIDENCE OF THAT.  THAT DOESN'T IMPOSE

18  REQUIREMENTS OF MODIFICATION ON ANYBODY.

19       THE COURT:  THIS GOES BEYOND THAT, AND IT SAYS

20  "WE'RE WILLING TO CONSIDER."  THEY'RE NOT REQUIRED TO

21  AGREE.

22       MR. GREEN:  YEAH.  THAT'S THE POINT.

23       THE COURT:  THEY ARE KIND OF REQUIRED TO

24  CONSIDER IF THEY WERE PROVIDED WITH ALL OF THIS STUFF.

25       MS. ALBERT:  RIGHT.  AND THEN --

26       THE COURT:  SO WERE THEY PROVIDED WITH ALL THIS

27  STUFF?

28       MS. ALBERT:  AND AS THE COURT CAN SEE, THE

```
1          (MARKED FOR IDENTIFICATION, DEFENDANTS' EXHIBIT
2     E, "MODIFICATION AGREEMENT.")

3

4          MS. ALBERT:  THIS WAS ALL COMING BACK TO WHERE I
5     WAS ASKING MRS. KOSHAK IF GETTING MODIFICATION ON THE
6     FIRST WOULD HAVE BEEN APPROVED BY THE SECOND.
7          MR. GREEN:  IS THIS THE DOCUMENT YOU WERE JUST
8     GIVEN FROM U.S. BANK REGARDING LOAN MODIFICATION
9     AGREEMENT?
10         THE COURT:  IT DOESN'T LOOK LIKE IT WAS
11    APPROVED.
12         MR. GREEN:  IT WASN'T.  AND AGAIN, YOUR HONOR
13    ASKS A GREAT QUESTION.  WHERE IS THIS LEADING IN TERMS
14    OF AN ISSUE IN DISPUTE THAT'S RELEVANT IN THIS CASE?
15    IT DOESN'T LEAD ANYWHERE.
16             THE ONLY NECESSITY FOR OUR CLIENT TO HAVE
17    ANY SORT OF DEALINGS OR DISCUSSION IS THREE YEARS
18    EARLIER, BEFORE THE NOTICE OF DEFAULT IN DECEMBER OF
19    2008, AND WE SHOWED THAT THAT WAS DONE, THE N.O.D.
20             IN FACT, WE HAVE ADDITIONAL EVIDENCE, IF
21    NECESSARY, TO CONFIRM WITHOUT QUESTION THAT WAS DONE.
22    BUT THIS IS SOMETHING DONE THREE YEARS LATER WITH
23    SOMEBODY OTHER THAN OUR PEOPLE.  BUT EVEN IF IT WAS
24    OUR PEOPLE, IT'S IRRELEVANT TO WHETHER OR NOT WE DID
25    WHAT WE NEEDED TO DO TO RECORD THE N.O.D., HAVE THE
26    SALE AND THEN RECORD OUR TRUST DEED, WHICH IS ALL
27    THAT'S RELEVANT UNDER 1162.  THEY ADMITTED IT IN 1161.
28         THE COURT:  WHAT I'M LOOKING FOR IS IS THERE
```

1    THE COURT:  I'M GONNA LET HER ANSWER STAND.

2    Q      BY MR. GREEN:  AND THE REASON FOR THAT IS?

3    A      THE REASON IT WOULD BE HIGHER THAN 855,000

4  IS BECAUSE A BALLOON PAYMENT WOULD ALWAYS INCLUDE THE

5  LAST INTEREST PAYMENT OF THE LOAN.  SO IN THIS

6  PARTICULAR LOAN IT WOULD HAVE BEEN 855,000 PLUS THE

7  $8,906 LAST INTEREST PAYMENT OF THE LOAN.

