1  Lenore L. Albert
2  Email: lenalbert@InteractiveCounsel.com
   1968 S Coast Hwy #3960
3  Laguna Beach, CA 92651
4  Telephone: 424-365-0741
   Plaintiff, pro se
5

6  James Ocon
7  Email: Jim.Ocon@Oconcompany.com
   10131 Louise Ave.
8  Northridge, CA 91325
9  Telephone: 719-505-2187
   Plaintiff, pro se
10

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENORE ALBERT, et al.,<br>    Plaintiff, | CASE NO. 8:25-cv-00674-JLS-DFM |
| vs. | Related to: 30-2025-01462434-CU-AT-CXC |
| TYLER TECHNOLOGIES, INC., et al.,<br>    Defendants. | and 8:24-cv-01997-JLS-DFM |
| | **DECLARATION OF DAN CHMIELEWSKI** |
| | Hearing Date: November 18, 2025 |
| | Time: 10:00AM |
| | Ctrm: 6B |

Ryan McMahon
Email: Codethree53@gmail.com
7533 English Hills Road
Vacaville, CA 95687
Telephone: 707-333-3127
Plaintiff, pro se

1

**DECLARATION OF DAN CHMIELEWSKI**

*Albert v Tyler Technologies, et al.* 8:25-cv-00647-JLS-DFM

1  Larry Tran
2  Email: larrylytran@gmail.com
   29559 Fitch Ave.
3  Canyon Country, CA 91351
4  Telephone: 626-217-7836
   Plaintiff, pro se
5

6  Theresa Marasco
7  Email: theresa.marasco@gmail.com
   PO Box 1035
8  Santa Monica, CA 90406
9  Telephone: 720-226-4051
   Plaintiff, pro se
10

11 Leslie Westmoreland
12 Westmorelandlw7@gmail.com
   1715 East Alluvial Ave. #214
13 Fresno, CA 93720
14 Telephone: 559-727-1604
   Plaintiff, pro se
15

16 Chad Pratt
17 Email: Chadprattsr@gmail.com
   660 S Figueroa St, Ste 1920
18 Los Angeles, CA 90017-3569
19 Telephone: 213-840-2423
   Plaintiff, pro se
20

21

22

23

24

25

26

27

28

2

**DECLARATION OF DAN CHMIELEWSKI**

*Albert v Tyler Technologies, et al.* 8:25-cv-00647-JLS-DFM

## DECLARATION OF DAN CHMIELEWSKI

I, Dan Chmielewski, declare as follows:

1. I am a plaintiff in *John Roe 1 et al. v. State Bar of California et al.*, Superior Court of California, County of Orange, Case No. 30-2022-01250695-CU-AT-CXC. I have personal knowledge of the facts stated herein and could and would testify competently if called as a witness.

2. I make this declaration voluntarily and **prior to signing any settlement agreement** with either Tyler Technologies, Inc. ("Tyler") or the State Bar of California (the "State Bar").

3. This declaration is intended to preserve facts relevant to and for use in related litigation, including *Albert v. Tyler Technologies, Inc.*, Case No. 8:25-cv-00647-JLS-DFM (C.D. Cal.), and any related proceedings.

**Attorney–Client Relationship with Lenore Albert**

3. From approximately [insert year] until her suspension and eventual disbarment in 2024, **Lenore Albert served as my legal counsel**. We had a contractual attorney–client relationship concerning matters arising out of the State Bar data breach litigation and related issues.

4. I was originally named "John Roe 1" in *John Roe 1 et al. v. State Bar of California et al.*, Superior Court of California, County of Orange, Case No. 30-2022-01250695-CU-AT-CXC.

5. **The State Bar of California and Tyler Technologies were aware of this attorney–client relationship.**

6. My true name was disclosed to the State Bar when Ms. Albert filed my tort claim with the State Bar in March 2022.

7. My true name was disclosed during litigation to both the State Bar and Tyler Technologies, Inc.'s counsel by Ms. Albert while I continued to be named as John Roe 1, also.

8. My claims in the *Roe* litigation were filed with Ms. Albert as my counsel of record prior to her suspension.

9. Without waiving the attorney client privilege, I continued to communicate with her in her capacity as counsel on a regular basis until the State Bar forced her suspension on March 14, 2024 and later disbarment on July 17, 2024.

10. Ms. Albert's removal as my attorney adversely impacted my ability to pursue claims in the litigation, communicate with counsel of my choice, and respond to subsequent settlement overtures from Tyler and the State Bar.

11. I was not able to obtain other counsel of record in this case.

12. I believe other attorneys were afraid that the State Bar would retaliate against them if they stepped into the case.

### Nardo Interference

6. In or around March 2025, during ongoing settlement discussions with Tyler and the State Bar, an individual named **Dan Nardo** suddenly appeared, claiming to act as "attorney-in-fact" for another plaintiff, Hon. Mary Elizabeth Bullock (Ret.).