8    MR. GREEN:  MY FINAL QUESTION, YOUR HONOR -- I'M

9  HESITANT TO ASK IT, AND PERHAPS IF I CAN GET A LITTLE

10 GUIDANCE FROM THE COURT.

11   THE COURT:  DON'T ASK.

12   MR. GREEN:  WELL, I MAY NOT GET AN ANSWER, BUT I

13 THINK I'LL TRY ANYWAY, ONLY BECAUSE I'VE BEEN PRETTY

14 STEADFAST THAT ISSUES ON MODIFICATION ARE NOT GOING TO

15 THIS CASE OR WHAT WE HAVE TO PROVE IN THIS EVICTION

16 TRIAL.  HOWEVER, HAVING SAID THAT --

17   THE COURT:  YOU HAVE TO PROVE COMPLIANCE WITH

18 THE STATUTE, WHICH SHE TESTIFIED TO BASED ON EXHIBITS

19 36 THROUGH 40.

20   MR. GREEN:  RIGHT.

21   THE COURT:  THAT'S ALL THAT'S REQUIRED.

22   MR. GREEN:  RIGHT.  YES.  I'M NOT EVEN SURE THAT

23 IN ORDER -- THAT 2923.5 IS PART OF WHAT ONE NEEDS TO

24 PROVE UNDER 1161.  BUT EVEN IF IT IS, SHE'S TESTIFIED

25 TO THAT.

26   THE COURT:  SHE DID IT.  NEXT QUESTION.

27   MR. GREEN:  WHERE I'M GOING -- AND YOU'LL SEE

28 WHY -- ON THE MODIFICATION ISSUE, OR WHAT WE WERE

1    MR. GREEN:  YOUR HONOR, I OBJECT.  IT'S BEYOND

2  THE SCOPE OF MY DIRECT EXAMINATION, WHICH WERE FOUR

3  SPECIFIC AREAS, NOT INCLUDING THAT AREA.  THAT

4  PARTICULAR QUESTION WAS TERRIBLY COMPOUND.  BUT SHE

5  HAD THE CHANCE TO ASK QUESTIONS IN THOSE AREAS.

6    THE COURT:  LET'S MOVE ON.

7    MR. GREEN:  WELL, IF WE'RE GONNA GO THROUGH

8  ANOTHER HALF AN HOUR OF TRYING TO DRAW ON THINGS THAT

9  SHE WISHED SHE'D ASKED LAST FRIDAY --

10    MS. ALBERT:  I MEAN, YOUR HONOR, I COULD HAVE

11  SAID THE SAME THING ABOUT HIM.

12    THE COURT:  OKAY.  HE SAID.  SHE SAID.

13  CHILDREN, LET'S ALL PRETEND TO BE ADULTS.

14    MS. ALBERT:  OKAY.  IT'S SO IMPORTANT.  THAT'S

15  THE ONLY REASON WHY I BEG TO IRE THE COURT ON THIS,

16  BECAUSE WE HAVE THE TESTIMONY TODAY NOW OF THE KOSHAKS