7. Prior to March 2025, I had never received an email from Dan Nardo.

8. Mr. Nardo was not an attorney and never sent me an email asserting he was an attorney so I was shocked that the counsel for the State Bar and Tyler Technologies, Inc. were acting as if he had valid legal authority to act for Ms. Bullock in my case.

9. I received a **facially invalid, non-notarized "power of attorney" he sent to counsel for Tyler Technologies and the State Bar** and claimed that the validity of a POA primarily hinges on the principal's intent rather than strict adherence to state-prescribed formalities, asserting that the EEOC, the State Bar, and California courts had accepted it without question.

10. Despite knowing he was not counsel of record and that Ms. Albert had represented plaintiffs, **Tyler treated Nardo as a party representative**, copied him on settlement communications, and later described to the court that they had been in

4

**DECLARATION OF DAN CHMIELEWSKI**

*Albert v Tyler Technologies, et al.* 8:25-cv-00647-JLS-DFM

"direct contact with each of the Plaintiffs regarding the possibility of a negotiated settlement," consistent with Nardo's insertion into the negotiations.

11. Nardo sent multiple **abusive and disparaging emails** about Ms. Albert to me, other plaintiffs, and defendants. For example, he wrote: "Grow up. Continue to interfere in this matter and make, thus far, meritless claims that you have a contingency fee agreement with my principal, and I can assure you this will be brought before the Court." Defendants were aware of his conduct and continued to engage him.

12. **Nardo's involvement interfered with the discovery process.** The State Bar sent me discovery requests that they demanded I respond to, copying Dan Nardo with the requests.

13. I did not want Dan Nardo to get my discovery responses. I requested an extension and the State Bar agreed to settle the matter with me for $10,000.00 and I would not have to respond to the discovery requested.

14. **Nardo's involvement interfered with my settlement communications and legal strategy.** At the time, Ms. Albert had been my attorney of record. Tyler and the State Bar knew of this attorney–client relationship, yet began communicating with Nardo instead of counsel. This undermined my ability to coordinate with other plaintiffs and introduced unauthorized parties into settlement negotiations.

**Impact on Proceedings**

11. The introduction of Mr. Nardo into the case also had **serious procedural consequences**. By March 2025, after Ms. Albert's suspension, the presiding judge was changed from **Judge Sherman to Judge Hoffer**. Judge Hoffer held his first status conference in this matter in **June 2025**, at which time Nardo's involvement and Defendants' focus on Ms. Albert's prior representation of plaintiffs, including Judge Bullock, became a central topic of discussion.

12. Rather than focusing on **the data breach, Defendants' negligence, and the harms suffered by me and other plaintiffs**, Defendants repeatedly directed the

5

**DECLARATION OF DAN CHMIELEWSKI**
*Albert v Tyler Technologies, et al.* 8:25-cv-00647-JLS-DFM

court's attention to **issues concerning former counsel**, including the circumstances of Ms. Albert's suspension and disputes over her prior representation of Judge Bullock. This shift occurred precisely as a new judge took over the case, giving Defendants an opportunity to **reframe the narrative** around interpersonal conflicts rather than their own liability.

13. I found this extremely **distressing**. I did not appreciate hearing my former counsel disparaged in court or seeing the proceedings **distracted from the real issues** — namely, the breach of confidential State Bar data and the resulting harm to me and other plaintiffs. I felt that Defendants were deliberately using Nardo's involvement to divert attention from their misconduct and to undermine the plaintiffs' cohesion after our counsel's suspension.

### Tyler and State Bar Settlements

14. On or about [insert date], I was told that the State Bar was not settling with me for $10,000 but instead it was going to be split up with the State Bar paying me $5,000 and Tyler paying me $5,000 in two separate agreements.

15. Tyler offered me **$5,000 to settle my claims**. The draft settlement included confidentiality and non-disparagement clauses. Tyler representatives also told me, in substance, that **Tyler was not responsible for or part of the 2022 State Bar data breach**. I have not yet signed Tyler's settlement agreement.

16. I have also been offered a **$5,000 settlement by the State Bar of California** to resolve my claims against that agency arising from the same data breach. The State Bar is a public agency, and under California's Public Records Act (Gov't Code § 6250 et seq.), it cannot lawfully impose broad confidentiality provisions in settlement agreements. However, the State Bar inserted a clause that said I could not ever complain about the State Bar, a state agency, again. I have not yet signed the State Bar's settlement agreement.