17  IN THE EARLY DEFENSE CASE.  THEY DIDN'T HEAR WHAT SHE

18  HAD TO SAY LAST TIME.

19    THE COURT:  WHAT IS IT THAT YOU WANT HER TO --

20  GIVE ME AN OFFER OF PROOF.

21    MS. ALBERT:  OKAY.  OFFER OF PROOF.  SHE HAD

22  TESTIFIED THAT AT SOME POINT LATER IN TIME SHE

23  RECEIVED A SECOND NOTE.  7 AND 7A WERE NOT TOGETHER.

24  SHE RECEIVED 7.  THEN SHE RECEIVED 7A.  AT THE TIME I

25  ASKED HER.  I SAID, "IS IT IN YOUR FILE WHEN YOU

26  RECEIVED THAT SECOND NOTE?"

27    "YES," BUT SHE COULDN'T REMEMBER WHEN IT

28  WAS BECAUSE, YOU KNOW, SHEHAS A LOT OF THINGS IN THE

1   KOSHAKS' FILE."
2        THE COURT:  I'LL LET YOU ASK HER THAT QUESTION,
3   EVEN THOUGH I DON'T HAVE TO.  LET'S JUST GET ON WITH
4   THAT.  WE TALKED ABOUT 7 AND 7A.  MAKE IT A CONCISE
5   QUESTION.
6        Q    BY MS. ALBERT:  DID YOU LOOK IN YOUR
7   RECORDS AND FIND WHEN YOU RECEIVED WHAT WE NOW ARE
8   REFERRING TO AS 7A?
9        A    I DID.
10       Q    AND WHEN DID YOU RECEIVE THAT?
11       A    JUNE 26, 2005.
12       Q    WHO DID YOU RECEIVE IT FROM?
13       A    FIRST COASTAL, AND IT WAS A FAX.  I
14   BELIEVE IT WAS PATTY, BUT I'M NOT SURE.
15       Q    SO YOUR COPY OF YOUR NOTE WOULD LOOK
16   DIFFERENT THAN OUR 7A.  IT WOULD HAVE LIKE FAX STRIP
17   ON TOP?
18       A    I WOULD BELIEVE THAT.  BUT WITHOUT LOOKING
19   AT IT, I CAN'T TELL.
20       Q    AS A NORMAL COURSE OF BUSINESS, WHEN YOU
21   RECEIVE FAXES, DO YOUR FAXES COME WITH AN IDENTIFYING
22   FAX DATE?
23       A    YES.
24       Q    SO WHAT WE HAVE AS OUR EXHIBIT MARKED 7A
25   IS NOT THE SAME AS THE THING YOU HAVE IN YOUR FILES?
26       A    I HAVE ONE IN MY FILE THAT LOOKS LIKE 7A
27   WITHOUT FAX MARKS ON IT, BECAUSE WE WOULD HAVE
28   RECEIVED A FULL PACKAGE AT CLOSE OF ESCROW, WHICH IS