17. Neither the State Bar nor Tyler discussed Ms. Albert's lien with me during settlement.

6

**DECLARATION OF DAN CHMIELEWSKI**

*Albert v Tyler Technologies, et al.* 8:25-cv-00647-JLS-DFM

**Greg Diamond Complaint and Selective Purging**

18. I previously filed a **confidential State Bar complaint against attorney Greg Diamond before October 2021**.
19. Greg Diamond operated the "Orange Juice Blog" and published numerous articles about Ms. Albert, including during her suspension.
20. Recently, I was informed by both the State Bar and Tyler that **the Greg Diamond complaint was not among the confidential investigative records that were harvested and published on JudyRecords.com** during the 2022 data breach.
21. At the time, the **State Bar's policy was that no confidential State Bar investigation files were ever to be purged from the Odyssey system.**
22. Under this policy, all confidential investigative records should have been present in the system when the data was scraped.
23. This raises a serious question: If no investigative files were purged, and **all** confidential state bar records were "swept up" by JudyRecords.com why was the Diamond complaint missing from the breached dataset? Was the State Bar selectively purging or shielding records involving Diamond? Given his role as a prominent blogger attacking Ms. Albert, it is reasonable to question whether Diamond was treated differently by the State Bar, receiving special privileges — including purging complaints against him — to prevent their public exposure.
24. The State Bar's failure to produce discovery since March 2024, its selective handling of confidential investigative records, and its procedural conduct in this case have led me to infer that additional relevant information is being withheld.

**Discovery Obstruction and Relevance to Claims**

20. Since **March 2024,** the State Bar has failed to produce discovery it promised shortly before Ms. Albert's suspension. This nonproduction has continued through the present.

7

**DECLARATION OF DAN CHMIELEWSKI**

*Albert v Tyler Technologies, et al.* 8:25-cv-00647-JLS-DFM

21. Defendants' conduct has included recognizing and engaging with Nardo despite his lack of legal authority, shifting the court's focus away from plaintiffs' harms, and failing to produce discovery.

22. I am not an attorney and cannot continue to represent myself without counsel. The stakes are too high for me to lose because I don't know what I am doing.

**First Amendment Retaliation**

22. I believe that the State Bar's conduct was not merely negligent but **retaliatory** toward Ms. Albert because of her litigation and public criticism of the State Bar concerning the 2022 data breach.

23. I saw her video of the protest and disclosure about the breach on April 20, 2024.

24. I testified on her behalf against the State Bar in January 2023.

25. Shortly after her suspension in March 2024, and after the case was reassigned from Judge Sherman to Judge Hoffer, the State Bar and Tyler **inserted Nardo into the litigation**, treated him as a representative despite his lack of authority, and **shifted the court's focus away from plaintiffs' harms and onto issues concerning Ms. Albert's representation**.

26. At the same time, the State Bar **failed to produce discovery it had promised in March 2024**, shortly before Ms. Albert's suspension. This withholding has **obstructed plaintiffs' ability to litigate their claims** and has compounded the procedural disadvantage caused by counsel's disqualification and Nardo's interference.

27. I believe these actions were taken **in retaliation for Ms. Albert's protected First Amendment activity** and were intended to chill further litigation, disrupt plaintiffs' ability to pursue their claims, and protect the State Bar from liability. The timing, selective procedural maneuvers, and targeting of former counsel strongly support an inference of retaliatory motive.

**Closing**

26. I make this declaration voluntarily, before signing any settlement agreements with Tyler or the State Bar, to ensure that the above facts are preserved for use in litigation. I have not been promised or given anything of value by any party in *Albert v. Tyler Technologies* for making this declaration.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 4th day of October, 2025, at Irvine, California.

**Dan Chmielewski**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and a party to the within action; that I am employed in Orange County, California; my business address is 1968 S Coast Hwy #3960, Laguna Beach, CA 92651.

**DECLARATION OF DAN CHMIELEWSKI**

On the interested parties in this action as follows:
See Electronic Service list

**[x] BY E-SERVE and EMAIL** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth.

**[] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Huntington Beach, California, to the aforementioned addressee(s).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: October 4, 2025

                                                                                    /s/Lenore Albert
                                                                                      Lenore Albert

# ELECTRONIC SERVICE LIST

**For Defendants State Bar of California, Cindy Chan, Benson Hom, Suzanne Grandt, George Cardona, Ruben Duran, Steve Mazer, Leah Wilson**

KEVIN GILBERT, ESQ.
kgilbert@ohhlegal.com
Orbach Huff + Henderson LLP
Pleasanton
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
(510) 350-3582 Direct


SUZANNE C. GRANDT (304794)
Assistant General Counsel
**OFFICE OF GENERAL COUNSEL**
**THE STATE BAR OF CALIFORNIA**
180 Howard Street
San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517
Email: suzanne.grandt@calbar.ca.gov

**For Defendant Tyler Technologies, Inc.**
Beth Petronia beth.petronio@klgates.com
Zachary T. Timm (SBN 316564) zach.timm@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard Seventh Floor
Los Angeles, California 90067
Telephone: 310.552.5000 Facsimile: 310.552.5001
**For Defendant Tyler Technologies, Inc.**
Christina N. Goodrich (SBN 261722) christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564) zach.timm@klgates.com

Co-plaintiffs by email by consent – as listed on the caption.