1  WHAT WOULD HAVE TRIGGERED US TO CALL THEM AND DISCUSS
2  THE NOTE.
3       Q       IS THE NOTE THE LAST THING TO BE SIGNED AT
4  ESCROW?
5       A       IT WOULD DEPEND ON THE ORDER OF THE
6  DOCUMENTS BEING PRESENTED TO THE BORROWERS.
7       Q       I MEAN, LAST IN TIME, NOT IN THE PACKET,
8  NOT IN THE STACK OF PAPERS, BUT I MEAN LAST IN TIME.
9       A       I'M SORRY.  ASK ME A DIFFERENT WAY.
10      Q       OKAY.  WOULD VERIFYING A CLOSING STATEMENT
11 BE SIGNED AFTER A NOTICE SIGNED IN TIME, MEANING LIKE
12 A WEEK LATER, TWO WEEKS LATER, A MONTH LATER?
13      A       THERE ARE SEVERAL SETS OF LOAN DOCUMENTS
14 SIGNED.  SO NORMALLY WE'RE GONNA HAVE THE INITIAL SET
15 OF LOAN -- INITIAL DISCLOSURE.  THEN YOU'RE GOING TO
16 HAVE YOUR FINAL DOCUMENTS SIGNED, WHICH WOULD CONSIST
17 OF YOUR NOTE, YOUR DEED OF TRUST, YOUR TRUTH IN
18 LENDING IF IT'S APPLICABLE, YOUR FINAL MORTGAGE LOAN
19 DISCLOSURE, INSURANCE REQUIREMENTS, THAT KIND OF
20 DOCUMENTATION.
21          THEN NORMALLY AT THAT TIME THERE'S AN
22 ESTIMATED CLOSING STATEMENT DONE BY THE BROKER AND
23 THEN USUALLY BY THE TITLE COMPANY AT THE SAME TIME,
24 WHETHER THEY WOULD PUT IT OUT ON A HUD ONE CLOSING
25 STATEMENT OR WHETHER IT'S THE TITLE COMPANY'S CLOSING
26 STATEMENT, AND THAT'S THE ESTIMATED CLOSING STATEMENT.
27          AND THEN YOU'LL END UP WITH A FINAL, FINAL
28 CLOSING STATEMENT NORMALLY.  AS LONG AS IT'S ALL RAN

```
 1    THROUGH ESCROW, THEN YOU'LL HAVE A FINAL, FINAL HUD
 2    STATEMENT, WHICH WILL SHOW EXACTLY WHERE THE LAST
 3    PENNY WENT.
 4          Q     BUT THAT'S DISTRIBUTING THE MONEY?
 5          A     YES.
 6          Q     THAT ISN'T CHANGING THE MONEY.  THAT
 7    WOULDN'T CHANGE THE MONEY IN THE NOTE.  THAT'S
 8    DISTRIBUTING THE MONEY; CORRECT?
 9          A     CORRECT.
10          Q     SO I'LL ASK IN VERY GENERIC TERMS THEN.
11    AFTER THAT NOTE IS SIGNED, THERE'S NOTHING THAT
12    CHANGES THE MONEY.  THERE'S NO DOCUMENT THAT COMES
13    LATER IN TIME THAT CHANGES THE MONEY; CORRECT?
14          A     ARE YOU ASKING ME IF IT CHANGES THE FRONT
15    PAGE OF THE NOTE SPECIFICALLY?  IS THAT WHAT YOU'RE
16    ASKING ME?  OR CHANGING THE MONEY?  I DON'T KNOW
17    WHETHER YOU MEAN THE DOLLARS OWED, THE MONEYS
18    DISBURSED.  I'M NOT QUITE SURE WHAT YOU'RE ASKING ME.
19          Q     I'M TRYING TO BE VERY CONCRETE HERE.
20    OKAY, YEAH.  LET'S JUST TALK ABOUT THE FIRST PAGE OF
21    THE NOTE.  AFTER THAT DEED OF TRUST AND THAT NOTE IS
22    SIGNED, IS THERE ANY DOCUMENT THAT COMES LATER THAT
23    CHANGES THE FACE OF THE NOTE OR THE MONTHLY MORTGAGE
24    PAYMENT AND BALLOON PAYMENT?
25          A     A NOTE CAN BE CHANGED.
26          Q     A NOTE CAN BE CHANGED.  ALTHOUGH, WHEN
27    THOSE NOTES ARE CHANGED, THEY'RE NORMALLY INITIALED?
28          A     YES.
```

**BARRETT REPORTING, INC.**        **(888) 740-1100**        **www.barrettreporting.com**

```
 1        Q        OUR 7A DOESN'T HAVE INITIALS ON IT THOUGH?
 2        A        OURS DOES NOT.
 3        MS. ALBERT:  NO FURTHER QUESTIONS.
 4        THE COURT:  ANYTHING FURTHER?
 5        MR. GREEN:  NO.
 6        THE COURT:  THANK YOU.  YOU MAY STEP DOWN.  WAS
 7   SHE SWORN IN?
 8        THE WITNESS:  I WAS --
 9        THE CLERK:  SHE WAS PREVIOUSLY SWORN IN.
10        THE COURT:  YOU UNDERSTAND THAT YOU WERE STILL
11   UNDER OATH TODAY?
12        THE WITNESS:  YES.
13        THE COURT:  AND THAT ALL OF YOUR ANSWERS WERE
14   CORRECT AND TRUE?
15        THE WITNESS:  YES.
16        THE COURT:  NOW WE'RE BACK TO YOU, AND
17   MRS. KOSHAK CAN TAKE THE STAND AGAIN.
18
19             DIRECT EXAMINATION (RESUMED)
20   BY MS. ALBERT:
21        Q        SINCE WE WERE JUST ON THESE, I'LL GO
22   THROUGH THESE EXHIBITS WITH YOU, MRS. KOSHAK.  CAN YOU
23   SEE THEM ON THE BIG SCREEN?
24        A        YES.
25        THE COURT:  IS THERE AN EXHIBIT NUMBER TO THAT?
26        MS. ALBERT:  IT SAYS EXHIBIT 37.
27        THE COURT:  OKAY.
28        Q        BY MS. ALBERT:  IT'S DATED SEPTEMBER 3RD,
```

```
 1    YOU REMEMBER ME ASKING THAT QUESTION?
 2          A       YES, I GUESS I DO.
 3          Q       DO YOU REMEMBER WHAT HIS ANSWER WAS?
 4          A       NO, NOT OFFHAND, NO, I DON'T.
 5          Q       I'M GOING TO REPRESENT TO YOU THAT HIS
 6    ANSWER WAS "YES."
 7          A       OKAY.
 8          Q       SO MY QUESTION IS DO YOU AGREE WITH HIS
 9    TESTIMONY OR DON'T YOU KNOW?
10          MS. ALBERT:  OBJECTION.  THAT MISSTATES THE
11    TESTIMONY.
12          MR. GREEN:  NOT AT ALL.
13          MS. ABLERT:  I HONESTLY THINK HE'S ASKING TWO
14    DIFFERENT QUESTIONS, GETTING REALLY TRICKY.  THE
15    QUESTION IN THE DEPOSITION TRANSCRIPT, LOOKING AT WHAT
16    WAS MARKED AS THIS EXHIBIT, "DO YOU AGREE THAT THIS IS
17    WHAT IT SAYS?"
18          THE COURT:  THAT'S NOT HOW THE QUESTION IS
19    POSED.
20          THE WITNESS:  I DON'T AGREE WITH THIS EXHIBIT.
21          THE COURT:  YOU DON'T AGREE WITH WHAT EXHIBIT?
22          THE WITNESS:  THIS EXHIBIT 35.
23          THE COURT:  YOU DON'T AGREE WITH IT?
24          THE WITNESS:  RIGHT, BECAUSE THAT'S NOT MY
25    SIGNATURE ON THE BOTTOM OF IT.
26          MR. GREEN:  YOUR HONOR, MY QUESTION HAS NOTHING
27    TO DO WITH EXHIBIT 35.  IT'S A VERY SIMPLE QUESTION.
28    I ASKED IF --
```

**BARRETT REPORTING, INC.**      (888) 740-1100      www.barrettreporting.com

```
 1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                  FOR THE COUNTY OF ORANGE

 3   DEPARTMENT C-53        HONORABLE ELAINE STREGER, JUDGE

 4

 5   10675 SOUTH ORANGE PARK       )  CASE NO.:
     BOULEVARD, LLC,               )  30-2012-00568954
 6                                 )  CL-UD-CJC
                      PLAINTIFF,   )  REPORTER'S
 7                                 )  CERTIFICATE
             VS.                   )
 8                                 )
     NORMAN KOSHAK, HELEN KOSHAK,  )
 9                                 )
                      DEFENDANTS.  )
10   _____)

11

12

13          I, JOANNE MIO, OFFICIAL COURT REPORTER PRO

14   TEMPORE OF THE SUPERIOR COURT OF THE STATE OF

15   CALIFORNIA, FOR THE COUNTY OF ORANGE, DO HEREBY

16   CERTIFY THAT THE FOREGOING PAGES, 1 THROUGH 191,

17   INCLUSIVE, COMPRISE A FULL, TRUE AND CORRECT

18   TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

19   ABOVE-ENTITLED MATTER ON MARCH 1, 2013.

20

21

22          DATED THIS 28TH DAY OF MARCH, 2013.

23

24

25                  _____
                    JOANNE MIO, CSR NO. 10871
26                  OFFICIAL COURT REPORTER, PRO TEMPORE

27

28
```